# STATE COURT DOCUMENT A

1  Robert A. Mosier, Esq. (SBN 164241)
2  Timothy M. Clark, Esq. (SBN 284447)
   Lauren Welling, Esq. (SBN 291813)
3  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive Suite 220
4  Irvine, CA 92606
   Tel: (877) 480-9142
5  Fax: (213) 330-0346
   rmosier@thesandersfirm.com
6
7  *Attorneys for Plaintiffs*

F I L E D
Superior Court of California
County of San Francisco

SEP 30 2016

CLERK OF THE COURT
BY: _____
Deputy Clerk

8  **THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **COUNTY OF SAN FRANCISCO**

10 MICHAEL MARTIN, an individual;          ) CASE NO:
11 RONALD LETELL, an individual;           ) JUDGE: CGC-16-554610
   DONALD CARPENTER, an individual;        )
12 ELIZABETH McMAHON, an individual;       ) COMPLAINT FOR DAMAGES FOR:
   JOHN W. HUNT, SR., an individual;       )
13                                         ) 1) STRICT PRODUCTS LIABILITY
14        Plaintiffs,                      ) 2) NEGLIGENCE
                                           ) 3) FAILURE TO WARN
15     vs.                                 ) 4) BREACH OF WARRANTY OF
                                           )    MERCHANTABILITY
16 BRISTOL-MEYERS SQUIBB COMPANY;          ) 5) BREACH OF EXPRESS WARRANTY
   ASTRAZENECA PHARMACEUTICALS             ) 6) BREACH OF IMPLIED WARRANTY
17 LP; MCKESSON CORPORATION; and           )
18 DOES 1-50 INCLUSIVE                     )
                                           )
19        Defendants.                      ) DEMAND FOR JURY TRIAL
                                           )
20 _____) Complaint Filed: _____, ____

21     Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for

22 damages against the Defendants, and allege the following:

23 **I.    INTRODUCTION**

24     1.    This is an action for damages relating to the Defendants' design, manufacture,

25 sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug

26 Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and

27 Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and

28 Kombiglyze XR, shall herein be referred to as "Saxagliptin."

**BY FAX**

2.     Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.     The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.     Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

## II.     PARTIES, VENUE & JURISDICTION

5.     At all times relevant to this action, Plaintiff MICHAEL MARTIN was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.     At all times relevant to this action, Plaintiff RONALD LETELL was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

7.     At all times relevant to this action, Plaintiff DONALD CARPENTER was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

8.     At all times relevant to this action, Plaintiff ELIZABETH McMAHON was a citizen and resident of the State of Pennsylvania.  Plaintiff ingested Saxagliptin resulting in injuries.

9.     At all times relevant to this action, Plaintiff JOHN W. HUNT, SR. was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

10.     Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

11.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

12.     Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district

2

1   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

2   Saxagliptin.

3       13.    Defendant McKesson Corporation ("McKesson") is a Delaware corporation with

4   its principal place of business at One Post Street, San Francisco, California 94104. At all

5   relevant times, McKesson regularly and continuously did business within this judicial district

6   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

7   Saxagliptin.

8       14.    Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive.

9   Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

10  Defendants are ascertained. At all relevant times herein DOES 1-50 inclusive were the

11  individuals, corporations, and/or business entities, which were agents, servants, joint ventures,

12  partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

13  as alleged herein.

14      15.    Hereinafter the aforementioned Defendants may collectively be referred to as

15  "Defendants."

16      16.    At all relevant times, each Defendant acted in all aspects as the agent and alter

17  ego of each other.

18      17.    At all relevant times, Defendants acted in concert with one another in the State of

19  California to fraudulently convey false and misleading information concerning the safety and

20  efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure,

21  congestive heart failure, cardiac failure, death from heart failure and other adverse effects

22  associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare

23  providers. These concerted efforts resulted in significant harm to those treated with Saxagliptin,

24  including Plaintiffs. But for the actions of Defendants, individually, jointly, and in concert with

25  one another, Plaintiffs would not have ingested Saxagliptin.

26      18.    This Court has personal jurisdiction over Defendants. Defendants are and were at

27  all relevant times residents of and/or authorized to conduct business in the State of California and

28

3

1   Defendants conducted such business within the state including the performance of acts that

2   caused or contributed to the harm giving rise to this action.

3         19.    At all times material hereto, Defendants maintained systematic and continuous

4   contacts in this judicial district, regularly transacted business within this judicial district,

5   employed numerous individuals in this district and regularly availed themselves of the benefits

6   of this judicial district. Defendants received substantial financial benefit and profits as a result of

7   designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this

8   district and throughout the United States.

9         20.    The combined acts and/or omissions of each Defendant resulted in indivisible

10   injuries to each Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-

11   conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions

12   alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct

13   of each and every other Defendant.

14         21.    The amount in controversy exceeds the jurisdictional limits of this court.

15 **III.**   **FACTUAL ALLEGATIONS**

16         22.    Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance

17   and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia. Type 2

18   diabetics have an increased risk of cardiovascular  disease, which is the leading cause of

19   morbidity and mortality in the patient population. Therefore, it is critical that drugs developed to

20   allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in

21   users. With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related

22   adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and

23   sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2

24   diabetes.

25         23.    Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby

26   potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone,

27   known as an incretin. This induces glucose-dependent stimulation of insulin secretion while

28   suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

24.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

25.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

---

[1] *Id.*

26.     On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

27.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

28.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

29.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.  Once again, Defendants place sales over patient safety.

30.     In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s/

*COMPLAINT FOR DAMAGES*

benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

31.     Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

32.     Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

a.  in print marketing, advertising, and promotional materials;

b.  on Defendant-owned, controlled, or supported websites and blogs;

c.  in materials and advertisements to Plaintiffs and consumers stating the use of Saxagliptin is safe; and

d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

33.     At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

34.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

## IV.     PLAINTIFFS' USE OF SAXAGLIPTIN

35.     Plaintiffs were prescribed and ingested Saxagliptin at various times.

36.     Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the drug's condition.

37.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

38.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

39.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

40.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

41.     Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions, changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

42.     Plaintiffs' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiffs.

43.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

COMPLAINT FOR DAMAGES

1  and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional
2  limits of the Court.

3    44.    As a direct and proximate result of Defendants' conduct, Plaintiffs incurred
4  obligations and expenses for medical care, testing and treatment. As a direct and proximate result
5  of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,
6  diminishment of earning potential, and other pecuniary losses.

7    45.    Defendants' conduct was committed with knowing, reckless, conscious, wanton,
8  willful and deliberate disregard for the value of human life and the rights and safety of
9  consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages
10  so as to punish and deter similar conduct in the future.

11  **V.  <u>DELAYED DISCOVERY</u>**

12    46.    Defendants, through their affirmative misrepresentations and omissions, actively
13  concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and
14  significant risks associated with Saxagliptin.

15    47.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and
16  healthcare providers were unaware, and could not have reasonably known or have learned
17  through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this
18  Complaint, and that those risks were the result of Defendants' acts, omissions, and
19  misrepresentations.

20    48.    No limitations period ought to accrue until such time as Plaintiffs knew or
21  reasonably should have known of some causal connection between the use of Saxagliptin and the
22  harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact
23  that this Complaint is filed well within the statutory period after Plaintiffs knew or should have
24  known the facts alleged herein.

25    49.    Additionally, the accrual and running of any applicable statute of limitations has
26  been tolled by reason of Defendants' fraudulent concealment.

27

28

9

50.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

### I.

### CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

51.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

52.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

53.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

54.     Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

55.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

    a.  Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

    b.  Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

    c.  Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

    d.  Saxagliptin was insufficiently and/or inadequately tested by Defendants.

10

e.   Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

f.   Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

g.   Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

h.   Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i.   Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j.   Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k.   Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

56.   Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

57. A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

58. Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

59. Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

60. Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

61. Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

62. Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

63. As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

64. Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

12

65.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

66.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

        a.     Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

        b.     Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

        c.     Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

        d.     Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

        e.     Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

        f.     Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate

13

warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g. Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h. Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

i. Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

j. Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k. Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

l. Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m. Failing to educate healthcare providers and the public about the safest use of the products;

n. Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o. Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p. Failing to warn Plaintiffs of the danger of adverse medical conditions from the use of Saxagliptin; and

14

q.     Failing to label Saxagliptin to adequately warn Plaintiffs of the serious adverse side effects with the use of Saxagliptin.

67.     Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

68.     Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

69.     Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.     The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

b.     The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

70.     Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants

15

1  continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers,

2  including Plaintiffs.

3      71.   Defendants negligently and recklessly represented to Plaintiffs, physicians, and

4  other persons and professionals Defendants knew would justifiably rely on the representations,

5  that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for

6  their intended purposes.

7      72.   Defendants negligently and recklessly failed to disclose to Plaintiffs and others

8  important safety and efficacy information about Saxagliptin, thereby suppressing material facts

9  while under a duty to disclose such information.

10     73.   Defendants' representations about the safety and adverse side effects of

11  Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was

12  unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

13     74.   Defendants knew or should have known that their representations and omissions

14  were false. Defendants made such false, negligent and reckless representations and omissions

15  with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such

16  representations, leading to the use of Saxagliptin as described.

17     75.   Defendants omitted, suppressed and/or concealed material facts concerning the

18  dangers and risk of injuries associated with the use of Saxagliptin, including serious injury.

19  Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or

20  otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

21     76.   At the time Defendants made these misrepresentations and/or omissions, they

22  knew or should have known that Saxagliptin was unreasonably dangerous and not what

23  Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the

24  consuming public.

25     77.   Defendants' misrepresentations and/or omissions were undertaken with an intent

26  that doctors and patients, including Plaintiffs, rely upon them.

27     78.   Plaintiffs and Plaintiffs' healthcare providers did not know that these

28  representations were false and justifiably relied on and were induced by Defendants'

16

misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

79.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

80.     Had Plaintiffs been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiffs would not have used these products.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## III.

## CAUSE OF ACTION FOR FAILURE TO WARN

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further allege:

81.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

82.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiffs.

83.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

84.     The Saxagliptin manufactured by Defendants reached Plaintiffs without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiffs.

85.     The Plaintiffs were administered the Saxagliptin for its intended purpose.

*COMPLAINT FOR DAMAGES*

86.     Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

87.     Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

88.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

89.     The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

90.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

91.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

92.     Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

93.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

94.     Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

95.     Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

96.     Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

a.     Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

b.     Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

c.     Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

d.     Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

97.     Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

98.     Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

99.     By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

100.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs and the public.

101.    As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

102.    At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

103.    Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

104.    Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

20

105.     Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

106.     The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for its intended use.

107.     The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its intended use and would cause severe injury (or death) to the user. Saxagliptin was unaccompanied by adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

108.     The Saxagliptin used by Plaintiffs was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

109.     As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

## CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

110.     The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

111.     Defendants expressly represented to Plaintiffs, consumers and the medical community that Saxagliptin was:

---

21

*COMPLAINT FOR DAMAGES*

a.   safe;

b.   efficacious;

c.   fit for use in persons with Type 2 diabetes mellitus;

d.   of merchantable quality;

e.   adequately tested;

f.   well tolerated in adequate and well-controlled clinical studies; and

g.   did not increase the risk of experiencing serious, life threatening side effects.

112.   Defendants breached those express warranties as follows:

a.   Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

b.   Defendants misrepresented the risks associated with using Saxagliptin;

c.   Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

d.   Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

e.   Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

113.   Saxagliptin did not conform to Defendants' express representations and warranties.

114.   At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

115.   At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

22

116.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

117.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

118.    At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

119.    Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

120.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

121.    Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

122.    Plaintiffs were foreseeable users of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

123.    Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

23

124.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

125.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

126.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

127.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

128.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

   a.    All available compensatory damages for the described losses with respect to each cause of action;

   b.    Past and future medical expenses, as well as the cost associated with past and future life care;

   c.    Past and future lost wages and loss of earning capacity;

   d.    Past and future emotional distress;

   e.    Consequential damages;

   f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

1    g.   All damages wrongful death damages permitted by law, where

2         applicable;

3    h.   Disgorgement of profits obtained through unjust enrichment;

4    i.   Restitution;

5    j.   Punitive damages with respect to each cause of action;

6    k.   Reasonable attorneys' fees where recoverable;

7    l.   Costs of this action;

8    m.   Pre-judgment and all other interest recoverable; and

9    n.   Such other additional and further relief as Plaintiffs may be entitled to in

10        law or in equity.

11                          **DEMAND FOR JURY TRIAL**

12        Each Plaintiff named herein demands his or her own individual trial by jury on all issues

13   so triable.

14

15   Dated: September 30, 2016          By: _____
                                        Lauren A. Welling (CA Bar No. 291813)
16                                      **SANDERS PHILLIPS GROSSMAN, LLP**
                                        2860 Michelle Drive, Suite 220
17                                      Irvine, CA 90606
                                        Tel: (877) 480-9142
18                                      Fax: (213) 330-0346
                                        lwelling@thesandersfirm.com
19

20

21

22

23

24

25

26

27

28

                                      25
                          *COMPLAINT FOR DAMAGES*

# STATE COURT DOCUMENT B

1   DONALD F. ZIMMER, JR. (Bar No. 112279)
       *fzimmer@kslaw.com*
2   **KING & SPALDING LLP**
     101 Second Street, Suite 2300
3   San Francisco, CA 94105
     Telephone:    +1 415 318 1200
4   Facsimile:     +1 415 318 1300

5   CAMERON J. HOYLER (Bar No. 273234)
       *choyler@kslaw.com*
6   BRIAN PRIESTLEY (Bar No. 301586)
       *bpriestley@kslaw.com*
7   **KING & SPALDING LLP**
     633 W. 5TH Street, Ste. 1700
8   Los Angeles, CA 90071
     Telephone:    +1 213 443 4355
9   Facsimile:     +1 213 443 4310

10  Attorneys for Defendants
     BRISTOL-MYERS SQUIBB COMPANY (special
11  appearance) and ASTRAZENECA
     PHARMACEUTICALS LP (special appearance)

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                  **FOR THE COUNTY OF SAN FRANCISCO**

15

16  MICHAEL MARTIN, an individual, et al.,         Case No. CGC-16-554610
                                                    Reservation Number: 10311212-05
17                  Plaintiffs,

18          v.                                      **NOTICE OF DEFENDANTS BRISTOL-
                                                    MYERS SQUIBB COMPANY AND
19  BRISTOL-MYERS SQUIBB COMPANY;                   ASTRAZENECA PHARMACEUTICALS
     ASTRAZENECA PHARMACEUTICALS                    LP'S MOTION TO SEVER AND QUASH
20  LP; MCKESSON CORPORATION; and                   SERVICE OF PROCESS FOR LACK OF
     DOES 1-50 INCLUSIVE                            PERSONAL JURISDICTION AS TO NON-
21                                                  CALIFORNIA PLAINTIFFS
                    Defendants.
22                                                  Complaint Filed:    September 30, 2016
23                                                  Trial Date:         None

24                                                  Date:               December 12, 2016
                                                    Time:               9:30 AM
25                                                  Dept.:              302
26                                                  Judge:              Hon. Harold E. Kahn

27

28

---

NOTICE OF DEFENDANTS' MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR
LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**10/31/2016**
**Clerk of the Court**
BY:VANESSA WU
**Deputy Clerk**

1       **PLEASE TAKE NOTICE** that on December 12, 2016 at 9:30 am, or as soon thereafter

2 as the matter may be heard, in Department 302 of the Superior Court of the State of California

3 for the County of San Francisco located at 400 McAllister Street, San Francisco, CA 94102,

4 Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals LP (collectively, Defendants)

5 will, and hereby do, move this Court for an Order Granting Defendants' Motion to Sever and

6 Quash Service of Process for Lack of Personal Jurisdiction as to the following non-California

7 Plaintiffs:

8                •   Ronald Letell, resident of Louisiana;

9                •   Donald Carpenter, resident of Ohio;

10                •   Elizabeth McMahon, resident of Pennsylvania;

11                •   John W. Hunt, Sr., resident of Georgia.

12       This motion is based on this Notice of Motion and Motion, the attached Memorandum of

13 Points and Authorities, the attached declaration of Cameron J. Hoyler, the complete files and

14 records in this action, and on such other oral and documentary evidence as the Court may permit

15 before ruling on this motion.

16

17 DATED: October 31, 2016            **KING & SPALDING LLP**

18

19

20              By: _____

21                    Donald F. Zimmer, Jr.
                      Cameron J. Hoyler

22                    Brian Priestley
                      Attorneys for Defendants

23                    BRISTOL-MYERS SQUIBB COMPANY
                      and ASTRAZENECA

24                    PHARMACEUTICALS LP

25

26

27

28

1

NOTICE OF DEFENDANTS' MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR
LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**NOTICE OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

2

# STATE COURT DOCUMENT C

1   DONALD F. ZIMMER, JR. (Bar No. 112279)
      *fzimmer@kslaw.com*
2   **KING & SPALDING LLP**
    101 Second Street, Suite 2300
3   San Francisco, CA  94105
    Telephone:     +1 415 318 1200
4   Facsimile:     +1 415 318 1300

5   CAMERON J. HOYLER (Bar No. 273234)
      *choyler@kslaw.com*
6   BRIAN PRIESTLEY (Bar No. 301586)
      *bpriestley@kslaw.com*
7   **KING & SPALDING LLP**
    633 West 5th St., Suite 1700
8   Los Angeles, CA 90071
    Telephone:     +1 213 443 4355
9   Facsimile:     +1 213 443 4310

10  Attorneys for Defendants
    BRISTOL-MYERS SQUIBB COMPANY (special
11  appearance) and ASTRAZENECA
    PHARMACEUTICALS LP (special appearance)

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                  **FOR THE COUNTY OF SAN FRANCISCO**

15  MICHAEL MARTIN, an individual, et al.,          Case No. CGC-16-554610
                                                    Reservation Number: 10311212-05
16              Plaintiffs,

17          v.                                      **MEMORANDUM OF POINTS AND
                                                    AUTHORITIES IN SUPPORT OF
18  BRISTOL-MYERS SQUIBB COMPANY;                   DEFENDANTS BRISTOL-MYERS
    ASTRAZENECA PHARMACEUTICALS                     SQUIBB COMPANY AND
19  LP; MCKESSON CORPORATION; and                   ASTRAZENECA PHARMACEUTICALS
    DOES 1-50 INCLUSIVE                             LP'S MOTION TO SEVER AND QUASH
20                                                  SERVICE OF PROCESS FOR LACK OF
                Defendants.                         PERSONAL JURISDICTION AS TO
21                                                  NON-CALIFORNIA PLAINTIFFS

22

23                                                  Complaint Filed:   September 30, 2016
                                                    Trial Date:        None
24

25                                                  Date:              December 12, 2016
                                                    Time:              9:30 AM
26                                                  Dept.:             302
                                                    Judge:             Hon. Harold E. Kahn
27

28
─────────────────────────────────────────────────────────────────────
    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER
      AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO
                            NON-CALIFORNIA PLAINTIFFS

ELECTRONICALLY
**FILED**
*Superior Court of California,
County of San Francisco*
**10/31/2016**
Clerk of the Court
BY:VANESSA WU
            **Deputy Clerk**

# TABLE OF CONTENTS

I.  INTRODUCTION ..................................................................................................1

II.  RELEVANT BACKGROUND .............................................................................2

III.  ARGUMENT ........................................................................................................3

    A.  Plaintiffs Have The Initial Burden to Establish Facts Justifying Personal Jurisdiction ..................................................................................4

    B.  The Supreme Court's Decisions in *Goodyear* and *Daimler* Foreclose General Jurisdiction Over BMS and AstraZeneca Because They Are Not At Home In California.......................................4

    C.  This Court Also Lacks Specific Jurisdiction Over the Out-of-State Plaintiffs' Claims .............................................................................5

        1.  Defendants did not avail themselves of the benefits of California law for sales of Onglyza to out-of-state plaintiffs .................6

        2.  The out-of-state plaintiffs' claims do not arise out of BMS and AstraZeneca's California contacts ......................................7

        3.  Non-California plaintiffs cannot establish personal jurisdiction over BMS and AstraZeneca by naming a California corporation as a co-defendant or by joining claims with a California plaintiff ............................................11

        4.  Allowing the non-California plaintiffs to obtain specific jurisdiction over Defendants offends traditional notions of fair play and substantial justice ............................................13

IV.  CONCLUSION....................................................................................................14

i

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anglo Irish Bank Corp. v. Super. Ct.*
    (2008) 165 Cal.App.4th 969 ............................................................................ 11

5

*Asahi Metal Industry Co. v. Superior Court*
    (1987) 480 U.S. 102 (four-vote opn. of O'Connor, J.) ...................................... 7

6

7

*In re Auto. Antitrust Cases I & II*
    (2005) 135 Cal.App.4th 100 .......................................................................... 11

8

*Bristol-Myers Squibb Company v. Superior*
    (2016) 1 Cal.5th 783 ....................................................... 1, 2, 7, 8, 9, 10

9

10

*Burger King Corp. v. Rudzewicz*
    (1985) 471 U.S. 462 .................................................................................. 6, 7

11

*Capital Equip., Inc. v. CNH Am., LLC*
    (E.D. Ark. 2005) 394 F. Supp. 2d 1054 ...................................................... 12

12

13

*Daimler AG v. Bauman*
    (2014) 134 S. Ct. 746 (*Daimler*) .............................. 1, 3, 4, 5, 7, 8, 10

14

*David v. Medtronic, Inc.*
    (2015) 237 Cal.App.4th 734 ............................................................................ 4

15

16

*Genuine Parts Co. v. Cepec*
    (2016) 137 A.3d 123 ......................................................................................... 5

17

*Goodyear Dunlop Tires Operations, S.A. v. Brown*
    (2011) 131 S. Ct. 2846 (*Goodyear*) ...................... 3, 4, 5, 7, 8, 9, 10

18

19

*Hanson v. Denckla*
    (1958) 357 U.S. 235 ................................................................................. 7, 10

20

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
    (1984) 466 U.S. 408 .................................................................................. 5, 6

21

22

*Hertz Corp. v. Friend*
    (2010) 559 U.S. 77 ......................................................................................... 13

23

*Hesse v. Best Western Int'l, Inc.*
    (1995) 32 Cal.App.4th 404 ............................................................................ 4

24

25

*Int'l Shoe Co. v. State of Washington*
    (1945) 326 U.S. 310 ............................................................................. 5, 7, 13

26

*J. McIntyre Machinery, Ltd. v. Nicastro*
    (2011) 564 U.S. 873 (plur. opn. of Kennedy, J.) ...................... 7, 8, 9, 13

27

28

ii

*Kulko v. Superior Court*
    (1978) 436 U.S. 84 ...................................................................................... 7

*Phillips Exeter Acad. v. Howard Phillips Fund*
    (1st Cir. 1999) 196 F.3d 284 ................................................................... 11

*Remick v. Manfredy*
    (3d Cir. 2001) 238 F.3d 248 .................................................................... 11

*Seiferth v. Helicopteros Atuneros, Inc.*
    (5th Cir. 2006) 472 F.3d 266 .................................................................. 11

*Shaffer v. Heitner*
    (1977) 433 U.S. 186 ................................................................................... 6

*Shafik v. Curran*
    (M.D. Pa. June 17, 2010) No. 09-2469, 2010 WL 2510194 ................. 12

*Snowney v. Harrah's Entm't, Inc.*
    (2005) 35 Cal.4th 1054 ........................................................................ 4, 10

*In re Testosterone Replacement Therapy Products Liability Litigation*
    *Coordinated Pretrial Proceedings*
    (N.D. Ill. 2016) 164 F. Supp. 3d 1040 .................................................. 12

*Vons Companies, Inc. v. Seabest Foods, Inc.*
    (1996) 14 Cal.4th 434 (*Vons*) ............................................................. 6, 10

*Walden v. Fiore*
    (2014) 134 S.Ct. 1115 ................................................................ 6, 8, 12, 13

*World-Wide Volkswagen Corp. v. Woodson*
    (1980) 444 U.S. 286 .................................................................. 6, 7, 10, 13

**Statutes**

Code Civ. Proc., Code § 378 ........................................................................ 4

Code Civ. Proc., § 410.10 ............................................................................ 4

Code Civ. Proc., §418.10(a)(1) .................................................................... 4

**Other Authorities**

U.S. Constit. Amend. XIV ........................................................................... 3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER
AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO
NON-CALIFORNIA PLAINTIFFS

## I.     __INTRODUCTION__

Four of the five plaintiffs in this action reside outside of California. These non-resident plaintiffs—who have no connection to California—have misjoined their claims with a single California resident, and named a single California corporation (McKesson) as a co-defendant to resist jurisdictional challenges and improperly bootstrap their claims into a California court. This Court lacks personal jurisdiction because AstraZeneca Pharmaceuticals LP (AstraZeneca) and Bristol-Myers Squibb Company (BMS) are both out-of-state defendants and plaintiffs' claims do not arise from Defendants' conduct within California.

Plaintiffs are likely to rely on *Bristol-Myers Squibb Company v. Superior Court* (2016) 1 Cal.5th 783 (hereafter, *Bristol-Myers*) in opposing this motion. But *Bristol-Myers* conflicts with recent and established United States Supreme Court precedent on personal jurisdiction, and a petition for writ of certiorari is being sought. If the Court disagrees that *Bristol-Myers* is in conflict with United States Supreme Court precedent and determines that it controls here, Defendants request that the Court stay this matter until the United States Supreme Court decides whether to grant certiorari to review *Bristol-Myers*.

This Court lacks *general* personal jurisdiction over BMS and AstraZeneca because neither defendant is "at home" in California. In *Daimler AG v. Bauman*, the Supreme Court of the United States held that continuous and systematic contacts with a state are not sufficient for general jurisdiction. Rather, general jurisdiction is proper over a company only in the state where that company is "at home." Absent extraordinary circumstances not present here, a company is "at home" only where it is incorporated or maintains its principal place of business. BMS is a Delaware corporation with its principal place of business in New York, New York. AstraZeneca is a Delaware limited partnership with its principal place of business in Wilmington, Delaware. Neither BMS nor AstraZeneca has ever been incorporated in California or maintained its principal place of business here.

This Court also lacks *specific* jurisdiction over BMS and AstraZeneca because the four out-of-state plaintiffs' claims have no connection to any of Defendants' activities within California. Those plaintiffs do not allege that they were prescribed the drugs at issue (Onglyza

1

1   and Kombiglyze) in California, that they ingested either drug in California, or that they suffered

2   any injury in California.  Plaintiffs appear to believe jurisdiction is proper simply because BMS

3   and AstraZeneca conduct business in California.  Notwithstanding the recent decision in

4   *Bristol-Myers*, courts have overwhelmingly rejected this result, as a plaintiff must show that his

5   or her claim bears a substantial connection and is closely linked to the defendant's in-state

6   activities.  There is no such connection here.  Nor may the out-of-state plaintiffs create

7   jurisdiction over BMS and AstraZeneca by naming McKesson as a co-defendant, or by

8   including a token California resident as a co-plaintiff.  Personal jurisdiction must be established

9   for <u>each</u> defendant and for the claims of <u>each</u> plaintiff.

10         When the plaintiff, the defendant, the injury, and the alleged conduct giving rise to it are

11   all outside of California, a California court has no jurisdiction over the claim.

12   **II.**    **RELEVANT BACKGROUND**

13         The *Martin* Complaint (Complaint), filed on September 30, 2016, includes claims by

14   four plaintiffs who do not reside in California.  These four plaintiffs' claims arose in four

15   different states (Louisiana, Ohio, Pennsylvania, and Georgia) at different times and under

16   different circumstances.  (Complaint, ¶¶ 6-9, attached as Exhibit 1 to the Declaration of

17   Cameron J. Hoyler (Hoyler Decl.).)  The Complaint alleges that the plaintiffs were damaged as

18   a result of alleged treatment with Onglyza and Kombiglyze, drugs that are FDA-approved to

19   treat type-2 diabetes mellitus.  While these plaintiffs filed all their claims in California, none of

20   them alleges any connection to the state.

21         The Complaint acknowledges that "Defendant Bristol-Myers Squibb Company ("BMS")

22   is a Delaware corporation with its principal place of business at 345 Park Ave., New York,

23   NY," and that "Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited

24   partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE."

25   (Complaint, ¶¶ 11–12, Ex. 1 to Hoyler Decl.)[1]  Plaintiffs also name McKesson Corporation, a

26

27   [1] AstraZeneca notes that none of its limited partners are domiciled in California, and the
Complaint makes no allegation otherwise.

28

1  Delaware corporation with its principal place of business in San Francisco, CA as a defendant.

2  (*Id*. at ¶ 13.)

3       In purporting to establish personal jurisdiction over BMS and AstraZeneca, the

4  Complaint claims that BMS and AstraZeneca "regularly and continuously did business within

5  this judicial district including manufacturing, labeling, packaging, marketing, advertising,

6  distributing and selling [Onglyza and Kombiglyze]." (*Id*. at ¶¶ 11–12.) Plaintiffs assert that

7  BMS and AstraZeneca are "authorized to conduct business in the State of California" and

8  "conducted such business within the state including the performance of acts that caused or

9  contributed to the harm giving rise to this action." (*Id*. at ¶ 18.) They also allege that BMS and

10 AstraZeneca "maintained systematic and continuous contacts in this judicial district, regularly

11 transacted business within this judicial district, . . . and regularly availed themselves of the

12 benefits of this judicial district." (*Id*. at ¶ 19.) Further, the Complaint alleges that BMS and

13 AstraZeneca "received substantial financial benefits and profits as a result of designing,

14 manufacturing, marketing, advertising, selling and distributing [Onglyza and Kombiglyze] in

15 this district and throughout the United States." (*Id*. at ¶ 19.)

16      The alleged facts do not establish that BMS and AstraZeneca are "at home" in California

17 for purposes of *Goodyear* and *Daimler*. Nor do these facts establish a substantial connection

18 with the out-of-state plaintiffs sufficient to confer specific jurisdiction. With respect to those

19 four non-resident plaintiffs, the Complaint does not allege that physicians prescribed Onglyza or

20 Kombiglyze in California to them or that those plaintiffs ingested the drugs or were injured by

21 them in California.

22 **III.   ARGUMENT**

23      The Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of

24 life, liberty, or property, without due process of law." (U.S. Const. amend. XIV.) "A state

25 court's assertion of jurisdiction exposes defendants to the State's coercive power, and is

26 therefore subject to review for compatibility with the" Due Process Clause, which "sets the

27 outer boundaries of a state tribunal's authority to proceed against a defendant." (*Goodyear*

28 *Dunlop Tires Operations, S.A. v. Brown* (2011) 131 S. Ct. 2846, 2850, 2853 (*Goodyear*).)

3

1  California permits its courts to exercise jurisdiction "on any basis not inconsistent with the

2  Constitution of this state or of the United States."  (Code Civ. Proc., § 410.10.)

3       The U.S. Supreme Court has identified two categories of personal jurisdiction: "general

4  or all-purpose jurisdiction, and specific or conduct-linked jurisdiction."  (*Daimler AG v.*

5  *Bauman* (2014) 134 S. Ct. 746, 751 (*Daimler*).)  Defendants request that the Court sever the

6  plaintiffs' individual claims.  The four non-resident plaintiffs' claims are improperly joined with

7  a lone California resident, as their claims bear no relationship to each other.[2]

8       **A.    Plaintiffs Have The Initial Burden to Establish Facts Justifying Personal**
         **Jurisdiction**

9

10       BMS and AstraZeneca move to quash service of process with respect to the claims of

11  the out-of-state plaintiffs.  (Code Civ. Proc., §418.10(a)(1).)  "When a defendant moves to

12  quash service of process for lack of specific jurisdiction, the plaintiff has the initial burden of

13  demonstrating facts justifying the exercise of jurisdiction."  (*Snowney v. Harrah's Entm't, Inc.*

14  (2005) 35 Cal.4th 1054, 1062, internal quotation marks omitted.)  Only if a plaintiff succeeds in

15  making that initial showing does the burden shift to the defendant to "demonstrate[] that the

16  exercise of jurisdiction would be unreasonable."  (*Id.*)

17       **B.    The Supreme Court's Decisions in** *Goodyear* **and** *Daimler* **Foreclose**
         **General Jurisdiction Over BMS and AstraZeneca Because They Are Not**
         **At Home In California**

18

19       Before *Goodyear* and *Daimler*, California courts held that a company was subject to

20  general jurisdiction in California so long as it "intentionally avail[s] itself of benefits within

21  California."  (*Hesse v. Best Western Int'l, Inc.* (1995) 32 Cal.App.4th 404, 410.)  But that

22  "sprawling view of general jurisdiction" is no longer the law.  (*Goodyear*, *supra*, 131 S. Ct. at

23

_____

24  [2] Permissive joinder is permitted when plaintiffs' claims "aris[e] out of the same transaction,

25  occurrence, or series of transactions or occurrences" and when a common question of law or fact
    applies to each.  (Civ. Proc. Code § 378.)  Where plaintiffs have been improperly joined under

26  section 378, the court may order a severance in the interests of justice and to prevent undue
    prejudice to defendants.  (*Id.* at §§ 379.5, 1048; see also *David v. Medtronic, Inc.* (2015) 237

27  Cal.App.4th 734, 740–741 [upholding severance where "the only common factor is that plaintiffs
    each had [the same medical procedure].)

28

p. 2856.)  In *Goodyear* and *Daimler*, the U.S. Supreme Court held that a corporation normally is subject to general jurisdiction only in the states where it is incorporated or maintains its principal place of business.  It is not enough that a corporation conducts business—even substantial business—within a given state.  Rather, the corporation's contacts with the state must rise to a level that renders it essentially "at home" there.  (*Daimler, supra*, 134 S. Ct. at p. 761.)  BMS and AstraZeneca are not incorporated in California, neither maintains its principal place of business here, and plaintiffs do not contend otherwise.  (Complaint, ¶¶ 21–22, Ex. 1 to Hoyler Decl.)  After *Goodyear* and *Daimler*, that is enough to foreclose general jurisdiction.

In short, while BMS and AstraZeneca conduct business in all fifty states, a company "that operates in many places can scarcely be deemed at home in all of them."  (*Daimler*, *supra*, 134 S. Ct. at p. 762 n.20; see also *Genuine Parts Co. v. Cepec* (2016) 137 A.3d 123, 143–144 ["*Daimler* rejected the notion that a corporation that does business in many states can be subject to general jurisdiction in all of them"].)  If simply conducting business within a state were enough for general jurisdiction, then a plaintiff could sue "in every State in which a corporation engages in a substantial, continuous, and systematic course of business."  (*Daimler*, *supra*, 134 S. Ct. at p. 761.)  But the *Daimler* Court rejected that result and its underlying theory as "unacceptably grasping."  (*Ibid.*)

## C.    This Court Also Lacks Specific Jurisdiction Over the Out-of-State Plaintiffs' Claims

The Due Process Clause also prohibits this Court from exercising *specific* jurisdiction over the four out-of-state plaintiffs' claims.  "'[T]he commission of some single or occasional acts of the corporate agent in a state' may sometimes be enough to subject the corporation to jurisdiction in that State's tribunals with respect to suits relating to that in-state activity."  (*Daimler*, *supra*, 134 S. Ct. at p. 754, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 318.)  But this type of adjudicatory authority—called specific jurisdiction—is appropriate only when "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'"  (*Daimler*, *supra*, 134 S. Ct. at p. 754, quoting *Helicopteros Nacionales de Colombia,*

5

1   *S.A. v. Hall* (1984) 466 U.S. 408, 414 n.8.)

2       "Due process limits on the State's adjudicative authority principally protect the liberty of

3   the nonresident defendant—not the convenience of plaintiffs or third parties."  (*Walden v. Fiore*

4   (2014) 134 S.Ct. 1115, 1122.)  These limits are necessary to "ensure that the States through

5   their courts, do not reach out beyond the limits imposed on them by their status as coequal

6   sovereigns in a federal system" (*World–Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S.

7   286, 292.)  "'[T]he Framers . . . intended that the States retain many essential attributes of

8   sovereignty, including, in particular, the sovereign power to try causes in their courts.  The

9   sovereignty of each State, in turn, implied a limitation on the sovereignty of all of its sister

10  States.'"  (*Id*. at p. 293.)  The United States Supreme Court has "never accepted the proposition

11  that state lines are irrelevant for jurisdictional purposes, nor could we, and remain faithful to the

12  principles of interstate federalism embodied in the Constitution."  (*Ibid*.)

13      Thus, "'the relationship among the defendant, the forum, and the litigation' is the

14  essential foundation" of personal jurisdiction.  (*Helicopteros*, *supra*, 466 U.S. at p. 414, quoting

15  *Shaffer v. Heitner* (1977) 433 U.S. 186, 204.)  A court may exercise specific jurisdiction over a

16  nonresident defendant only if:

17          (1) the defendant purposefully avails him/herself of forum benefits;

18          (2) the controversy "is related to or 'arises out of defendant's contacts with the forum'";

19              and

20          (3) the assertion of personal jurisdiction comports with "fair play and substantial

21              justice."

22  (*Vons*, *supra*, 14 Cal.4th at pp. 446–448, citing *Burger King Corp. v. Rudzewicz* (1985) 471

23  U.S. 462, 472–473, quoting *Helicopteros*, *supra*, 466 U.S. at p. 414, *Burger King*, *supra*, 471

24  U.S. at p. 476.)  The out-of-state plaintiffs cannot satisfy any of these three criteria.

25          **1.    Defendants did not avail themselves of the benefits of California law for
                    sales of Onglyza to out-of-state plaintiffs**

26

27      The United States Supreme Court has long and often held that "it is essential in each case

28  that there be some act by which the defendant purposefully avails itself of the privilege of

---

6

conducting activities within the forum State, thus invoking the benefits and protections of its laws." (*Hanson v. Denckla* (1958) 357 U.S. 235, 253, emphasis added.)[3]

Here, however, by promoting Onglyza to prescribing doctors who served patients in California, or by selling Onglyza to patients in California, Defendants did <u>not</u> thereby invoke the benefits and protections of California law for their sales of Onglyza outside California to out-of-state plaintiffs. Nor did Defendants' activities in California "give rise to the liabilities sued on" by the out-of-state plaintiffs. (See *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 317 ["when the activities of the corporation there have not only been continuous and systematic, but also give rise to the liabilities sued on"]; *Daimler, supra*, 134 S.Ct. at p. 761 [explaining that *International Shoe* was describing specific jurisdiction].) There is, therefore, no specific jurisdiction in California over these claims arising out-of-state.

### 2. The out-of-state plaintiffs' claims do not arise out of BMS and AstraZeneca's California contacts

This Court also lacks specific jurisdiction over the four non-California plaintiffs' claims because they do not arise out of BMS and AstraZeneca's contacts with California. The non-residents' claims have no connection to California or Defendants' contacts with the forum. Litigation over these claims depends on plaintiffs' ability to prove medical and legal causation linking their physicians' prescribing decisions to their claimed damages—all of which occurred outside California.

Plaintiffs are likely to rely on the California Supreme Court's recent decision in *Bristol-Myers*. But *Bristol-Myers* is flawed, and the defendants in that matter are seeking United States Supreme Court review. In *Bristol-Myers*, the California Supreme Court overstepped its jurisdictional bounds, slighting the sovereignty of sister States by anointing California as the arbiter of the nation's tort plaintiffs, including those whose claims did not arise here, as they

---

[3] See also *Goodyear, supra*, 564 U.S. at p. 924; *J. McIntyre Machinery, Ltd. v. Nicastro* (2011) 564 U.S. 873, 877 (plur. opn. of Kennedy, J.); *Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 109 (four-vote opn. of O'Connor, J.); *Burger King, supra*, 471 U.S. at pp. 474-475; *World-Wide Volkswagen, supra*, 444 U.S. at pp. 297–298; *Kulko v. Superior Court* (1978) 436 U.S. 84, 93–94.

1  undisputedly were not prescribed the drug (Plavix) in California, did not ingest it in California,

2  and suffered no injury in California.  (See *Bristol-Myers*, *supra*, at pp. 817-819 (dis. opn. of

3  Werdegar, J.).)  The California Supreme Court reached this conclusion by minimizing—if not

4  erasing—the relatedness requirement for specific jurisdiction, thereby undermining "an

5  essential distinction between specific and general jurisdiction."  (*Id*. at p. 816 (dis. opn. of

6  Werdegar, J.).)  In 2014, eight Justices of the United States Supreme Court reversed the

7  overreaching exercise of general jurisdiction in *Daimler*, and a unanimous Supreme Court

8  reversed the overreaching exercise of specific jurisdiction in *Walden*, *supra*, 134 S.Ct. 1115.

9  *Bristol-Myers* is, therefore, in direct conflict with established United States Supreme Court

10  authority.  And the United States Supreme Court has previously admonished lower courts not to

11  "elide[] the essential difference between case-specific and all-purpose (general) jurisdiction."

12  (*Goodyear*, *supra*, 564 U.S. at p. 927.)

13      Specific jurisdiction requires a substantial connection between the plaintiff's claim—"the

14  litigation"—and the defendant's forum contacts.  (See *Walden*, *supra*, 134 S.Ct. at p. 1123

15  ["jurisdictional inquiry [is] focused on the relationship between the defendant, the forum, and the

16  litigation"], internal quotations and citations omitted.)  As discussed in the *Bristol-Myers* dissent,

17  several decisions of the United States Supreme Court have variously described this requirement

18  as: in-state activities that give rise to the liabilities or obligations sued on; a controversy that

19  arises out of or relates to the defendant's forum contacts; an affiliation between the forum and

20  the underlying controversy, principally, activity or an occurrence that takes place in the forum

21  State and is therefore subject to the State's regulation. (*Bristol-Myers*, *supra*, at 816-819

22  (dis. opn. of Werdegar, J.).)  Those formulations of the test are not met here.

23      The *Bristol-Myers* dissent also noted that where the United States Supreme Court has

24  found specific jurisdiction, there has been a direct link between the defendant's forum activities

25  and the litigation.  (*Ibid.*)  In fact, in *Daimler*, the high court described specific jurisdiction as

26  "conduct-linked jurisdiction."  (*Daimler*, *supra*, 134 S.Ct. at p. 751; see also *Walden*, *supra*, 134

27  S.Ct. 1115, 1121 [unanimous Supreme Court  holding that "'[s]pecific or 'case-linked'

28  jurisdiction depends on an affiliation between the forum and the underlying controversy' (i.e., an

8

1    'activity or an occurrence that takes place in the forum state and is therefore subject to the State's

2    regulation'"]], quoting *Goodyear*, *supra*, 564 U.S. at p. 919.)  Here, there is no link between

3    sales of Onglyza in California or clinical trial sites in California and the out-of-state plaintiffs'

4    claims.  Instead, the litigation regarding those claims arises from activities <u>outside</u> California:

5    prescription, sale, ingestion, and injury.

6    The United States Supreme Court's decision in *Goodyear* shows that sales in the forum

7    of some products made by the defendant do not subject it to specific jurisdiction for claims as to

8    products that were sold and allegedly caused injury elsewhere.  North Carolina plaintiffs filed

9    suit at home against three foreign subsidiaries of The Goodyear Tire and Rubber Company,

10   alleging that a defective tire made by the subsidiary in Turkey caused a fatal bus accident in

11   France. (*Goodyear*, *supra*, 564 U.S. at p. 918.)  The foreign subsidiaries did not themselves

12   promote or sell their tires in North Carolina. (*Id.* at p. 921.)  But tens of thousands of their tires

13   (albeit a small percentage of total production) were distributed in North Carolina through a

14   "highly-organized distribution process" by other Goodyear affiliates. (*Id.* at pp. 921–922.)  The

15   particular type of tire involved in the accident was not sold in North Carolina, but the very tire

16   involved in the accident conformed to U.S. government standards and bore markings required for

17   sale in the U.S. (*Ibid.*)

18   The United States Supreme Court's *Goodyear* decision explained that North Carolina

19   lacked specific jurisdiction for reasons that are indistinguishable here:

20   
21   Because the episode-in-suit, the bus accident, occurred in
     France, and the tire alleged to have caused the accident
     was manufactured and sold abroad, North Carolina courts lacked
22   specific jurisdiction to adjudicate the controversy.

23   (*Goodyear*, *supra*, 564 U.S. at p. 919.)  The application of this analysis to the present case is

24   obvious.  Applying *Goodyear*, there is no specific jurisdiction in California over the claims by

25   the out-of-state plaintiffs here.

26   In *Bristol-Myers*, the majority chose not to focus on United States Supreme Court

27   precedents to determine if the nonresident plaintiffs' claims had the requisite connection to

28   defendant's California contacts.  Instead, the majority erroneously relied on a sliding-scale test

9

1   that the California Supreme Court adopted 20 years ago in *Vons Companies, Inc. v. Seabest*

2   *Foods, Inc.* (1996) 14 Cal.4th 434, 452, 455 (*Vons*) and later repeated in another pre-*Daimler*

3   case, *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1068. (See *Bristol-*

4   *Myers*, *supra*, at 799-804.)  According to that test, the greater the defendant's contacts with the

5   forum, the weaker the connection required between those contacts and the plaintiff's claim.

6   (*Ibid.*)  Thus, despite a clear and contrary holding by the United States Supreme Court in

7   *Daimler*, the *Bristol-Myers* majority appears to have found specific jurisdiction based on the

8   defendant's contacts with California—its sales and marketing to California residents, its research

9   and development of other products here—even though such contacts did not encompass

10   marketing or sales to plaintiffs out-of-state.

11          The sliding-scale test used in *Bristol-Myers* effectively revives the expansive view of

12   general jurisdiction rejected in *Daimler*.  *Vons*, which adopted the sliding-scale test,

13   contemplated the now-rejected expansive view of general jurisdiction—met if the defendant had

14   substantial, continuous, and systematic contacts with the forum. (*Vons*, *supra*, 14 Cal.4th at

15   p. 445.)  But in *Daimler*, eight Justices of the United States Supreme Court expressly rejected

16   the general-jurisdiction formulation of "'substantial, continuous, and systematic'" as

17   "unacceptably grasping." (*Daimler*, *supra*, 571 U.S. ___ [134 S.Ct. at pp. 760–761].)  By

18   relying on *Vons*' sliding scale, the *Bristol-Myers* majority failed to test for the requisite specific

19   connection between the nonresident plaintiffs' claims and the defendant's California conduct,

20   instead "[c]onfusing or blending general and specific jurisdictional inquiries, . . . ." (See

21   *Goodyear*, *supra*, 564 U.S. at pp. 919–920.)

22          Specific jurisdiction must not be morphed into "unacceptably grasping" jurisdiction as a

23   vehicle for one State to seize jurisdiction over a host of individual personal-injury claims

24   gathered from across the country.  Rather, limits on jurisdiction "ensure that the States through

25   their courts, do not reach out beyond the limits imposed on them by their status as coequal

26   sovereigns in a federal system." (*World-Wide Volkswagen*, *supra*, 444 U.S. at pp. 292–294.)

27   "They are a consequence of territorial limitations on the power of the respective States."

28   (*Hanson v. Denckla*, *supra*, 357 U.S. at pp. 250–251.)  The courts of California are not national

1   tribunals, and California's jurisdiction does not extend to extraterritorial claims brought by out-

2   of-state plaintiffs against out-of-state Defendants over injuries that occurred out-of-state.

3       **3.   Non-California plaintiffs cannot establish personal jurisdiction over BMS and AstraZeneca by naming a California corporation as a co-defendant or by joining claims with a California plaintiff**

4

5           The four out-of-state plaintiffs may not establish personal jurisdiction over BMS and

6   AstraZeneca by naming McKesson Corporation—a California-based company and alleged

7   distributor of the drug at issue—as a co-defendant.  "Personal jurisdiction must be based on

8   forum-related acts that were personally committed by each nonresident defendant.  The

9   purposes and acts of one party—even an alleged co-conspirator—cannot be imputed to a third

10  party to establish jurisdiction over the third party defendant."  (*In re Auto. Antitrust Cases I & II*

11  (2005) 135 Cal.App.4th 100, 113.)  Instead, "[t]o prevail on their jurisdictional claims, plaintiffs

12  must present evidence to support a finding that California may exercise jurisdiction over *these*

13  *particular defendants*."  (*Id.* at pp. 117–118.)  "Jurisdictional facts shown must pertain to each

14  nonresident defendant individually, even in an alleged conspiracy."  (*Id.* at p. 118; see also

15  *Anglo Irish Bank Corp. v. Super. Ct.* (2008) 165 Cal.App.4th 969, 978, internal quotation

16  omitted ["Each defendant's contacts with the forum State must be assessed individually."].)

17          The non-resident plaintiffs also cannot bootstrap their way to personal jurisdiction by

18  combining their claims with those of a single California resident.  If such a minimal anchor

19  were enough, plaintiffs' attorneys could assemble a nationwide mass action in any single

20  jurisdiction.  But that result would make specific jurisdiction available in any state where a

21  company conducts substantial business, effectively recycling the old, rejected standard for

22  general jurisdiction as the new standard for specific jurisdiction.  As three federal courts of

23  appeal have held, specific jurisdiction must be analyzed separately for each claim.  "Permitting

24  the legitimate exercise of specific jurisdiction over one claim to justify the exercise of specific

25  jurisdiction over a different claim that does not arise out of or relate to the defendant's forum

26  contacts would violate the Due Process Clause." (*Seiferth v. Helicopteros Atuneros, Inc.* (5th

27  Cir. 2006) 472 F.3d 266, 275; see also *Remick v. Manfredy* (3d Cir. 2001) 238 F.3d 248, 255

28  [same]; *Phillips Exeter Acad. v. Howard Phillips Fund* (1st Cir. 1999) 196 F.3d 284, 289

1  [same].)

2      Thus, in multi-plaintiff suits—and especially where, as here, the joinder of plaintiffs'

3  claims is dubious at best—a separate specific jurisdiction analysis for each plaintiff's claim is

4  imperative.  (See *In re Testosterone Replacement Therapy Products Liability Litigation*

5  *Coordinated Pretrial Proceedings* (N.D. Ill. 2016) 164 F. Supp. 3d 1040, 1049 [dismissing

6  Illinois resident's claim, filed originally in Missouri state court, because "if a Missouri court

7  asserted jurisdiction over defendants for [the Illinois resident's] claims, defendants would be

8  haled into Missouri to defend against allegations that are unrelated to any activities they (or

9  plaintiff) conducted within the state"]; see also *Capital Equip., Inc. v. CNH Am., LLC* (E.D.

10 Ark. 2005) 394 F. Supp. 2d 1054, 1057 "[J]urisdictional issues are severable in that personal

11 jurisdiction must be established for the claims of each Plaintiff."; *Shafik v. Curran* (M.D. Pa.

12 June 17, 2010) No. 09-2469, 2010 WL 2510194, *4 [courts must "independently

13 assess . . . whether specific jurisdiction exists as to the claims raised by each Plaintiff . . ."].)

14      The decision in the *Testosterone Replacement Therapy* MDL is particularly instructive.

15 There, as here, a group of unrelated plaintiffs sued pharmaceutical manufacturers jointly in

16 Missouri. (*In re Testosterone, supra*, at 1042–1043.)  The case was removed and eventually

17 transferred to an MDL proceeding in the Northern District of Illinois, which dismissed the

18 claims of an Illinois plaintiff within the transferred Missouri case for lack of personal

19 jurisdiction.  The MDL court observed that "nothing in *Walden* indicates that a court may

20 exercise personal jurisdiction over a claim against defendants unrelated to their conduct within

21 the forum state."  (*Id*. at 1048.)  In fact, *Walden* barred the exercise of specific jurisdiction: the

22 claims of the Illinois plaintiff did not "relate to" the defendants' Missouri contacts, as required

23 by *Walden*, because "all of the factual allegations necessary to establish his claims [were] based

24 on defendants' conduct outside Missouri." (*Ibid*.)  The court also rejected the notion of a "kind

25 of 'pendent' or 'supplemental' theory of specific personal jurisdiction" that would allow it to

26 adjudicate the out-of-state plaintiff's claims with an in-state plaintiff's claims, citing the

27 numerous courts that had held that "personal jurisdiction over the defendant must be established

28 as to each claim asserted."  (*Ibid*.)

12

1    *Testosterone Replacement Therapy*'s logic is fully applicable here. The fact that claims

2    of the out-of-state plaintiffs and the California plaintiffs' claims involve the same drug does not

3    relieve each of the out-of-state plaintiffs of their burden of separately establishing specific

4    personal jurisdiction in California for the claims arising out of their own alleged injuries.

5        **4.  Allowing the non-California plaintiffs to obtain specific jurisdiction over
     Defendants offends traditional notions of fair play and substantial justice**

6          Neither Onglyza nor Kombiglyze were developed in California.  The litigation over the

7    non-resident plaintiffs' claims depends entirely on extraterritorial conduct: these plaintiffs

8    sought treatment for type-2 diabetes outside of California, were prescribed the drugs outside of

9    California, ingested them outside of California, and allegedly were injured outside of California.

10   Exercising specific jurisdiction over the non-residents' claims would offend traditional notions

11   of fair play and substantial justice, contravening United States Supreme Court precedent.

12   (*International Shoe*, *supra*, 326 U.S. at p. 316.)

13         The United States Supreme Court has long recognized that specific jurisdiction "gives a

14   degree of predictability to the legal system that allows potential defendants to structure their

15   primary conduct with some minimum assurance as to where that conduct will and will not

16   render them liable to suit." (*World-Wide Volkswagen*, *supra*, 444 U.S. at p. 297.)  Companies

17   have a "due process right not to be subjected to judgment in [the] courts" of a State other than

18   their home State, unless they have affirmatively established contacts with the State itself that

19   make them subject to specific jurisdiction there.  (*J. McIntyre Machinery, Ltd. v. Nicastro*

20   (2011) 564 U.S. 873, 881; see also *Walden*, *supra*, 134 S. Ct. at p. 1123.)  This "[p]redictability

21   is valuable to corporations making business and investment decisions." (*Hertz Corp. v. Friend*

22   (2010) 559 U.S. 77, 94.)

23         Fundamental fairness requires that states "do not reach out beyond the limits imposed on

24   them by their status as coequal sovereigns in a federal system" (*World–Wide Volkswagen*,

25   *supra*, 444 U.S. at p. 292.)  Appointing California as the arbiter of all non-residents' claims,

26   even those with non-existent connections to the state, would (1) usurp the sovereignty of the

27   sister States from where these plaintiffs come and in which their claims arose, (2) upset the

28

---

13

1  Framers' design of a federal system comprised of coequal sovereigns, and (3) encourage forum

2  shopping and force jurors in California to serve as a captive audience to hear and decide cases

3  arising from foreign states and affecting strangers to their community.  Such a result is unfair.

4  **IV.   <u>CONCLUSION</u>**

5       The motion to sever and quash should be granted, and the four out-of-state plaintiffs'

6  claims against BMS and AstraZeneca should be dismissed for lack of personal jurisdiction.

7  DATED: October 31, 2016          KING & SPALDING LLP

8

9                    By: _____

10                         Donald F. Zimmer, Jr.
                          Cameron J. Hoyler
11                        Brian Priestley
                          Attorneys for Defendants
12                        ASTRAZENECA PHARMACEUTICALS LP
                          BRISTOL-MYERS SQUIBB COMPANY

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER
AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO
NON-CALIFORNIA PLAINTIFFS

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC-16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒  **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒  **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS

# STATE COURT DOCUMENT D

1   DONALD F. ZIMMER, JR. (State Bar No. 112279)
    *fzimmer@kslaw.com*
2   **KING & SPALDING LLP**
    101 Second Street, Suite 2300
3   San Francisco, CA  94105
    Telephone:    +1 415 318 1200
4   Facsimile:    +1 415 318 1300

5   CAMERON J. HOYLER (State Bar No. 273234)
    *choyler@kslaw.com*
6   BRIAN PRIESTLEY (State Bar No. 301586)
    *bpriestley@kslaw.com*
7   **KING & SPALDING LLP**
    633 West 5th St., Suite 1700
8   Los Angeles, CA 90071
    Telephone:    +1 213 443 4355
9   Facsimile:    +1 213 443 4310

10  Attorneys for Defendants
    BRISTOL-MYERS SQUIBB COMPANY (special
11  appearance) and ASTRAZENECA
    PHARMACEUTICALS LP (special appearance)
12

**ELECTRONICALLY**
**F I L E D**
*Superior  Court of California,*
*County of San Francisco*
**10/31/2016**
**Clerk of the Court**
**BY:**VANESSA WU
            **Deputy Clerk**

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                  **FOR THE COUNTY OF SAN FRANCISCO**

15  MICHAEL MARTIN, an individual, et al.,      Case No. CGC-16-554610
                                                Reservation Number: 10311212-05
16
                                                **DECLARATION OF CAMERON J.**
17              Plaintiffs,                     **HOYLER IN SUPPORT OF**
                                                **DEFENDANTS BRISTOL-MYERS**
18          v.                                  **SQUIBB COMPANY AND**
                                                **ASTRAZENECA PHARMACEUTICALS**
19  BRISTOL-MYERS SQUIBB COMPANY;               **LP'S MOTION TO SEVER AND QUASH**
    ASTRAZENECA PHARMACEUTICALS                 **SERVICE OF PROCESS FOR LACK OF**
20  LP; MCKESSON CORPORATION; and               **PERSONAL JURISDICTION AS TO**
    DOES 1-50 INCLUSIVE                         **NON-CALIFORNIA PLAINTIFFS**
21
                Defendants.
22                                              Complaint Filed:   September 30, 2016
                                                Trial Date:        None
23
                                                Date:              December 12, 2016
24                                              Time:              9:30 AM
                                                Dept.:             302
25                                              Judge:             Hon. Harold E. Kahn
26

27

28

---

DECLARATION OF CAMERON J. HOYLER IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND
QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA
PLAINTIFFS

I, Cameron J. Hoyler, declare as follows:

1.    I am an attorney duly licensed to practice law before all courts of the State of California and am one of the attorneys of record for specially appearing Defendants Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals LP.  I have reviewed the file and am familiar with its contents, and as such I have personal knowledge of the facts set forth herein.  I make this declaration in support of Defendants' Motion to Sever and Quash Service of Process for lack of personal jurisdiction as to non-California Plaintiffs.

2.    Attached as **Exhibit 1** is a true and correct copy of the complaint filed in this matter, *Michael Martin, et al. v. Bristol-Myers Squibb Co., et al.* (Case No. CGC 16-554610), filed September 30, 2016.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 31st day of October, 2016, in Los Angeles, California.

By:_____
      CAMERON J. HOYLER

1

DECLARATION OF CAMERON J. HOYLER IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS

# EXHIBIT 1

FILED
Superior Court of California
County of San Francisco

SEP 30 2016

CLERK OF THE COURT
BY: _____
Deputy Clerk

Robert A. Mosier, Esq. (SBN 164241)
Timothy M. Clark, Esq. (SBN 284447)
Lauren Welling, Esq. (SBN 291813)
**SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive Suite 220
Irvine, CA 92606
Tel: (877) 480-9142
Fax: (213) 330-0346
rmosier@thesandersfirm.com

*Attorneys for Plaintiffs*

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

MICHAEL MARTIN, an individual;
RONALD LETELL, an individual;
DONALD CARPENTER, an individual;
ELIZABETH McMAHON, an individual;
JOHN W. HUNT, SR., an individual;

      Plaintiffs,

      vs.

BRISTOL-MEYERS SQUIBB COMPANY;
ASTRAZENECA PHARMACEUTICALS
LP; MCKESSON CORPORATION; and
DOES 1-50 INCLUSIVE

      Defendants.

CASE NO:
JUDGE: CGC-16-554610

COMPLAINT FOR DAMAGES FOR:

1) STRICT PRODUCTS LIABILITY
2) NEGLIGENCE
3) FAILURE TO WARN
4) BREACH OF WARRANTY OF
   MERCHANTABILITY
5) BREACH OF EXPRESS WARRANTY
6) BREACH OF IMPLIED WARRANTY

DEMAND FOR JURY TRIAL

Complaint Filed: _____, ____

Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for damages against the Defendants, and allege the following:

### I.   INTRODUCTION

1.    This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin. Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR. Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

BY FAX

1

2.     Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.     The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.     Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

## II.     PARTIES, VENUE & JURISDICTION

5.     At all times relevant to this action, Plaintiff MICHAEL MARTIN was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.     At all times relevant to this action, Plaintiff RONALD LETELL was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

7.     At all times relevant to this action, Plaintiff DONALD CARPENTER was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

8.     At all times relevant to this action, Plaintiff ELIZABETH McMAHON was a citizen and resident of the State of Pennsylvania.  Plaintiff ingested Saxagliptin resulting in injuries.

9.     At all times relevant to this action, Plaintiff JOHN W. HUNT, SR. was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

10.     Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

11.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

12.     Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district

*COMPLAINT FOR DAMAGES*

1   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

2   Saxagliptin.

3       13.    Defendant McKesson Corporation ("McKesson") is a Delaware corporation with

4   its principal place of business at One Post Street, San Francisco, California 94104.  At all

5   relevant times, McKesson regularly and continuously did business within this judicial district

6   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

7   Saxagliptin.

8       14.    Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive.

9   Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

10  Defendants are ascertained.  At all relevant times herein DOES 1-50 inclusive were the

11  individuals, corporations, and/or business entities, which were agents, servants, joint ventures,

12  partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

13  as alleged herein.

14      15.    Hereinafter the aforementioned Defendants may collectively be referred to as

15  "Defendants."

16      16.    At all relevant times, each Defendant acted in all aspects as the agent and alter

17  ego of each other.

18      17.    At all relevant times, Defendants acted in concert with one another in the State of

19  California to fraudulently convey false and misleading information concerning the safety and

20  efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure,

21  congestive heart failure, cardiac failure, death from heart failure and other adverse effects

22  associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare

23  providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin,

24  including Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert with

25  one another, Plaintiffs would not have ingested Saxagliptin.

26      18.    This Court has personal jurisdiction over Defendants.  Defendants are and were at

27  all relevant times residents of and/or authorized to conduct business in the State of California and

28

1  Defendants conducted such business within the state including the performance of acts that
2  caused or contributed to the harm giving rise to this action.

3      19.    At all times material hereto, Defendants maintained systematic and continuous
4  contacts in this judicial district, regularly transacted business within this judicial district,
5  employed numerous individuals in this district and regularly availed themselves of the benefits
6  of this judicial district. Defendants received substantial financial benefit and profits as a result of
7  designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this
8  district and throughout the United States.

9      20.    The combined acts and/or omissions of each Defendant resulted in indivisible
10  injuries to each Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-
11  conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions
12  alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct
13  of each and every other Defendant.

14      21.    The amount in controversy exceeds the jurisdictional limits of this court.

15  **III.    FACTUAL ALLEGATIONS**

16      22.    Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance
17  and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia. Type 2
18  diabetics have an increased risk of cardiovascular disease, which is the leading cause of
19  morbidity and mortality in the patient population. Therefore, it is critical that drugs developed to
20  allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in
21  users. With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related
22  adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and
23  sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2
24  diabetes.

25      23.    Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby
26  potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone,
27  known as an incretin. This induces glucose-dependent stimulation of insulin secretion while
28  suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

4

24.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state. Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure. Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time. At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events. Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

25.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants. The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk. Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks. Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

---

[1] *Id.*

26. On July 31, 2009 Defendants began marketing Onglyza. On November 5, 2010, Defendants began marketing Kombiglyze XR. Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

27. After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 -- a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

28. The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

29. After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data. Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs. The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be withdrawn from the US market.[2] Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn. Once again, Defendants place sales over patient safety.

30. In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

*COMPLAINT FOR DAMAGES*

1  benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are
2  available that do not carry the increased cardiac risks of Saxagliptin.

3      31.     Defendants, with knowledge of the true relationship between use of Saxagliptin
4  and heart failure, congestive heart failure, cardiac failure, and death related to those events,
5  promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2
6  diabetes mellitus.

7      32.     Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's
8  risks through various avenues including, but not limited to, the following:

9          a.  in print marketing, advertising, and promotional materials;

10          b.  on Defendant-owned, controlled, or supported websites and blogs;

11          c.  in materials and advertisements to Plaintiffs and consumers stating the use of
12              Saxagliptin is safe; and

13          d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as
14              safe as) other drugs for the treatment of type 2 diabetes mellitus.

15      33.     At no time did Defendants perform adequate safety testing on Saxagliptin prior to
16  marketing their drugs to the American public and failed to do so until performing the SAVOR
17  trial.

18      34.     Despite the findings of the SAVOR trial, Defendants still have not undertaken
19  efforts to change the labels and reference materials for Saxagliptin to include a reference or
20  warning regarding heart failure, congestive heart failure, cardiac failure, and death related to
21  those events.

22  IV.    **PLAINTIFFS' USE OF SAXAGLIPTIN**

23      35.     Plaintiffs were prescribed and ingested Saxagliptin at various times.

24      36.     Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or
25  distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the
26  drug's condition.

27

28

37.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

38.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

39.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

40.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

41.     Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions, changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

42.     Plaintiffs' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiffs.

43.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

8

1  and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional

2  limits of the Court.

3      44.    As a direct and proximate result of Defendants' conduct, Plaintiffs incurred

4  obligations and expenses for medical care, testing and treatment. As a direct and proximate result

5  of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,

6  diminishment of earning potential, and other pecuniary losses.

7      45.    Defendants' conduct was committed with knowing, reckless, conscious, wanton,

8  willful and deliberate disregard for the value of human life and the rights and safety of

9  consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages

10  so as to punish and deter similar conduct in the future.

11  **V. DELAYED DISCOVERY**

12      46.    Defendants, through their affirmative misrepresentations and omissions, actively

13  concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and

14  significant risks associated with Saxagliptin.

15      47.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and

16  healthcare providers were unaware, and could not have reasonably known or have learned

17  through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this

18  Complaint, and that those risks were the result of Defendants' acts, omissions, and

19  misrepresentations.

20      48.    No limitations period ought to accrue until such time as Plaintiffs knew or

21  reasonably should have known of some causal connection between the use of Saxagliptin and the

22  harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact

23  that this Complaint is filed well within the statutory period after Plaintiffs knew or should have

24  known the facts alleged herein.

25      49.    Additionally, the accrual and running of any applicable statute of limitations has

26  been tolled by reason of Defendants' fraudulent concealment.

27

28

50.    Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## I.

## CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

51.    At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

52.    At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

53.    Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

54.    Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

55.    Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

    a.  Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

    b.  Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

    c.  Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

    d.  Saxagliptin was insufficiently and/or inadequately tested by Defendants.

10

e. Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

f. Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

g. Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

h. Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i. Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j. Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k. Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

56.    Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

57. A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

58. Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

59. Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

60. Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

61. Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

62. Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

63. As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

### CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

64. Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

65.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

66.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

a.      Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

b.      Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c.      Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.      Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.      Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.      Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate

13

warning of risks associated with using the products and without proper
and adequate instructions to avoid the harm which could foreseeably occur
as a result of using the products;

g.   Failing to exercise due care when advertising, promoting, and selling
     Saxagliptin;

h.   Failing to use due care in the preparation, design and development of
     Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals
     when the products were used;

i.   Failing to completely, accurately and in a timely fashion, disclose the
     results of the pre-marketing testing and post-marketing surveillance and
     testing to Plaintiffs, consumers, the medical community, and the FDA;

j.   Failing to accompany Saxagliptin with proper warnings regarding all
     possible risks associated with using the products;

k.   Failing to use due care in the manufacture, inspection, and labeling of
     Saxagliptin to prevent risk of injuries to individuals who used the
     products;

l.   Failing to provide adequate and accurate training and information to the
     sales representatives who sold the products;

m.   Failing to educate healthcare providers and the public about the safest use
     of the products;

n.   Failing to give healthcare providers adequate information to weigh the
     risks of serious injury associated with the products;

o.   Failing to test and inspect Saxagliptin in a reasonable manner in order to
     ascertain whether or not it was safe and proper for the purpose for which it
     was designed, manufactured, and sold;

p.   Failing to warn Plaintiffs of the danger of adverse medical conditions
     from the use of Saxagliptin; and

14

q.   Failing to label Saxagliptin to adequately warn Plaintiffs of the serious
adverse side effects with the use of Saxagliptin.

67.   Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

68.   Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

69.   Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.   The Defendants' acts and omissions, including but not limited to
Defendants' off-label marketing, constitute an adulteration and/or
misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21
U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to
be protected by such legislation and whose injuries said regulations were
designed to prevent. Defendants' conduct was a proximate cause of
Plaintiffs' injuries.

b.   The Defendants' also failed to report adverse events as required by the
Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons
such as Plaintiffs were the parties intended to be protected by such
legislation and whose injuries said regulations were designed to prevent.
Defendants' conduct was a proximate cause of Plaintiffs' injuries.

70.   Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants

15

1  continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers,

2  including Plaintiffs.

3      71.    Defendants negligently and recklessly represented to Plaintiffs, physicians, and

4  other persons and professionals Defendants knew would justifiably rely on the representations,

5  that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for

6  their intended purposes.

7      72.    Defendants negligently and recklessly failed to disclose to Plaintiffs and others

8  important safety and efficacy information about Saxagliptin, thereby suppressing material facts

9  while under a duty to disclose such information.

10     73.    Defendants' representations about the safety and adverse side effects of

11  Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was

12  unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

13     74.    Defendants knew or should have known that their representations and omissions

14  were false. Defendants made such false, negligent and reckless representations and omissions

15  with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such

16  representations, leading to the use of Saxagliptin as described.

17     75.    Defendants omitted, suppressed and/or concealed material facts concerning the

18  dangers and risk of injuries associated with the use of Saxagliptin, including serious injury.

19  Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or

20  otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

21     76.    At the time Defendants made these misrepresentations and/or omissions, they

22  knew or should have known that Saxagliptin was unreasonably dangerous and not what

23  Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the

24  consuming public.

25     77.    Defendants' misrepresentations and/or omissions were undertaken with an intent

26  that doctors and patients, including Plaintiffs, rely upon them.

27     78.    Plaintiffs and Plaintiffs' healthcare providers did not know that these

28  representations were false and justifiably relied on and were induced by Defendants'

16

1 | misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ
2 | these products.

3 |     79.    As a direct and proximate consequence of Defendants' negligent, willful, wanton,
4 | and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs
5 | sustained injuries and damages.

6 |     80.    Had Plaintiffs been aware of the increased risk of side effects associated with
7 | Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available
8 | products, Plaintiffs would not have used these products.

9 |     WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek
10 | compensatory, exemplary and punitive damages, together with interest, the costs of suit and
11 | attorneys' fees, and such other and further relief as this Court deems just and proper.

12 | **III.**

13 | **CAUSE OF ACTION FOR FAILURE TO WARN**

14 |     Plaintiffs incorporate by reference each and every paragraph of this Complaint as though
15 | set forth in full in this cause of action, and further allege:

16 |     81.    Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner
17 | as designed and intended by Defendants.

18 |     82.    At all relevant and material times, the Defendants designed, manufactured,
19 | packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the
20 | stream of commerce for sale to, and use by, members of the public, including the Saxagliptin
21 | used by Plaintiffs.

22 |     83.    At all relevant and material times, Saxagliptin was designed, manufactured,
23 | packaged, marketed, advertised, distributed, and sold by Defendants in a defective and
24 | unreasonably dangerous condition.

25 |     84.    The Saxagliptin manufactured by Defendants reached Plaintiffs without
26 | substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably
27 | dangerous when it entered into the stream of commerce and when used by Plaintiffs.

28 |     85.    The Plaintiffs were administered the Saxagliptin for its intended purpose.

86.     Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

87.     Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

88.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

89.     The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

90.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

91.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

92.     Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

93.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

94.     Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

95.     Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

96.     Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

    a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

    b.    Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

    c.    Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

    d.    Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

97.     Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

19

1        98.     Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs'

2   physicians with adequate clinically relevant information and data and warnings regarding the

3   adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and

4   more or equally effective alternative drug products, but failed to do so.

5        99.     By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically

6   relevant information and data and warnings regarding the adverse health risks associated with

7   exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative

8   drug products, Defendants breached their duty of reasonable care and safety.

9        100.     Defendants' actions described above were performed willfully, intentionally, and

10  with reckless disregard of the life and safety of the Plaintiffs and the public.

11       101.     As a direct and proximate result of the actions and inactions of Defendants as set

12  forth above, Plaintiffs sustained injuries and damages.

13       WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory,

14  exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and

15  such other and further relief as this Court deems just and proper.

16  **IV.**

17  **CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY**

18       Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

19  set forth in full in this cause of action and further allege:

20       102.     At all times mentioned in this Complaint, Defendants manufactured,

21  compounded, packaged, distributed, recommended, merchandised, advertised, promoted,

22  supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants

23  impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that

24  Saxagliptin was of merchantable quality and safe for the use for which it was intended.

25       103.     Defendants knew and intended that Saxagliptin be used by Plaintiffs and other

26  consumers when the products were placed into the stream of commerce.

27       104.     Defendants knew of the use for which Saxagliptin was intended and impliedly

28  warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

105. Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill,

judgment and knowledge of Defendants, and upon the express and/or implied warranty that

Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

106. The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for

its intended use.

107. The product was unsafe for its intended use and was not of merchantable quality,

as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its

intended use and would cause severe injury (or death) to the user. Saxagliptin was

unaccompanied by adequate warnings of their dangerous propensities that were either known or

reasonably scientifically knowable at the time of distribution.

108. The Saxagliptin used by Plaintiffs was neither safe nor fit for use because

Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes

for which they are used.

109. As a direct and proximate result of the breach of warranty of merchantability by

Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek

compensatory, exemplary and punitive damages, together with interest, the costs of suit and

attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.
## CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

set forth in full in this cause of action and further allege:

110. The aforementioned manufacturing, compounding, packaging, designing,

distributing, testing, constructing, fabricating, analyzing, recommending, merchandising,

advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe

for use by Plaintiffs and other members of the general public.

111. Defendants expressly represented to Plaintiffs, consumers and the medical

community that Saxagliptin was:

a. safe;

b. efficacious;

c. fit for use in persons with Type 2 diabetes mellitus;

d. of merchantable quality;

e. adequately tested;

f. well tolerated in adequate and well-controlled clinical studies; and

g. did not increase the risk of experiencing serious, life threatening side effects.

112. Defendants breached those express warranties as follows:

a. Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

b. Defendants misrepresented the risks associated with using Saxagliptin;

c. Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

d. Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

e. Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

113. Saxagliptin did not conform to Defendants' express representations and warranties.

114. At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

115. At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

116.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

117.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

118.    At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

119.    Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

120.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

121.    Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

122.    Plaintiffs were foreseeable users of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

123.    Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

124.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

125.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

126.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

127.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

128.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

   a.    All available compensatory damages for the described losses with respect to each cause of action;

   b.    Past and future medical expenses, as well as the cost associated with past and future life care;

   c.    Past and future lost wages and loss of earning capacity;

   d.    Past and future emotional distress;

   e.    Consequential damages;

   f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

24

g.    All damages wrongful death damages permitted by law, where

applicable;

h.    Disgorgement of profits obtained through unjust enrichment;

i.    Restitution;

j.    Punitive damages with respect to each cause of action;

k.    Reasonable attorneys' fees where recoverable;

l.    Costs of this action;

m.    Pre-judgment and all other interest recoverable; and

n.    Such other additional and further relief as Plaintiffs may be entitled to in

law or in equity.

## DEMAND FOR JURY TRIAL

Each Plaintiff named herein demands his or her own individual trial by jury on all issues

so triable.

Dated: September 30, 2016

By: _____

Lauren A. Welling (CA Bar No. 291813)
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 90606
Tel: (877) 480-9142
Fax: (213) 330-0346
lwelling@thesandersfirm.com

COMPLAINT FOR DAMAGES

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of San Francisco; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**DECLARATION OF CAMERON J. HOYLER IN SUPPORT OF DEFENDANTS BRISTOL-MYERS SQUIBB COMPANY AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

DECLARATION OF CAMERON J. HOYLER IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND QUASH SERVICE OF PROCESS FOR LACK OF PERSONAL JURISDICTION AS TO NON-CALIFORNIA PLAINTIFFS

# STATE COURT DOCUMENT E

DONALD F. ZIMMER, JR. (Bar No. 112279)
  *fzimmer@kslaw.com*
**KING & SPALDING LLP**
101 Second Street, Suite 2300
San Francisco, CA  94105
Telephone:     +1 415 318 1200
Facsimile:     +1 415 318 1300

CAMERON J. HOYLER (Bar No. 273234)
  *choyler@kslaw.com*
BRIAN PRIESTLEY (Bar No. 301586)
  *bpriestley@kslaw.com*
**KING & SPALDING LLP**
633 W. 5TH Street, Ste. 1700
Los Angeles, CA 90071
Telephone:     +1 213 443 4355
Facsimile:     +1 213 443 4310

Attorneys for Defendant
ASTRAZENECA PHARMACEUTICALS LP

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**10/31/2016**
**Clerk of the Court**
BY:SANDRA SCHIRO
**Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MICHAEL MARTIN, an individual, et al., | Case No. CGC 16-554610 |
| Plaintiffs, | **ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP TO PLAINTIFFS' COMPLAINT** |
| v. | |
| BRISTOL-MYERS SQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE | Complaint Filed:       September 30, 2016 |
| Defendants, | |

1   Defendant AstraZeneca Pharmaceuticals LP (AstraZeneca), for itself alone and for no

2   other defendant, responds to Plaintiffs' Complaint for Damages (Complaint).

3   **GENERAL DENIAL**

4   Pursuant to California Code of Civil Procedure section 431.30, AstraZeneca generally

5   denies each and every allegation in Plaintiffs' Complaint, including, without limitation, any

6   allegations contained in the preamble, headings, subheadings, and footnotes of Plaintiffs'

7   Complaint.  AstraZeneca specifically denies any liability to Plaintiffs.  AstraZeneca reserves the

8   right to seek to amend or supplement this Answer as may be necessary.

9   **PRAYER FOR RELIEF**

10   AstraZeneca denies that Plaintiffs are entitled to recover any relief requested in Plaintiffs'

11   Prayer, or any relief whatsoever.

12   **AFFIRMATIVE DEFENSES**

13   AstraZeneca asserts the following commonly recognized affirmative defenses in order to

14   provide notice to Plaintiffs.  AstraZeneca does not, however, waive the right to assert additional

15   defenses based on applicable state law or the facts of the case as revealed through investigation

16   and discovery.  Upon completion of discovery, and if the facts warrant, AstraZeneca may

17   withdraw or supplement any of these affirmative defenses as it may deem appropriate in addition

18   to asserting cross-claims or counter-claims.  AstraZeneca demands strict proof of all claims and

19   allegations contained in Plaintiffs' Complaint that AstraZeneca has not expressly admitted.

20   Further answering and by way of additional defense, AstraZeneca states as follows:

21   **FIRST AFFIRMATIVE DEFENSE**

22   This court lacks personal jurisdiction over AstraZeneca.  This defense is raised

23   concurrently herewith in AstraZeneca' motion to quash for lack of personal jurisdiction as to all

24   non-California Plaintiffs.  (See *Daimler AG v. Bauman* (2014) 134 S. Ct. 746.)

25   **SECOND AFFIRMATIVE DEFENSE**

26   The Complaint fails to state a claim against AstraZeneca upon which relief can be

27   granted.

28   / / /

1
_____
ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP
TO PLAINTIFFS' COMPLAINT

1

**THIRD AFFIRMATIVE DEFENSE**

2      Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

3

**FOURTH AFFIRMATIVE DEFENSE**

4      Plaintiffs' claims are barred, in whole or in part, by the applicable statute of repose.

5

**FIFTH AFFIRMATIVE DEFENSE**

6      Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, waiver,

7 laches or statutory and regulatory compliance.

8

**SIXTH AFFIRMATIVE DEFENSE**

9      Plaintiffs' claims are barred to the extent that they are not recognized by applicable state

10 law.

11

**SEVENTH AFFIRMATIVE DEFENSE**

12      To the extent Plaintiffs' claims are based on strict products liability, such claims are

13 barred, in whole or in part, to the extent applicable state law does not recognize a cause of action

14 for strict products liability for prescription drugs such as Onglyza and Kombiglyze.

15

**EIGHTH AFFIRMATIVE DEFENSE**

16      To the extent Plaintiffs' claims for strict product liability are based on a design defect

17 theory, such claims are barred to the extent that applicable state law does not recognize a strict

18 liability design defect claim for prescription drugs such as Onglyza and Kombiglyze.

19

**NINTH AFFIRMATIVE DEFENSE**

20      To the extent Plaintiffs' claims for strict product liability are based on a failure to warn

21 theory, such claims are barred to the extent that applicable state law does not recognize a strict

22 liability failure to warn claim for prescription drugs such as Onglyza and Kombiglyze.

23

**TENTH AFFIRMATIVE DEFENSE**

24      Plaintiffs' claims are barred, in whole or in part, because defendants complied with

25 applicable regulatory standards.

26

**ELEVENTH AFFIRMATIVE DEFENSE**

27      Some or all of Plaintiffs' claims are barred by the learned intermediary and/or

28 sophisticated user doctrines.  At all relevant times herein, Plaintiffs' prescribing physician(s)

1   were in the position of learned intermediaries and/or sophisticated users and/or sophisticated

2   purchasers, fully knowledgeable and informed of the benefits and alleged risks of Onglyza

3   and/or Kombiglyze.

4   **TWELFTH AFFIRMATIVE DEFENSE**

5   Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory

6   negligence or fault.

7   **THIRTEENTH AFFIRMATIVE DEFENSE**

8   Plaintiffs' claims are barred, in whole or in part, by the doctrine of comparative

9   negligence or fault.

10   **FOURTEENTH AFFIRMATIVE DEFENSE**

11   Plaintiffs' claims are fully informed to the extent Plaintiffs are fully informed of the

12   alleged risks of the use of Onglyza and/or Kombiglyze and Plaintiffs gave informed consent.

13   **FIFTEENTH AFFIRMATIVE DEFENSE**

14   The injuries, damages, and losses alleged in the Complaint, none being admitted, were

15   caused in whole or in part by the negligence of the Plaintiff, and/or others, over whom

16   AstraZeneca exercised no control, had no opportunity to anticipate or right to control, and with

17   whom AstraZeneca had no legal relationship by which liability could be attributed to it because

18   of the actions of the Plaintiff, and/or others, which by comparison was far greater than any

19   conduct alleged as to AstraZeneca.

20   **SIXTEENTH AFFIRMATIVE DEFENSE**

21   Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation

22   alleged, if any, was caused in whole or in part by Plaintiffs' failure to exercise reasonable care

23   and diligence to mitigate these alleged damages.

24   **SEVENTEENTH AFFIRMATIVE DEFENSE**

25   Plaintiffs' claims are barred in that Onglyza and Kombiglyze was designed,

26   manufactured and labeled in a manner consistent with the state of the art at the pertinent time.

27   **EIGHTEENTH AFFIRMATIVE DEFENSE**

28   Plaintiffs' claims are barred in that Onglyza's and Kombiglyze's design, manufacture,

3

1  and labeling were at all times approved by the U.S. Food and Drug Administration as safe and

2  effective, and were consistent with federal law.

3  ### NINETEENTH AFFIRMATIVE DEFENSE

4  To the extent that Plaintiffs assert claims based on any alleged adherence or lack of

5  adherence to and compliance with applicable federal laws, regulations, and rules, Plaintiffs'

6  claims are preempted by federal law.

7  ### TWENTIETH AFFIRMATIVE DEFENSE

8  Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in

9  part, pursuant to the doctrine of primary jurisdiction, in that the FDA is charged under the law

10  with regulating prescription drugs, including Onglyza and Kombiglyze, and is specifically

11  charged with determining the content of the warnings and labeling for prescription drugs.

12  ### TWENTY-FIRST AFFIRMATIVE DEFENSE

13  To the extent Plaintiffs' claims attempt to use state law to enforce the U.S. Food, Drug

14  and Cosmetic Act or FDA regulations promulgated under it, including alleged misrepresentations

15  made to the FDA, such claims are preempted as recognized in *Buckman Co. v. Plaintiffs' Legal*

16  *Committee* (2001) 531 U.S. 341.

17  ### TWENTY-SECOND AFFIRMATIVE DEFENSE

18  Plaintiffs' claims are preempted, in whole or in part, to the extent Plaintiffs' claims

19  depend on an asserted state-law duty to implement a labeling change or redesign Onglyza and

20  Kombiglyze.  (See *Mutual Pharmaceutical Co. v. Bartlett* (2013) 133 S. Ct. 2466; *PLIVA, Inc. v.*

21  *Mensing* (2011) 131 S. Ct. 2567.)

22  ### TWENTY-THIRD AFFIRMATIVE DEFENSE

23  Plaintiffs' claims are preempted, in whole or in part, to the extent Plaintiffs' claims

24  depend on an asserted state-law duty to implement a change to the labeling of Onglyza or

25  Kombiglyze that would have required the FDA's prior approval.  (See *Mutual Pharmaceutical*

26  *Co. v. Bartlett* (2013) 133 S. Ct. 2466; *PLIVA, Inc. v. Mensing* (2011) 131 S. Ct. 2567.)

27  ### TWENTY-FOURTH AFFIRMATIVE DEFENSE

28  Some or all of Plaintiffs' claims are barred by the doctrines concerning unavoidably

1   unsafe products, including, but not limited to, the operation of comments j and k to Section 402A

2   of the RESTATEMENT (SECOND) OF TORTS and/or barred by the RESTATEMENT (THIRD) OF TORTS.

3   **TWENTY-FIFTH AFFIRMATIVE DEFENSE**

4   Plaintiffs' breach of warranty claims are barred because there is no privity of contract

5   between Plaintiffs and AstraZeneca; Plaintiffs failed to give timely notice of any alleged breach

6   of warranty to AstraZeneca; Plaintiffs did not reasonably rely upon any alleged warranty;

7   Plaintiffs failed to satisfy all conditions precedent or subsequent to the enforcement of such

8   alleged warranty; and the alleged warranty was appropriately disclaimed, excluded, or modified.

9   **TWENTY-SIXTH AFFIRMATIVE DEFENSE**

10   Plaintiffs' breach of warranty claims are barred in whole or in part because they are not

11   recognized under or have been abolished by applicable state law or statute.

12   **TWENTY-SEVENTH AFFIRMATIVE DEFENSE**

13   Plaintiffs' claims are barred in whole or in part by the applicable provisions of the United

14   States Constitution and/or the applicable Constitution of any other State or Commonwealth of

15   the United States whose laws might be deemed controlling in this case.  These provisions

16   include, but are not limited to, the First and Fourteenth Amendments to the Constitution of the

17   United States, because AstraZeneca's commercial speech regarding Onglyza and Kombiglyze

18   was neither false nor misleading.

19   **TWENTY-EIGHTH AFFIRMATIVE DEFENSE**

20   The injuries or damages alleged by Plaintiffs can be attributed to several causes and,

21   accordingly, should be apportioned among the various causes according to the respective

22   contribution of each such cause to the harm sustained, if any.

23   **TWENTY-NINTH AFFIRMATIVE DEFENSE**

24   Any verdict or judgment rendered against AstraZeneca must be reduced by those

25   amounts that have been, or will, with reasonable certainty, indemnify Plaintiff, in whole or in

26   part, for any past or future claimed economic loss, from any collateral source such as insurance,

27   social security, worker's compensation, or employee benefit programs.

28   / / /

ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP
TO PLAINTIFFS' COMPLAINT

1

### THIRTIETH AFFIRMATIVE DEFENSE

2    The proximate cause of Plaintiffs' alleged injuries was an independent modification or

3    alteration of the products at issue, which was not reasonably expected by AstraZeneca.  Any

4    injuries or expenses incurred by Plaintiffs were not caused by AstraZeneca, but may have been

5    proximately caused, in whole or part, by the unforeseen alteration, unintended use, misuse or

6    abuse of the products referenced in Plaintiffs' Complaint.

7

### THIRTY-FIRST AFFIRMATIVE DEFENSE

8    Plaintiffs' claims against AstraZeneca are barred because Plaintiffs knowingly and

9    voluntarily assumed and/or incurred the risk of injury and Plaintiffs' claims are barred or should

10    be reduced under the principles of assumption of risk, informed consent, and/or knowledgeable

11    user.

12

### THIRTY-SECOND AFFIRMATIVE DEFENSE

13    Based on the scientific, medical, and technological knowledge existing at the time

14    Onglyza and/or Kombiglyze was allegedly used by Plaintiff, it was reasonably safe for its normal

15    and foreseeable use at all relevant times, or in light of existing reasonably available medical,

16    scientific, and technological knowledge.

17

### THIRTY-THIRD AFFIRMATIVE DEFENSE

18    In the unlikely event that AstraZeneca is found liable to Plaintiff, AstraZeneca is entitled

19    to a credit or offset for any and all sums that Plaintiffs have received or may hereafter receive by

20    way of any and all settlements arising from Plaintiffs' claims and causes of action.  AstraZeneca

21    alternatively asserts its right to a proportionate reduction of any damages based on comparative

22    fault or the percentage of negligence attributable to Plaintiffs or to any settling tortfeasor under

23    applicable state law.

24

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

25    Under applicable state law, the liability of each defendant for non-economic damages

26    shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of

27    non-economic damages allocated to that defendant in direct proportion to that defendant's

28    percentage of fault, and a separate judgment shall be rendered against that defendant for that

1   amount.

2   ### THIRTY-FIFTH AFFIRMATIVE DEFENSE

3   Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs seek damages in

4   excess of applicable state-law caps or limits on recovery of damages or of specific categories of

5   damages.

6   ### THIRTY-SIXTH AFFIRMATIVE DEFENSE

7   If Plaintiffs sustained injuries or losses as alleged in the Complaint, which AstraZeneca

8   denies, Plaintiffs' claims are barred, in whole or in part, because such injuries or losses may have

9   been caused by an individual, idiosyncratic reaction, or are otherwise not attributable to Onglyza

10   and/or Kombiglyze.

11   ### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

12   Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation

13   alleged, if any, resulted from independent, unforeseeable, superseding, and/or intervening causes

14   unrelated to any conduct of AstraZeneca.

15   ### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

16   Plaintiffs' claim for failure to warn is barred because Plaintiff, and/or Plaintiffs'

17   physician(s) knew or had reason to know of the risks of Onglyza and/or Kombiglyze.

18   ### THIRTY-NINTH AFFIRMATIVE DEFENSE

19   Plaintiffs have pleaded state law that does not govern Plaintiffs' claims, and as such, the

20   claims should be dismissed.

21   ### FORTIETH AFFIRMATIVE DEFENSE

22   Plaintiffs' claims are barred because Onglyza and Kombiglyze was not unreasonably

23   dangerous for their ordinary and foreseeable uses.

24   ### FORTY-FIRST AFFIRMATIVE DEFENSE

25   AstraZeneca had no duty to warn about any possible risks of Onglyza and Kombiglyze

26   that were not known at the time of the medication's manufacture and sale.

27   ### FORTY-SECOND AFFIRMATIVE DEFENSE

28   Plaintiffs' claims are barred because there was no practical or technically or legally

7

feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended use of Onglyza and/or Kombiglyze.

### FORTY-THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because AstraZeneca acted in good faith at all relevant times and gave adequate warnings of all known or reasonably knowable risks associated with the use of its products.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

Any conduct on the part of Defendants allegedly causing Plaintiffs' alleged injuries was not the proximate cause or a substantial cause or contributing factor of such injury or damage, if any.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

To the extent that Plaintiffs seek punitive or exemplary damages for an alleged act or omission of AstraZeneca, AstraZeneca asserts that no act or omission was oppressive, fraudulent, malicious, willful, or wanton, and therefore, any award of punitive or exemplary damages is barred.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

Any punitive damages claimed by Plaintiffs are barred because AstraZeneca cannot be held liable in punitive damages under applicable state law for the unauthorized acts or omissions of its employees or agents.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

Any punitive damages claimed by Plaintiffs are in violation of and are barred by the Constitution of the United States, including, but not limited to, the Due Process and Equal Protection Clauses contained in the Fifth and Fourteenth Amendments to the United States Constitution; the Excessive Fines Clause of the Eighth Amendment to the United States; the Double Jeopardy Clause in the Fifth Amendment to the United States Constitution; the Tenth Amendment to the United States Constitution; and common law, public policy, and applicable statutes and court rules.

/ / /

ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP
TO PLAINTIFFS' COMPLAINT

1  **FORTY-EIGHTH AFFIRMATIVE DEFENSE**

2  AstraZeneca did not breach any implied warranties or any warranties created by law.

3  **FORTY-NINTH AFFIRMATIVE DEFENSE**

4  Venue is incorrect and/or improper in this judicial district.

5  **FIFTIETH AFFIRMATIVE DEFENSE**

6  AstraZeneca is entitled to, and claims the benefit of, all defenses and presumptions set

7  forth in or arising from any rule of law or statute under applicable state law and/or any other law

8  or statute that may be applicable.

9  **FIFTY-FIRST AFFIRMATIVE DEFENSE**

10  Plaintiffs may have failed to join all indispensable parties, in which case it may not be

11  possible to accord complete relief to the parties that are already parties to this action and

12  Plaintiffs' failure to join all indispensable parties could result in prejudice.

13  **FIFTY-SECOND AFFIRMATIVE DEFENSE**

14  Plaintiffs have improperly joined parties in this action pursuant to California Code of

15  Civil Procedure sections 378 and 379.5.

16  **FIFTY-THIRD AFFIRMATIVE DEFENSE**

17  Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack standing to bring

18  such claims.

19  **FIFTY-FOURTH AFFIRMATIVE DEFENSE**

20  If Plaintiffs have sustained injuries or losses as alleged in the Complaint, which

21  AstraZeneca denies, such injuries or losses resulted from the Plaintiffs' pre-existing and/or

22  unrelated medical, genetic and/or environmental conditions, diseases, or illnesses, subsequent

23  medical conditions or natural courses of conditions for which AstraZeneca is not responsible.

24  **FIFTY-FIFTH AFFIRMATIVE DEFENSE**

25  AstraZeneca asserts that applicable choice of law rules should determine which

26  jurisdiction's laws govern this case, and expressly reserves the right to supplement this answer

27  with any defenses that may be available to it under the law of the jurisdictions determined to

28  apply to it in accordance with choice of law rules.

9

WHEREFORE, Defendant AstraZeneca Pharmaceuticals LP prays that:

1. Plaintiffs take nothing by reason of the Complaint;

2. The Complaint against AstraZeneca be dismissed in its entirety;

3. AstraZeneca recovers its cost of suit and attorney's fees, under any applicable statute; and

4. This Court award AstraZeneca such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure section 631, AstraZeneca hereby demands a trial by jury.

DATED: October 31, 2016

KING & SPALDING LLP

By: _____
Donald F. Zimmer, Jr.
Cameron J. Hoyler
Brian Priestley
Attorneys for Defendant
ASTRAZENECA PHARMACEUTICALS
LP

10

ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP
TO PLAINTIFFS' COMPLAINT

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP TO PLAINTIFFS' COMPLAINT**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

11
ANSWER OF DEFENDANT ASTRAZENECA PHARMACEUTICALS LP
TO PLAINTIFFS' COMPLAINT

STATE COURT DOCUMENT F

DONALD F. ZIMMER, JR. (Bar No. 112279)
*fzimmer@kslaw.com*
**KING & SPALDING LLP**
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:    +1 415 318 1200
Facsimile:     +1 415 318 1300

CAMERON J. HOYLER (Bar No. 273234)
*choyler@kslaw.com*
BRIAN PRIESTLEY (Bar No. 301586)
*bpriestley@kslaw.com*
**KING & SPALDING LLP**
633 W. 5TH Street, Ste. 1700
Los Angeles, CA 90071
Telephone:    +1 213 443 4355
Facsimile:     +1 213 443 4310

Attorneys for Defendant
BRISTOL-MYERS SQUIBB COMPANY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MICHAEL MARTIN, an individual, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BRISTOL-MYERS SQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE<br><br>Defendants, | Case No. CGC 16-554610<br><br>**ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY TO PLAINTIFFS' COMPLAINT**<br><br>Complaint Filed:        September 30, 2016 |

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**10/31/2016**
**Clerk of the Court**
BY:SANDRA SCHIRO
**Deputy Clerk**

1    Defendant Bristol-Myers Squibb Company (BMS), for itself alone and for no other

2  defendant, responds to Plaintiffs' Complaint for Damages (Complaint).

3                              **GENERAL DENIAL**

4    Pursuant to California Code of Civil Procedure section 431.30, BMS generally denies

5  each and every allegation in Plaintiffs' Complaint, including, without limitation, any allegations

6  contained in the preamble, headings, subheadings, and footnotes of Plaintiffs' Complaint.  BMS

7  specifically denies any liability to Plaintiffs.  BMS reserves the right to seek to amend or

8  supplement this Answer as may be necessary.

9                              **PRAYER FOR RELIEF**

10    BMS denies that Plaintiffs are entitled to recover any relief requested in Plaintiffs'

11  Prayer, or any relief whatsoever.

12                              **AFFIRMATIVE DEFENSES**

13    BMS asserts the following commonly recognized affirmative defenses in order to provide

14  notice to Plaintiffs.  BMS does not, however, waive the right to assert additional defenses based

15  on applicable state law or the facts of the case as revealed through investigation and discovery.

16  Upon completion of discovery, and if the facts warrant, BMS may withdraw or supplement any

17  of these affirmative defenses as it may deem appropriate in addition to asserting cross-claims or

18  counter-claims.  BMS demands strict proof of all claims and allegations contained in Plaintiffs'

19  Complaint that BMS has not expressly admitted.  Further answering and by way of additional

20  defense, BMS states as follows:

21                          **FIRST AFFIRMATIVE DEFENSE**

22    This court lacks personal jurisdiction over BMS.  This defense is raised concurrently

23  herewith in BMS' motion to quash for lack of personal jurisdiction as to all non-California

24  Plaintiffs.  (See *Daimler AG v. Bauman* (2014) 134 S. Ct. 746.)

25                          **SECOND AFFIRMATIVE DEFENSE**

26    The Complaint fails to state a claim against BMS upon which relief can be granted.

27                          **THIRD AFFIRMATIVE DEFENSE**

28    Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of repose.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, waiver, laches or statutory and regulatory compliance.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred to the extent that they are not recognized by applicable state law.

**SEVENTH AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims are based on strict products liability, such claims are barred, in whole or in part, to the extent applicable state law does not recognize a cause of action for strict products liability for prescription drugs such as Onglyza and Kombiglyze.

**EIGHTH AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims for strict product liability are based on a design defect theory, such claims are barred to the extent that applicable state law does not recognize a strict liability design defect claim for prescription drugs such as Onglyza and Kombiglyze.

**NINTH AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims for strict product liability are based on a failure to warn theory, such claims are barred to the extent that applicable state law does not recognize a strict liability failure to warn claim for prescription drugs such as Onglyza and Kombiglyze.

**TENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because defendants complied with applicable regulatory standards.

**ELEVENTH AFFIRMATIVE DEFENSE**

Some or all of Plaintiffs' claims are barred by the learned intermediary and/or sophisticated user doctrines. At all relevant times herein, Plaintiffs' prescribing physician(s) were in the position of learned intermediaries and/or sophisticated users and/or sophisticated purchasers, fully knowledgeable and informed of the benefits and alleged risks of Onglyza

2

1 | and/or Kombiglyze.

2 | **TWELFTH AFFIRMATIVE DEFENSE**

3 | Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory
4 | negligence or fault.

5 | **THIRTEENTH AFFIRMATIVE DEFENSE**

6 | Plaintiffs' claims are barred, in whole or in part, by the doctrine of comparative
7 | negligence or fault.

8 | **FOURTEENTH AFFIRMATIVE DEFENSE**

9 | Plaintiffs' claims are fully informed to the extent Plaintiffs are fully informed of the
10 | alleged risks of the use of Onglyza and/or Kombiglyze and Plaintiffs gave informed consent.

11 | **FIFTEENTH AFFIRMATIVE DEFENSE**

12 | The injuries, damages, and losses alleged in the Complaint, none being admitted, were
13 | caused in whole or in part by the negligence of the Plaintiff, and/or others, over whom BMS
14 | exercised no control, had no opportunity to anticipate or right to control, and with whom BMS
15 | had no legal relationship by which liability could be attributed to it because of the actions of the
16 | Plaintiff, and/or others, which by comparison was far greater than any conduct alleged as to
17 | BMS.

18 | **SIXTEENTH AFFIRMATIVE DEFENSE**

19 | Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation
20 | alleged, if any, was caused in whole or in part by Plaintiffs' failure to exercise reasonable care
21 | and diligence to mitigate these alleged damages.

22 | **SEVENTEENTH AFFIRMATIVE DEFENSE**

23 | Plaintiffs' claims are barred in that Onglyza and Kombiglyze was designed,
24 | manufactured and labeled in a manner consistent with the state of the art at the pertinent time.

25 | **EIGHTEENTH AFFIRMATIVE DEFENSE**

26 | Plaintiffs' claims are barred in that Onglyza's and Kombiglyze's design, manufacture,
27 | and labeling were at all times approved by the U.S. Food and Drug Administration as safe and
28 | effective, and were consistent with federal law.

3

ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY
TO PLAINTIFFS' COMPLAINT

**NINETEENTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiffs assert claims based on any alleged adherence or lack of adherence to and compliance with applicable federal laws, regulations, and rules, Plaintiffs' claims are preempted by federal law.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in part, pursuant to the doctrine of primary jurisdiction, in that the FDA is charged under the law with regulating prescription drugs, including Onglyza and Kombiglyze, and is specifically charged with determining the content of the warnings and labeling for prescription drugs.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims attempt to use state law to enforce the U.S. Food, Drug and Cosmetic Act or FDA regulations promulgated under it, including alleged misrepresentations made to the FDA, such claims are preempted as recognized in *Buckman Co. v. Plaintiffs' Legal Committee* (2001) 531 U.S. 341.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are preempted, in whole or in part, to the extent Plaintiffs' claims depend on an asserted state-law duty to implement a labeling change or redesign Onglyza and Kombiglyze.  (See *Mutual Pharmaceutical Co. v. Bartlett* (2013) 133 S. Ct. 2466; *PLIVA, Inc. v. Mensing* (2011) 131 S. Ct. 2567.)

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiffs' claims are preempted, in whole or in part, to the extent Plaintiffs' claims depend on an asserted state-law duty to implement a change to the labeling of Onglyza or Kombiglyze that would have required the FDA's prior approval.  (See *Mutual Pharmaceutical Co. v. Bartlett* (2013) 133 S. Ct. 2466; *PLIVA, Inc. v. Mensing* (2011) 131 S. Ct. 2567.)

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Some or all of Plaintiffs' claims are barred by the doctrines concerning unavoidably unsafe products, including, but not limited to, the operation of comments j and k to Section 402A of the RESTATEMENT (SECOND) OF TORTS and/or barred by the RESTATEMENT (THIRD) OF TORTS.

ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY
TO PLAINTIFFS' COMPLAINT

1

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

2       Plaintiffs' breach of warranty claims are barred because there is no privity of contract

3  between Plaintiffs and BMS; Plaintiffs failed to give timely notice of any alleged breach of

4  warranty to BMS; Plaintiffs did not reasonably rely upon any alleged warranty; Plaintiffs failed

5  to satisfy all conditions precedent or subsequent to the enforcement of such alleged warranty;

6  and the alleged warranty was appropriately disclaimed, excluded, or modified.

7

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

8       Plaintiffs' breach of warranty claims are barred in whole or in part because they are not

9  recognized under or have been abolished by applicable state law or statute.

10

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

11       Plaintiffs' claims are barred in whole or in part by the applicable provisions of the United

12  States Constitution and/or the applicable Constitution of any other State or Commonwealth of

13  the United States whose laws might be deemed controlling in this case.  These provisions

14  include, but are not limited to, the First and Fourteenth Amendments to the Constitution of the

15  United States, because BMS's commercial speech regarding Onglyza and Kombiglyze was

16  neither false nor misleading.

17

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

18       The injuries or damages alleged by Plaintiffs can be attributed to several causes and,

19  accordingly, should be apportioned among the various causes according to the respective

20  contribution of each such cause to the harm sustained, if any.

21

### TWENTY-NINTH AFFIRMATIVE DEFENSE

22       Any verdict or judgment rendered against BMS must be reduced by those amounts that

23  have been, or will, with reasonable certainty, indemnify Plaintiff, in whole or in part, for any past

24  or future claimed economic loss, from any collateral source such as insurance, social security,

25  worker's compensation, or employee benefit programs.

26

### THIRTIETH AFFIRMATIVE DEFENSE

27       The proximate cause of Plaintiffs' alleged injuries was an independent modification or

28  alteration of the products at issue, which was not reasonably expected by BMS.  Any injuries or

1  expenses incurred by Plaintiffs were not caused by BMS, but may have been proximately caused,

2  in whole or part, by the unforeseen alteration, unintended use, misuse or abuse of the products

3  referenced in Plaintiffs' Complaint.

4  **THIRTY-FIRST AFFIRMATIVE DEFENSE**

5  Plaintiffs' claims against BMS are barred because Plaintiffs knowingly and voluntarily

6  assumed and/or incurred the risk of injury and Plaintiffs' claims are barred or should be reduced

7  under the principles of assumption of risk, informed consent, and/or knowledgeable user.

8  **THIRTY-SECOND AFFIRMATIVE DEFENSE**

9  Based on the scientific, medical, and technological knowledge existing at the time

10  Onglyza and/or Kombiglyze was allegedly used by Plaintiff, it was reasonably safe for its normal

11  and foreseeable use at all relevant times, or in light of existing reasonably available medical,

12  scientific, and technological knowledge.

13  **THIRTY-THIRD AFFIRMATIVE DEFENSE**

14  In the unlikely event that BMS is found liable to Plaintiff, BMS is entitled to a credit or

15  offset for any and all sums that Plaintiffs have received or may hereafter receive by way of any

16  and all settlements arising from Plaintiffs' claims and causes of action. BMS alternatively asserts

17  its right to a proportionate reduction of any damages based on comparative fault or the

18  percentage of negligence attributable to Plaintiffs or to any settling tortfeasor under applicable

19  state law.

20  **THIRTY-FOURTH AFFIRMATIVE DEFENSE**

21  Under applicable state law, the liability of each defendant for non-economic damages

22  shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of

23  non-economic damages allocated to that defendant in direct proportion to that defendant's

24  percentage of fault, and a separate judgment shall be rendered against that defendant for that

25  amount.

26  **THIRTY-FIFTH AFFIRMATIVE DEFENSE**

27  Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs seek damages in

28  excess of applicable state-law caps or limits on recovery of damages or of specific categories of

1  damages.

2  ### THIRTY-SIXTH AFFIRMATIVE DEFENSE

3      If Plaintiffs sustained injuries or losses as alleged in the Complaint, which BMS denies,

4  Plaintiffs' claims are barred, in whole or in part, because such injuries or losses may have been

5  caused by an individual, idiosyncratic reaction, or are otherwise not attributable to Onglyza

6  and/or Kombiglyze.

7  ### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

8      Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation

9  alleged, if any, resulted from independent, unforeseeable, superseding, and/or intervening causes

10  unrelated to any conduct of BMS.

11  ### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

12      Plaintiffs' claim for failure to warn is barred because Plaintiff, and/or Plaintiffs'

13  physician(s) knew or had reason to know of the risks of Onglyza and/or Kombiglyze.

14  ### THIRTY-NINTH AFFIRMATIVE DEFENSE

15      Plaintiffs have pleaded state law that does not govern Plaintiffs' claims, and as such, the

16  claims should be dismissed.

17  ### FORTIETH AFFIRMATIVE DEFENSE

18      Plaintiffs' claims are barred because Onglyza and Kombiglyze was not unreasonably

19  dangerous for their ordinary and foreseeable uses.

20  ### FORTY-FIRST AFFIRMATIVE DEFENSE

21      BMS had no duty to warn about any possible risks of Onglyza and Kombiglyze that were

22  not known at the time of the medication's manufacture and sale.

23  ### FORTY-SECOND AFFIRMATIVE DEFENSE

24      Plaintiffs' claims are barred because there was no practical or technically or legally

25  feasible alternative design that would have reduced the alleged risk without substantially

26  impairing the reasonably anticipated and intended use of Onglyza and/or Kombiglyze.

27  ### FORTY-THIRD AFFIRMATIVE DEFENSE

28      Plaintiffs' claims are barred, in whole or in part, because BMS acted in good faith at all

7

1  relevant times and gave adequate warnings of all known or reasonably knowable risks associated

2  with the use of its products.

### FORTY-FOURTH AFFIRMATIVE DEFENSE

4  Any conduct on the part of Defendants allegedly causing Plaintiffs' alleged injuries was

5  not the proximate cause or a substantial cause or contributing factor of such injury or damage, if

6  any.

### FORTY-FIFTH AFFIRMATIVE DEFENSE

8  To the extent that Plaintiffs seek punitive or exemplary damages for an alleged act or

9  omission of BMS, BMS asserts that no act or omission was oppressive, fraudulent, malicious,

10  willful, or wanton, and therefore, any award of punitive or exemplary damages is barred.

### FORTY-SIXTH AFFIRMATIVE DEFENSE

12  Any punitive damages claimed by Plaintiffs are barred because BMS cannot be held

13  liable in punitive damages under applicable state law for the unauthorized acts or omissions of its

14  employees or agents.

### FORTY-SEVENTH AFFIRMATIVE DEFENSE

16  Any punitive damages claimed by Plaintiffs are in violation of and are barred by the

17  Constitution of the United States, including, but not limited to, the Due Process and Equal

18  Protection Clauses contained in the Fifth and Fourteenth Amendments to the United States

19  Constitution; the Excessive Fines Clause of the Eighth Amendment to the United States; the

20  Double Jeopardy Clause in the Fifth Amendment to the United States Constitution; the Tenth

21  Amendment to the United States Constitution; and common law, public policy, and applicable

22  statutes and court rules.

### FORTY-EIGHTH AFFIRMATIVE DEFENSE

24  BMS did not breach any implied warranties or any warranties created by law.

### FORTY-NINTH AFFIRMATIVE DEFENSE

26  Venue is incorrect and/or improper in this judicial district.

### FIFTIETH AFFIRMATIVE DEFENSE

28  BMS is entitled to, and claims the benefit of, all defenses and presumptions set forth in or

8

ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY
TO PLAINTIFFS' COMPLAINT

1  arising from any rule of law or statute under applicable state law and/or any other law or statute

2  that may be applicable.

3  ### FIFTY-FIRST AFFIRMATIVE DEFENSE

4  Plaintiffs may have failed to join all indispensable parties, in which case it may not be

5  possible to accord complete relief to the parties that are already parties to this action and

6  Plaintiffs' failure to join all indispensable parties could result in prejudice.

7  ### FIFTY-SECOND AFFIRMATIVE DEFENSE

8  Plaintiffs have improperly joined parties in this action pursuant to California Code of

9  Civil Procedure sections 378 and 379.5.

10  ### FIFTY-THIRD AFFIRMATIVE DEFENSE

11  Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack standing to bring

12  such claims.

13  ### FIFTY-FOURTH AFFIRMATIVE DEFENSE

14  If Plaintiffs have sustained injuries or losses as alleged in the Complaint, which BMS

15  denies, such injuries or losses resulted from the Plaintiffs' pre-existing and/or unrelated medical,

16  genetic and/or environmental conditions, diseases, or illnesses, subsequent medical conditions or

17  natural courses of conditions for which BMS is not responsible.

18  ### FIFTY-FIFTH AFFIRMATIVE DEFENSE

19  BMS asserts that applicable choice of law rules should determine which jurisdiction's

20  laws govern this case, and expressly reserves the right to supplement this answer with any

21  defenses that may be available to it under the law of the jurisdictions determined to apply to it in

22  accordance with choice of law rules.

23  WHEREFORE, Defendant Bristol-Myers Squibb Company prays that:

24  1.  Plaintiffs take nothing by reason of the Complaint;

25  2.  The Complaint against BMS be dismissed in its entirety;

26  3.  BMS recovers its cost of suit and attorney's fees, under any applicable statute; and

27  4.  This Court award BMS such other relief as this Court may deem just and proper.

28  / / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Pursuant to California Code of Civil Procedure section 631, BMS hereby demands a trial by jury.

DATED: October 31, 2016

KING & SPALDING LLP

By: _____
Donald F. Zimmer, Jr.
Cameron J. Hoyler
Brian Priestley
Attorneys for Defendant
BRISTOL MYERS SQUIBB COMPANY

ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY
TO PLAINTIFFS' COMPLAINT

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY TO PLAINTIFFS' COMPLAINT**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

Melissa Michaels

ANSWER OF DEFENDANT BRISTOL-MYERS SQUIBB COMPANY
TO PLAINTIFFS' COMPLAINT

# STATE COURT DOCUMENT G

1   DONALD F. ZIMMER, JR. (Bar No. 112279)
      *fzimmer@kslaw.com*
2   **KING & SPALDING LLP**
    101 Second Street, Suite 2300
3   San Francisco, CA  94105
    Telephone:    +1 415 318 1200
4   Facsimile:    +1 415 318 1300

5   CAMERON J. HOYLER (Bar No. 273234)
      *choyler@kslaw.com*
6   BRIAN PRIESTLEY (Bar No. 301586)
      *bpriestley@kslaw.com*
7   **KING & SPALDING LLP**
    633 W. 5TH Street, Ste. 1700
8   Los Angeles, CA 90071
    Telephone:    +1 213 443 4355
9   Facsimile:    +1 213 443 4310

10  Attorneys for Defendant
    MCKESSON CORPORATION

11

12

13            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                    **COUNTY OF SAN FRANCISCO**

15

16  MICHAEL MARTIN, an individual, et al.,        Case No. CGC 16-554610

17              Plaintiffs,                         **ANSWER OF DEFENDANT MCKESSON**
                                                    **CORPORATION TO PLAINTIFFS'**
18              v.                                  **COMPLAINT**

19
    BRISTOL-MYERS SQUIBB COMPANY;
20  ASTRAZENECA PHARMACEUTICALS           Complaint Filed:        September 30, 2016
    LP; MCKESSON CORPORATION; and
21  DOES 1-50 INCLUSIVE

22              Defendants,

23

24

25

26

27

28

─────────────────────────────────────────────────────────────────
ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

Defendant **MCKESSON CORPORATION** ("McKesson") hereby answers the unverified Complaint (the "Complaint") filed by Plaintiffs as follows:

## GENERAL DENIAL

Pursuant to Code of Civil Procedure section 431.30, McKesson denies each and every allegation in the Complaint that relates to or is directed to McKesson or any of its alleged agents, servants, or employees and further denies that Plaintiffs have been injured or damaged to any extent or amount or are entitled to any relief whatsoever from McKesson.

## PRAYER FOR RELIEF

McKesson denies that Plaintiffs are entitled to recover any relief requested in Plaintiffs' Prayer, or any relief whatsoever.

## AFFIRMATIVE DEFENSES

McKesson asserts the following commonly recognized affirmative defenses in order to provide notice to Plaintiffs.  McKesson does not, however, waive the right to assert additional defenses based on applicable state law or the facts of the case as revealed through investigation and discovery.  Upon completion of discovery, and if the facts warrant, McKesson may withdraw or supplement any of these affirmative defenses as it may deem appropriate in addition to asserting cross-claims or counter-claims.  McKesson demands strict proof of all claims and allegations contained in Plaintiffs' Complaint that McKesson has not expressly admitted. Further answering and by way of additional defense, McKesson states as follows:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim against McKesson upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the applicable statute of repose.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of estoppel, waiver, laches or statutory and regulatory compliance.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred to the extent that they are not recognized by applicable state law.

**SIXTH AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims are based on strict products liability, such claims are barred, in whole or in part, to the extent applicable state law does not recognize a cause of action for strict products liability for prescription drugs such as Onglyza and Kombiglyze XR.

**SEVENTH AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims for strict product liability are based on a design defect theory, such claims are barred to the extent that applicable state law does not recognize a strict liability design defect claim for prescription drugs such as Onglyza and Kombiglyze XR.

**EIGHTH AFFIRMATIVE DEFENSE**

To the extent Plaintiffs' claims for strict product liability are based on a failure to warn theory, such claims are barred to the extent that applicable state law does not recognize a strict liability failure to warn claim for prescription drugs such as Onglyza and Kombiglyze XR.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because defendants complied with applicable regulatory standards.

**TENTH AFFIRMATIVE DEFENSE**

Some or all of Plaintiffs' claims are barred by the learned intermediary and/or sophisticated user doctrines.  At all relevant times herein, Plaintiffs' prescribing physician(s) were in the position of learned intermediaries and/or sophisticated users and/or sophisticated purchasers, fully knowledgeable and informed of the benefits and alleged risks of Onglyza and Kombiglyze XR.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory negligence or fault.

/ / /

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, by the doctrine of comparative negligence or fault.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are fully informed to the extent Plaintiffs are fully informed of the alleged risks of the use of Onglyza and Kombiglyze XR and Plaintiffs gave informed consent.

**FOURTEENTH AFFIRMATIVE DEFENSE**

The injuries, damages, and losses alleged in the Complaint, none being admitted, were caused in whole or in part by the negligence of the Plaintiffs, and/or others, over whom McKesson exercised no control, had no opportunity to anticipate or right to control, and with whom McKesson had no legal relationship by which liability could be attributed to it because of the actions of the Plaintiffs, and/or others, which by comparison was far greater than any conduct alleged as to McKesson.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation alleged, if any, was caused in whole or in part by Plaintiffs' failure to exercise reasonable care and diligence to mitigate these alleged damages.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred in that Onglyza and Kombiglyze XR were designed, manufactured and labeled in a manner consistent with the state of the art at the pertinent time.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred in that Onglyza's and Kombiglyze XR's design, manufacture, and labeling were at all times approved by the U.S. Food and Drug Administration as safe and effective, and were consistent with federal law.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

To the extent that Plaintiffs assert claims based on any alleged adherence or lack of adherence to and compliance with applicable federal laws, regulations, and rules, Plaintiffs' claims are preempted by federal law.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred and/or this Court should defer this matter, in whole or in part, pursuant to the doctrine of primary jurisdiction, in that the FDA is charged under the law with regulating prescription drugs, including Onglyza and Kombiglyze XR, and is specifically charged with determining the content of the warnings and labeling for prescription drugs.

### TWENTIETH AFFIRMATIVE DEFENSE

To the extent Plaintiffs' claims attempt to use state law to enforce the U.S. Food, Drug and Cosmetic Act or FDA regulations promulgated under it, including alleged misrepresentations made to the FDA, such claims are preempted as recognized in *Buckman Co. v. Plaintiffs' Legal Committee* (2001) 531 U.S. 341.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are preempted, in whole or in part, to the extent Plaintiffs' claims depend on an asserted state-law duty to implement a labeling change or redesign Onglyza and Kombiglyze XR.  (See *Mutual Pharmaceutical Co. v. Bartlett* (2013) 133 S. Ct. 2466; *PLIVA, Inc. v. Mensing* (2011) 131 S. Ct. 2567.)

### TWENTY-SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are preempted, in whole or in part, to the extent Plaintiffs' claims depend on an asserted state-law duty to implement a change to the labeling of Onglyza and Kombiglyze XR that would have required the FDA's prior approval.  (See *Mutual Pharmaceutical Co. v. Bartlett* (2013) 133 S. Ct. 2466; *PLIVA, Inc. v. Mensing* (2011) 131 S. Ct. 2567.)

### TWENTY-THIRD AFFIRMATIVE DEFENSE

Some or all of Plaintiffs' claims are barred by the doctrines concerning unavoidably unsafe products, including, but not limited to, the operation of comments j and k to Section 402A of the RESTATEMENT (SECOND) OF TORTS and/or barred by the RESTATEMENT (THIRD) OF TORTS.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' breach of warranty claims are barred because there is no privity of contract between Plaintiffs and McKesson; Plaintiffs failed to give timely notice of any alleged breach of

ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

warranty to McKesson; Plaintiffs did not reasonably rely upon any alleged warranty; Plaintiffs failed to satisfy all conditions precedent or subsequent to the enforcement of such alleged warranty; and the alleged warranty was appropriately disclaimed, excluded, or modified.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' breach of warranty claims are barred in whole or in part because they are not recognized under or have been abolished by applicable state law or statute.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable provisions of the United States Constitution and/or the applicable Constitution of any other State or Commonwealth of the United States whose laws might be deemed controlling in this case.  These provisions include, but are not limited to, the First and Fourteenth Amendments to the Constitution of the United States, because McKesson's commercial speech regarding Onglyza and Kombiglze XR was neither false nor misleading.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The injuries or damages alleged by Plaintiffs can be attributed to several causes and, accordingly, should be apportioned among the various causes according to the respective contribution of each such cause to the harm sustained, if any.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

Any verdict or judgment rendered against McKesson must be reduced by those amounts that have been, or will, with reasonable certainty, indemnify Plaintiffs, in whole or in part, for any past or future claimed economic loss, from any collateral source such as insurance, social security, worker's compensation, or employee benefit programs.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The proximate cause of Plaintiffs' alleged injuries was an independent modification or alteration of the products at issue, which was not reasonably expected by McKesson.  Any injuries or expenses incurred by Plaintiffs were not caused by McKesson, but may have been proximately caused, in whole or part, by the unforeseen alteration, unintended use, misuse or abuse of the products referenced in Plaintiffs' Complaint.

ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

**THIRTIETH AFFIRMATIVE DEFENSE**

Plaintiffs' claims against McKesson are barred because Plaintiffs knowingly and voluntarily assumed and/or incurred the risk of injury and Plaintiffs' claims are barred or should be reduced under the principles of assumption of risk, informed consent, and/or knowledgeable user.

**THIRTY-FIRST AFFIRMATIVE DEFENSE**

Based on the scientific, medical, and technological knowledge existing at the time Onglyza and Kombiglyze XR were allegedly used by Plaintiffs, it was reasonably safe for its normal and foreseeable use at all relevant times, or in light of existing reasonably available medical, scientific, and technological knowledge.

**THIRTY-SECOND AFFIRMATIVE DEFENSE**

In the unlikely event that McKesson is found liable to Plaintiffs, McKesson is entitled to a credit or offset for any and all sums that Plaintiffs have received or may hereafter receive by way of any and all settlements arising from Plaintiffs' claims and causes of action. McKesson alternatively asserts its right to a proportionate reduction of any damages based on comparative fault or the percentage of negligence attributable to Plaintiffs or to any settling tortfeasor under applicable state law.

**THIRTY-THIRD AFFIRMATIVE DEFENSE**

Under applicable state law, the liability of each defendant for non-economic damages shall be several only and shall not be joint.  Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount.

**THIRTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, to the extent Plaintiffs seek damages in excess of applicable state-law caps or limits on recovery of damages or of specific categories of damages.

/ / /

ANSWER OF DEFENDANT McKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

**THIRTY-FIFTH AFFIRMATIVE DEFENSE**

If Plaintiffs sustained injuries or losses as alleged in the Complaint, which McKesson denies, Plaintiffs' claims are barred, in whole or in part, because such injuries or losses may have been caused by an individual, idiosyncratic reaction, or are otherwise not attributable to Onglyza and Kombiglyze XR.

**THIRTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiffs' alleged loss, damage, injury, harm, expense, diminution, or deprivation alleged, if any, resulted from independent, unforeseeable, superseding, and/or intervening causes unrelated to any conduct of McKesson.

**THIRTY-SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs' claim for failure to warn is barred because Plaintiffs, and/or Plaintiffs' physician(s) knew or had reason to know of the risks of Onglyza and Kombiglyze XR.

**THIRTY-EIGHTH AFFIRMATIVE DEFENSE**

Plaintiffs have pleaded state law that does not govern Plaintiffs' claims, and as such, the claims should be dismissed.

**THIRTY-NINTH AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred because Onglyza and Kombiglyze XR were not unreasonably dangerous for their ordinary and foreseeable uses.

**FORTIETH AFFIRMATIVE DEFENSE**

McKesson had no duty to warn about any possible risks of Onglyza and Kombiglyze XR that were not known at the time of the medication's manufacture and sale.

**FORTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred because there was no practical or technically or legally feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended use of Onglyza and Kombiglyze XR.

**FORTY-SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred, in whole or in part, because McKesson acted in good faith at all relevant times and gave adequate warnings of all known or reasonably knowable risks

1  associated with the use of its products.

2  **FORTY-THIRD AFFIRMATIVE DEFENSE**

3  Any conduct on the part of Defendants allegedly causing Plaintiffs' alleged injuries was

4  not the proximate cause or a substantial cause or contributing factor of such injury or damage, if

5  any.

6  **FORTY-FOURTH AFFIRMATIVE DEFENSE**

7  To the extent that Plaintiffs seek punitive or exemplary damages for an alleged act or

8  omission of McKesson, McKesson asserts that no act or omission was oppressive, fraudulent,

9  malicious, willful, or wanton, and therefore, any award of punitive or exemplary damages is

10  barred.

11  **FORTY-FIFTH AFFIRMATIVE DEFENSE**

12  Any punitive damages claimed by Plaintiffs are barred because McKesson cannot be held

13  liable in punitive damages under applicable state law for the unauthorized acts or omissions of its

14  employees or agents.

15  **FORTY-SIXTH AFFIRMATIVE DEFENSE**

16  Any punitive damages claimed by Plaintiffs are in violation of and are barred by the

17  Constitution of the United States, including, but not limited to, the Due Process and Equal

18  Protection Clauses contained in the Fifth and Fourteenth Amendments to the United States

19  Constitution; the Excessive Fines Clause of the Eighth Amendment to the United States; the

20  Double Jeopardy Clause in the Fifth Amendment to the United States Constitution; the Tenth

21  Amendment to the United States Constitution; and common law, public policy, and applicable

22  statutes and court rules.

23  **FORTY-SEVENTH AFFIRMATIVE DEFENSE**

24  McKesson did not breach any implied warranties or any warranties created by law.

25  **FORTY-EIGHTH AFFIRMATIVE DEFENSE**

26  Venue is incorrect and/or improper in this judicial district.

27  **FORTY-NINTH AFFIRMATIVE DEFENSE**

28  McKesson is entitled to, and claims the benefit of, all defenses and presumptions set forth

ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

1   in or arising from any rule of law or statute under applicable state law and/or any other law or

2   statute that may be applicable.

3   ### FIFTIETH AFFIRMATIVE DEFENSE

4   Plaintiffs may have failed to join all indispensable parties, in which case it may not be

5   possible to accord complete relief to the parties that are already parties to this action and

6   Plaintiffs' failure to join all indispensable parties could result in prejudice.

7   ### FIFTY-FIRST AFFIRMATIVE DEFENSE

8   Plaintiffs have improperly joined parties in this action pursuant to California Code of

9   Civil Procedure sections 378 and 379.5.

10   ### FIFTY-SECOND AFFIRMATIVE DEFENSE

11   Plaintiffs' claims are barred, in whole or in part, because Plaintiffs lack standing to bring

12   such claims.

13   ### FIFTY-THIRD AFFIRMATIVE DEFENSE

14   If Plaintiffs have sustained injuries or losses as alleged in the Complaint, which

15   McKesson denies, such injuries or losses resulted from the Plaintiffs' pre-existing and/or

16   unrelated medical, genetic and/or environmental conditions, diseases, or illnesses, subsequent

17   medical conditions or natural courses of conditions for which McKesson is not responsible.

18   ### FIFTY-FOURTH AFFIRMATIVE DEFENSE

19   McKesson asserts that applicable choice of law rules should determine which

20   jurisdiction's laws govern this case, and expressly reserves the right to supplement this answer

21   with any defenses that may be available to it under the law of the jurisdictions determined to

22   apply to it in accordance with choice of law rules.

23   ### FIFTY-FIFTH AFFIRMATIVE DEFENSE

24   McKesson is not a proper party to this action.  Plaintiffs fail to demonstrate that

25   McKesson distributed the drugs that Plaintiffs claim to have ingested.

26   / / /

27   / / /

28   / / /

1    WHEREFORE, Defendant McKesson Corporation prays that:

2    1.    Plaintiffs take nothing by reason of the Complaint;

3    2.    The Complaint against McKesson be dismissed in its entirety;

4    3.    McKesson recovers its cost of suit and attorney's fees, under any applicable statute;

5          and

6    4.    This Court award McKesson such other relief as this Court may deem just and

7          proper.

8                            **<u>DEMAND FOR JURY TRIAL</u>**

9          Pursuant to California Code of Civil Procedure section 631, McKesson hereby demands a

10   trial by jury.

11

12   DATED: October 31, 2016                    KING & SPALDING LLP

13

14

15                                             By: _____.

16                                                  Donald F. Zimmer, Jr.
                                                    Cameron J. Hoyler
17                                                  Brian Priestley
                                                    Attorneys for Defendant
18                                                  MCKESSON CORPORATION

19

20

21

22

23

24

25

26

27

28

ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel: 877-480-9142
Fax: 213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**: LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c). The transmission was reported as complete without error.

☒   **BY U.S. MAIL**: 1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

Melissa Michaels

11
ANSWER OF DEFENDANT MCKESSON CORPORATION TO PLAINTIFFS' COMPLAINT

# STATE COURT DOCUMENT H

1   DONALD F. ZIMMER, JR. (Bar No. 112279)
      *fzimmer@kslaw.com*
2   **KING & SPALDING LLP**
    101 Second Street, Suite 2300
3   San Francisco, CA  94105
    Telephone:     +1 415 318 1200
4   Facsimile:     +1 415 318 1300

5   CAMERON J. HOYLER (Bar No. 273234)
      *choyler@kslaw.com*
6   VINCENT TREMONTI (Bar No. 301571)
      *vtremonti@kslaw.com*
7   **KING & SPALDING LLP**
    633 West 5th St., Suite 1700
8   Los Angeles, CA 90071
    Telephone:     +1 213 443 4355
9   Facsimile:     +1 213 443 4310

10  Attorneys for Defendants
    MCKESSON CORPORATION, BRISTOL-
11  MYERS SQUIBB COMPANY (special
    appearance) and ASTRAZENECA
12  PHARMACEUTICALS LP (special appearance)

13

14             **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                       **COUNTY OF SAN FRANCISCO**

16  MICHAEL MARTIN, an individual, et al.,          Case No.: CGC 16-554610
                                                     Reservation Number: 10311212-06
17             Plaintiffs,
                                                     **NOTICE OF MCKESSON**
18        v.                                         **CORPORATION, BRISTOL-MYERS**
                                                     **SQUIBB COMPANY, AND**
19  BRISTOL-MYERS SQUIBB COMPANY;                    **ASTRAZENECA PHARMACEUTICALS**
    ASTRAZENECA PHARMACEUTICALS LP;                  **LP'S MOTION TO SEVER AND DISMISS**
20  MCKESSON CORPORATION; and DOES 1-               **BASED ON FORUM NON CONVENIENS**
    50 INCLUSIVE
21                                                   Complaint Filed:     September 30, 2016
               Defendants.                           Trial Date:          None
22
                                                     Date:                December 12, 2016
23                                                   Time:                9:30 a.m.
                                                     Dept.:               302
24                                                   Judge:               Hon. Harold E. Kahn

25

26

27

28

─────────────────────────────────────────────────────────────────

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**11/01/2016**
**Clerk of the Court**
BY:EDNALEEN ALEGRE
**Deputy Clerk**

1    **PLEASE TAKE NOTICE** that on December 12, 2016 at 9:30 a.m., or as soon thereafter

2    as the matter may be heard, in Department 302 of the Superior Court of the State of California

3    for the County of San Francisco located at 400 McAllister Street, San Francisco, CA 94102,

4    McKesson Corporation, Bristol-Myers Squibb Company, and AstraZeneca Pharmaceuticals LP

5    will, and hereby do, move this Court for an Order Severing and Dismissing the following Out-of-

6    State Plaintiffs' Claims on the basis of Forum Non Conveniens:

7        • Ronald Letell, resident of Louisiana;

8        • Donald Carpenter, resident of Ohio;

9        • Elizabeth McMahon, resident of Pennsylvania;

10       • John W. Hunt, Sr., resident of Georgia.

11    This motion is based on this Notice of Motion and Motion, the attached Memorandum of

12    Points and Authorities, the Consent to Jurisdiction, the attached declaration of Cameron J.

13    Hoyler, the complete files and records in this action, and on such other oral and documentary

14    evidence as the Court may permit before ruling on this motion.

15

16    DATED:  October 31, 2016          **KING & SPALDING LLP**

17

18                         By:

19                         DONALD F. ZIMMER, JR.
                                CAMERON J. HOYLER

20                         VINCENT TREMONTI
                                Attorneys for Defendants

21                         MCKESSON CORPORATION,
                                BRISTOL-MYERS SQUIBB COMPANY,

22                         and ASTRAZENECA
                                PHARMACEUTICALS LP

23

24

25

26

27

28

NOTICE OF MCKESSON CORPORATION, BRISTOL-MYERS SQUIBB COMPANY, AND ASTRAZENECA
PHARMACEUTICALS' MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**NOTICE OF MCKESSON CORPORATION, BRISTOL-MYERS SQUIBB COMPANY, AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
SANDERS PHILLIPS GROSSMAN, LLP
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel: 877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

2

# STATE COURT DOCUMENT I

DONALD F. ZIMMER, JR., (Bar No. 112279)
  *fzimmer@kslaw.com*
**KING & SPALDING LLP**
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone:     +1 415 318 1200
Facsimile:     +1 415 318 1300

CAMERON J. HOYLER (Bar No. 273234)
  *choyler@kslaw.com*
VINCENT TREMONTI (Bar No. 301571)
  *vtremonti@kslaw.com*
**KING & SPALDING LLP**
633 West 5th St., Suite 1700
Los Angeles, CA 90071
Telephone:     1 213 443 4355
Facsimile:     1 213 443 4310

Attorneys for Defendants
MCKESSON CORPORATION, BRISTOL-
MYERS SQUIBB COMPANY (special
appearance) and ASTRAZENECA
PHARMACEUTICALS LP (special
appearance)

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**11/01/2016**
**Clerk of the Court**
**BY:EDNALEEN ALEGRE**
**Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MICHAEL MARTIN, an individual, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRISTOL-MYERS SQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE <br><br> Defendants. | Case No.: CGC 16-554610 <br> Reservation Number: 10311212-06 <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS MCKESSON CORPORATION, BRISTOL-MYERS SQUIBB COMPANY, AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS** <br><br> Complaint Filed:   September 30, 2016 <br> Trial Date:          None <br><br> Date:     December 12, 2016 <br> Time:     9:30 a.m. <br> Dept.:     302 <br> Judge:     Hon. Harold E. Kahn |

### TABLE OF CONTENTS

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS ...................................................... 3

III.   LEGAL STANDARD ............................................................ 3

IV.   LEGAL AUTHORITIES AND ARGUMENT............................... 5

    A.   A Suitable Alternative Forum Exists in All Cases ........................ 6

    B.   The Private Interest Factors Weigh Heavily in Favor of Dismissal ............... 7

        1.   All of the Key Evidence is Located in Plaintiffs' Home States.................................................................. 7

        2.   McKesson's Presence in California Does Not Alter the Balance.................................................................. 9

        3.   The Cost to the Parties of Proceeding in Non-Resident Plaintiffs' Home States Would Not Be Meaningfully Higher and Does Not Sway the Balance of the Factors.................... 10

    C.   Public-Interest Factors Also Favor Non-Resident Plaintiffs' Home States ............................................................... 10

    D.   Any Argument By Non-Resident Plaintiffs that Their Choice of Forum is Entitled to Deference or that Defendants Did Not Provide Extensive Evidentiary Support for this Motion Lacks Merit........................................................................ 12

V.    CONCLUSION.................................................................. 13

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

*Archibald v. Cinerama Hotels*
(1976) 15 Cal.3d 853 (*Archibald*)................................................12

*Boaz v. Boyle & Co.*
(1995) 40 Cal.App.4th 700 (*Boaz*)................................4, 5, 6, 12

*Campbell v. Parker-Hannifin Corp.*
(1999) 69 Cal.App.4th 1534 ........................................4, 13

*Carlin v. Superior Court*
(1996) 13 Cal.4th 1104 ................................................7

*David v. Medtronic, Inc.*
(2015) 237 Cal.App.4th 734 ..........................................6

*Ford Motor Co. v. Insurance Co. of North America*
(1995) 35 Cal.App.4th 604 ......................................12, 13

*Great Northern Ry. Co. v. Superior Court*
(1970) 12 Cal.App.3d 105 (*Great Northern Ry.*) ...................6, 10

*Guimei v. General Elec. Co.*
(2009) 172 Cal.App.4th 689 (*Guimei*)...............................5, 6

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947), *superseded by statute on other grounds*...................7, 10, 11

*Hansen v. Owens-Corning Fiberglas Corp.*
(1996) 51 Cal.App.4th 753 ............................................10

*Morris v. AFGA Corp.*
(2006) 144 Cal.App.4th 1452 (*Morris*)................................11

*National Football League v. Fireman's Fund Ins. Co.*
(2013) 216 Cal.App.4th 902 ..........................................12

*Rinauro v. Honda Motors Co.*
(1995) 31 Cal.App.4th 506 ............................................5

*Shiley Inc. v. Superior Court*
(1992) 4 Cal.App.4th 126 ............................................4

*Stangvik v. Shiley, Inc.*
(1991) 54 Cal.3d 744 (*Stangvik*)................................. passim

*Stevens v. Parke, Davis & Co.*
(1973) 9 Cal.3d 51 ..................................................7

ii

1

**STATUTES**

2

Code Civ. Proc., § 378 ...................................................................................................3

3

Code Civ. Proc., § 378 and 379.5 ..................................................................................6

4

Code Civ. Proc., § 418.10 ............................................................................................13

5

**OTHER AUTHORITIES**

6

*LA to Cut More Than 500 Court Positions In Consolidated Plan*, Law 360, March
    4, 2013.....................................................................................................................11

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

I. **INTRODUCTION**

Four of the five plaintiffs in this case reside outside of California in four different states. These four plaintiffs, (collectively, non-resident plaintiffs)[1] are citizens of other states who have no connection to California, and who have improperly joined their claims with a single California resident in a multi-plaintiff complaint designed to resist a forum challenge. McKesson Corporation (McKesson), Bristol-Myers Squibb Company (BMS), and AstraZeneca Pharmaceuticals LP (AstraZeneca) (collectively, Defendants) move to sever and dismiss the claims of the non-resident plaintiffs based on forum non conveniens, as they should pursue their personal injury claims in their home states where they, their prescribing and treating physicians, relevant witnesses, and crucial documentary evidence reside.

The non-resident plaintiffs' home states are far more suitable forums for their claims. (See *Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).)  All of the relevant factors demonstrate that California is a seriously inconvenient forum to adjudicate the non-residents' claims because:

- They have resided in other states "at all times relevant to this action;"
- They allegedly obtained and took "Saxagliptin"[2] (Onglyza® and Kombiglyze XR®) in other states;
- Their alleged injuries and treatment occurred in other states;
- Key fact witnesses such as non-resident plaintiffs' prescribers, treating doctors, employers, family members, and corroborating witnesses all are located in their home states—beyond the reach of this Court's subpoena power;
- Medical records, prescription records, employment records, and damages evidence are all located in their home states—again, beyond the reach of a California subpoena.

The costs to California's courts and citizens also favor dismissal.  California courts are overburdened with congested calendars, and the additional time and cost of litigating the non-

---

[1] The non-resident plaintiffs are Ronald Letell, resident of Louisiana; Donald Carpenter, resident of Ohio; Elizabeth McMahon, resident of Pennsylvania; and John W. Hunt, Sr., resident of Georgia.

[2] Plaintiffs complaint refers to Onglyza® and Kombiglyze XR® collectively as "Saxagliptin."  It is unclear from the complaint which drug, if any, each plaintiff allegedly ingested.  This motion will refer to the drugs collectively as "saxagliptin."

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

1    resident plaintiffs' claims here would unfairly burden California jurors and taxpayers.  Instead,

2    the non-resident plaintiffs' home states should shoulder the burden associated with adjudicating

3    the claims of their own citizens.  Further, the local community here has no concern with claims

4    involving alleged injuries to out-of-state residents as a result of out-of-state use of medications

5    made by out-of-state defendants and prescribed by out-of-state physicians.  Additionally, if these

6    claims are allowed to proceed, this Court will have to apply the laws of five different states when

7    adjudicating this case.  Courts in the non-resident plaintiffs' home states are better suited to

8    apply their own state's laws.[3]

9         McKesson expects Plaintiffs will argue that this Court should deny this motion and/or

10   first permit discovery because McKesson maintains its principal place of business in California.

11   The presence of a single California-resident defendant, however, does not change the balance of

12   factors that favors dismissing the non-resident plaintiffs' claims.  (See *Stangvik*, *supra*, 54 Cal.3d

13   at p. 756-757 [affirming forum non conveniens dismissal despite fact that the only defendant,

14   who designed and manufactured the heart valves at issue, was a California resident].)  Moreover,

15   while no plaintiff alleges <u>any</u> contact with McKesson or that he or she specifically relied on

16   anything McKesson said or did, even if such activity occurred, it is not alleged to have happened

17   in California, and would have occurred in Plaintiffs' own home states.  No discovery from

18   McKesson will change the outcome of this motion or put it in a different position than the

19   defendant in *Stangvik*, especially as McKesson is merely a pass-through distributor with no

20   substantive role in the development of saxagliptin or warnings associated with the products.

21        Furthermore, BMS and AstraZeneca—the manufacturers—do not reside in California.

22   Rather, as explained in BMS and AstraZeneca's Motion to Quash Service of Process, BMS is a

23

---

24   [3] Defendants anticipate that before the date set for hearing on this motion, this case will be deemed complex and

25   assigned to the Honorable Curtis E.A. Karnow in Department 304, where other, related saxagliptin cases are pending.  On October 4, 2016, Judge Karnow granted Defendants' motion to dismiss based on forum non conveniens in the first two related saxagliptin cases in which this motion was heard, *Williams, et al. v. Bristol-Myers*

26   *Squibb Company, et al.* (CGC-16-550418), and *Leedy, et al. v. Bristol-Myers Squibb Company, et al.* (CGC-16-552157).  The factual circumstances here are indistinguishable from those in *Williams* and *Leedy*.  The two

27   California-resident plaintiffs in Williams and Leedy are proceeding before Judge Karnow, with a status conference set for November 18, 2016, and all non-California-resident plaintiffs were dismissed without prejudice and will be

28   permitted to refile their cases in their home states within 90 days, pursuant to Defendants' consent to jurisdiction.

1   Delaware corporation with its principal place of business in New York, New York, while

2   AstraZeneca is a Delaware limited partnership with its principal place of business in

3   Wilmington, Delaware.[4]  Neither BMS nor AstraZeneca has ever maintained its principal place

4   of business in California.  (See BMS and AstraZeneca's Motion to Quash Service of Process for

5   Lack of Personal Jurisdiction, filed concurrently with this motion.)

6   **II.   STATEMENT OF FACTS**

7          Only one of the five plaintiffs in this case is from California.  The non-resident plaintiffs

8   are, and at all relevant times were, residents of one of the following states: Georgia, Ohio,

9   Pennsylvania, and Louisiana.  (*Martin* Complaint (Complaint), ¶¶ 6-9, attached as Exhibit 1 to

10  the Declaration of Cameron J. Hoyler (Hoyler Decl.).)  Plaintiffs allege they sustained various

11  personal injuries as a result of their ingestion of the medicine "Saxagliptin" including "heart

12  failure, congestive heart failure, cardiac failure, and/or death."  (*Id.* at ¶ 43.)

13         Plaintiffs further allege that McKesson, BMS, and AZ "manufactur[ed], label[ed],

14  package[ed], market[ed], advertis[ed], distribut[ed], and [sold] Saxagliptin" during the relevant

15  times at issue.  (*Id.* at  ¶¶ 11–13.)  It is unclear which, if any, of the remainder of the allegations

16  in the complaint are directed against McKesson because Plaintiffs do not distinguish between

17  allegations of conduct by AstraZeneca, BMS, and McKesson.  (See, e.g., Complaint, ¶¶ 24-25,

18  30-34, Ex. 1 to Hoyler Decl.)

19  **III.   LEGAL STANDARD**

20         Permissive joinder is permitted when plaintiffs' claims "aris[e] out of the same

21  transaction, occurrence, or series of transactions or occurrences" and when a common question

22  of law or fact applies to each.  (Civ. Proc. Code § 378.)  Where plaintiffs have been improperly

23  joined under section 378, the court may order a severance in the interests of justice and to

24  prevent undue prejudice to defendants.  (*Id.* at §§ 379.5, 1048.)  Furthermore, section 410.30(a)

25  requires courts to dismiss or stay an action when it finds that "in the interest of substantial justice

26  an action should be heard in a forum outside this state."  If a suitable alternative forum exists,

27

28

---

[4] AstraZeneca notes that none of its limited partners are domiciled in California, and the Complaint makes no allegation otherwise.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

1  courts should stay or dismiss an action when the balance of private and public factors makes it

2  more convenient to proceed in the alternative forum.  (*Stangvik*, *supra,* 54 Cal.3d at p. 751.)

3    In *Stangvik*, the Supreme Court repeated the relevant principles that supported adopting

4  the forum-non-conveniens doctrine in California:

5     "'There are manifest reasons for preferring residents in access to
   often overcrowded Courts, . . . .' . . . [T]he injustices and burdens

6     on local courts and taxpayers, as well as on those leaving their
   work and businesses to serve as jurors, which can follow from an

7     unchecked and unregulated importation of transitory causes of
   action for trial in this state . . . require that our courts, acting upon

8     the equitable principles . . ., exercise their discretionary power to
   decline to proceed in those causes of action which they conclude,

9     on satisfactory evidence, may be more appropriately and justly
   tried elsewhere."

10  (*Stangvik*, *supra*, 54 Cal.3d at p. 751 [quoting *Price v. Atchison, T. & S.F. Ry. Co.* (1954) 42

11  Cal.2d 577, 582–584].)

12

13    In determining whether a suitable alternative forum exists, courts examine "whether an

14  action may be commenced in the alternative jurisdiction and a valid judgment obtained in that

15  location against the defendant."  (*Id.* at p. 752, fn.3;  see also *Campbell v. Parker-Hannifin Corp.*

16  (1999) 69 Cal.App.4th 1534, 1542; *Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132

17  ["There is no balancing of interests in this decision, nor any discretion to be exercised."].)

18     [A] forum is suitable if the defendant is amenable to process there,
   there is no procedural bar to the ability of courts of the foreign

19     jurisdiction to reach the issues raised on their merits (or, if there is,
   the advantage of the bar—typically, the statute of limitations—is

20     waived by defendants), and adjudication in the alternative forum is
   by an independent judiciary applying what American courts

21     regard, generally, as due process of law.

22  (*Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, 704, 711 (*Boaz*) [affirming dismissal of

23  pharmaceutical product liability action in California on forum non conveniens grounds, where all

24  but one plaintiff were foreign residents and all but one manufacturer did business in California].)

25    "The fact that a plaintiff will be disadvantaged by the law of that [alternate] jurisdiction,

26  or that the plaintiff will probably or even certainly lose, does not render the forum 'unsuitable' in

27  this analysis."  (*Id.* at p. 711.)  Put another way, "'the fact [that] California law would likely

28  provide plaintiffs with certain advantages of procedural or substantive law cannot be considered

1  as a factor in plaintiffs' favor in the forum non conveniens balance.'" (*Boaz*, *supra*, 40

2  Cal.App.4th at p. 709, quoting *Stangvik*, *supra*, 54 Cal.3d at p. 754.)  This Court should not give

3  any weight to the fact that the alternate jurisdiction's law is potentially less favorable than

4  California law so long as "some remedy is afforded." (*Stangvik*, *supra*, 54 Cal.3d at p. 754,

5  fn.5.)  There can be no dispute that a sister state affords due process of law and provides some

6  remedy for personal injuries.  (See *Boaz*, *supra*, 40 Cal. App. 4th at p. 704, 711; *Guimei v.*

7  *General Elec. Co.* (2009) 172 Cal.App.4th 689, 696 (*Guimei*).)

8        Once an alternative forum is found suitable, courts balance the "private interests of the

9  litigants and the interests of the public in retaining the action for trial in California." (*Id.* at

10  p. 751.)  Private interest factors refer to those elements which "make trial and the enforceability

11  of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to

12  sources of proof, the cost of obtaining attendance of witnesses, and the availability of

13  compulsory process for attendance of unwilling witnesses." (*Ibid.*)  Public interest factors

14  include "avoidance of overburdening local courts with congested calendars, protecting the

15  interests of potential jurors so that they are not called upon to decide cases in which the local

16  community has little concern, and weighing the competing interests of California and the

17  alternate jurisdiction in the litigation." (*Ibid.*)  All of these factors must be balanced in deciding

18  a forum non conveniens motion; reliance on any single factor is improper.  (*Stangvik*, *supra*, 54

19  Cal.3d at p. 753 n.4 ["undue emphasis on a single factor is especially threatening to a balanced

20  analysis"]; see also *Rinauro v. Honda Motors Co.* (1995) 31 Cal.App.4th 506, 510 ["No one

21  factor should determine the outcome of a forum non conveniens motion"].)

22  **IV.    LEGAL AUTHORITIES AND ARGUMENT**

23        The reasoning of the Supreme Court in *Stangvik* compels dismissal here because: (1) the

24  non-resident plaintiffs are residents of other states; (2) the relevant evidence is located in the

25  states of their residence; (3) California courts are already overburdened and would be further

26  congested if they were required to hear all similar actions filed by foreign plaintiffs; and

27  (4) California has little interest in alleged injuries that occurred outside of California to out-of-

28  state plaintiffs.  Thus, the balance of private and public interest factors weigh in favor of the

5

1   alternate forums, and it is the Court's "duty to apply the doctrine [of forum non conveniens]" and

2   dismiss the non-resident plaintiffs' actions.[5]  (*Great Northern Ry. Co. v. Superior Court* (1970)

3   12 Cal.App.3d 105, 110 (*Great Northern Ry.*).)

4       **A.    A Suitable Alternative Forum Exists in All Cases**

5       The non-resident plaintiffs admit that they are, and at all relevant times were, residents of

6   four states other than California.  (Complaint, ¶¶ 6-9, Ex. 1 to Hoyler Decl.)  These sister states

7   are suitable alternative forums because "[they] ha[ve] jurisdiction and the action[s] in th[ose]

8   forum[s] will not be barred by the statute of limitations."  (*Guimei*, *supra*, 172 Cal.App.4th at

9   p. 696 [citing *Morris v. AFGA Corp.* (2006) 144 Cal.App.4th 1452, 1464 (*Morris*)].)  Indeed,

10  each of the non-resident plaintiffs are residents of other American states which "apply what

11  American courts regard, generally, as due process of law."  (*Boaz*, *supra*, 40 Cal.App.4th at

12  p. 711.)

13      Defendants are subject to jurisdiction in the non-resident plaintiffs' home states.  Indeed,

14  Defendants expressly consent to jurisdiction in each and every one.  (See Consent to Jurisdiction

15  and Agreement Regarding Statute of Limitations, filed concurrently with this Motion ["Consent

16  to Jurisdiction"].)

17      Not only have Defendants consented to jurisdiction in the non-resident plaintiffs' home

18  states, but there are no procedural bars to actions in their respective home states.  Defendants

19  have agreed to deem actions filed by the non-resident plaintiffs in their home states as

20  commencing retroactively on the filing dates of their respective cases in California.  (See

21  Consent to Jurisdiction.)  Consequently, so long as the complaints in these cases were timely

22  filed in California, the re-filing of these claims in the non-resident plaintiffs' home states will

23  also be timely when completed within 90 days of dismissal from this Court.  (*Ibid.*)

24

25

26  ――――――――――――――――――
    [5] As mentioned above, Plaintiffs' claims should be severed when dismissed in accordance with Code of Civil

27  Procedure sections 378 and 379.5.  (See *David v. Medtronic, Inc.* (2015) 237 Cal.App.4th 734, 740–741 [upholding
    severance of non-resident plaintiffs' claims in advance of upholding forum *non conveniens* dismissal where "the

28  only common factor is that plaintiffs each had [the same medical procedure]].)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

**B.     The Private Interest Factors Weigh Heavily in Favor of Dismissal**

**1.   All of the Key Evidence is Located in Plaintiffs' Home States**

The balance of private-interest factors favors of dismissal.  The overwhelming majority of key witnesses are located in the non-resident plaintiffs' home states, including the plaintiffs, their family members, co-workers, employers, prescribing doctors, and treating doctors.  Among the physicians whose testimony will be crucial are physicians alleged to have prescribed saxagliptin to the non-residents, communicated with them about saxagliptin, treated them relative to the conditions and alleged injuries at issue, and have knowledge of their medical histories and pre-existing conditions.  (See *Stangvik*, *supra*, 54 Cal.3d at p. 756–757.)

Because the claims at issue center on an alleged failure to warn of risks of saxagliptin treatment, the testimony of the non-resident plaintiffs' treating and prescribing physicians will be critical because any duty to warn runs to the prescribing physicians, who are the learned intermediaries.  (See *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1116; *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 65 ["In the case of medical prescriptions, if adequate warning of potential dangers of a drug has been given to doctors, there is no duty by the drug manufacturer to insure that the warning reaches the doctor's patient for whom the drug is prescribed."].)  Thus, the physicians who prescribed the drugs to each plaintiff are imperative witnesses, and their testimony about what they knew regarding purported risks with saxagliptin treatment will be vital to Defendants' case.  It also will be important to understand what each treating and prescribing physician told each plaintiff about saxagliptin, and what materials if any plaintiffs were given or otherwise obtained.  All of these things will have occurred in the non-resident plaintiffs' home states, not in California.

Despite the indisputable significance of all of this evidence, live testimony of these out-of-state physicians and other witnesses will be unavailable to Defendants if trial were to proceed in California, because these physicians are beyond the subpoena power of this Court. The parties and Court would be left to the generosity of these witnesses to voluntarily travel to California, or a trial replete with deposition testimony would ensue, which courts have maligned for decades.  (See *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511 (1947), *superseded by statute on*

7

1  *other grounds*, ["[t]o fix the place of trial at a point where litigants cannot compel personal

2  attendance and may be forced to try their cases on deposition, is to create a condition not

3  satisfactory to court, jury or most litigants."].)

4        Plaintiffs may argue that this deposition testimony can be offered at trial by video, but

5  Defendants would be significantly prejudiced if forced to do so.  First, video testimony does not

6  have the same impact on the jury as the testimony of a live witness.  Second, video testimony is

7  heavily-edited, often resulting in a choppy and disjointed presentation that makes it difficult for

8  jurors to follow and evaluate.  Third, depositions are for discovery purposes; Defendants would

9  be forced to combine discovery and trial questions into one—or return to the out-of-state witness

10  for a costly second deposition—if it were to be used in lieu of live trial testimony.

11        The chart below illustrates how the vast majority of witnesses and evidence are outside of

12  California and in non-resident plaintiffs' home states.

| California | Non-resident Plaintiffs' Home States |
|---|---|
| <u>Witnesses</u> | <u>Witnesses</u> |
| 1. **Few, if any.**  If McKesson is in fact a proper party, then possibly corporate representative witnesses.  AstraZeneca and BMS witnesses reside overwhelmingly in locations outside of California. | 1.   Each non-resident plaintiff;<br>2.   Non-resident plaintiffs' witnesses regarding nature and extent of injury;<br>3.   Non-resident plaintiffs' physicians;<br>4.   Saxagliptin supplier/distributor;<br>5.   Non-resident plaintiffs' employers;<br>6.   Non-resident plaintiffs' co-workers;<br>7.   Non-resident plaintiffs' family and friends;<br>8.   Physicians who will perform independent medical examinations; and;<br>9.   Expert witness regarding the standard of care in non-resident plaintiffs' home states |
| <u>Documents</u> | <u>Documents</u> |
| 1. **Few, if any.**  If McKesson is in fact a proper party, then documents regarding McKesson's distribution procedures may be located in California.  AstraZeneca and BMS documents reside overwhelmingly in locations outside of California. | 1.   Non-resident plaintiffs' medical records;<br>2.   Non-resident plaintiffs' pharmacy records;<br>3.   Non-resident plaintiffs' employment records;<br>4.   Out-of State medical facilities' drug purchase records; and |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

| California | Non-resident Plaintiffs' Home States |
|---|---|
| | 5. Alleged improper marketing materials and representations, which Plaintiffs contend that they and their physicians relied upon in their home states. |

### 2. McKesson's Presence in California Does Not Alter the Balance

Any argument that evidence concerning McKesson exists in California and therefore tips the private interest analysis in the non-resident plaintiffs' favor is unavailing under *Stangvik*. There, the only defendant was a California resident who designed, manufactured, tested and packed the heart valves in California, as well as issued warnings and advice to doctors within California. (See *Stangvik*, *supra*, 54 Cal.3d at p. 756–757.) Nevertheless, the California Supreme Court held that the private interest factors favored proceeding in plaintiffs' home jurisdictions, because "virtually all witnesses and documents relating to the decedent's medical care and treatment, medical histories, loss of earnings, and all the witnesses to the familial impacts of their deaths" were located where they lived. (*Ibid.*)

The balance of private factors in the present cases is even more compelling for proceeding in non-resident plaintiffs' home states as little, if any, evidence on liability and no evidence on damages will exist in California. In fact, the overwhelming majority of the evidence related to liability and damages is in each non-resident plaintiff's home state or is otherwise at AstraZeneca or BMS facilities outside of California. McKesson is alleged to have <u>distributed</u> the saxagliptin at issue in these cases, but any liability for the distribution of saxagliptin would be derivative of the liability alleged against the manufacturers, AstraZeneca and Bristol-Myers Squibb. Plaintiffs also appear to allege that McKesson promoted saxagliptin, warranted it, or made representations about it. They have not alleged, however, that they had any dealings with McKesson or that they relied on anything McKesson said or did. Even if the non-resident plaintiffs or their physicians did have such dealings with McKesson or received any information or representations from McKesson, those activities would have occurred in the non-resident plaintiffs' home states, not California. (See *Stangvik*, *supra*, 54 Cal.3d at p. 757 ["although the

9

1  alleged fraudulent representations emanated from California, they were received and relied on in

2  Scandinavia"].)

3      **3.   The Cost to the Parties of Proceeding in Non-Resident Plaintiffs' Home
           States Would Not Be Meaningfully Higher and Does Not Sway the
4          Balance of the Factors**

5      There would be little, if any, additional costs to the non-resident plaintiffs in proceeding

6  in a venue in their own backyards.  Although the non-resident plaintiffs may have to pay a filing

7  fee in their home state, each of the non-resident plaintiffs should have paid the fee for filing his

8  or her case here in California, instead of improperly aggregating their individual claims into

9  multi-plaintiff cases.  Any cost saving arguments from the non-resident plaintiffs are improper

10 attempts to claim that the court should consider convenience of counsel.  Indeed, "[t]he

11 convenience of counsel for plaintiff may not be given weight by the court."  (*Great Northern

12 Ry.*, *supra*, 12 Cal.App.3d at p. 112 ["To allow the beneficiary of a cause of action to obtain and

13 *retain* foreign jurisdiction simply by reaching across a number of states in selecting 'the attorney

14 of her choice' would enfeeble, if not destroy, the legitimate purpose of the doctrine . . . . Such

15 permissiveness would obviously be unreasonable.  It is not the law" (emphasis in opinion).)

16 Finally, even if costs to the parties might be lower by proceeding in California—which is

17 dubious—this is merely one factor in the analysis, which should not be weighted any more than

18 the others.

19      **C.  Public-Interest Factors Also Favor Non-Resident Plaintiffs' Home States**

20      The public interest factors also weigh in favor of dismissal of the non-resident plaintiffs'

21 claims as "California courts . . . have little or no interest in litigation involving injuries incurred

22 outside of California by nonresidents.  It seems unduly burdensome for California residents to be

23 expected to serve as jurors on a case having so little to do with California."  (*Hansen v. Owens-

24 Corning Fiberglas Corp.* (1996) 51 Cal.App.4th 753, 760.)  California jurors should not be

25 pulled away from their families and places of business to hear the claims of the non-resident

26 plaintiffs, who have no relationship to California.  (*Gulf Oil*, *supra*, 330 U.S. at pp. 508–509.)

27 California jurors are not a captive audience, waiting to decide disputes for citizens from other

28 states.  The burden of jury duty is a heavy one "that ought not be imposed upon the people of a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

1   community which has no relation to the litigation." (*Gulf Oil*, *supra*, 330 U.S. at p. 509.) Even

2   where a foreign plaintiff alleges injury from a product manufactured in California (as in

3   *Stangvik*), California lacks sufficient public interest to adjudicate the action.[6] Saxagliptin is

4   produced elsewhere, making California's interest even more remote.

5        The non-resident plaintiffs may erroneously argue that this motion should be denied

6   because California has an interest in deterring the alleged wrongful conduct of a defendant inside

7   this state. Any such interest, however, will be adequately addressed by the California-resident

8   plaintiff who would remain before this Court. Plaintiffs made a similar argument in *Stangvik*

9   that was soundly rejected. (*Stangvik*, *supra*, 54 Cal.3d at p. 759 ["The burden imposed on

10   defendants in trying these cases by California residents in the California courts, and the damages

11   that defendants might be required to pay if they are found liable, would provide sufficient

12   deterrence . . . even if the suits filed by nonresident plaintiffs were tried elsewhere."].)

13        By contrast, California's interest in avoiding undue congestion to its courts is especially

14   important in cases such as these. (See *id*. at p. 758 ["preventing court congestion resulting from

15   the trial of foreign causes of action is an important factor in the forum non conveniens

16   analysis."].) Retaining cases where plaintiffs have home state courts readily available, and

17   which present complex conflict of law issues, will undoubtedly further congest California's

18   already overburdened courts. Indeed, the congestion of the California courts noted in *Stangvik* in

19   1991 has since worsened in recent years due to budget cuts in this state. (See Erin Coe, *LA to*

20   *Cut More Than 500 Court Positions In Consolidated Plan*, Law 360, March 4, 2013, attached as

21   Exhibit 2 to Hoyler Decl. ["There will be fewer courthouses in the system and court users will

22   have to travel further and wait longer to have their matters resolved."].) Should these cases

23   remain here, California's already overburdened courts will be asked to apply the law of many

24   different states whose laws may be materially different from those of California. "[T]he fact that

25   a California court would have to 'untangle problems in conflict of law' is itself a basis to apply

26

27   [6] "It is true that California may have an interest in regulating California corporations that produce products that cause harm to a resident of another state . . . . But this public interest factor is insufficient to tip the balance in favor

28   of California." (*Morris*, *supra*, 144 Cal.App.4th at p. 1467.)

1  the doctrine of forum non conveniens."  (*Boaz*, *supra*, 40 Cal.App.4th at p. 713 [internal citations

2  omitted].)

### D. Any Argument By Non-Resident Plaintiffs that Their Choice of Forum is Entitled to Deference or that Defendants Did Not Provide Extensive Evidentiary Support for this Motion Lacks Merit

The non-resident plaintiffs may argue that their choice of forum is entitled to great

deference.  However, the non-resident plaintiffs are *not* entitled to their preference for a

California forum in the way that California residents are: "It is difficult to justify giving

preferential status to a plaintiff's choice of forum if the plaintiff is not a resident."  (*Stangvik*,

*supra*, 54 Cal.3d at pp. 754-755, n.4 ["Since the preference is based on factors which apply only

to residents, it would appear that the underlying justification for the preference does not apply to

nonresidents"]; see also *National Football League v. Fireman's Fund Ins. Co.* (2013) 216

Cal.App.4th 902, 932 [strong presumption favoring plaintiff's choice of forum applies to resident

plaintiffs only].)

Any potential reliance by the non-residents on *Ford Motor Co. v. Insurance Co. of North*

*America* (1995) 35 Cal.App.4th 604 to argue that Defendants bear the burden of establishing that

California is a "seriously inconvenient" forum is inconsistent with other case law.  (See e.g.,

*National Football League*, *supra*, 216 Cal.App.4th at p. 932) ["We note the conspicuous absence

of a line of California cases culminating in the "serious inconvenience" standard . . .  [I]t has not

appeared in a California Supreme Court opinion"].)  Moreover, such a standard conflicts with the

essence of the trial court's discretionary "weighing" and "balancing" of the private and public-

interest factors and its discretionary determination of whether the action is "more" appropriately

tried elsewhere.  (See *Stangvik*, *supra*, 54 Cal.3d at p. 751 ["the discretionary power of a court

. . . when it believes that the action may be *more* appropriately and justly tried elsewhere"

(emphasis added)]; *Archibald v. Cinerama Hotels* (1976) 15 Cal.3d 853, 859, fn. 4 (*Archibald*)

[explaining that doctrine applies "if an available foreign court would be a more convenient place

of trial"].)  Finally, unlike plaintiffs here, the plaintiff in *Ford* was a California taxpayer,

employer, and property owner, and the lawsuit concerned environmental contamination and

12

1   remediation of land in California.  (See *Ford*, *supra*, 35 Cal.App.4th at pp. 612, 614.)  Thus, in

2   *Ford*, California had an interest in providing the plaintiff with a forum, unlike this case where the

3   non-resident plaintiffs have no bona fide connection to California.  (See *Campbell*, *supra*, 69

4   Cal.App.4th at p. 1543.)

5          Further, plaintiffs may argue erroneously that the evidence submitted by Defendants

6   concerning the balance of the public and private interest factors is insufficient.  *Stangvik*,

7   however, does "not require an extensive evidentiary showing.  The principle evidentiary showing

8   *Stangvik* requires is that trial may be had in the alternative forum and that some form of relief

9   may be granted."  (*Campbell*, *supra,* 69 Cal.App.4th at p. 1542-1543 [criticizing *Ford* as

10  ignoring the express language of *Stangvik*.].)  Once Defendants meet their burden,

11  "[e]xamination of the public and private interests at stake involve more general considerations."

12  (*Ibid*. [affirming dismissal on the basis of forum non conveniens when, like *Stangvik*, foreign

13  plaintiffs brought claims arising from injuries elsewhere, and trial in California would contribute

14  to court congestion].)  Indeed, the statutory framework itself does not contemplate an extensive

15  evidentiary showing.  For example, Code of Civil Procedure section 418.10 provides the option

16  of moving without answering the complaint, whereby the defendant must present the motion

17  within the time to plead, with notice of a prompt hearing—precluding any opportunity to conduct

18  discovery or otherwise compile extensive evidence.  The purpose of the forum non conveniens

19  doctrine is to let the case be litigated, including discovery and compilation of evidence, in a more

20  convenient forum.  Thus, the statute neither contemplates nor requires extensive evidence or

21  discovery.

22  **V.    CONCLUSION**

23         Suitable alternative forums exist to adjudicate the four non-resident plaintiffs' claims at

24  issue.  The balance of private interests of the litigants and the interests of the public weigh

25  heavily in favor of dismissal, a result that is compelled under California Supreme Court

26  precedent.  Based on the foregoing, Defendants respectfully request that this court grant this

27  motion and sever, and dismiss the claims of the non-resident plaintiffs on the basis of forum non

28  conveniens.

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

1    DATED:  October 31, 2016

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**KING & SPALDING LLP**

By: _____
DONALD F. ZIMMER, JR.
CAMERON J. HOYLER
VINCENT TREMONTI
Attorneys for Defendants
MCKESSON CORPORATION,
BRISTOL-MYERS SQUIBB COMPANY,
and ASTRAZENECA
PHARMACEUTICALS LP

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

## PROOF OF SERVICE

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
SANDERS PHILLIPS GROSSMAN, LLP
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

# STATE COURT DOCUMENT J

1  DONALD F. ZIMMER, JR., BAR NO. 112279
   *fzimmer@kslaw.com*
2  **KING & SPALDING LLP**
   101 Second Street, Suite 2300
3  San Francisco, CA  94105
   Telephone:     +1 415 318 1200
4  Facsimile:     +1 415 318 1300

5  CAMERON J. HOYLER, BAR NO. 273234
   *choyler@kslaw.com*
6  VINCENT TREMONTI, BAR NO. 301571
   *vtremonti@kslaw.com*
7  **KING & SPALDING LLP**
   633 West 5th St., Suite 1700
8  Los Angeles, CA 90071
   Telephone:     1 213 443 4355
9  Facsimile:     1 213 443 4310

10  Attorneys for Defendants
    MCKESSON CORPORATION, BRISTOL-
11  MYERS SQUIBB COMPANY (special
    appearance) and ASTRAZENECA
12  PHARMACEUTICALS LP (special
    appearance)

13

ELECTRONICALLY
F I L E D
*Superior Court of California,*
*County of San Francisco*
**11/01/2016**
**Clerk of the Court**
BY:EDNALEEN ALEGRE
**Deputy Clerk**

14            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                   **COUNTY OF SAN FRANCISCO**

16  MICHAEL MARTIN, an individual, et al.,          Case No.: CGC 16-554610
                                                    Reservation Number: 10311212-06
17
                     Plaintiffs,
18                                                  **DECLARATION OF CAMERON J.**
         v.                                         **HOYLER IN SUPPORT OF**
19                                                  **DEFENDANTS MCKESSON**
                                                    **CORPORATION, BRISTOL-MYERS**
20  BRISTOL-MYERS SQUIBB COMPANY;                   **SQUIBB COMPANY, AND**
    ASTRAZENECA PHARMACEUTICALS                     **ASTRAZENECA PHARMACEUTICALS**
21  LP; MCKESSON CORPORATION; and                   **LP'S MOTION TO SEVER AND**
    DOES 1-50 INCLUSIVE                             **DISMISS BASED ON FORUM NON**
                                                    **CONVENIENS**
22
                     Defendants.
23                                                  Complaint Filed:   September 30, 2016
                                                    Trial Date:        None
24
                                                    Date:              December 12, 2016
25                                                  Time:              9:30 a.m.
                                                    Dept.:             302
26                                                  Judge:             Hon. Harold E. Kahn

27

28

I, Cameron J. Hoyler, declare as follows:

1.      I am an attorney duly licensed to practice law before all courts of the State of California and am one of the attorneys of record for McKesson Corporation.  I am also making a special appearance for defendants Bristol-Myers Squibb Company and AstraZeneca Pharmaceuticals LP.  I have reviewed the file and am familiar with its contents, and as such I have personal knowledge of the facts set forth herein.  I make this declaration in support of Defendants' Motion to Sever and Dismiss Based on Forum Non Conveniens.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the complaint filed in this matter, *Michael Martin, et al. v. Bristol-Myers Squibb Co., et al.* (Case No. CGC 16-554610), filed August 11, 2016.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of a news article, entitled "LA to Cut More Than 500 Court Positions In Consolidated Plan" by Erin Coe, published in Law 360, on March 4, 2013.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 31st day of October, 2016, in Los Angeles, California.


By:_____
        CAMERON J. HOYLER

---

1

DECLARATION OF CAMERON J. HOYLER IN SUPPORT OF DEFENDANTS' MOTION
TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS

# EXHIBIT 1

Robert A. Mosier, Esq. (SBN 164241)
Timothy M. Clark, Esq. (SBN 284447)
Lauren Welling, Esq. (SBN 291813)
**SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive Suite 220
Irvine, CA 92606
Tel: (877) 480-9142
Fax: (213) 330-0346
rmosier@thesandersfirm.com

*Attorneys for Plaintiffs*

FILED
Superior Court of California
County of San Francisco

SEP 30 2016

CLERK OF THE COURT
BY: _____
Deputy Clerk

## THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| MICHAEL MARTIN, an individual;<br>RONALD LETELL, an individual;<br>DONALD CARPENTER, an individual;<br>ELIZABETH McMAHON, an individual;<br>JOHN W. HUNT, SR., an individual;<br><br>      Plaintiffs,<br><br>      vs.<br><br>BRISTOL-MEYERS SQUIBB COMPANY;<br>ASTRAZENECA PHARMACEUTICALS<br>LP; MCKESSON CORPORATION; and<br>DOES 1-50 INCLUSIVE<br><br>      Defendants. | CASE NO:<br>JUDGE: CGC-16-554610<br><br>COMPLAINT FOR DAMAGES FOR:<br><br>1) STRICT PRODUCTS LIABILITY<br>2) NEGLIGENCE<br>3) FAILURE TO WARN<br>4) BREACH OF WARRANTY OF<br>   MERCHANTABILITY<br>5) BREACH OF EXPRESS WARRANTY<br>6) BREACH OF IMPLIED WARRANTY<br><br>DEMAND FOR JURY TRIAL<br><br>Complaint Filed: _____, ____ |

Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for

damages against the Defendants, and allege the following:

## I.    INTRODUCTION

1.    This is an action for damages relating to the Defendants' design, manufacture,

sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug

Saxagliptin. Defendants sell their Saxagliptin drug under the brand names Onglyza and

Kombiglyze XR. Saxagliptin, in any of its forms or products, including Onglyza and

Kombiglyze XR, shall herein be referred to as "Saxagliptin."

BY FAX

1

2.     Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.     The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.     Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

II.    **PARTIES, VENUE & JURISDICTION**

5.     At all times relevant to this action, Plaintiff MICHAEL MARTIN was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.     At all times relevant to this action, Plaintiff RONALD LETELL was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

7.     At all times relevant to this action, Plaintiff DONALD CARPENTER was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

8.     At all times relevant to this action, Plaintiff ELIZABETH McMAHON was a citizen and resident of the State of Pennsylvania.  Plaintiff ingested Saxagliptin resulting in injuries.

9.     At all times relevant to this action, Plaintiff JOHN W. HUNT, SR. was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

10.    Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

11.    Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

12.    Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district

*COMPLAINT FOR DAMAGES*

1   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

2   Saxagliptin.

3         13.    Defendant McKesson Corporation ("McKesson") is a Delaware corporation with

4   its principal place of business at One Post Street, San Francisco, California 94104. At all

5   relevant times, McKesson regularly and continuously did business within this judicial district

6   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

7   Saxagliptin.

8         14.    Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive.

9   Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

10   Defendants are ascertained. At all relevant times herein DOES 1-50 inclusive were the

11   individuals, corporations, and/or business entities, which were agents, servants, joint ventures,

12   partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

13   as alleged herein.

14         15.    Hereinafter the aforementioned Defendants may collectively be referred to as

15   "Defendants."

16         16.    At all relevant times, each Defendant acted in all aspects as the agent and alter

17   ego of each other.

18         17.    At all relevant times, Defendants acted in concert with one another in the State of

19   California to fraudulently convey false and misleading information concerning the safety and

20   efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure,

21   congestive heart failure, cardiac failure, death from heart failure and other adverse effects

22   associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare

23   providers. These concerted efforts resulted in significant harm to those treated with Saxagliptin,

24   including Plaintiffs. But for the actions of Defendants, individually, jointly, and in concert with

25   one another, Plaintiffs would not have ingested Saxagliptin.

26         18.    This Court has personal jurisdiction over Defendants. Defendants are and were at

27   all relevant times residents of and/or authorized to conduct business in the State of California and

28

1    Defendants conducted such business within the state including the performance of acts that
2    caused or contributed to the harm giving rise to this action.

3         19.    At all times material hereto, Defendants maintained systematic and continuous
4    contacts in this judicial district, regularly transacted business within this judicial district,
5    employed numerous individuals in this district and regularly availed themselves of the benefits
6    of this judicial district. Defendants received substantial financial benefit and profits as a result of
7    designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this
8    district and throughout the United States.

9         20.    The combined acts and/or omissions of each Defendant resulted in indivisible
10   injuries to each Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-
11   conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions
12   alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct
13   of each and every other Defendant.

14        21.    The amount in controversy exceeds the jurisdictional limits of this court.

15   **III.    FACTUAL ALLEGATIONS**

16        22.    Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance
17   and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia. Type 2
18   diabetics have an increased risk of cardiovascular disease, which is the leading cause of
19   morbidity and mortality in the patient population. Therefore, it is critical that drugs developed to
20   allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in
21   users. With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related
22   adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and
23   sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2
24   diabetes.

25        23.    Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby
26   potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone,
27   known as an incretin. This induces glucose-dependent stimulation of insulin secretion while
28   suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

4

24. DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state. Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure. Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time. At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events. Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

25. In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants. The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1] Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk. Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks. Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

---

[1] *Id.*

26.     On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

27.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

28.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

29.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.  Once again, Defendants place sales over patient safety.

30.     In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

COMPLAINT FOR DAMAGES

1  benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are
2  available that do not carry the increased cardiac risks of Saxagliptin.

3      31.    Defendants, with knowledge of the true relationship between use of Saxagliptin
4  and heart failure, congestive heart failure, cardiac failure, and death related to those events,
5  promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2
6  diabetes mellitus.

7      32.    Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's
8  risks through various avenues including, but not limited to, the following:

9          a.  in print marketing, advertising, and promotional materials;

10          b.  on Defendant-owned, controlled, or supported websites and blogs;

11          c.  in materials and advertisements to Plaintiffs and consumers stating the use of
12              Saxagliptin is safe; and

13          d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as
14              safe as) other drugs for the treatment of type 2 diabetes mellitus.

15      33.    At no time did Defendants perform adequate safety testing on Saxagliptin prior to
16  marketing their drugs to the American public and failed to do so until performing the SAVOR
17  trial.

18      34.    Despite the findings of the SAVOR trial, Defendants still have not undertaken
19  efforts to change the labels and reference materials for Saxagliptin to include a reference or
20  warning regarding heart failure, congestive heart failure, cardiac failure, and death related to
21  those events.

22  **IV.    PLAINTIFFS' USE OF SAXAGLIPTIN**

23      35.    Plaintiffs were prescribed and ingested Saxagliptin at various times.

24      36.    Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or
25  distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the
26  drug's condition.

27

28

37.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

38.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

39.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

40.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

41.     Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions, changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

42.     Plaintiffs' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiffs.

43.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

8

1   and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional

2   limits of the Court.

3       44.    As a direct and proximate result of Defendants' conduct, Plaintiffs incurred

4   obligations and expenses for medical care, testing and treatment. As a direct and proximate result

5   of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,

6   diminishment of earning potential, and other pecuniary losses.

7       45.    Defendants' conduct was committed with knowing, reckless, conscious, wanton,

8   willful and deliberate disregard for the value of human life and the rights and safety of

9   consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages

10   so as to punish and deter similar conduct in the future.

11   **V. DELAYED DISCOVERY**

12       46.    Defendants, through their affirmative misrepresentations and omissions, actively

13   concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and

14   significant risks associated with Saxagliptin.

15       47.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and

16   healthcare providers were unaware, and could not have reasonably known or have learned

17   through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this

18   Complaint, and that those risks were the result of Defendants' acts, omissions, and

19   misrepresentations.

20       48.    No limitations period ought to accrue until such time as Plaintiffs knew or

21   reasonably should have known of some causal connection between the use of Saxagliptin and the

22   harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact

23   that this Complaint is filed well within the statutory period after Plaintiffs knew or should have

24   known the facts alleged herein.

25       49.    Additionally, the accrual and running of any applicable statute of limitations has

26   been tolled by reason of Defendants' fraudulent concealment.

27

28

50.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## I.

## CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

51.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

52.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

53.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

54.     Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

55.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

     a.  Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

     b.  Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

     c.  Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

     d.  Saxagliptin was insufficiently and/or inadequately tested by Defendants.

10

1    e.   Saxagliptin was not safe due, in part, to inadequate and defective instructions and
2         inadequate and defective warnings provided by Defendants.
3    f.   Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious
4         injury posed by using the products exceeded any benefits the products were
5         designed to or might in fact bestow.
6    g.   Saxagliptin was defective in design in that the products neither bore, nor were
7         packaged with, nor were accompanied by, warnings adequate to alert users,
8         including Plaintiffs, of the increased risks associated with using the products,
9         including, but not limited to, the risk of heart failure, congestive heart failure,
10        cardiac failure, death from heart failure, and other serious health conditions
11   h.   Saxagliptin was not accompanied by adequate warnings and instructions for use
12        that included adequate information to fully apprise users, consumers, and the
13        medical, pharmaceutical and scientific communities of the potential risks and
14        serious side effects associated with using the products.
15   i.   Saxagliptin was unsafe for normal or reasonably anticipated use. Said products
16        were defective and unreasonably dangerous in design, construction and/or
17        composition.
18   j.   Saxagliptin was defective and unreasonably dangerous because the products did
19        not conform to an express warranty of the manufacturer about the product.
20   k.   Saxagliptin was defective and unreasonably dangerous due to inadequate
21        warnings, inadequate clinical trials, testing and study, and inadequate reporting
22        regarding the results of the clinical trials, testing and study.
23   56.   Saxagliptin as manufactured and supplied by the Defendants was defective due to
24        inadequate warnings and instructions because, after Defendants knew or should have known of
25        the risk of injuries from use, Defendants failed to provide adequate warnings to the medical
26        community and the consumers to whom the drugs were directly marketed and advertised; and,
27        further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.
28

57.     A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

58.     Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

59.     Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

60.     Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

61.     Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

62.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

63.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

64.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

12

65.    At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

66.    Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

a.    Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

b.    Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c.    Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.    Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.    Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.    Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate

13

1   warning of risks associated with using the products and without proper

2   and adequate instructions to avoid the harm which could foreseeably occur

3   as a result of using the products;

4   g.   Failing to exercise due care when advertising, promoting, and selling

5       Saxagliptin;

6   h.   Failing to use due care in the preparation, design and development of

7       Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals

8       when the products were used;

9   i.   Failing to completely, accurately and in a timely fashion, disclose the

10      results of the pre-marketing testing and post-marketing surveillance and

11      testing to Plaintiffs, consumers, the medical community, and the FDA;

12  j.   Failing to accompany Saxagliptin with proper warnings regarding all

13      possible risks associated with using the products;

14  k.   Failing to use due care in the manufacture, inspection, and labeling of

15      Saxagliptin to prevent risk of injuries to individuals who used the

16      products;

17  l.   Failing to provide adequate and accurate training and information to the

18      sales representatives who sold the products;

19  m.   Failing to educate healthcare providers and the public about the safest use

20      of the products;

21  n.   Failing to give healthcare providers adequate information to weigh the

22      risks of serious injury associated with the products;

23  o.   Failing to test and inspect Saxagliptin in a reasonable manner in order to

24      ascertain whether or not it was safe and proper for the purpose for which it

25      was designed, manufactured, and sold;

26  p.   Failing to warn Plaintiffs of the danger of adverse medical conditions

27      from the use of Saxagliptin; and

28

14

q.     Failing to label Saxagliptin to adequately warn Plaintiffs of the serious
adverse side effects with the use of Saxagliptin.

67.    Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact
that Defendants knew or should have known of the increased risks associated with using the
products, including but not limited to heart failure, congestive heart failure, cardiac failure, death
from heart failure, and other serious health conditions and other adverse effects of which
Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

68.    Defendants, individually and collectively, had a duty to warn the FDA, their
customers, the medical community and the public about the increased risk of injury but failed to
do so.

69.    Defendants are guilty of negligence *per se* in that the Defendants violated the
Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and
Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.     The Defendants' acts and omissions, including but not limited to
Defendants' off-label marketing, constitute an adulteration and/or
misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21
U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to
be protected by such legislation and whose injuries said regulations were
designed to prevent. Defendants' conduct was a proximate cause of
Plaintiffs' injuries.

b.     The Defendants' also failed to report adverse events as required by the
Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons
such as Plaintiffs were the parties intended to be protected by such
legislation and whose injuries said regulations were designed to prevent.
Defendants' conduct was a proximate cause of Plaintiffs' injuries.

70.    Despite the fact Defendants knew or should have known that Saxagliptin
increased the risk of serious injury including but not limited to heart failure, congestive heart
failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants

15

1   continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers,

2   including Plaintiffs.

3       71.    Defendants negligently and recklessly represented to Plaintiffs, physicians, and

4   other persons and professionals Defendants knew would justifiably rely on the representations,

5   that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for

6   their intended purposes.

7       72.    Defendants negligently and recklessly failed to disclose to Plaintiffs and others

8   important safety and efficacy information about Saxagliptin, thereby suppressing material facts

9   while under a duty to disclose such information.

10       73.    Defendants' representations about the safety and adverse side effects of

11   Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was

12   unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

13       74.    Defendants knew or should have known that their representations and omissions

14   were false. Defendants made such false, negligent and reckless representations and omissions

15   with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such

16   representations, leading to the use of Saxagliptin as described.

17       75.    Defendants omitted, suppressed and/or concealed material facts concerning the

18   dangers and risk of injuries associated with the use of Saxagliptin, including serious injury.

19   Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or

20   otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

21       76.    At the time Defendants made these misrepresentations and/or omissions, they

22   knew or should have known that Saxagliptin was unreasonably dangerous and not what

23   Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the

24   consuming public.

25       77.    Defendants' misrepresentations and/or omissions were undertaken with an intent

26   that doctors and patients, including Plaintiffs, rely upon them.

27       78.    Plaintiffs and Plaintiffs' healthcare providers did not know that these

28   representations were false and justifiably relied on and were induced by Defendants'

16

1  misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ

2  these products.

3        79.      As a direct and proximate consequence of Defendants' negligent, willful, wanton,

4  and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs

5  sustained injuries and damages.

6        80.      Had Plaintiffs been aware of the increased risk of side effects associated with

7  Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available

8  products, Plaintiffs would not have used these products.

9        WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek

10  compensatory, exemplary and punitive damages, together with interest, the costs of suit and

11  attorneys' fees, and such other and further relief as this Court deems just and proper.

12                                     **III.**

13                **CAUSE OF ACTION FOR FAILURE TO WARN**

14        Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

15  set forth in full in this cause of action, and further allege:

16        81.      Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner

17  as designed and intended by Defendants.

18        82.      At all relevant and material times, the Defendants designed, manufactured,

19  packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the

20  stream of commerce for sale to, and use by, members of the public, including the Saxagliptin

21  used by Plaintiffs.

22        83.      At all relevant and material times, Saxagliptin was designed, manufactured,

23  packaged, marketed, advertised, distributed, and sold by Defendants in a defective and

24  unreasonably dangerous condition.

25        84.      The Saxagliptin manufactured by Defendants reached Plaintiffs without

26  substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably

27  dangerous when it entered into the stream of commerce and when used by Plaintiffs.

28        85.      The Plaintiffs were administered the Saxagliptin for its intended purpose.

17

86.     Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

87.     Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

88.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

89.     The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

90.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

91.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

92.     Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

93.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

94. Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

95. Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

96. Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

    a. Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

    b. Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

    c. Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

    d. Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

97. Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

19

98.     Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

99.     By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

100.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs and the public.

101.    As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

102.    At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

103.    Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

104.    Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

105. Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill,
judgment and knowledge of Defendants, and upon the express and/or implied warranty that
Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

106. The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for
its intended use.

107. The product was unsafe for its intended use and was not of merchantable quality,
as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its
intended use and would cause severe injury (or death) to the user. Saxagliptin was
unaccompanied by adequate warnings of their dangerous propensities that were either known or
reasonably scientifically knowable at the time of distribution.

108. The Saxagliptin used by Plaintiffs was neither safe nor fit for use because
Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes
for which they are used.

109. As a direct and proximate result of the breach of warranty of merchantability by
Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek
compensatory, exemplary and punitive damages, together with interest, the costs of suit and
attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

## CAUSE OF ACTION FOR BREACH FOR EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though
set forth in full in this cause of action and further allege:

110. The aforementioned manufacturing, compounding, packaging, designing,
distributing, testing, constructing, fabricating, analyzing, recommending, merchandising,
advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe
for use by Plaintiffs and other members of the general public.

111. Defendants expressly represented to Plaintiffs, consumers and the medical
community that Saxagliptin was:

a.   safe;

b.   efficacious;

c.   fit for use in persons with Type 2 diabetes mellitus;

d.   of merchantable quality;

e.   adequately tested;

f.   well tolerated in adequate and well-controlled clinical studies; and

g.   did not increase the risk of experiencing serious, life threatening side effects.

112.   Defendants breached those express warranties as follows:

a.   Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

b.   Defendants misrepresented the risks associated with using Saxagliptin;

c.   Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

d.   Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

e.   Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

113.   Saxagliptin did not conform to Defendants' express representations and warranties.

114.   At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

115.   At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

22

116.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

117.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

118.    At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

119.    Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

120.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

121.    Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

122.    Plaintiffs were foreseeable users of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

123.    Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

23

1    124.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit

2    for use.

3    125.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants'

4    representations because Saxagliptin is not safe and causes high levels of serious, life-threatening

5    side effects.

6    126.    Defendants breached the implied warranty in that Saxagliptin did not conform to

7    Defendants' representations.

8    127.    As a direct and proximate consequence of Defendants' negligence, willful,

9    wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts

10    described herein, Plaintiffs sustained injuries and damages.

11    WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek

12    compensatory, exemplary and punitive damages, together with interest, the costs of suit and

13    attorneys' fees, and such other and further relief as this Court deems just and proper.

14    ## VII

15    ## GLOBAL PRAYER FOR RELIEF

16    Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

17    set forth here in full and further pray:

18    128.    So far as the law and this Court allows, Plaintiffs demand judgment against each

19    Defendant on each count as follows:

20        a.    All available compensatory damages for the described losses with respect

21            to each cause of action;

22        b.    Past and future medical expenses, as well as the cost associated with past

23            and future life care;

24        c.    Past and future lost wages and loss of earning capacity;

25        d.    Past and future emotional distress;

26        e.    Consequential damages;

27        f.    All available noneconomic damages, including without limitation pain,

28            suffering, and loss of enjoyment of life;

24

1      g.    All damages wrongful death damages permitted by law, where

2            applicable;

3      h.    Disgorgement of profits obtained through unjust enrichment;

4      i.    Restitution;

5      j.    Punitive damages with respect to each cause of action;

6      k.    Reasonable attorneys' fees where recoverable;

7      l.    Costs of this action;

8      m.    Pre-judgment and all other interest recoverable; and

9      n.    Such other additional and further relief as Plaintiffs may be entitled to in

10            law or in equity.

11                **DEMAND FOR JURY TRIAL**

12      Each Plaintiff named herein demands his or her own individual trial by jury on all issues

13  so triable.

14

15  Dated: September 30, 2016      By: _____

16                         Lauren A. Welling (CA Bar No. 291813)
                            **SANDERS PHILLIPS GROSSMAN, LLP**

17                         2860 Michelle Drive, Suite 220
                         Irvine, CA 90606

18                         Tel: (877) 480-9142
                         Fax: (213) 330-0346

19                         lwelling@thesandersfirm.com

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

# EXHIBIT 2



**Portfolio Media. Inc.** | 111 West 19th Street, 5th floor | New York, NY 10011 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# LA To Cut More Than 500 Court Positions In Consolidation Plan

By **Erin Coe**

Law360, San Diego (March 4, 2013, 7:22 PM EST) -- A month after announcing California's budget proposal would force it to proceed with courthouse closures and the consolidation of services, the Los Angeles Superior Court revealed Friday it was planning to trim 511 positions to implement the changes.

Presiding Judge David Wesley said in a staff email that the court's plan to shutter 10 courthouses, consolidate case types and end some programs would also call for the elimination of the 511 positions — moves that would save the court $56 million.

"Those savings come at a very high price," he said. "There will be fewer courthouses in the system and court users will have to travel further and wait longer to have their matters resolved."

While existing vacancies, nonstaff spending reductions and other mitigation measures would likely prevent some employees from being laid off, the court is not going to be able to avoid another round of significant reductions in its workforce in light of the state's deep budget cuts, according to Wesley.

The courthouse closures and layoffs are set to be implemented at the end of June.

Wesley said in January that the Los Angeles Superior Court had no choice but to go ahead with the consolidation plan after Gov. Jerry Brown unveiled his budget in the beginning of the year proposing to transfer $200 million from trial court reserves to cover court operations.

The budget plan preserved more than $500 million in previous budget cuts to the California trial courts, and those reductions have resulted in an annual budget shortfall of $195 million for the Los Angeles Superior Court in fiscal year 2013-2014, Wesley said in January. While the Los Angeles Superior Court has already absorbed much of the shortfall by cutting more than 800 staff positions over the last three years, the court still needed to address a shortfall of $85 million, he said at the time.

Under the plan announced in November, the Los Angeles Superior Court will close 10 courthouses — Pomona North, Whittier, Huntington Park, Catalina Island, San Pedro, Beacon Street, Malibu, West Los Angeles, Beverly Hills and the Kenyon Juvenile Justice Center — and consolidate court services, including handling small claims cases at six locations instead of the current 26 locations.

The plan proposes creating specialized hubs where certain cases will be processed, such as personal injury, limited civil, small claims, collections and unlawful detainer matters.

On Friday, the court issued a public notice of the locations where civil cases will be filed starting March 18, and the court subsequently will begin moving case types to their respective hubs.

The court said all general civil personal injury and limited civil actions, except limited civil collections cases, must be filed at the Stanley Mosk Courthouse. The limited civil actions at issue seek up to $25,000, including tort and punitive damages, recovery of real and personal property, and a prejudgment writ of attachment.

Unless parties are notified, pending limited civil cases will keep their current court dates and locations, except for those in the Catalina courthouse.

The court said it also has developed a system in which Zip code locations will dictate where to file small claims, limited collections or limited unlawful detainer cases.

--Editing by Eydie Cubarrubia.

All Content © 2003-2016, Portfolio Media, Inc.

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**DECLARATION OF CAMERON J. HOYLER IN SUPPORT OF DEFENANTS' MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
SANDERS PHILLIPS GROSSMAN, LLP
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

STATE COURT DOCUMENT K

1  DONALD F. ZIMMER, JR. (Bar No. 112279)
     *fzimmer@kslaw.com*
2  **KING & SPALDING LLP**
     101 Second Street, Suite 2300
3  San Francisco, CA 94105
     Telephone:    +1 415 318 1200
4  Facsimile:    +1 415 318 1300

5  CAMERON J. HOYLER (Bar No. 273234)
     *choyler@kslaw.com*
6  VINCENT TREMONTI (Bar No. 301571)
     *vtremonti@kslaw.com*
7  **KING & SPALDING LLP**
     633 West 5th St., Suite 1700
8  Los Angeles, CA 90071
     Telephone:    +1 213 443 4355
9  Facsimile:    +1 213 443 4310

10  Attorneys for Defendants
      MCKESSON CORPORATION, BRISTOL-
11  MYERS SQUIBB COMPANY (special
      appearance) and ASTRAZENECA
12  PHARMACEUTICALS LP (special appearance)

13

14

15

**ELECTRONICALLY**
# FILED
***Superior Court of California,***
***County of San Francisco***

## 11/01/2016
**Clerk of the Court**
**BY:**EDNALEEN ALEGRE
**Deputy Clerk**

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN FRANCISCO

16  MICHAEL MARTIN, an individual, et al.,

17          Plaintiffs,

18          v.

19  BRISTOL-MYERS SQUIBB COMPANY;
20  ASTRAZENECA PHARMACEUTICALS LP;
      MCKESSON CORPORATION; and DOES 1-
21  50 INCLUSIVE

22          Defendants.

23

24

25

26

27

28

Case No.: CGC 16-554610
Reservation Number: 10311212-06

**CONSENT TO JURISDICTION AND
AGREEMENT REGARDING STATUTE
OF LIMITATIONS IN SUPPORT OF
DEFENDANTS MCKESSON
CORPORATION, BRISTOL-MYERS
SQUIBB COMPANY, AND
ASTRAZENECA PHARMACEUTICALS
LP'S MOTION TO SEVER AND DISMISS
BASED ON FORUM NON CONVENIENS**

Complaint Filed:     September 30, 2016
Trial Date:          None

Date:          December 12, 2016
Time:          9:30 a.m.
Dept.:         302
Judge:         Hon. Harold E. Kahn

_____
CONSENT TO JURISDICTION AND AGREEMENT

Defendants McKesson Corporation, Bristol-Myers Squibb Company, and AstraZeneca Pharmaceuticals LP (collectively, Defendants) filed a Motion to Sever and Dismiss Based on Forum Non Conveniens pursuant to Code of Civil Procedure §§ 410.30(a) and 418.10(a)(2) in the above-referenced matter.

If (1) this Court grants the above-referenced Forum Non Conveniens Motion, and (2) the dismissed plaintiffs re-file their actions in their respective home states within 90 days of the date of the court's ruling granting the motion, Defendants agree as follows:

1. Defendants will not contest personal jurisdiction in such actions, and consent to specific jurisdiction;

2. Defendants agree to toll the statute of limitations from the time the present action was filed in California until the time plaintiffs re-file their actions in their respective home states (so long as they are re-filed within 90 days of dismissal).  Thus, if plaintiffs' filing in California was timely according to the laws of their respective home states, then plaintiffs' actions re-filed within the time limits described above will be timely-filed in plaintiffs' respective home states as well.  Defendants do not waive any statute of limitations defense that may exist if the filing of the present action in California was untimely pursuant to the laws of their respective home states.

DATED:  October 31, 2016                 **KING & SPALDING LLP**

By: _____
DONALD F. ZIMMER, JR.
CAMERON J. HOYLER
VINCENT TREMONTI
Attorneys for Defendants
MCKESSON CORPORATION,
BRISTOL-MYERS SQUIBB COMPANY,
and ASTRAZENECA
PHARMACEUTICALS LP

1
CONSENT TO JURISDICTION AND AGREEMENT

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action.  I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On October 31, 2016, I served a copy of the within document(s):

**CONSENT TO JURISDICTION AND AGREEMENT REGARDING STATUTE OF LIMITATIONS IN SUPPORT OF MCKESSON CORPORATION, BRISTOL-MYERS SQUIBB COMPANY, AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION TO SEVER AND DISMISS BASED ON FORUM NON CONVENIENS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
SANDERS PHILLIPS GROSSMAN, LLP
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel:  877-480-9142
Fax:  213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**:  LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c).  The transmission was reported as complete without error.

☒   **BY U.S. MAIL**:  1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 31, 2016, at Los Angeles, California.

_____
Melissa Michaels

2
CONSENT TO JURISDICTION AND AGREEMENT

# STATE COURT DOCUMENT L

**CM-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Donald F. Zimmer, Jr., Bar No. 112279<br>King & Spalding LLP<br>101 Second Street, Suite 2300<br>San Francisco, CA 94105<br>TELEPHONE NO.: 415.312.1200   FAX NO. *(Optional)*: 415.312.1300<br>E-MAIL ADDRESS *(Optional)*: fzimmer@kslaw.com<br>ATTORNEY FOR *(Name)*: Defendants Bristol Myers-Squibb Company, et al. | **ELECTRONICALLY**<br>**FILED**<br>*Superior Court of California,*<br>*County of San Francisco*<br>**11/02/2016**<br>**Clerk of the Court**<br>BY:ERNALYN BURA<br>**Deputy Clerk** |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civic Center Courthouse

| PLAINTIFF/PETITIONER: Michael Martin, et al. | CASE NUMBER:<br>CGC-16-554610 |
|---|---|
| DEFENDANT/RESPONDENT: Bristol-Myers Squibb Company, et al. | Hon. John K. Stewart |

| **NOTICE OF RELATED CASE** | DEPT.:<br>610 |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1. a. Title: Carolyn Williams, et al. v. Bristol-Myers Squibb Company, et al.

   b. Case number: CGC-16-550418

   c. Court: ☑ same as above

   ☐ other state or federal court *(name and address):*

   d. Department: 304

   e. Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f. Filing date: February 16, 2016

   g. Has this case been designated or determined as "complex?" ☑ Yes ☐ No

   h. Relationship of this case to the case referenced above *(check all that apply):*

   ☐ involves the same parties and is based on the same or similar claims.

   ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

   ☐ involves claims against, title to, possession of, or damages to the same property.

   ☑ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

   ☑ Additional explanation is attached in attachment 1h

   i. Status of case:

   ☑ pending

   ☐ dismissed ☐ with ☐ without prejudice

   ☐ disposed of by judgment

2. a. Title: Donald Max Leedy, et al. v. Bristol-Myers Squibb Company, et al.

   b. Case number: CGC-16-552157

   c. Court: ☑ same as above

   ☐ other state or federal court *(name and address):*

   d. Department: 304

Page 1 of 2

| Form Approved for Optional Use<br>Judicial Council of California<br>CM-015 [Rev. July 1, 2007] | **NOTICE OF RELATED CASE** | Cal. Rules of Court, rule 3.300<br>*www.courtinfo.ca.gov* |
|---|---|---|

CM-015

| PLAINTIFF/PETITIONER:  Michael Martin, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Bristol-Myers Squibb Company, et al. | CGC-16-554610 |

2. *(continued)*

   e.  Case type: ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f.  Filing date:  May 20, 2016

   g.  Has this case been designated or determined as "complex?"   ☑ Yes ☐ No

   h.  Relationship of this case to the case referenced above *(check all that apply):*

      ☐  involves the same parties and is based on the same or similar claims.

      ☐  arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐  involves claims against, title to, possession of, or damages to the same property.

      ☑  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☑  Additional explanation is attached in attachment 2h

   i.  Status of case:

      ☑  pending

      ☐  dismissed  ☐ with  ☐ without prejudice

      ☐  disposed of by judgment

3.  a.  Title:  John Okoye, et al. v. Bristol-Myers Squibb Company, et al.

   b.  Case number: CGC-16-553662

   c.  Court:  ☑ same as above

      ☐  other state or federal court *(name and address):*

   d.  Department: 602

   e.  Case type:  ☐ limited civil ☑ unlimited civil ☐ probate ☐ family law ☐ other *(specify):*

   f.  Filing date: August 11, 2016

   g.  Has this case been designated or determined as "complex?"   ☐ Yes ☑ No

   h.  Relationship of this case to the case referenced above *(check all that apply):*

      ☐  involves the same parties and is based on the same or similar claims.

      ☐  arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

      ☐  involves claims against, title to, possession of, or damages to the same property.

      ☑  is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.

         ☑  Additional explanation is attached in attachment 3h

   i.  Status of case:

      ☑  pending

      ☐  dismissed  ☐ with  ☐ without prejudice

      ☐  disposed of by judgment

4.  ☐  Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: November 1, 2016

Donald F. Zimmer

_____
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

**Exhibit 1H, 2H, and 3H**

Plaintiffs in each of these related cases allege personal injuries from treatment with the prescription drug, Onglyza®, an FDA-approved mediation indicated to treat Type II Diabetes.  Onglyza® is manufactured by defendant AstraZeneca Pharmaceuticals LP and was at one time also manufactured by defendant Bristol-Myers Squibb Company.

**PROOF OF SERVICE**

*Martin, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, Melissa Michaels, declare:

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of Los Angeles; my business address is 633 West 5th Street, Suite 1700, Los Angeles, CA 90071.

On November 1, 2016, I served a copy of the within document(s):

**NOTICE OF RELATED CASE**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel: 877-480-9142
Fax: 213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**: LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c). The transmission was reported as complete without error.

☒   **BY U.S. MAIL**: 1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on November 1, 2016, at Los Angeles, California.

_____
Melissa Michaels

---

NOTICE OF RELATED CASE

# STATE COURT DOCUMENT M

1 Robert A. Mosier, Esq. (SBN 164241)
rmosier@thesandersfirm.com
2 Timothy M. Clark, Esq. (SBN 284447)
tclark@thesandersfirm.com
3 Lauren Welling, Esq. (SBN 291813)
lwelling@thesandersfirm.com
4 **SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive Suite 220
5 Irvine, CA 92606
Tel: (877) 480-9142
6 Fax: (213) 330-0346

7 Attorneys for Plaintiffs

8

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**12/09/2016**
**Clerk of the Court**
BY:ANNA TORRES
**Deputy Clerk**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## COUNTY OF SAN FRANCISCO

10

11
MICHAEL MARTIN, an individual;
12 RONALD LETELL, an individual;
DONALD CARPENTER, an individual;
13 ELIZABETH McMAHON, an individual;

14

15 JOHN W. HUNT, SR., an individual;

16              Plaintiffs,

17          vs.
BRISTOL-MEYERS SQUIBB
18 COMPANY; ASTRAZENECA
PHARMACEUTICALS LP; IPR
19 PHARMACEUTICALS, INC;
MCKESSON CORPORATION; and
20 DOES 1-50 INCLUSIVE
              Defendants.
21

22

23

24

25

26

27

28

Case No. CGC-16-554610

**PLAINTIFFS' APPLICATION FOR
APPROVAL OF COMPLEX DESIGNATION**

1      Plaintiffs file this Application for Approval of Complex Designation, pursuant to California Civil

2  Rule of Court 3.400 and this Court's October 23, 2007 General Order Re: Procedure for Approval of

3  Complex Litigation Designation.  Plaintiffs respectfully request this Court approve this Application.

4      California Rule of Court 3.400 defines a complex case as "an action that requires exceptional

5  judicial management to avoid placing unnecessary burdens on the court or the litigants and to expedite

6  the case, keep costs reasonable, and promote effective decision making by the court, the parties, and

7  counsel." The Judicial Council established five non-exclusive factors for the Court to consider in

8  deciding whether an action is complex.  A complex designation is appropriate if the action is likely to

9  involve:

10      (1) Numerous pretrial motions raising difficult or novel legal issues that will be time-

11          consuming to resolve;

12      (2) Management of a large number of witnesses or a substantial amount of documentary

13          evidence;

14      (3) Management of a large number of separately represented parties;

15      (4) Coordination with related actions pending in one or more courts in other counties,

16          states, or countries, or in a federal court; or

17      (5) Substantial postjudgment judicial supervision.

18  *See* CRC 3.400(b).

19
20      This case meets the criteria for designation as a complex case.  As a preliminary matter, the

action is provisionally complex because the Civil Case Cover Sheet designates the action as complex,
21
*see* CRC 3.401.  The Civil Case Cover Sheet indicates that this action likely will involve extensive and
22
difficult motion practice, substantial amounts documentary evidence, and large numbers of witnesses.
23
*See* Civil Case Cover Sheet (Filed September 30, 2016).
24
25
26
27
28
                                              2
PLAINTIFFS' APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION
                            CASE NO CGC-16-554610

1      Plaintiffs filed their complaint on September 30, 2016. See Attachment A.  Multiple other cases

2 involving the same defendants, products, and other common questions of law and fact have been filed in

3 California.[1]  Three of these cases were designated complex and are currently pending before the

4 Honorable Judge Karnow in the San Francisco Superior Court.

5      Plaintiffs' causes of action and the facts of this case show that adjudication may involve a

6 number of pretrial motions and substantial documentary evidence.  Plaintiffs allege all Defendants, acted

7 in concert with one another in the State of California to fraudulently convey false and misleading

8 information concerning the safety and efficacy of Saxagliptin and to conceal the risks of serious adverse

9 events, including heart failure, congestive heart failure, cardiac failure, death from heart failure, and

10 other adverse effects associated with Saxagliptin from the public, Plaintiffs, physicians, and other

11 healthcare providers. *See* Complaint ¶ 21.  A Cardiovascular Outcome Trial for Saxagliptin found

12 Saxaglipin users had a statistically significant increased risk of being hospitalized due to heart failure.

13 *See id.* ¶¶ 31-32.  After receiving and reviewing these findings, an advisory committee convened and

14 voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.

15 *See id.* ¶ 33.  Plaintiffs further allege that "in addition to Defendants refusing and failing to warn of the

16 risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs

17 lack any benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are

18 available that do not carry the increased cardiac risks of Saxagliptin." *Id.* ¶ 34.

19      Plaintiffs assert causes of action for strict products liability, negligence, failure to warn, and

20 breach of warranty.  The complex science issues, requirement for multiple experts, current and future

21 FDA interaction and the anticipated substantial amount of documentary evidence demonstrates the need

22 for the exceptional judicial management available to complex cases.

23      As this action proceeds, it is likely to involve pretrial motions that raise difficult or novel legal

24 issues.  Designating this case as complex would promote effective decision making by the court, and

25 allow any motion practice to be efficiently managed.  A complex litigation designation would also limit

26 inconsistent rulings and duplicative discovery.

27 ───────────────

[1] A notice of related case pursuant to Rule of Court 3.300 on November 2, 2016.

28

PLAINTIFFS' APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION
CASE NO CGC-16-554610

1     Finally, Plaintiffs believe the future procedural posture of this action will require careful

2  management of a large number of separately represented parties, numerous witnesses, and potential

3  coordination of related actions.  Designating this action as complex would facilitate case management.

4     For the reasons set forth above, Plaintiffs respectfully requests that the Court approve their

5  Application for Approval of Complex Litigation Designation and issue an order assigning this matter to

6  the Complex Litigation Department.

7

8  DATED: December 9, 2016           **SANDERS PHILLIPS GROSSMAN, LLC**

9

10                     By: _____

11                     Lauren Welling, Esq. (SBN 291813)
                         2860 Michelle Drive Suite 220

12                     Irvine, CA 92606
                         Tel: (877) 480-9142

13                     Fax: (213) 330-0346

14

15                     Attorneys for Plaintiffs

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' APPLICATION FOR APPROVAL OF COMPLEX LITIGATION DESIGNATION
CASE NO CGC-16-554610

STATE COURT DOCUMENT N

1  Robert A. Mosier, Esq. (SBN 164241)
   rmosier@thesandersfirm.com
2  Timothy M. Clark, Esq. (SBN 284447)
   tclark@thesandersfirm.com
3  Lauren Welling, Esq. (SBN 291813)
   lwelling@thesandersfirm.com
4  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive Suite 220
5  Irvine, CA 92606
   Tel: (877) 480-9142
6  Fax: (213) 330-0346

7  Attorneys for Plaintiffs and JCCP Petitioners

8

   **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9
   **FOR THE COUNTY OF SAN FRANCISCO**
10

11 | MATTHEW MARTIN, et al.; | San Francisco Superior Court Case No. CGC-16-554610 |
12 | Plaintiffs, | |
13 | | **NOTICE OF SUBMISSION OF PETITION FOR COORDINATION** |
   | vs. | |
14 | | |
   | BRISTOL-MYERS SQUIBB COMPANY, | |
15 | et al.; | |
   | Defendants. | |
16

   **TO THE COURT, AND TO EACH PARTY AND TO THE COUNSEL OF RECORD FOR**
17
   **EACH PARTY:**
18
   Notice is hereby given that on December 23, 2016; a Petition for Coordination was submitted by
19
   plaintiffs and petitioners, to the Chair of the Judicial Council, requesting assignment of a judge to
20
   determine whether coordination of the following actions is appropriate. The following six actions are
21
   sought to be coordinated:
22
23     1. *JOHN OKOYE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA*
24        *PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE*,
          San Francisco Superior Court Case No. CGC-16-553662, filed 8/11/2016.
25
26     2. *MATTHEW MARTIN, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA*
27        *PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE*,
          San Francisco Superior Court Case No. CGC-16-554610, filed 9/30/2016.
28

---

NOTICE OF SUBMISSION OF PETITION FOR COORDINATION

3. *LOUIS HOSEK, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; IPR PHARMACEUTICALS, INC.; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE*, San Francisco Superior Court Case No. CGC-16-554603, filed 9/30/2016.

4. *GARY GILMORE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE*, San Francisco Superior Court Case No. CGC-16-556095, filed 12/21/2016.

5. *ROBERT ROSENCRANSE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; IPR PHARMACEUTICALS, INC.; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE*, Los Angeles Superior Court Case No. BC615715, filed 4/1/2016.

6. *MARIO JIMENEZ, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; IPR PHARMACEUTICALS, INC.; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE*, Los Angeles Superior Court Case No. BC617207, filed 4/14/2016, assigned to Hon. Kenneth Freeman, Dept. 310, Los Angeles County Superior Court.

TO ANY PARTY INTENDING TO OPPOSE THE PETITION FOR COORDINATION:

Pursuant to California Rules of Court, Rule 3.522(a)(4), any party intending to oppose the petition for coordination must serve and submit to the Chairperson of the Judicial Council written opposition at least nine court days before the hearing date set in this matter.

A copy of the Petition and supporting documents are attached hereto as Exhibit "A".

Respectfully submitted,

DATED: December 23, 2016

SANDERS PHILLIPS GROSSMAN, LLC

By: _____

Lauren Welling, Esq. (SBN 291813)
2860 Michelle Drive Suite 220
Irvine, CA 92606

Attorneys for Plaintiffs and JCCP Petitioners

# EXHIBIT A

1   Robert A. Mosier, Esq. (SBN 164241)
    rmosier@thesandersfirm.com
2   Timothy M. Clark, Esq. (SBN 284447)
    tclark@thesandersfirm.com
3   Lauren Welling, Esq. (SBN 291813)
    lwelling@thesandersfirm.com
4   **SANDERS PHILLIPS GROSSMAN, LLC**
    2860 Michelle Drive Suite 220
5   Irvine, CA 92606
    Tel: (877) 480-9142
6   Fax: (213) 330-0346

7   Attorneys for Plaintiffs and JCCP Petitioners

8

## JUDICIAL COUNCIL OF CALIFORNIA

9

## CHAIR OF THE JUDICIAL COUNCIL

10

11

| | |
|---|---|
| IN RE: ONGLYZA® and **KOMBIGLYZE®** CASES | Judicial Council Coordination Proceeding |
| | JCCP No. _____ |
| *John Okoye, et al. v. Bristol-Myers Squibb Co., et al.* San Francisco Superior Court Case No. CGC-16-553662 | San Francisco Superior Court Case No. CGC-16-553662 |
| *Michael Martin, et al. v. Bristol-Myers Squibb Co., et al.* San Francisco Superior Court Case No. CGC-16-554610 | San Francisco Superior Court Case No. CGC-16-554610 |
| *Louis Hosek, et al. v. Bristol-Myers Squibb Co., et al.* San Francisco Superior Court Case No. CGC-16-554603 | San Francisco Superior Court Case No. CGC-16-554603 |
| *Gary Gilmore, et al. v. Bristol-Myers Squibb Co., et al.* San Francisco Superior Court Case No. CGC-16-556095 | San Francisco Superior Court Case No. CGC-16-556095 |
| *Robert Rosencranse, et al. v. Bristol-Myers Squibb Co., et al.* Los Angeles Superior Court Case No. BC615715 | Los Angeles Superior Court Case No. BC615715 |
| *Mario Jimenez, et al. v. Bristol-Myers Squibb Co., et al.* Los Angeles Superior Court Case No. BC617207 | Los Angeles Superior Court Case No. BC617207 |
| | **PETITION FOR COORDINATION AND REQUEST FOR STAY OF ALL INCLUDED ACTIONS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES** |
| | *[Filed concurrently with Declaration of Timothy M. Clark]* |

1

1   **TO THE HONORABLE TANI-CANTIL SAKAUYE, CHAIR OF THE JUDICIAL**

2   **COUNCIL, CHIEF JUSTICE OF CALIFORNIA, TO THE SUPERIOR COURTS, THE**

3   **PARTIES TO THE ACTIONS, AND TO THEIR COUNSEL OF RECORD:**

4         **PLEASE TAKE NOTICE** that, pursuant to Code of Civil Procedure section 404, *et. seq.*, and

5   California Rules of Court, rule 3.500, *et. seq.*, Plaintiffs and Petitioners JOHN OKOYE, PATRICIA

6   REID, HARVEY BEELER, CLOYD TUCKER, RONALD ESPOSITO, RICHARD LOTTIE,

7   RANDALL MCCALL, ROY CARTER, ROSA DAVILA, STEVEN VALLENTINE, MARGIE

8   GOFORTH, SUSAN SETTLE, SUSAN SAVOIE, MICHAEL MARTIN, RONALD LETERR,

9   DONALD CARPENTER, ELIZABETH MCMAHON, JOHN W. HUNT, SR., LOUIS HOSEK,

10  MARIE HOSEK, LOUIS LUJAN, LINDA DAY, DARRYL MCAFEE, KATHLEEN E. THOMAS,

11  ROBERT WILLIAMS, H.B. GREEN, GEORGIA ISHMAN, EDWIN ASENCIO, ALLEN ATKINS,

12  SR., GAIL TALTON, LARRY REEVES, DIANN M. REEVES, EARL BINNS, APRIL SECHLER,

13  MICHAEL SECHLER, CATHERINE WOODS, JOSEPH DAIGER, AMY MITCHELL, MAISHA

14  JOHNSON,  GARY GILMORE, DINO MARROQUIN, MARTHA WOODWARD, RONALD WHITE,

15  YVONNE LYALL, ROBERT ROSENCRANSE, MATTIE HOLMES, WALTER GARCIA, BILLY

16  DAVIS, ALPHONSO HAYES, MADGE BARNETT, ETHEL GREENE, RICHARD MERRITT,

17  WILLIAM DINGER, SR.. LYNDA LYLES, JASON MASK, SHERMAN JACKSON, THERESA

18  MEDLEY, YVONNE SANDOVAL, VANESSA SLAUGHTER, CLEOTHA SILVERS, SHAWONDA

19  VINSON, MICHAEL WINKLE, PATRICIA WORD, MARIO JIMENEZ, WILMA BARNER,

20  WAYNE DRIVER, WILLIE HARRIS, MARK JONES, DON LYNN, JIMMY STACY, MICHAEL

21  VELORIA, AUDRIE WINBOURNE, AND JAY EPPS by and through their counsel, Sanders Phillips

22  Grossman, LLC, 2860 Michelle Drive Suite 220, Irvine, California 92606, respectfully submit this

23  Petition for all pretrial purposes only, to the Chair of the Judicial Council to coordinate the actions listed

24  below and order an immediate stay of all actions while the herein petition is under consideration.

25        **PLEASE TAKE FURTHER NOTICE** that any written opposition or response to the herein

26  Petition must be filed and served at least nine (9) court days before the hearing date set on this Petition.

27  A hearing on this Petition for coordination is hereby requested.

28

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1    All of the proposed included actions involve allegations that Defendants designed, developed,

2  marketed, advertised, promoted and sold, either directly or indirectly through third parties or related

3  entities, pharmaceutical drugs known as Onglyza® and Kombiglyze® (saxagliptin).  The proposed

4  included actions all allege that use of the products known as Onglyza® and Kombiglyze® (saxagliptin),

5  in any of its forms can cause heart failure, congestive heart failure, cardiac failure, death from heart

6  failure and other serious health conditions.  Petitioners seek to coordinate the cases listed below as well

7  as similar cases filed in the State of California that constitute the subject of herein petition.

8      1.  JOHN OKOYE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA

9          PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE,

10          San Francisco Superior Court Case No. CGC-16-553662, filed 8/11/2016, assigned Hon.

11          Curtis Karnow, Dept. 304, San Francisco County Superior Court;

12      2.  MATTHEW MARTIN, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA

13          PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE,

14          San Francisco Superior Court Case No. CGC-16-554610, filed 9/30/2016, assigned Hon.

15          John K. Stewart, pending approval of complex litigation designation and transfer to Hon.

16          Curtis Karnow, Dept. 304, San Francisco County Superior Court;

17      3.  LOUIS HOSEK, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA

18          PHARMACEUTICALS LP; IPR PHARMACEUTICALS, INC.; MCKESSON

19          CORPORATION; and DOES 1-50 INCLUSIVE, San Francisco Superior Court Case No.

20          CGC-16-554603, filed 9/30/2016, assigned Hon. John K. Stewart, pending approval of

21          complex litigation designation and transfer to Hon. Curtis Karnow, Dept. 304, San Francisco

22          County Superior Court;

23      4.  GARY GILMORE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA

24          PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE,

25          San Francisco Superior Court Case No. CGC-16-556095, filed 12/21/2016, assigned Hon.

26          John K. Stewart, pending approval of complex litigation designation and transfer to Hon.

27          Curtis Karnow, Dept. 304, San Francisco County Superior Court;

28

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

5. *ROBERT ROSENCRANSE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY;*
   *ASTRAZENECA PHARMACEUTICALS LP; IPR PHARMACEUTICALS, INC.; MCKESSON*
   *CORPORATION; and DOES 1-50 INCLUSIVE,* Los Angeles Superior Court Case No.
   BC615715, filed 4/1/2016, assigned to Hon. Kenneth Freeman, Dept. 310, Los Angeles
   County Superior Court;

6. *MARIO JIMENEZ, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; ASTRAZENECA*
   *PHARMACEUTICALS LP; IPR PHARMACEUTICALS, INC.; MCKESSON*
   *CORPORATION; and DOES 1-50 INCLUSIVE,* Los Angeles Superior Court Case No.
   BC617207, filed 4/14/2016, assigned to Hon. Kenneth Freeman, Dept. 310, Los Angeles
   County Superior Court.[1]

Petitioners are not aware of any other actions filed in the State of California that share common questions of law or facts. Petitioners respectfully request the San Francisco Superior Court Complex Civil Panel be assigned to determine whether coordination of these actions is appropriate.

This Petition for Coordination is made pursuant to Section 404 of the Code of Civil Procedure and California Rules of Court, rule 3.521 on the ground that one judge hearing all actions for all pretrial purposes only in the Superior Court for the County of San Francisco will promote the ends of justice for the following reasons:

- All of the cases allege identical or virtually identical legal and factual theories, are based upon similar events and this have many of the same issues of fact and law;
- The cases involve the same defendants that will presumably be represented by the same counsel;
- Coordination will further the efficient utilization of judicial resources and avoid the unnecessary duplication and waste of judicial resources;
- Coordination will further the convenience of the parties, witnesses and counsel;
- Coordination will avoid duplicative or inconsistent rulings and orders; and
- Coordination will increase the possibility of the settlement of the disputed matters.

---

[1] The *Rosencranse* and *Jimenez* cases are currently stayed in Los Angeles Superior Court. Plaintiffs will be filing a Request for Dismissal as to IPR Pharmaceuticals, Inc. when the stay is lifted.

4

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1    These cases and grounds for coordination are more particularly described in the Declaration of

2  Timothy M. Clark, Memorandum of Points and Authorities, and other supporting documents.  The

3  actions sought to be coordinated *fall within the definition of* "complex litigation" under section 19 of the

4  Standards of Judicial Administration and California Rules of Court, rule 3.400 *et seq.* (See Declaration

5  of Timothy M. Clark.)

6    Proof of filing in each included action of a Notice of Submission of Petition for Coordination and

7  a copy of this Petition pursuant to California Rules of Court, rule 3.522, and any documents to be

8  submitted pursuant to California Rules of Court, rule 3.523 will be submitted to the Chair of the Judicial

9  Council within the time frames provided by Rules 3.522 and 3.523.

10                                    Respectfully submitted,

11  DATED: December 23, 2016            SANDERS PHILLIPS GROSSMAN, LLC

12

13                                    By: _____

14                                    Lauren Welling, Esq. (SBN 291813)

15                                    Attorneys for Plaintiffs and JCCP Petitioners

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

California law authorizes the coordination of complex cases pending in different courts whenever they share a common question of law or fact. (Code Civ. Proc. §404.)  The statute enables the coordination of these cases to promote the efficient use of judicial resources and to facilitate resolution of all actions. (Code Civ. Proc. §404.1.)  Petitioners seek to coordinate the following complex actions in San Francisco Superior Court:

1.   *JOHN OKOYE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY, et al.*, San Francisco Superior Court Case No. CGC-16-553662, filed 8/11/2016, assigned Hon.  Curtis Karnow, Dept. 304, San Francisco County Superior Court;

2.   *MATTHEW MARTIN, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, San Francisco Superior Court Case No. CGC-16-554610, filed 9/30/2016, assigned Hon. John K. Stewart, pending approval of complex litigation designation and transfer to Hon. Curtis Karnow, Dept. 304, San Francisco County Superior Court;

3.   *LOUIS HOSEK, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, San Francisco Superior Court Case No. CGC-16-554603, filed 9/30/2016, assigned Hon. John K. Stewart, pending approval of complex litigation designation and transfer to Hon. Curtis Karnow, Dept. 304, San Francisco County Superior Court;

4.   *GARY GILMORE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, San Francisco Superior Court Case No. CGC-16-556095, filed 12/21/2016, assigned Hon. John K. Stewart, pending approval of complex litigation designation and transfer to Hon. Curtis Karnow, Dept. 304, San Francisco County Superior Court;

5.   *ROBERT ROSENCRANSE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, Los Angeles Superior Court Case No. BC615715, filed 4/1/2016, assigned to Hon. Kenneth Freeman, Dept. 310, Los Angeles County Superior Court;

6. *MARIO JIMENEZ, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, Los Angeles Superior Court Case No. BC617207, filed 4/14/2016, assigned to Hon. Kenneth Freeman, Dept. 310, Los Angeles County Superior Court.

These actions all assert similar allegations against the same Defendants, and claims which arise out of the same products, the same transactions, occurrences, series of occurrences or transactions, and questions of law and fact which are common to all of these Plaintiffs will arise in the actions. All claims in these actions are a direct and proximate result of the conduct, acts and/or omissions of Defendants and/or their corporate predecessors in connections with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of the products known as Onglyza® and Kombiglyze® (saxagliptin). Plaintiffs allege all Defendants, acted in concert with one another in the State of California to fraudulently convey false and misleading information concerning the safety and efficacy of Onglyza® and Kombiglyze® (saxagliptin) and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure, and other adverse effects associated with Onglyza® and Kombiglyze® (saxagliptin) from the public, Plaintiffs, physicians, and other healthcare providers. All Plaintiffs in the actions seek recovery for injuries and damages as a result of heart failure and other adverse effects, and allege such injuries and damages were directly and proximately caused by Defendants' conduct, acts, and omissions.

All of the claims in the actions involve common legal, common factual, and common medical issues. All of the listed cases further allege that Plaintiffs have suffered further injuries and damages in the form of pain and suffering, permanent bodily impairment, mental anguish, loss of enjoyment of life, general damages and special damages according to proof at the time of trial (collectively referred to as "injuries"). All of the subject actions further allege that Defendants specifically promoted the products to consumers, including the Plaintiffs, as safe and effective without sufficient warning that such use may increase the risk of heart failure, as well as other serious adverse events and sequelae. All Plaintiffs further allege that in addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Onglyza® and Kombiglyze® (saxagliptin) drugs lack any benefit sufficient to tolerate the risks posed by its use because other anti-

2

1  diabetes drugs are available that do not carry the increased cardiac risks of Onglyza® and Kombiglyze®

2  (saxagliptin).

3      Coordinating the actions "will promote the ends of justice" as required by Code of Civil

4  Procedure sections 404 and 404.1. All six cases involve nearly identical allegations and will likely seek

5  similar discovery, especially since the same defendants are named in all six actions. Coordination will

6  save the courts and parties significant resources by avoiding duplicative motions and discovery and

7  prevent inconsistent rulings.

8      Finally, Code of Civil Procedure section 404 permits coordination of these actions because all

9  are complex pursuant to California Rules of Court, rule 3.400(b). The cases will include the following:

10  (1) numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to

11  resolve; (2) management of a large number of witnesses or a substantial amount of documentary

12  evidence; and (3) coordination with related actions pending in one or more courts in other counties.

13  Therefore, Petitioners respectfully request the cases be coordinated and San Francisco Superior Court be

14  designated as the appropriate venue.

15  **II.**  **FACTUAL BACKGROUND**

16      A. The OKOYE Action

17      On or about August 11, 2016, Petitioners filed this action in San Francisco Superior Court. This

18  action seeks recovery for injuries and damages as a result of suffering heart failure, and alleges that such

19  injuries and damages were directly and proximately caused by Defendants' Onglyza® and

20  Kombiglyze® (saxagliptin) pharmaceutical drug. This action alleges the following causes of action:

21         1.  Strict Products Liability

22         2.  Negligence

23         3.  Failure to Warn

24         4.  Breach of Warranty of Merchantability

25         5.  Breach of Express Warranty

26         6.  Breach of Implied Warranty

27         7.  Wrongful Death

28

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1        8. Survival Action

2    *See* Complaint, Clark Decl. ¶ 5, Exhibit A.

3        Plaintiffs are represented by Robert A. Mosier, Timothy M. Clark, and Lauren A. Welling of

4    SANDERS PHILLIPS GROSSMAN, LLC, 2860 Michelle Drive Ste. 220, Irvine, CA 92606; Phone

5    877-480-9142; Fax 213-330-0346. Defendants Bristol-Myers Squibb Company, AstraZeneca

6    Pharmaceuticals, LP and McKesson Corporation have been served with the summons and complaint.

7    Motions are pending in this case. On information and belief, these motions will be resolved or a briefing

8    schedule and oral argument will be set by Judge Karnow at the next scheduled status conference on

9    January 18, 2017.

10       B.  The MARTIN Action

11        On or about September 30, 2016, Petitioners filed this action in San Francisco Superior Court.

12    This action seeks recovery for injuries and damages as a result of suffering heart failure, and alleges that

13    such injuries and damages were directly and proximately caused by Defendants' Onglyza® and

14    Kombiglyze® (saxagliptin) pharmaceutical drug. This action alleges the following causes of action:

15        1.  Strict Products Liability

16        2.  Negligence

17        3.  Failure to Warn

18        4.  Breach of Warranty of Merchantability

19        5.  Breach of Express Warranty

20        6.  Breach of Implied Warranty

21    *See* Complaint, Clark Decl. ¶ 6, Exhibit B.

22        Plaintiffs are represented by Robert A. Mosier, Timothy M. Clark, and Lauren A. Welling of

23    SANDERS PHILLIPS GROSSMAN, LLC, 2860 Michelle Drive Ste. 220, Irvine, CA 92606; Phone

24    877-480-9142; Fax 213-330-0346. Defendants Bristol-Myers Squibb Company, AstraZeneca

25    Pharmaceuticals, LP and McKesson Corporation have been served with the summons and complaint.

26    Motions are pending in this case. On information and belief, these motions will be resolved or a briefing

27    schedule and oral argument will be set after this case is transferred to Judge Karnow.

28

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

C.  The HOSEK Action

On or about September 30, 2016, Petitioners filed this action in San Francisco Superior Court. This action seeks recovery for injuries and damages as a result of suffering heart failure, and alleges that such injuries and damages were directly and proximately caused by Defendants' Onglyza® and Kombiglyze® (saxagliptin) pharmaceutical drug.  This action alleges the following causes of action:

1.  Strict Products Liability

2.  Negligence

3.  Failure to Warn

4.  Breach of Warranty of Merchantability

5.  Breach of Express Warranty

6.  Breach of Implied Warranty

7.  Wrongful Death

8.  Survival Action

*See* Complaint, Clark Decl. ¶ 7, Exhibit C.

Plaintiffs are represented by Jennifer Liakos of NAPOLI SHKOLNIK PLLC, 525 South Douglas Street Ste. 260, El Segundo, CA 90245; Phone 310-331-8224; Fax 646-843-7603.  Defendants Bristol-Myers Squibb Company, AstraZeneca Pharmaceuticals, LP and McKesson Corporation have been served with the summons and complaint.  Motions are pending in this case.  On information and belief, these motions will be resolved or a briefing schedule and oral argument will be set after this case is transferred to Judge Karnow.

D.  The GILMORE Action

On or about December 21, 2016, Petitioners filed this action in San Francisco Superior Court. This action seeks recovery for injuries and damages as a result of suffering heart failure, and alleges that such injuries and damages were directly and proximately caused by Defendants' Onglyza® and Kombiglyze® (saxagliptin) pharmaceutical drug.  This action alleges the following causes of action:

1.  Strict Products Liability

2.  Negligence

1          3.  Failure to Warn

2          4.  Breach of Warranty of Merchantability

3          5.  Breach of Express Warranty

4          6.  Breach of Implied Warranty

5 *See* Complaint, Clark Decl. ¶ 8, Exhibit D.

6      Plaintiffs are represented by Robert A. Mosier, Timothy M. Clark, and Lauren A. Welling of

7 SANDERS PHILLIPS GROSSMAN, LLC, 2860 Michelle Drive Ste. 220, Irvine, CA 92606; Phone

8 877-480-9142; Fax 213-330-0346. Defendants Bristol-Myers Squibb Company, AstraZeneca

9 Pharmaceuticals, LP and McKesson Corporation are being served with the summons and complaint

10 concurrently with the herein Petition for Coordination.

11      E.  The ROSENCRANSE Action

12      On or about April 1, 2016, Petitioners filed this action in Los Angeles Superior Court. This

13 action seeks recovery for injuries and damages as a result of suffering heart failure, and alleges that such

14 injuries and damages were directly and proximately caused by Defendants' Onglyza® and

15 Kombiglyze® (saxagliptin) pharmaceutical drug. This action alleges the following causes of action:

16          1.  Strict Products Liability

17          2.  Negligence

18          3.  Failure to Warn

19          4.  Breach of Warranty of Merchantability

20          5.  Breach of Express Warranty

21          6.  Breach of Implied Warranty

22 *See* Complaint, Clark Decl. ¶ 9, Exhibit E.

23      Plaintiffs are represented by Robert A. Mosier, Timothy M. Clark, and Lauren A. Welling of

24 SANDERS PHILLIPS GROSSMAN, LLC, 2860 Michelle Drive Ste. 220, Irvine, CA 92606; Phone

25 877-480-9142; Fax 213-330-0346. Defendants Bristol-Myers Squibb Company, AstraZeneca

26 Pharmaceuticals, LP and McKesson Corporation have been served with the summons and complaint.

27 Plaintiffs intend to file a request for dismissal as to IPR Pharmaceuticals, Inc. only as soon as the stay of

28

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1  the case is lifted.

2       F.  The JIMENEZ Action

3       On or about April 14, 2016, Petitioners filed this action in Los Angeles Superior Court.  This

4  action seeks recovery for injuries and damages as a result of suffering heart failure, and alleges that such

5  injuries and damages were directly and proximately caused by Defendants' Onglyza® and

6  Kombiglyze® (saxagliptin) pharmaceutical drug.  This action alleges the following causes of action:

7       1.  Strict Products Liability

8       2.  Negligence

9       3.  Failure to Warn

10       4.  Breach of Warranty of Merchantability

11       5.  Breach of Express Warranty

12       6.  Breach of Implied Warranty

13  *See* Complaint, Clark Decl. ¶ 10, Exhibit F.

14       Plaintiffs are represented by Robert A. Mosier, Timothy M. Clark, and Lauren A. Welling of

15  SANDERS PHILLIPS GROSSMAN, LLC, 2860 Michelle Drive Ste. 220, Irvine, CA 92606; Phone

16  877-480-9142; Fax 213-330-0346.  Defendants Bristol-Myers Squibb Company, AstraZeneca

17  Pharmaceuticals, LP and McKesson Corporation have been served with the summons and complaint.

18  Plaintiffs intend to file a request for dismissal as to IPR Pharmaceuticals, Inc. only as soon as the stay of

19  the case is lifted.

20  **III.  COORDINATION IS PROPER AND WILL PROMOTE THE ENDS OF JUSTICE**

21       Coordination promotes "judicial efficiency and economy by providing for the unified

22  management of both pretrial and trial phases of the coordinated cases." (*Citicorp North Am., Inc. v. Sup.*

23  *Ct.*, (1989) 213 Cal. App. Ed 563, 565 n.3.)  Code of Civil Procedure section 404 governs the method

24  for coordination when complex cases share a common question of law or fact.  Coordination is proper

25  when two or more requirements are met: (1) the actions are "complex" as defined by the Judicial

26  Council, and (2) the actions meet the coordination criteria set forth in Code of Civil Procedure sections

27  404 and 404.1.  Specifically, the Court must consider whether coordination promotes the ends of justice

28

1  by taking into account whether common questions of fact or law predominate and are significant to the

2  litigation; the convenience of the parties; witnesses, and counsel; the relative development of actions and

3  the work product of counsel; the efficient utilization of judicial facilities and manpower; the calendar of

4  the courts; the disadvantages of duplicative and inconsistent rulings or orders; and, the likelihood of

5  settlement of the actions without further litigation should coordination be denied. (Code Civ. Proc. §§

6  404, 404.1.)  All such elements form the basis of this Petition, therefore, this Petition should be granted.

7           A.  <u>The Actions Are Complex</u>

8       The six (6) actions sought to be coordinated constitute complex litigation under Section 19 of the

9  Standard of Judicial Administration and California Rules of Court, rule 3.400 *et seq.*, and thus, satisfy

10  the first prong of coordination.  The cases will include the following: (1) numerous pretrial motions

11  raising difficult or novel legal issues that will be time-consuming to resolve; (2) management of a large

12  number of witnesses or a substantial amount of documentary evidence; and (3) coordination with related

13  actions pending in one or more courts in other counties.

14           B.  <u>Common Questions of Fact or Law Are Predominating and Significant</u>

15  The allegations of the actions are factually and legally indistinguishable.  In all six actions, Plaintiffs

16  allege essentially the same legal causes of action and have sued the same or similar entities.

17           C.  <u>These Cases Meet The Requirements of Code of Civil Procedure Section 404.1</u>

18  Code of Civil Procedure section 404.1 set forth the following criteria for coordination:

19       Coordination of civil actions sharing a common question of fact or law is appropriate if one

20       judge hearing all of the actions for all purposes in a selected site or sites will promote the
        ends of justice taking into account whether the common question of fact or, law is

21       predominating and significant to the litigation; the convenience of the parties, witnesses,
        and counsel; the relative development of the actions and the work product of counsel; the

22       efficient utilization of judicial facilities and manpower; the calendar of the courts;
        disadvantages of duplicative and inconsistent rulings, orders, or judgments; and, the

23       likelihood of settlement of the actions without further litigation should coordination be
        denied.

24

25       A court must weigh and balance all of these factors when considering a petition for coordination.

26  (*Pesses v. Sup. Ct.* (1980) 107 Cal. App. 3d 117, 125-26.) Here, coordination of the six (6) actions meets

27  the foregoing criteria, as explored in detail below.

   ///

28

8

### 1. Plaintiffs in All Actions Allege Common Question of Fact and Law that Predominate and Are Significant to the Litigation

As set forth above, the factual predicate of all six actions are substantially similar, allege many of the same causes of action and involve many of the same allegations of wrongdoing against most of the same Defendants. The matters involve the same questions of law and fact because all assert the same core claims.

### 2. Coordination Will Promote the Efficient Use of Judicial Resources and Will Advance the Convenience of the Parties, Witnesses and Counsel

Coordination will promote the efficient use of judicial resources and will accommodate the convenience of all counsel by preventing the duplication of effort and the costly adjudication of the same or substantially similar motions, such as demurrers, judgment on the pleadings and summary judgment. Coordination will avoid duplicative testimony at trial and during depositions. Many witnesses are likely to be identical given that most of the Defendants are named in all six complaints. Thus, coordination will benefit the probable witnesses. Coordination also will advance the convenience of counsel by conserving their resources through cooperative discovery that will benefit all parties. As one court has held, "[t]he preparation for trial in terms of depositions, interrogatories, admissions ... will be better achieved if done in a coordinated manner." (*McGhan Med Corp. v. Sup. Ct.*, (1992) 11 Cal. App. 4th 804, 814.) Judicial resources will also be conserved in overseeing settlement negotiations.

### 3. The Relative Development of the Actions Weigh in Favor of Coordination

A petition for coordination "may be made at any time after filing of the complaint." (Cal. Rules of Court, rule 3.521(a).) The need for coordination is immediately apparent and will only increase as the cases develop. No party will be prejudiced by coordination. No party will be prejudiced from any delay in coordination. In fact, delay will likely result in duplicative efforts and rulings, wasting the resources of the courts, counsel and the parties.

### 4. Coordination Will Unburden the Calendars of the Courts

The actions are pending in San Francisco and Los Angeles County Superior Courts. Coordination will unburden the judicial system by avoiding adjudication of six lawsuits involving

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1  common questions of fact and law. All six actions seek damages arising out of the same pharmaceutical

2  drugs. Since motion practice, discovery, witnesses and other aspects of litigation in these cases

3  undoubtedly will track one another, coordination will unburden the court from needlessly adjudicating

4  the same case.

5       **5.  Coordination Will Prevent Duplicative and Inconsistent Rulings**

6       The six actions likely will involve significant motion practice[2]. Coordination will promote

7  uniform and consistent rulings. By contrast, allowing these cases to proceed independently will result in

8  two or more courts determining the same issues, via the same motions, including demurrers, discovery

9  motions and summary judgment. Not only does this create the potential for inconsistent rulings, but the

10  rulings will be subject to review in different Courts of Appeal. Coordination will assist in achieving

11  uniformity. (*McGhan Med. Corp., supra*, 11 Cal. App. 4th at 814.)

12       **6.  If Coordination is Denied, It Is Unlikely These Cases Will Settle Without**

13          **Further Litigation**

14       The final factor to be considered under Code of Civil Procedure section 404.1 is "the likelihood

15  of settlement of the actions without further litigation should coordination be denied." It is unlikely that

16  denial of coordination would foster settlement - in fact, it would likely do the opposite. The included

17  actions involve multiple claims and significant issues. These cases will likely be vigorously litigated.

18  Generally, coordination assists in the settlement process because the parties, at the Court's urging, are

19  required to create organized plans for mediation or settlement. If experience is a guide, coordination

20  should lead to greater efficiencies in the litigation process, and to coordinated settlement discussions.

21  **IV.  SAN FRANCISCO COUNTY SUPERIOR COURT IS THE APPROPRIATE VENUE**

22       **FOR THE COORDINATION PROCEEDING**

23       Should this Petition be granted, the San Francisco Superior Court Complex Department should

24  be selected as the site for the coordinated proceedings. The San Francisco Superior Court has a complex

25  department with specific judges assigned to hear complex actions. This program permits those judges to

26

27  [2] In fact, motion practice in two similar cases has already occurred before Judge Karnow in San Francisco Superior Court.
The cases involved the same pharmaceutical drugs, claims, injuries, and Defendants as the six cases which are the subject of

28  this Petition. The cases were recently removed to federal court and thus not currently included in this Petition.

PETITION FOR COORDINATION; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES

1  gain invaluable expertise in presiding over unwieldy and complex cases. These factors strongly favor

2  San Francisco Superior Court Central Civil West as the forum that will most likely promote judicial

3  efficiency. (See Cal. Rules of Court, rule 3.530.) Further, Defendant McKesson Corporation's

4  principal place of business is located in San Francisco, California.

5  **V.   CONCLUSION**

6       For the foregoing reasons, Petitioners respectfully request their Petition for Coordination be

7  granted. Petitioners further request all included actions be stayed while the Petition is under

8  consideration.

9

10  Respectfully submitted,

11  DATED: December 23, 2016       SANDERS PHILLIPS GROSSMAN, LLC

12

13  By: _____

14  Lauren Welling, Esq. (SBN 291813)
    2860 Michelle Drive Suite 220

15  Irvine, CA 92606
    Tel: (877) 480-9142

16  Fax: (213) 330-0346

17

18  Attorneys for Plaintiffs and JCCP Petitioners

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF ORANGE

2

3  I certify that I am over the age of 18 years and not a party to the within action; that my business address is:

4

5  **SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive, Suite 220
Irvine, CA 92606

6

7  On December 23, 2016, I served the foregoing documents described as:

8  **PETITION FOR COORDINATION AND REQUEST FOR STAY OF ALL INCLUDED**

9  **ACTIONS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

10  On the parties in this action by placing a true copy thereof in a sealed envelope addressed as stated on the parties involved addressed as follows:

11

12  Chair, Judicial Council of California
Attn: Appellate Court Services

13  (Civil Case Coordination)
455 Golden Gate Avenue , 5th Floor

14  San Francisco, CA  94102

15  _   E-MAIL: I caused such documents to be transmitted by e-mail to the following e-mail addresses

16  as set forth above

17  _   (BY PERSONAL SERVICE) I caused each document to be delivered by hand to the offices of

18  the addressee.

19  _   (BY FACSIMILE) I caused each document to be sent by FAX to the parties

20  listed above

21  _X_   (BY MAIL): by placing document(s) listed above in a sealed envelope with postage thereon fully

22  prepaid, in the United States mail at Los Angeles, California addressed as set forth above.. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under the

23  practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is

24  presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in this declaration

25

26  _   (BY ELECTRONIC SERVICE VIA FILE & SERVE EXPRESS) LexisNexis File & Serve for

service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic

27  Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c). The transmission was reported as complete without error

28

_   (BY OVERNIGHT MAIL): I caused said document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

1

**PETITION FOR COORDINATION AND REQUEST FOR STAY OF ALL INCLUDED ACTIONS; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**

1        I declare under penalty of perjury under the laws of the State of California that the

2 foregoing is true and correct.

3        Executed on December 23, 2016 at Irvine, California.

4

5

6                                  Brooke L. Meyers

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PETITION FOR COORDINATION AND REQUEST FOR STAY OF ALL INCLUDED ACTIONS; SUPPORTING
MEMORANDUM OF POINTS AND AUTHORITIES

1  Robert A. Mosier, Esq. (SBN 164241)
   rmosier@thesandersfirm.com
2  Timothy M. Clark, Esq. (SBN 284447)
   tclark@thesandersfirm.com
3  Lauren Welling, Esq. (SBN 291813)
   lwelling@thesandersfirm.com
4  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive Suite 220
5  Irvine, CA 92606
   Tel: (877) 480-9142
6  Fax: (213) 330-0346

7  Attorneys for Plaintiffs and JCCP Petitioners

8
                    **JUDICIAL COUNCIL OF CALIFORNIA**
9
                    **CHAIR OF THE JUDICIAL COUNCIL**
10

11 | **IN RE: ONGLYZA® and**          | Judicial Council Coordination Proceeding
12 | **KOMBIGLYZE® CASES**           |
                                      | JCCP No. _____
13
14 | *John Okoye, et al. v. Bristol-Myers Squibb* | San Francisco Superior Court Case No.
   | *Co., et al.* San Francisco Superior Court    | CGC-16-553662
15 | Case No. CGC-16-553662                        |
                                                    | San Francisco Superior Court Case No.
16 | *Michael Martin, et al. v. Bristol-Myers*     | CGC-16-554610
   | *Squibb Co., et al.* San Francisco Superior   |
17 | Court Case No. CGC-16-554610                  | San Francisco Superior Court Case No.
                                                    | CGC-16-554603
18 | *Louis Hosek, et al. v. Bristol-Myers Squibb* |
   | *Co., et al.* San Francisco Superior Court    | San Francisco Superior Court Case No.
19 | Case No. CGC-16-554603                        | CGC-16-556095

20 | *Gary Gilmore, et al. v. Bristol-Myers*       | Los Angeles Superior Court Case No.
   | *Squibb Co., et al.* San Francisco Superior   | BC615715
21 | Court Case No. CGC-16-556095                  |
                                                    | Los Angeles Superior Court Case No.
22 | *Robert Rosencranse, et al. v. Bristol-Myers* | BC617207
   | *Squibb Co., et al.* Los Angeles Superior     |
23 | Court Case No. BC615715                        | **DECLARATION OF TIMOTHY M. CLARK**

24 | *Mario Jimenez, et al. v. Bristol-Myers*      | *[Filed concurrently with Petition for Coordination*
   | *Squibb Co., et al.* Los Angeles Superior     | *and Request for Stay of All Actions; Supporting*
25 | Court Case No. BC617207                        | *Memorandum and Authorities]*

26

27

28

                    DECLARATION OF TIMOTHY M. CLARK

1  TO THE HONORABLE TANI-CANTIL SAKAUYE, CHAIR OF THE JUDICIAL COUNCIL,

2  CHIEF JUSTICE OF CALIFORNIA:

3  I, Timothy M. Clark, declare as follows:

4      1.  I am an attorney licensed to practice in the State of California.  I am a member of Sanders

5  Phillip Grossman, LLC, and counsel for Plaintiffs and JCCP Petitioners herein.  I have personal

6  knowledge of the matters set forth herein, and if called upon to testify, would be competent to do so

7  under oath.

8      2.  I make this declaration based on my own personal knowledge, except as stated upon information

9  and belief.

10     3.  This Petition is brought for the purpose of seeking coordination of six complaints, with claims

11 of numerous injured plaintiffs.  Each complaint asserts causes of action arising from common claims as

12 a result of using Onglyza® and Kombiglyze® (saxagliptin).  Each complaint contains allegations

13 against identical or similar defendants and involve identical issues of law.

14     4.  Petitioners seek to coordinate the following six **ONGLYZA® and KOMBIGLYZE®** cases

15 currently pending in California state courts.

16     5.  *JOHN OKOYE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY, et al.*, San Francisco

17 Superior Court Case No. CGC-16-553662, filed 8/11/2016.  A true and correct copy of the complaint is

18 attached to this Declaration as Exhibit A.

19     6.  *MATTHEW MARTIN, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, San Francisco

20 Superior Court Case No. CGC-16-554610, filed 9/30/2016.  A true and correct copy of the complaint is

21 attached to this Declaration as Exhibit B.

22     7.  *LOUIS HOSEK, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, San Francisco

23 Superior Court Case No. CGC-16-554603, filed 9/30/2016.  A true and correct copy of the complaint is

24 attached to this Declaration as Exhibit C.

25     8.  *GARY GILMORE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, San Francisco

26 Superior Court Case No. CGC-16-556095, filed 12/21/2016.  A true and correct copy of the complaint

27 is attached to this Declaration as Exhibit D.

28     9.  *ROBERT ROSENCRANSE, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, Los

1

1   Angeles Superior Court Case No. BC615715, filed 4/1/2016. A true and correct copy of the complaint

2   is attached to this Declaration as Exhibit E.

3       10. *MARIO JIMENEZ, et al. v. BRISTOL-MYERS SCQUIBB COMPANY; et al.*, Los Angeles

4   Superior Court Case No. BC617207, filed 4/14/2016. A true and correct copy of the complaint is

5   attached to this Declaration as Exhibit F.

6       11. Each complaint names the following Defendants: Bristol-Myers Squibb Company, AstraZeneca

7   Pharmaceuticals, LP and McKesson Corporation. On information and belief, the names defendants are

8   the manufacturers, distributors, marketers, providers, and promoters for the products known as

9   Onglyza® and Kombiglyze® (saxagliptin).

10      12. Each Plaintiff alleges to have suffered serious injuries, including heart failure, congestive heart

11  failure, cardiac failure and other adverse effects and resulting injuries from the ingestion of Onglyza®

12  and Kombiglyze® (saxagliptin).

13      13. The subject cases are complex pursuant to California Rules of Court, rule 3.400(b). The cases

14  will include the following: (1) Numerous pretrial motions raising difficult or novel legal issues that will

15  be time-consuming to resolve; (2) Management of a large number of witnesses or a substantial amount

16  of documentary evidence; and (3) Coordination with related actions pending in one or more courts in

17  other counties, states, or countries, or in a federal court. The subject cases arise out of injuries

18  sustained by plaintiffs due to their exposure to the drug products; therefore, the cases will include

19  complex scientific and medical issues which consistently trigger numerous pre-trial motions. The

20  subject cases assert claims against large pharmaceutical companies and will, therefore, necessarily

21  involve several corporate witnesses, scientific researchers, advertising and marketing consultants as

22  well as multiple treating physicians for each plaintiff. In addition, cases involving the manufacture,

23  marketing and sale of a prescription drug often result in the production of voluminous amounts of

24  documentary evidence.

25      14. The actions sought to be coordinated meet the standards described in Code of Civil Procedure

26  section 404.1. The actions involve common questions of law and fact that predominate and are

27  significant to the litigation. These common questions of law and fact include, but are not limited to:

28          a.  Whether there are design and/or manufacturing defects in defendants' drug products;

b. Whether defendants failed to adequately warn physicians and consumers regarding all known and knowable risks associated with the drug products and/or whether warnings were vitiated by defendants' advertising and marketing campaigns;

c. Whether the defendants' conduct in manufacturing and marketing the drug products fell below the applicable duties of care owed by the defendants to the plaintiffs;

d. Whether the defendants intentionally, deliberately, knowingly, carelessly, recklessly, or negligently misrepresented, omitted, concealed or suppressed material and important information regarding the true and known risks of the drug products from the plaintiffs and their physicians;

e. Whether the defendants' misconduct constitutes breaches of any warranties recognized by law;

f. Whether the defendants' conduct constitutes negligence;

g. Whether the plaintiffs are entitled to compensatory damages and/or restitution, and if so, the method by which such relief should be determined; and

h. Whether the defendants are liable for punitive or exemplary damages, a matter to be determined when appropriate and if so, the amount necessary and appropriate to punish defendants for their conduct, to deter others, and to fulfill the other policies and purposes of punitive and exemplary damages.

15. Petitioners' counsel plans to file additional similar cases in California Superior Courts within the next few months. Further, Petitioners' counsel is informed that similar cases involving Onglyza® and Kombiglyze® (saxagliptin) will soon be filed by other counsel.

16. The actions were recently filed and coordination of these actions will not severely disrupt the progress of any individual action.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on this 23rd day of December 2016, at Irvine, California.

_____
Timothy M. Clark, Esq.

3

DECLARATION OF TIMOTHY M. CLARK

Exhibit A

Robert A. Mosier, Esq. (SBN 164241)
Timothy M. Clark, Esq. (SBN 284447)
Lauren Welling, Esq. (SBN 291813)
**SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive Suite 220
Irvine, CA 92606
Tel: (877) 480-9142
Fax: (213) 330-0346
rmosier@thesandersfirm.com

*Attorney for Plaintiffs*

**ENDORSED**
**F I L E D**
Superior Court of California
County of San Francisco

**AUG 1 1 2016**

CLERK OF THE COURT
BY: _____ ARLENE RAMOS
                              Deputy Clerk

### THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF SAN FRANCISCO

| | |
|---|---|
| JOHN OKOYE, an individual; PATRICIA REID, an individual; HARVEY BEELER, an individual; CLOYD TUCKER, an individual; RONALD ESPOSITO, an individual; RICHARD LOTTIE, an individual; RANDALL MCCALL, an individual; ROY CARTER, an individual; ROSA DAVILA, an individual; STEVEN VALLENTINE, an individual; MARGIE GOFORTH, an individual; SUSAN SETTLE, as surviving statutory beneficiary for the wrongful death of KENNETH SETTLE, deceased, individually, and on behalf of all other heirs of decedent; SUSAN SAVOIE, as surviving statutory beneficiary for the wrongful death of DEAN PINCHOFF, deceased, individually, and on behalf of all other heirs of decedent; | CASE NO: JUDGE: **CGC-16-553662** <br><br> COMPLAINT FOR DAMAGES FOR: <br><br> 1) STRICT PRODUCTS LIABILITY <br> 2) NEGLIGENCE <br> 3) FAILURE TO WARN <br> 4) BREACH OF WARRANTY OF MERCHANTABILITY <br> 5) BREACH OF EXPRESS WARRANTY <br> 6) BREACH OF IMPLIED WARRANTY <br> 7) WRONGFUL DEATH <br> 8) SURVIVAL ACTION |
| Plaintiffs, | DEMAND FOR JURY TRIAL |
| vs. | |
| BRISTOL-MEYERS SQUIBB COMPANY; ASTRAZENECA PHARMACEUTICALS LP; MCKESSON CORPORATION; and DOES 1-50 INCLUSIVE | |
| Defendants. | **BY FAX** |

1

*COMPLAINT FOR DAMAGES*

Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for damages against the Defendants, and allege the following:

## I.  INTRODUCTION

1.     This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2.     Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.     The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.     Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

## II.  PARTIES, VENUE & JURISDICTION

5.     At all times relevant to this action, Plaintiff JOHN OKOYE was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.     At all times relevant to this action, Plaintiff PATRICIA REID was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

7.     At all times relevant to this action, Plaintiff HARVEY BEELER was a citizen and resident of the State of Indiana.  Plaintiff ingested Saxagliptin resulting in injuries.

8.     At all times relevant to this action, Plaintiff CLOYD TUCKER was a citizen and resident of the State of Kentucky.  Plaintiff ingested Saxagliptin resulting in injuries.

9.     At all times relevant to this action, Plaintiff RONALD ESPOSITO was a citizen and resident of the State of New York.  Plaintiff ingested Saxagliptin resulting in injuries.

10.     At all times relevant to this action, Plaintiff RICHARD LOTTI was a citizen and resident of the State of New York.  Plaintiff ingested Saxagliptin resulting in injuries.

*COMPLAINT FOR DAMAGES*

1        11.    At all times relevant to this action, Plaintiff RANDALL MCCALL was a citizen

2    and resident of the State of Oklahoma.  Plaintiff ingested Saxagliptin resulting in injuries.

3        12.    At all times relevant to this action, Plaintiff ROY CARTER was a citizen and

4    resident of the State of Texas.  Plaintiff ingested Saxagliptin resulting in injuries.

5        13.    At all times relevant to this action, Plaintiff ROSA DAVILA was a citizen and

6    resident of the State of Texas.  Plaintiff ingested Saxagliptin resulting in injuries.

7        14.    At all times relevant to this action, Plaintiff STEVEN VALLENTINE was a

8    citizen and resident of the State of Alabama.  Plaintiff ingested Saxagliptin resulting in injuries.

9        15.    At all times relevant to this action, Plaintiff MARGIE GOFORTH was a citizen

10    and resident of the State of Arkansas.  Plaintiff ingested Saxagliptin resulting in injuries.

11        16.    At all times relevant to this action, Decedent KENNETH SETTLE (hereinafter

12    "Decedent") was a citizen and resident of the State of Illinois. Decedent ingested Saxagliptin

13    resulting in injuries.

14        17.    At all times relevant to this action. Plaintiff SUSAN SETTLE was the surviving

15    spouse of decedent KENNETH SETTLE and also resided in Illinois.  Plaintiff is the heir and

16    successor in interest to the decedent, KENNETH SETTLE, and is entitled to bring this claim for

17    all injuries and damages, including exemplary and punitive damages, against Defendants.

18        18.    At all times relevant to this action, Decedent DEAN PINCHOFF (hereinafter

19    "Decedent") was a citizen and resident of the State of Louisiana. Decedent ingested Saxagliptin

20    resulting in injuries.

21        19.    At all times relevant to this action. Plaintiff SUSAN SAVOIE was the surviving

22    child of decedent DEAN PINCHOFF and also resided in Louisiana.  Plaintiff is the heir and

23    successor in interest to the decedent, DEAN PINCHOFF, and is entitled to bring this claim for

24    all injuries and damages, including exemplary and punitive damages, against Defendants.

25        20.    Plaintiffs request an individual trial by jury and oppose any joint trial of their

26    claims.

27        21.    Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation

28    with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant

*COMPLAINT FOR DAMAGES*

1   times, BMS regularly and continuously did business within this judicial district including

2   manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

3      22.   Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited

4   partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.

5   At all relevant times, AZ regularly and continuously did business within this judicial district

6   including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

7   Saxagliptin.

8      23.   Defendant McKesson Corporation ("McKesson") is a Delaware corporation with

9   its principal place of business at One Post Street, San Francisco, California 94104.  At all

10  relevant times, McKesson regularly and continuously did business within this judicial district

11  including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

12  Saxagliptin.

13     24.   Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive.

14  Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

15  Defendants are ascertained.  At all relevant times herein DOES 1-50 inclusive were the

16  individuals, corporations, and/or business entities, which were agents, servants, joint ventures,

17  partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

18  as alleged herein.

19     25.   Hereinafter the aforementioned Defendants may collectively be referred to as

20  "Defendants."

21     26.   At all relevant times, each Defendant acted in all aspects as the agent and alter

22  ego of each other.

23     27.   At all relevant times, Defendants acted in concert with one another in the State of

24  California to fraudulently convey false and misleading information concerning the safety and

25  efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure,

26  congestive heart failure, cardiac failure, death from heart failure and other adverse effects

27  associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare

28  providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin,

*COMPLAINT FOR DAMAGES*

1   including Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert with

2   one another, Plaintiffs would not have ingested Saxagliptin.

3       28.     This Court has personal jurisdiction over Defendants.  Defendants are and were at

4   all relevant times residents of and/or authorized to conduct business in the State of California and

5   Defendants conducted such business within the state including the performance of acts that

6   caused or contributed to the harm giving rise to this action.

7       29.     At all times material hereto, Defendants maintained systematic and continuous

8   contacts in this judicial district, regularly transacted business within this judicial district,

9   employed numerous individuals in this district and regularly availed themselves of the benefits

10  of this judicial district.  Defendants received substantial financial benefit and profits as a result of

11  designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this

12  district and throughout the United States.

13      30.     The combined acts and/or omissions of each Defendant resulted in indivisible

14  injuries to each Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and/or co-

15  conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions

16  alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct

17  of each and every other Defendant.

18      31.     The amount in controversy exceeds the jurisdictional limits of this court.

19  **III.    FACTUAL ALLEGATIONS**

20      32.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance

21  and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2

22  diabetics have an increased risk of cardiovascular  disease, which is the leading cause of

23  morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to

24  allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in

25  users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related

26  adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and

27  sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2

28  diabetes.

*COMPLAINT FOR DAMAGES*

33.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

34.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

35.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before

---

[1] *Id.*

1  studying the risks. Defendants marketed and sold Saxagliptin for nearly five years before

2  completing an adequately powered and designed study of the risks of heart failure, congestive

3  heart failure, cardiac failure, and death related to those events.

4       36.     On July 31, 2009 Defendants began marketing Onglyza. On November 5, 2010,

5  Defendants began marketing Kombiglyze XR. Defendants marketed both drugs as treatments

6  for type 2 diabetes and agents to help reduce adverse complications associated with the disease.

7  At no time did Defendants perform adequate studies or adequately warn that Onglyza and

8  Kombiglyze XR increased the risk of cardiovascular related adverse events.

9       37.     After Defendants began selling and making substantial profits off their drugs

10  Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance

11  recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for

12  Saxagliptin.

13       38.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular

14  Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial

15  Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a

16  statistically significant increased risk of being hospitalized due to heart failure.

17       39.     After receiving and reviewing the disturbing findings from the SAVOR trial, the

18  FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed

19  its own analysis of the SAVOR data. Following the FDA's detailed analysis and review of the

20  SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and

21  Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order

22  Defendants to add a heart failure warning to its Saxagliptin drugs. The single member who

23  voted against adding the warning stated a warning was insufficient and the drug should instead

24  be withdrawn from the US market.[2] Despite the SAVOR findings and despite the FDA Advisory

25  Committee voting to add a warning (or remove the drugs from the market), Defendants failed

26  and continue to fail to warn. Once again, Defendants place sales over patient safety.

27

28  [2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

*COMPLAINT FOR DAMAGES*

40.  In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

41.  Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

42.  Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

a.  in print marketing, advertising, and promotional materials;

b.  on Defendant-owned, controlled, or supported websites and blogs;

c.  in materials and advertisements to Plaintiffs and consumers stating the use of Saxagliptin is safe; and

d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

43.  At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

44.  Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

IV.  **PLAINTIFFS' USE OF SAXAGLIPTIN**

45.  Plaintiffs and Decedents were prescribed and ingested Saxagliptin at various times.

*COMPLAINT FOR DAMAGES*

46.     Plaintiffs and Decedents used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiffs and Decedents without substantial change in the drug's condition.

47.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs and Decedents developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

48.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

49.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

50.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs and Decedents, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

51.     Plaintiffs' and Decedents' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs and Decedents, would have changed the way in which they treated Plaintiffs' and Decedents' relevant conditions, changed the way they warned Plaintiffs and Decedents about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

52.     Plaintiffs' and Decedents' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and

1  death related to those events associated with the use of Saxagliptin, and, if they had been

2  informed, would have used and prescribed alternative therapies to Plaintiffs and Decedents.

3       53.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Decedents

4  suffered injuries, including, but not limited to, heart failure, congestive heart failure, cardiac

5  failure, and/or death, which resulted in damages to Plaintiffs in a sum in excess of the

6  jurisdictional limits of the Court.

7       54.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Decedents

8  incurred obligations and expenses for medical care, testing and treatment. As a direct and

9  proximate result of Defendants' conduct, Plaintiffs and Decedents suffered loss of income,

10  wages, profits and commissions, diminishment of earning potential, and other pecuniary losses.

11       55.    Defendants' conduct was committed with knowing, reckless, conscious, wanton,

12  willful and deliberate disregard for the value of human life and the rights and safety of

13  consumers, including Plaintiffs and Decedents, thereby entitling Plaintiffs to punitive and

14  exemplary damages so as to punish and deter similar conduct in the future.

15    **V.**  **DELAYED DISCOVERY**

16       56.    Defendants, through their affirmative misrepresentations and omissions, actively

17  concealed from the Plaintiffs and Decedents and their physicians and healthcare providers the

18  true and significant risks associated with Saxagliptin.

19       57.    As a result of Defendants' actions, Plaintiffs, Decedents and their physicians and

20  healthcare providers were unaware, and could not have reasonably known or have learned

21  through reasonable diligence, that Plaintiffs and Decedents had been exposed to the risks

22  identified in this Complaint, and that those risks were the result of Defendants' acts, omissions,

23  and misrepresentations.

24       58.    No limitations period ought to accrue until such time as Plaintiffs knew or

25  reasonably should have known of some causal connection between the use of Saxagliptin and the

26  harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact

27  that this Complaint is filed well within the statutory period after Plaintiffs knew or should have

28  known the facts alleged herein.

---

*COMPLAINT FOR DAMAGES*

59.     Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

60.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## I.

## CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

61.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

62.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

63.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

64.     Saxagliptin was used by Plaintiffs and Decedents in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

65.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

   a.   Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

   b.   Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

c. Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

d. Saxagliptin was insufficiently and/or inadequately tested by Defendants.

e. Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

f. Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

g. Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs and Decedents, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

h. Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i. Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j. Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k. Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

66.     Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of

12

the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

67.     A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs, Decedents and their physicians.

68.     Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

69.     Plaintiffs, Decedents and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

70.     Plaintiffs and Decedents were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

71.     Had adequate information regarding the safety of the products been provided to Plaintiffs and Decedents, Plaintiffs and Decedents would not have used Saxagliptin.

72.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

73.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs and Decedents suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

COMPLAINT FOR DAMAGES

1   Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

2   set forth in full in this cause of action and further allege:

3   74.   Defendants negligently manufactured, designed, labeled, packaged, distributed,

4   marketed, advertised, and sold Saxagliptin.

5   75.   At all relevant and material times, Defendants had a duty to Plaintiffs and

6   Decedents to exercise reasonable care in the design, manufacture, advertising, marketing,

7   labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and

8   sale of Saxagliptin, including a duty to ensure that the products did not cause users such as

9   Plaintiffs and Decedents to suffer from unreasonable, dangerous side effects when used alone or

10  in foreseeable combination with other drugs.

11  76.   Defendants breached their duty of care to Plaintiffs and Decedents and were

12  negligent in their actions, misrepresentations, and omissions in numerous ways including the

13  following:

14  a.   Failing to perform adequate testing concerning the safety of Saxagliptin

15  which would have shown Saxagliptin created a high risk of unreasonable,

16  dangerous side effects, including causing and increasing the risk of heart

17  failure, congestive heart failure, cardiac failure, death from heart failure,

18  and other serious health conditions and other adverse effects, which would

19  have permitted adequate and appropriate warnings to have been by given

20  by Defendants to prescribing physicians and the consuming public,

21  including Plaintiffs and Decedents;

22  b.   Failing to design Saxagliptin so as to properly minimize effects on

23  receptors that were known to be associated with certain serious adverse

24  effects;

25  c.   Failing to conduct adequate pre-clinical and clinical testing to determine

26  the safety of Saxagliptin;

27

28

d.     Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.     Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.     Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs and Decedents, without an adequate warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g.     Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h.     Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

i.     Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, Decedents, consumers, the medical community, and the FDA;

j.     Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k.     Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

l.     Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m.     Failing to educate healthcare providers and the public about the safest use of the products;

15

n.      Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.      Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.      Failing to warn Plaintiffs and Decedents of the danger of adverse medical conditions from the use of Saxagliptin; and

q.      Failing to label Saxagliptin to adequately warn Plaintiffs and Decedents of the serious adverse side effects with the use of Saxagliptin.

77.      Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs, Decedents and their healthcare providers would not have been aware.

78.      Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

79.      Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.      The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs and Decedents were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' and Decedents injuries.

b.   The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' and Decedents' injuries.

80.   Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Plaintiffs.

81.   Defendants negligently and recklessly represented to Plaintiffs, Decedents, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

82.   Defendants negligently and recklessly failed to disclose to Plaintiffs, Decedents and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

83.   Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

84.   Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Plaintiffs, Decedents and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

85.   Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury.

Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

86.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiffs and Decedents, as well as the medical community, the FDA and the consuming public.

87.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiffs and Decedents, rely upon them.

88.     Plaintiffs, Decedents and their healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

89.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs and Decedents sustained injuries and damages.

90.     Had Plaintiffs and Decedents been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiffs and Decedents would not have used these products.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## III.

## CAUSE OF ACTION FOR FAILURE TO WARN

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further allege:

91.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

*COMPLAINT FOR DAMAGES*

92.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiffs.

93.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

94.     The Saxagliptin manufactured by Defendants reached Plaintiffs and Decedents without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiffs.

95.     The Plaintiffs and Decedents were administered the Saxagliptin for its intended purpose.

96.     Plaintiffs and Decedents used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

97.     Defendants failed to warn and/or adequately warn Plaintiffs, Decedents, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

98.     Plaintiffs and Decedents did not have the same knowledge as Defendants and no adequate warning was communicated to them.

99.     The Plaintiffs and Decedents could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

100.    Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

101.    Plaintiffs and Decedents did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to

Plaintiffs, Decedents or their treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

102.     Defendants had a continuing duty to provide consumers, including Plaintiffs, Decedents and their physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

103.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs and Decedents, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs and Decedents.

104.     Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

105.     Defendants knew or should have known that consumers, including Plaintiffs and Decedents, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

106.     Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and Decedents and to their intermediary physicians, in at least the following ways:

     a.     Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' and Decedents' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

20

*COMPLAINT FOR DAMAGES*

b.   Defendants failed to inform Plaintiffs, Decedents and their physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

c.   Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

d.   Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

107.   Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, Decedents and their physicians about the increased risks of injury but failed to do so.

108.   Defendants had a duty and obligation to provide Plaintiffs, Decedents and their physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

109.   By failing to provide Plaintiffs, Decedents and their physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

110.   Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs, Decedents and the public.

111.   As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs and Decedents sustained injuries and damages.

1    WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory,

2  exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and

3  such other and further relief as this Court deems just and proper.

4                                              **IV.**

5    **CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY**

6        Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

7  set forth in full in this cause of action and further allege:

8        112.    At all times mentioned in this Complaint, Defendants manufactured,

9  compounded, packaged, distributed, recommended, merchandised, advertised, promoted,

10  supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs and Decedents,

11  Defendants impliedly warranted to Plaintiffs, Decedents and their physicians and healthcare

12  providers, that Saxagliptin was of merchantable quality and safe for the use for which it was

13  intended.

14        113.    Defendants knew and intended that Saxagliptin be used by Plaintiffs, Decedents

15  and other consumers when the products were placed into the stream of commerce.

16        114.    Defendants knew of the use for which Saxagliptin was intended and impliedly

17  warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

18        115.    Plaintiffs, Decedents and their healthcare providers reasonably relied upon the

19  expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied

20  warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs,

21  Decedents and other consumers.

22        116.    The Saxagliptin used by Plaintiffs and Decedents was not safe, of merchantable

23  quality, or fit for its intended use.

24        117.    The product was unsafe for its intended use and was not of merchantable quality,

25  as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its

26  intended use and would cause severe injury (or death) to the user. Saxagliptin was

27  unaccompanied by adequate warnings of their dangerous propensities that were either known or

28  reasonably scientifically knowable at the time of distribution.

118.    The Saxagliptin used by Plaintiffs and Decedents was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

119.    As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs and Decedents sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

## CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

120.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs, Decedents and other members of the general public.

121.    Defendants expressly represented to Plaintiffs, Decedents, consumers and the medical community that Saxagliptin was:

    a.    safe;

    b.    efficacious;

    c.    fit for use in persons with Type 2 diabetes mellitus;

    d.    of merchantable quality;

    e.    adequately tested;

    f.    well tolerated in adequate and well-controlled clinical studies; and

    g.    did not increase the risk of experiencing serious, life threatening side effects.

122.    Defendants breached those express warranties as follows:

*COMPLAINT FOR DAMAGES*

a.    Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

b.    Defendants misrepresented the risks associated with using Saxagliptin;

c.    Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

d.    Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' and Decedents' conditions; and

e.    Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

123.    Saxagliptin did not conform to Defendants' express representations and warranties.

124.    At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

125.    At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

126.    In deciding to purchase and use Saxagliptin, Plaintiffs, Decedents, other consumers, and the medical community relied upon Defendants' express warranties.

127.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs and Decedents sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

### CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

128.    At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

129.    Defendants impliedly warranted to Plaintiffs and Decedents that Saxagliptin was safe for use by Plaintiff, Decedents and the consuming population.

130.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

131.    Plaintiffs, Decedents and their healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

132.    Plaintiffs and Decedents were foreseeable users of Defendants' product, Saxagliptin.  Saxagliptin was expected to reach, and did in fact reach, Plaintiffs and Decedents without substantial change in the condition in which the products were manufactured and sold by Defendants.

133.    Plaintiffs, Decedents and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

134.    The Saxagliptin used by Plaintiffs and Decedents was not safe, of merchantable quality, nor fit for use.

135.    The Saxagliptin used by Plaintiffs and Decedents did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

136.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

137.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs and Decedents sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## CAUSE OF ACTION FOR WRONGFUL DEATH

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

138.    Plaintiffs are the surviving spouse, child, and/or parent, and representative of the estate of the Decedents, who used Defendants' Saxagliptin and were injured and died as a result. Said Decedents were prescribed, supplied with, and consumed the Saxagliptin drugs as designed, manufactured, tested, marketed and sold or otherwise placed in the stream of interstate commerce by Defendants.

139.    The injuries and damages of Plaintiffs and Decedents were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

140.    As a result of the conduct of Defendants and the use of Defendants' Saxagliptin drugs, the Decedents suffered fatal injuries.

141.    As a result of the death of the Decedents, Plaintiffs were deprived of love, companionship, comfort, affections, society, solace and moral support of the Decedents.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VIII

## SURVIVAL ACTION

142.    Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

143.    As a direct and proximate cause of the Defendants' conduct and their failure to comply with applicable standards, as outlined above, the Decedents suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity and the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, and loss of earnings as well as loss of ability to earn money prior to the Decedents' deaths.

144.    The representative/administrator/successor-in-interest of the Decedents' estates bring this claim for damages on behalf of the Decedents' estates and the Decedents' beneficiaries.

145.    The representative/administrator/successor-in-interest of the Decedents' estates further plead all survival damages allowed by statute and law in the state or state in which the causes of action accrued.

## IX

### GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

146.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

a.    All available compensatory damages for the described losses with respect to each cause of action;

b.    Past and future medical expenses, as well as the cost associated with past and future life care;

c.    Past and future lost wages and loss of earning capacity;

d.    Past and future emotional distress;

e.    Consequential damages;

f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.    All wrongful death damages permitted by law, where applicable;

h.    For all survival action damages permitted by law, where applicable;

*COMPLAINT FOR DAMAGES*

1   i.      Disgorgement of profits obtained through unjust enrichment;

2   j.      Restitution;

3   k.      Punitive damages with respect to each cause of action;

4   l.      Reasonable attorneys' fees where recoverable;

5   m.      Costs of this action;

6   n.      Pre-judgment and all other interest recoverable; and

7   o.      Such other additional and further relief as Plaintiffs may be entitled to in

8           law or in equity.

9                           **DEMAND FOR JURY TRIAL**

10       Each Plaintiff named herein demands his or her own individual trial by jury on all issues

11  so triable.

12

13  Dated: August 11, 2016                By: _____

14                                        Lauren A. Welling (CA Bar No. 291813)
                                          **SANDERS PHILLIPS GROSSMAN, LLP**
                                          2860 Michelle Drive, Suite 220
15                                        Irvine, CA 90606
                                          Tel: (877) 480-9142
16                                        Fax: (213) 330-0346
                                          rmosier@thesandersfirm.com
17

18

19

20

21

22

23

24

25

26

27

28

*COMPLAINT FOR DAMAGES*

Exhibit B

ENDORSED
F I L E D
*San Francisco County Superior Court*

SEP 3 0 2016

CLERK OF THE COURT
BY: _MADONNA CARANTO_
Deputy Clerk

1  Robert A. Mosier, Esq. (SBN 164241)
2  Timothy M. Clark, Esq. (SBN 284447)
   Lauren Welling, Esq. (SBN 291813)
3  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive Suite 220
4  Irvine, CA 92606
   Tel: (877) 480-9142
5  Fax: (213) 330-0346
   rmosier@thesandersfirm.com
6

7  *Attorneys for Plaintiffs*

8  **THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **COUNTY OF SAN FRANCISCO**

10  MICHAEL MARTIN, an individual;          ) CASE NO. CGC - 16 - 554610
11  RONALD LETELL, an individual;           ) JUDGE:
    DONALD CARPENTER, an individual;        )
12  ELIZABETH McMAHON, an individual;       ) COMPLAINT FOR DAMAGES FOR:
    JOHN W. HUNT, SR., an individual;       )
13                                          ) 1) STRICT PRODUCTS LIABILITY
14       Plaintiffs,                        ) 2) NEGLIGENCE
                                            ) 3) FAILURE TO WARN
15       vs.                                ) 4) BREACH OF WARRANTY OF
                                            )    MERCHANTABILITY
16  BRISTOL-MEYERS SQUIBB COMPANY;          ) 5) BREACH OF EXPRESS WARRANTY
17  ASTRAZENECA PHARMACEUTICALS             ) 6) BREACH OF IMPLIED WARRANTY
    LP; MCKESSON CORPORATION; and           )
18  DOES 1-50 INCLUSIVE                     )
                                            ) DEMAND FOR JURY TRIAL
19       Defendants.                        )
                                            )
20                                          ) Complaint Filed: _____, ____

21       Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for

22  damages against the Defendants, and allege the following:

23  **I.   INTRODUCTION**

24       1.    This is an action for damages relating to the Defendants' design, manufacture,

25  sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug

26  Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and

27  Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and

28  Kombiglyze XR, shall herein be referred to as "Saxagliptin."

**BY FAX**

1

2.      Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.      The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.      Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

II.     **PARTIES, VENUE & JURISDICTION**

5.      At all times relevant to this action, Plaintiff MICHAEL MARTIN was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.      At all times relevant to this action, Plaintiff RONALD LETELL was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

7.      At all times relevant to this action, Plaintiff DONALD CARPENTER was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

8.      At all times relevant to this action, Plaintiff ELIZABETH McMAHON was a citizen and resident of the State of Pennsylvania.  Plaintiff ingested Saxagliptin resulting in injuries.

9.      At all times relevant to this action, Plaintiff JOHN W. HUNT, SR. was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

10.     Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

11.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

12.     Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district

2

1  including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

2  Saxagliptin.

3      13.    Defendant McKesson Corporation ("McKesson") is a Delaware corporation with

4  its principal place of business at One Post Street, San Francisco, California 94104.  At all

5  relevant times, McKesson regularly and continuously did business within this judicial district

6  including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

7  Saxagliptin.

8      14.    Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive.

9  Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

10  Defendants are ascertained.  At all relevant times herein DOES 1-50 inclusive were the

11  individuals, corporations, and/or business entities, which were agents, servants, joint ventures,

12  partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

13  as alleged herein.

14      15.    Hereinafter the aforementioned Defendants may collectively be referred to as

15  "Defendants."

16      16.    At all relevant times, each Defendant acted in all aspects as the agent and alter

17  ego of each other.

18      17.    At all relevant times, Defendants acted in concert with one another in the State of

19  California to fraudulently convey false and misleading information concerning the safety and

20  efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure,

21  congestive heart failure, cardiac failure, death from heart failure and other adverse effects

22  associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare

23  providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin,

24  including Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert with

25  one another, Plaintiffs would not have ingested Saxagliptin.

26      18.    This Court has personal jurisdiction over Defendants.  Defendants are and were at

27  all relevant times residents of and/or authorized to conduct business in the State of California and

28

3

*COMPLAINT FOR DAMAGES*

1  Defendants conducted such business within the state including the performance of acts that

2  caused or contributed to the harm giving rise to this action.

3      19.    At all times material hereto, Defendants maintained systematic and continuous

4  contacts in this judicial district, regularly transacted business within this judicial district,

5  employed numerous individuals in this district and regularly availed themselves of the benefits

6  of this judicial district.  Defendants received substantial financial benefit and profits as a result of

7  designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this

8  district and throughout the United States.

9      20.    The combined acts and/or omissions of each Defendant resulted in indivisible

10  injuries to each Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and/or co-

11  conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions

12  alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct

13  of each and every other Defendant.

14      21.    The amount in controversy exceeds the jurisdictional limits of this court.

15  **III.**    **FACTUAL ALLEGATIONS**

16      22.    Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance

17  and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2

18  diabetics have an increased risk of cardiovascular  disease, which is the leading cause of

19  morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to

20  allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in

21  users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related

22  adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and

23  sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2

24  diabetes.

25      23.    Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby

26  potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone,

27  known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while

28  suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

24.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

25.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

---

[1] *Id.*

26.     On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

27.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

28.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

29.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.  Once again, Defendants place sales over patient safety.

30.     In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

*COMPLAINT FOR DAMAGES*

1 benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are
2 available that do not carry the increased cardiac risks of Saxagliptin.

3      31.    Defendants, with knowledge of the true relationship between use of Saxagliptin
4 and heart failure, congestive heart failure, cardiac failure, and death related to those events,
5 promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2
6 diabetes mellitus.

7      32.    Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's
8 risks through various avenues including, but not limited to, the following:

9      a.  in print marketing, advertising, and promotional materials;

10      b.  on Defendant-owned, controlled, or supported websites and blogs;

11      c.  in materials and advertisements to Plaintiffs and consumers stating the use of
12         Saxagliptin is safe; and

13      d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as
14         safe as) other drugs for the treatment of type 2 diabetes mellitus.

15      33.    At no time did Defendants perform adequate safety testing on Saxagliptin prior to
16 marketing their drugs to the American public and failed to do so until performing the SAVOR
17 trial.

18      34.    Despite the findings of the SAVOR trial, Defendants still have not undertaken
19 efforts to change the labels and reference materials for Saxagliptin to include a reference or
20 warning regarding heart failure, congestive heart failure, cardiac failure, and death related to
21 those events.

22 **IV.   PLAINTIFFS' USE OF SAXAGLIPTIN**

23      35.    Plaintiffs were prescribed and ingested Saxagliptin at various times.

24      36.    Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or
25 distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the
26 drug's condition.

27

28

*COMPLAINT FOR DAMAGES*

37.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

38.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

39.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

40.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

41.     Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions, changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

42.     Plaintiffs' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiffs.

43.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

1  and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional

2  limits of the Court.

3      44.     As a direct and proximate result of Defendants' conduct, Plaintiffs incurred

4  obligations and expenses for medical care, testing and treatment. As a direct and proximate result

5  of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,

6  diminishment of earning potential, and other pecuniary losses.

7      45.     Defendants' conduct was committed with knowing, reckless, conscious, wanton,

8  willful and deliberate disregard for the value of human life and the rights and safety of

9  consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages

10  so as to punish and deter similar conduct in the future.

11  **V. DELAYED DISCOVERY**

12      46.     Defendants, through their affirmative misrepresentations and omissions, actively

13  concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and

14  significant risks associated with Saxagliptin.

15      47.     As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and

16  healthcare providers were unaware, and could not have reasonably known or have learned

17  through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this

18  Complaint, and that those risks were the result of Defendants' acts, omissions, and

19  misrepresentations.

20      48.     No limitations period ought to accrue until such time as Plaintiffs knew or

21  reasonably should have known of some causal connection between the use of Saxagliptin and the

22  harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact

23  that this Complaint is filed well within the statutory period after Plaintiffs knew or should have

24  known the facts alleged herein.

25      49.     Additionally, the accrual and running of any applicable statute of limitations has

26  been tolled by reason of Defendants' fraudulent concealment.

27

28

9

*COMPLAINT FOR DAMAGES*

50.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## I.

### CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

51.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

52.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

53.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

54.     Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

55.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

   a.   Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

   b.   Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

   c.   Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

   d.   Saxagliptin was insufficiently and/or inadequately tested by Defendants.

10

    e.   Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

    f.   Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

    g.   Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

    h.   Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

    i.   Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

    j.   Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

    k.   Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

56.    Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

11

57.     A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

58.     Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

59.     Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

60.     Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

61.     Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

62.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

63.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

64.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

65.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

66.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

a.     Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

b.     Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c.     Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.     Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.      Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.     Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate

warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g.  Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h.  Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

i.  Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

j.  Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k.  Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

l.  Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m.  Failing to educate healthcare providers and the public about the safest use of the products;

n.  Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.  Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.  Failing to warn Plaintiffs of the danger of adverse medical conditions from the use of Saxagliptin; and

14

q.    Failing to label Saxagliptin to adequately warn Plaintiffs of the serious adverse side effects with the use of Saxagliptin.

67.    Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

68.    Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

69.    Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.    The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

b.    The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

70.    Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants

15

1  continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers,

2  including Plaintiffs.

3      71.     Defendants negligently and recklessly represented to Plaintiffs, physicians, and

4  other persons and professionals Defendants knew would justifiably rely on the representations,

5  that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for

6  their intended purposes.

7      72.     Defendants negligently and recklessly failed to disclose to Plaintiffs and others

8  important safety and efficacy information about Saxagliptin, thereby suppressing material facts

9  while under a duty to disclose such information.

10     73.     Defendants' representations about the safety and adverse side effects of

11 Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was

12 unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

13     74.     Defendants knew or should have known that their representations and omissions

14 were false. Defendants made such false, negligent and reckless representations and omissions

15 with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such

16 representations, leading to the use of Saxagliptin as described.

17     75.     Defendants omitted, suppressed and/or concealed material facts concerning the

18 dangers and risk of injuries associated with the use of Saxagliptin, including serious injury.

19 Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or

20 otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

21     76.     At the time Defendants made these misrepresentations and/or omissions, they

22 knew or should have known that Saxagliptin was unreasonably dangerous and not what

23 Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the

24 consuming public.

25     77.     Defendants' misrepresentations and/or omissions were undertaken with an intent

26 that doctors and patients, including Plaintiffs, rely upon them.

27     78.     Plaintiffs and Plaintiffs' healthcare providers did not know that these

28 representations were false and justifiably relied on and were induced by Defendants'

16

1  misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ
2  these products.

3      79.     As a direct and proximate consequence of Defendants' negligent, willful, wanton,
4  and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs
5  sustained injuries and damages.

6      80.     Had Plaintiffs been aware of the increased risk of side effects associated with
7  Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available
8  products, Plaintiffs would not have used these products.

9      WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek
10  compensatory, exemplary and punitive damages, together with interest, the costs of suit and
11  attorneys' fees, and such other and further relief as this Court deems just and proper.

12                                          **III.**

13                **CAUSE OF ACTION FOR FAILURE TO WARN**

14      Plaintiffs incorporate by reference each and every paragraph of this Complaint as though
15  set forth in full in this cause of action, and further allege:

16      81.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner
17  as designed and intended by Defendants.

18      82.     At all relevant and material times, the Defendants designed, manufactured,
19  packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the
20  stream of commerce for sale to, and use by, members of the public, including the Saxagliptin
21  used by Plaintiffs.

22      83.     At all relevant and material times, Saxagliptin was designed, manufactured,
23  packaged, marketed, advertised, distributed, and sold by Defendants in a defective and
24  unreasonably dangerous condition.

25      84.     The Saxagliptin manufactured by Defendants reached Plaintiffs without
26  substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably
27  dangerous when it entered into the stream of commerce and when used by Plaintiffs.

28      85.     The Plaintiffs were administered the Saxagliptin for its intended purpose.

86.     Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

87.     Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

88.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

89.     The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

90.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

91.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

92.     Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

93.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

*COMPLAINT FOR DAMAGES*

94.     Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

95.     Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

96.     Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

a.     Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

b.     Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

c.     Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

d.     Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

97.     Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

19

98.     Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

99.     By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

100.     Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs and the public.

101.     As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

102.     At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

103.     Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

104.     Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

105.    Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

106.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for its intended use.

107.    The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its intended use and would cause severe injury (or death) to the user. Saxagliptin was unaccompanied by adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

108.    The Saxagliptin used by Plaintiffs was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

109.    As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

## CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

110.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

111.    Defendants expressly represented to Plaintiffs, consumers and the medical community that Saxagliptin was:

    a.    safe;

    b.    efficacious;

    c.    fit for use in persons with Type 2 diabetes mellitus;

    d.    of merchantable quality;

    e.    adequately tested;

    f.    well tolerated in adequate and well-controlled clinical studies; and

    g.    did not increase the risk of experiencing serious, life threatening side effects.

112.    Defendants breached those express warranties as follows:

    a.    Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

    b.    Defendants misrepresented the risks associated with using Saxagliptin;

    c.    Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

    d.    Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

    e.    Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

113.    Saxagliptin did not conform to Defendants' express representations and warranties.

114.    At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

115.    At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

116.     In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

117.     As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

118.     At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

119.     Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

120.     Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

121.     Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

122.     Plaintiffs were foreseeable users of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

123.     Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

124.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

125.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

126.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

127.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

128.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

a.    All available compensatory damages for the described losses with respect to each cause of action;

b.    Past and future medical expenses, as well as the cost associated with past and future life care;

c.    Past and future lost wages and loss of earning capacity;

d.    Past and future emotional distress;

e.    Consequential damages;

f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

24

g.     All damages wrongful death damages permitted by law, where applicable;

h.     Disgorgement of profits obtained through unjust enrichment;

i.     Restitution;

j.     Punitive damages with respect to each cause of action;

k.     Reasonable attorneys' fees where recoverable;

l.     Costs of this action;

m.     Pre-judgment and all other interest recoverable; and

n.     Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

## DEMAND FOR JURY TRIAL

Each Plaintiff named herein demands his or her own individual trial by jury on all issues so triable.

Dated: September 30, 2016

By: _____

Lauren A. Welling (CA Bar No. 291813)
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 90606
Tel: (877) 480-9142
Fax: (213) 330-0346
lwelling@thesandersfirm.com

*COMPLAINT FOR DAMAGES*

Exhibit C

**COPY**

1  Jennifer Liakos (SBN 207487)
   JLiakos@NapoliLaw.com
2  NAPOLI SHKOLNIK PLLC
   525 South Douglas Street
3  Suite 260
   El Segundo, California 90245
4  Telephone:   (310) 331-8224
   Facsimile:   (646) 843-7603
5

6  *Attorney for Plaintiffs*

ENDORSED
F I L E D
Superior Court of California
County of San Francisco

SEP 3 0 2016

CLERK OF THE COURT
BY        ANNA L. TORRES
                              Deputy Clerk

7        THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
8                    COUNTY OF SAN FRANCISCO

9   LOUIS HOSEK and MARIE HOSEK;        )   CASE NO:   **CGC-16-554603**
    LOUIS LUJAN, individually;          )   JUDGE:
10  LINDA DAY, individually;            )
    DARRYL MCAFEE, individually;        )   COMPLAINT FOR DAMAGES FOR:
11  KATHLEEN E. THOMAS, individually;   )
    ROBERT WILLIAMS, individually;      )   1) STRICT PRODUCTS LIABILITY
12  H.B. GREEN, individually;           )   2) NEGLIGENCE
13  GEORGIA ISHMAN, individually;       )   3) FAILURE TO WARN
    EDWIN ASENCIO, individually;        )   4) BREACH OF WARRANTY OF
14  ALLEN ATKINS, SR., individually;    )      MERCHANTABILITY
15  GAIL TALTON, individually;          )   5) BREACH OF EXPRESS WARRANTY
    LARRY REEVES and DIANN M. REEVES;   )   6) BREACH OF IMPLIED WARRANTY
16  EARL BINNS, individually;           )   7) LOSS OF CONSORTIUM
17  APRIL SECHLER AND MICHAEL           )   8) SURVIVAL ACTION
    SECHLER;                            )   9) WRONGFUL DEATH
18  CATHERINE WOODS, individually;      )
    JOSEPH DAIGER, individually;        )
19  AMY MITCHELL, as successor-in-interest on )
20  behalf of the Estate of ROBERT MITCHELL, )
    deceased, and individually; and     )   DEMAND FOR JURY TRIAL
21  MAISHA JOHNSON, as successor-in-interest )
    on behalf of the Estate of DEBORAH  )   Complaint Filed: September 30, 2016
22  CRANFIELD, deceased, and individually, )
23                                       )
              Plaintiffs,                )
24         vs.                           )
25  BRISTOL-MYERS SQUIBB COMPANY;        )
    ASTRAZENECA PHARMACEUTICALS          )
26  LP; IPR PHARMACEUTICALS, INC;        )
    MCKESSON CORPORATION; and DOES 1-    )
27  50 INCLUSIVE                         )
                                         )
28            Defendants.                )
                                         )

                              1
                   COMPLAINT FOR DAMAGES

1      COME NOW Plaintiffs, by and through the undersigned counsel, hereby bring this

2  Complaint for damages against the Defendants, and allege the following:

3  **I.**    **INTRODUCTION**

4      1.    This is an action for damages relating to the Defendants' design, manufacture,

5  sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug

6  Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and

7  Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and

8  Kombiglyze XR, shall herein be referred to as "Saxagliptin."

9      2.    Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2

10  diabetes mellitus.

11      3.    The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac

12  failure, death from heart failure, and other serious health conditions.

13      4.    Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered

14  injuries.

15  **II.**    **PARTIES, VENUE & JURISDICTION**

16      5.    At all times relevant to this action, Plaintiff LOUIS HOSEK, was a citizen and

17  resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

18      6.    At all times relevant to this action, Plaintiff Spouse MARIE HOSEK, was a

19  citizen and resident of the State of California.

20      7.    At all times relevant to this action, Plaintiff LOUIS LUJAN, was a citizen and

21  resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

22      8.    At all times relevant to this action, Plaintiff LINDA DAY, was a citizen and

23  resident of the State of Kentucky.  Plaintiff ingested Saxagliptin resulting in injuries.

24      9.    At all times relevant to this action, Plaintiff DARRYL MCAFEE, was a citizen

25  and resident of the State of Illinois.  Plaintiff ingested Saxagliptin resulting in injuries.

26      10.    At all times relevant to this action, Plaintiff KATHLEEN E. THOMAS, was a

27  citizen and resident of the State of New Jersey.  Plaintiff ingested Saxagliptin resulting in

28  injuries.

COMPLAINT FOR DAMAGES

11.     At all times relevant to this action, Plaintiff ROBERT WILLIAMS, was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

12.     At all times relevant to this action, Plaintiff H.B. GREEN, was a citizen and resident of the State of Texas.  Plaintiff ingested Saxagliptin resulting in injuries.

13.     At all times relevant to this action, Plaintiff GEORGIA ISHMAN, was a citizen and resident of the State of Missouri.  Plaintiff ingested Saxagliptin resulting in injuries.

14.     At all times relevant to this action, Plaintiff EDWIN ASENCIO, was a citizen and resident of the State of Florida.  Plaintiff ingested Saxagliptin resulting in injuries.

15.     At all times relevant to this action, Plaintiff ALLEN ATKINS, SR., was a citizen and resident of the State of Florida.  Plaintiff ingested Saxagliptin resulting in injuries.

16.     At all times relevant to this action, Plaintiff GAIL TALTON was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

17.     At all times relevant to this action, Plaintiff LARRY REEVES, was a citizen and resident of the State of Missouri.  Plaintiff ingested Saxagliptin resulting in injuries.

18.     At all times relevant to this action, Plaintiff Spouse DIANN M. REEVES, was a citizen and resident of the State of Missouri.

19.     At all times relevant to this action, Plaintiff EARL BINNS, was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

20.     At all times relevant to this action, Plaintiff APRIL SECHLER, was a citizen and resident of the State of North Carolina.  Plaintiff ingested Saxagliptin resulting in injuries.

21.     At all times relevant to this action, Plaintiff Spouse MICHAEL SECHLER, was a citizen and resident of the State of North Carolina.

22.     At all times relevant to this action, Plaintiff CATHERINE WOODS, was a citizen and resident of the State of Tennessee.  Plaintiff ingested Saxagliptin resulting in injuries.

23.     At all times relevant to this action, Plaintiff JOSEPH DAIGER, was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

24.     At all times relevant to this action, Decedent ROBERT MITCHELL, was a citizen and resident of the State of Georgia.  Decedent ingested Saxagliptin resulting in injuries.

3

COMPLAINT FOR DAMAGES

25.     At all times relevant to this action, Spouse Plaintiff and successor-in-interest Plaintiff AMY MITCHELL, was a citizen and resident of the State of Georgia.

26.     At all times relevant to this action, Decedent DEBORAH CRANFIELD, was a citizen and resident of the State of New Jersey.  Decedent ingested Saxagliptin resulting in injuries.

27.     At all times relevant to this action, successor-in-interest Plaintiff MAISHA JOHNSON, was a citizen and resident of the State of New Jersey.

28.     Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

29.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

30.     Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

31.     Defendant IPR Pharmaceuticals, Inc. ("IPR") is a Puerto Rico corporation with its principal place of business at Road 188, Lot 17, San Isidro Industrial Park, Canovanas, Puerto Rico 00729.  At all relevant times, IPR regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

32.     Defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

33.     Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive. Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named Defendants are ascertained.  At all relevant times herein DOES 1-50 inclusive were the individuals, corporations, and/or business entities, which were agents, servants, joint ventures, partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants as alleged herein.

34.     Hereinafter the aforementioned Defendants may collectively be referred to as "Defendants."

35.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

36.     At all relevant times, Defendants acted in concert with one another in the State of California to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiffs would not have ingested Saxagliptin.

37.     This Court has personal jurisdiction over Defendants.  Defendants are and were at all relevant times residents of and/or authorized to conduct business in the State of California and Defendants conducted such business within the state including the performance of acts that caused or contributed to the harm giving rise to this action.

38.     At all times material hereto, Defendants maintained systematic and continuous contacts in this judicial district, regularly transacted business within this judicial district, employed numerous individuals in this district and regularly availed themselves of the benefits of this judicial district.  Defendants received substantial financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this district and throughout the United States.

39.     The combined acts and/or omissions of each Defendant resulted in indivisible injuries to each Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

40.     The amount in controversy exceeds the jurisdictional limits of this court.

III.    **FACTUAL ALLEGATIONS**

41.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2 diabetics have an increased risk of cardiovascular  disease, which is the leading cause of morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2 diabetes.

42.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

43.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if

their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

44.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled *Final Guidance for Industry, Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

45.     On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

46.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance

---

[1] *Id.*

1    recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for

2    Saxagliptin.

3        47.    The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular

4    Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial

5    Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a

6    statistically significant increased risk of being hospitalized due to heart failure.

7        48.    After receiving and reviewing the disturbing findings from the SAVOR trial, the

8    FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed

9    its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the

10   SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and

11   Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order

12   Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who

13   voted against adding the warning stated a warning was insufficient and the drug should instead

14   be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory

15   Committee voting to add a warning (or remove the drugs from the market), Defendants failed

16   and continue to fail to warn.  Once again, Defendants place sales over patient safety.

17       49.    In addition to Defendants refusing and failing to warn of the risks of heart failure,

18   congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any

19   benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are

20   available that do not carry the increased cardiac risks of Saxagliptin.

21       50.    Defendants, with knowledge of the true relationship between use of Saxagliptin

22   and heart failure, congestive heart failure, cardiac failure, and death related to those events,

23   promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2

24   diabetes mellitus.

25

26

_____

27   [2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina
     DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-

28   new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

COMPLAINT FOR DAMAGES

51.     Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

    a.  in print marketing, advertising, and promotional materials;

    b.  on Defendant-owned, controlled, or supported websites and blogs;

    c.  in materials and advertisements to Plaintiffs and consumers stating the use of Saxagliptin is safe; and

    d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

52.     At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

53.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

IV.     **PLAINTIFFS' USE OF SAXAGLIPTIN**

54.     Plaintiffs were prescribed and ingested Saxagliptin at various times.

55.     Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the drug's condition.

56.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

57.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

58.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive

1   heart failure, cardiac failure, and death related to those events, and despite this knowledge

2   Defendants continued to manufacture, market, distribute, sell and profit from sales of

3   Saxagliptin.

4        59.    Despite such knowledge, Defendants knowingly, purposely and deliberately failed

5   to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the

6   increased risk of serious injury associated with using Saxagliptin including but not limited to

7   heart failure, congestive heart failure, cardiac failure, and death related to those events.

8        60.    Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to

9   Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions,

10  changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects

11  of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart

12  failure, cardiac failure, and death related to those events, and other serious adverse events had

13  Defendants provided said physicians with an appropriate and adequate warning regarding the

14  risks associated with the use of Saxagliptin.

15       61.    Plaintiffs' prescribing health care providers were unaware of the true degree,

16  incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to

17  those events associated with the use of Saxagliptin, and, if they had been informed, would have

18  used and prescribed alternative therapies to Plaintiffs.

19       62.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered

20  injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

21  and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional

22  limits of the Court.

23       63.    As a direct and proximate result of Defendants' conduct, Plaintiffs incurred

24  obligations and expenses for medical care, testing and treatment. As a direct and proximate result

25  of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,

26  diminishment of earning potential, and other pecuniary losses.

27       64.    Defendants' conduct was committed with knowing, reckless, conscious, wanton,

28  willful and deliberate disregard for the value of human life and the rights and safety of

---

10

COMPLAINT FOR DAMAGES

1  consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages
2  so as to punish and deter similar conduct in the future.

3  **V. DELAYED DISCOVERY**

4      65.    Defendants, through their affirmative misrepresentations and omissions, actively
5  concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and
6  significant risks associated with Saxagliptin.

7      66.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and
8  healthcare providers were unaware, and could not have reasonably known or have learned
9  through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this
10  Complaint, and that those risks were the result of Defendants' acts, omissions, and
11  misrepresentations.

12      67.    No limitations period ought to accrue until such time as Plaintiffs knew or
13  reasonably should have known of some causal connection between the use of Saxagliptin and the
14  harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact
15  that this Complaint is filed well within the statutory period after Plaintiffs knew or should have
16  known the facts alleged herein.

17      68.    Additionally, the accrual and running of any applicable statute of limitations has
18  been tolled by reason of Defendants' fraudulent concealment.

19      69.    Additionally, each Defendant is equitably estopped from asserting any limitations
20  defense by virtue of its fraudulent concealment and other misconduct as described in this
21  Complaint.

22                                   **I.**

23              **CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY**

24      70.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as
25  though set forth in full in this cause of action and further allege:

26      71.    At all relevant and material times, the Defendants designed, manufactured,
27  packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the
28  stream of commerce.

72.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

73.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

74.     Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

75.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

    a.  Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

    b.  Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

    c.  Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

    d.  Saxagliptin was insufficiently and/or inadequately tested by Defendants.

    e.  Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

    f.  Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

    g.  Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

12

COMPLAINT FOR DAMAGES

h.  Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i.  Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j.  Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k.  Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

76.     Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

77.     A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

78.     Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

79.     Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

80.     Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

81.     Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

82.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

83.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

84.     Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

85.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

86.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

87.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

COMPLAINT FOR DAMAGES

a. Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

b. Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c. Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d. Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e. Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f. Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g. Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h. Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

15
COMPLAINT FOR DAMAGES

i.     Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

j.     Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k.     Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

l.     Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m.     Failing to educate healthcare providers and the public about the safest use of the products;

n.     Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.     Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.     Failing to warn Plaintiffs of the danger of adverse medical conditions from the use of Saxagliptin; and

q.     Failing to label Saxagliptin to adequately warn Plaintiffs of the serious adverse side effects with the use of Saxagliptin.

88.     Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

89.     Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

90.     Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

        a.     The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

        b.     The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

91.     Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Plaintiffs.

92.     Defendants negligently and recklessly represented to Plaintiffs, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

93.     Defendants negligently and recklessly failed to disclose to Plaintiffs and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

94.     Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

95.     Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

96.     Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

97.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the consuming public.

98.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiffs, rely upon them.

99.     Plaintiffs and Plaintiffs' healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

100.    As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

1    101.    Had Plaintiffs been aware of the increased risk of side effects associated with

2   Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available

3   products, Plaintiffs would not have used these products.

4         WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek

5   compensatory, exemplary and punitive damages, together with interest, the costs of suit and

6   attorneys' fees, and such other and further relief as this Court deems just and proper.

7                                    **III.**

8                    **CAUSE OF ACTION FOR FAILURE TO WARN**

9    102.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as

10   though set forth in full in this cause of action, and further allege:

11   103.    Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner

12   as designed and intended by Defendants.

13   104.    At all relevant and material times, the Defendants designed, manufactured,

14   packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the

15   stream of commerce for sale to, and use by, members of the public, including the Saxagliptin

16   used by Plaintiffs.

17   105.    At all relevant and material times, Saxagliptin was designed, manufactured,

18   packaged, marketed, advertised, distributed, and sold by Defendants in a defective and

19   unreasonably dangerous condition.

20   106.    The Saxagliptin manufactured by Defendants reached Plaintiffs without

21   substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably

22   dangerous when it entered into the stream of commerce and when used by Plaintiffs.

23   107.    The Plaintiffs were administered the Saxagliptin for its intended purpose.

24   108.    Plaintiffs used Saxagliptin in the foreseeable manner normally intended,

25   recommended, promoted, and marketed by Defendants.

26   109.    Defendants failed to warn and/or adequately warn Plaintiffs, consumers,

27   physicians, and healthcare professionals of the increased health risks associated with using

28   Saxagliptin.

COMPLAINT FOR DAMAGES

110.    Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

111.    The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

112.    Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

113.    Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

114.    Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

115.    Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

116.    Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

117.    Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

20

COMPLAINT FOR DAMAGES

118.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

    a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

    b.    Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

    c.    Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

    d.    Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

119.    Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

120.    Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

121.    By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with

exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

122.    Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs and the public.

123.    As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

124.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

125.    At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

126.    Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

127.    Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

128.    Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

129.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for its intended use.

130.    The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its intended use and would cause severe injury (or death) to the user. Saxagliptin was unaccompanied by adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

131.    The Saxagliptin used by Plaintiffs was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

132.    As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

## CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

133.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

134.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

135.    Defendants expressly represented to Plaintiffs, consumers and the medical community that Saxagliptin was:

    a.      safe;

    b.      efficacious;

    c.      fit for use in persons with Type 2 diabetes mellitus;

    d.      of merchantable quality;

e.      adequately tested;

f.      well tolerated in adequate and well-controlled clinical studies; and

g.      did not increase the risk of experiencing serious, life threatening side effects.

136.    Defendants breached those express warranties as follows:

a.      Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

b.      Defendants misrepresented the risks associated with using Saxagliptin;

c.      Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

d.      Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

e.      Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

137.    Saxagliptin did not conform to Defendants' express representations and warranties.

138.    At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

139.    At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

140.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

COMPLAINT FOR DAMAGES

141.   As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

142.   Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

143.   At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

144.   Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

145.   Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

146.   Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

147.   Plaintiffs were foreseeable users of Defendants' product, Saxagliptin.  Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

148.   Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

149.   The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

COMPLAINT FOR DAMAGES

150.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

151.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

152.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## LOSS OF CONSORTIUM

153.    Spouse Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

154.    This cause of action is asserted by Spouse Plaintiffs identified previously whose spouses suffered personal injuries as a result of using Defendants' product, who at all times relevant to this action were, and are now, husband and wife.

155.    Subsequent to their injuries, the spouse of Spouse Plaintiffs were and are unable to perform the necessary duties as a spouse and the work and service usually performed in the care, maintenance and management of the family home.

156.    By reason of the injuries sustained by their spouses, Spouses Plaintiffs have been and will continue to be deprived of the loss of love, companionship, comfort, care, assistance, protection, affection, society, and moral support of their spouses, as to their damage, in an amount presently unknown but which will be proved at the time of trial.

## VIII

## SURVIVAL ACTION

26

157.    Successor-in-interest Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein and further allege as follows:

158.    Prior to their death, Decedents incurred substantial damages, and/or hospital expenses as a direct and proximate result of the acts and/or omissions of the Defendants, and each of them, as herein alleged.  The amount of those damages will be shown according to proof at the time of the trial.

159.    A cause of action for recovery of such damages by Decedents' successors-in-interest survives their death pursuant to California Code of Civil Procedure 377.

## IV

## WRONGFUL DEATH

160.    Successor-in-interest Plaintiffs hereby incorporate by reference all paragraphs of this Complaint as if fully set forth herein and further allege as follows:

161.    Successor-in-interest Plaintiffs are the surviving heirs of the Decedents (hereinafter referred to as "Successor-in-interest Plaintiffs", or other persons authorized to bring an action for the wrongful death of the Decedents, who used Defendants' product and were injured and died as a result. Said Decedents were prescribed, supplied with, received, took, used and consumed said product as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendants.

162.    The injuries and damages of Successor-in-interest Plaintiffs and Decedents were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants.

163.    As a result of the conduct of Defendants and the ingestion of Defendants' product, the Decedents suffered fatal injuries.

164.    As a result of the death of the Decedents, Successor-in-interest Plaintiffs were deprived of love, companionship, comfort, support, affection, society, solace and moral support of the Decedents.

165.    Successor-in-interest Plaintiffs are entitled to recover economic and non-economic damages against all Defendants for wrongful death directly and legally caused by the defects in Defendants' product and the negligent conduct, acts, errors, omissions and intentional and negligent misrepresentations of Defendants, and each of them.

X

<strong>GLOBAL PRAYER FOR RELIEF</strong>

166.    Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

167.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

    a.  All available compensatory damages for the described losses with respect to each cause of action;

    b.  Past and future medical expenses, as well as the cost associated with past and future life care;

    c.  Past and future lost wages and loss of earning capacity;

    d.  Past and future emotional distress;

    e.  Consequential damages;

    f.  All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.  All damages wrongful death damages permitted by law, where applicable;

    h.  Disgorgement of profits obtained through unjust enrichment;

    i.  Restitution;

    j.  Punitive damages with respect to each cause of action;

    k.  Reasonable attorneys' fees where recoverable;

    l.  Costs of this action;

    m.  Pre-judgment and all other interest recoverable; and

    n.  Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

COMPLAINT FOR DAMAGES

1    **DEMAND FOR JURY TRIAL**

2        Each Plaintiff named herein demands his or her own individual trial by jury on all issues

3    so triable.

4

5    Dated: September 30, 2016          By:

6                                       Jennifer Liakos (SBN 207487)

7                                       JLiakos@NapoliLaw.com

8                                       NAPOLI SHKOLNIK PLLC
                                        525 South Douglas Street

9                                       Suite 260
                                        El Segundo, California 90245

10                                      Telephone:    (310) 331-8224
                                        Facsimile:    (646) 843-7603

11                                      *Attorney for Plaintiffs*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

Exhibit D

1  Robert A. Mosier, Esq. (SBN 164241)
2  Timothy M. Clark, Esq. (SBN 284447)
   Lauren Welling, Esq. (SBN 291813)
3  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive Suite 220
4  Irvine, CA 92606
   Tel: (877) 480-9142
5  Fax: (213) 330-0346
   rmosier@thesandersfirm.com
6
7  Jennifer Liakos, Esq. (SBN 207487)
   NAPOLI SHKOLNIK, PLLC
8  525 South Douglas St, Suite 260
   El Segundo, CA 90245
9  Tel: (310) 331-8224
   Fax: (310) 582-5290
10 JLiakos@NapoliLaw.com
11
   *Attorney for Plaintiffs*
12
                THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
                         COUNTY OF SAN FRANCISCO
14
15 GARY GILMORE, an individual; DINO        ) CASE NO: **CGC-16-556095**
   MARROQUIN, an individual; MARTHA         ) JUDGE:
16 WOODWARD, an individual; RONALD          )
   WHITE, an individual; YVONNE LYALL, an   ) COMPLAINT FOR DAMAGES FOR:
17 individual;                              )
                                            ) 1) STRICT PRODUCTS LIABILITY
18           Plaintiffs,                     ) 2) NEGLIGENCE
                                            ) 3) FAILURE TO WARN
19        vs.                                ) 4) BREACH OF WARRANTY OF
                                            )    MERCHANTABILITY
20                                          ) 5) BREACH OF EXPRESS WARRANTY
21 BRISTOL-MEYERS SQUIBB COMPANY;          ) 6) BREACH OF IMPLIED WARRANTY
   ASTRAZENECA PHARMACEUTICALS             )
22 LP; MCKESSON CORPORATION; and           )
   DOES 1-50 INCLUSIVE                      )
23                                          )
24         Defendants.                      )
                                            ) DEMAND FOR JURY TRIAL
25                                          )
26                                          ) Complaint Filed: _____, ____
                                            )
27     Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for

28 damages against the Defendants, and allege the following:

                                     1
                          *COMPLAINT FOR DAMAGES*

## I.   INTRODUCTION

1.     This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2.     Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.     The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.     Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

## II.   PARTIES, VENUE & JURISDICTION

5.     At all times relevant to this action, Plaintiff Gary Gilmore was a citizen and resident of the State of California.  On information and belief, Plaintiff ingested Saxagliptin resulting in injuries.

6.     At all times relevant to this action, Plaintiff Dino Marroquin was a citizen and resident of the State of California.  On information and belief, Plaintiff ingested Saxagliptin resulting in injuries.

7.     At all times relevant to this action, Plaintiff Martha Woodward was a citizen and resident of the State of California.  On information and belief, Plaintiff ingested Saxagliptin resulting in injuries.

8.     At all times relevant to this action, Plaintiff Ronald White was a citizen and resident of the State of California.  On information and belief, Plaintiff ingested Saxagliptin resulting in injuries.

9.     At all times relevant to this action, Plaintiff Yvonne Lyall was a citizen and resident of the State of California.  On information and belief, Plaintiff ingested Saxagliptin resulting in injuries.

1       10.     Plaintiffs request an individual trial by jury and oppose any joint trial of their

2  claims.

3       11.     Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation

4  with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant

5  times, BMS regularly and continuously did business within this judicial district including

6  manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

7       12.     Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited

8  partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.

9  At all relevant times, AZ regularly and continuously did business within this judicial district

10  including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

11  Saxagliptin.

12       13.     Defendant McKesson Corporation ("McKesson") is a Delaware corporation with

13  its principal place of business at One Post Street, San Francisco, California 94104.  At all

14  relevant times, McKesson regularly and continuously did business within this judicial district

15  including manufacturing, labeling, packaging, marketing, advertising, distributing and selling

16  Saxagliptin.

17       14.     Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive.

18  Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named

19  Defendants are ascertained.  At all relevant times herein DOES 1-50 inclusive were the

20  individuals, corporations, and/or business entities, which were agents, servants, joint ventures,

21  partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants

22  as alleged herein.

23       15.     Hereinafter the aforementioned Defendants may collectively be referred to as

24  "Defendants."

25       16.     At all relevant times, each Defendant acted in all aspects as the agent and alter

26  ego of each other.

27       17.     At all relevant times, Defendants acted in concert with one another in the State of

28  California to fraudulently convey false and misleading information concerning the safety and

efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiffs would not have ingested Saxagliptin.

18.    This Court has personal jurisdiction over Defendants.  Defendants are and were at all relevant times residents of and/or authorized to conduct business in the State of California and Defendants conducted such business within the state including the performance of acts that caused or contributed to the harm giving rise to this action.

19.    At all times material hereto, Defendants maintained systematic and continuous contacts in this judicial district, regularly transacted business within this judicial district, employed numerous individuals in this district and regularly availed themselves of the benefits of this judicial district.  Defendants received substantial financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this district and throughout the United States.

20.    The combined acts and/or omissions of each Defendant resulted in indivisible injuries to each Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

21.    The amount in controversy exceeds the jurisdictional limits of this court.

**III.    FACTUAL ALLEGATIONS**

22.    Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2 diabetics have an increased risk of cardiovascular  disease, which is the leading cause of morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in

1   users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related

2   adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and

3   sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2

4   diabetes.

5        23.    Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby

6   potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone,

7   known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while

8   suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

9        24.    DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or

10  stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer

11  than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is

12  approximately two minutes without Saxagliptin exposure, but survives for at least three hours

13  during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin

14  effect by enabling the process to continue for an exponentially greater period of time than what

15  the human body has adapted as a sufficient and safe period of time.  At no time during the

16  development of its Saxagliptin drugs did Defendants perform adequate studies to determine if

17  their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased

18  risks of cardiovascular related adverse events.  Such studies are essential when developing, and

19  then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

20       25.    In December 2008, with knowledge of the increased cardiovascular risk type 2

21  diabetics suffer from, the FDA issued important guidance regarding this topic to companies

22  developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final

23  Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic*

24  *Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the

25  treatment of type 2 diabetes should demonstrate their products are not associated with an

26  unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the

27  development of Defendants' drugs, Defendants failed to perform adequate clinical trials to

28

---

[1] *Id.*

determine if their drugs created such an increased risk. Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks. Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

26.     On July 31, 2009 Defendants began marketing Onglyza. On November 5, 2010, Defendants began marketing Kombiglyze XR. Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

27.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

28.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

29.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data. Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs. The single member who voted against adding the warning stated a warning was insufficient and the drug should instead

*COMPLAINT FOR DAMAGES*

be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.  Once again, Defendants place sales over patient safety.

30.     In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

31.     Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

32.     Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

a.  in print marketing, advertising, and promotional materials;

b.  on Defendant-owned, controlled, or supported websites and blogs;

c.  in materials and advertisements to Plaintiffs and consumers stating the use of Saxagliptin is safe; and

d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

33.     At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

34.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

*COMPLAINT FOR DAMAGES*

## IV.    PLAINTIFFS' USE OF SAXAGLIPTIN

35.     On information and belief, Plaintiffs were prescribed and ingested Saxagliptin at various times.

36.     On information and belief, Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the drug's condition.

37.     On information and belief, while using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

38.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

39.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

40.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

41.     On information and belief, Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions, changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart failure, cardiac failure, and death related to those events, and other serious adverse events had Defendants provided said physicians with an appropriate and adequate warning regarding the risks associated with the use of Saxagliptin.

42.     On information and belief, Plaintiffs' prescribing health care providers were unaware of the true degree, incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with the use of Saxagliptin, and, if they had been informed, would have used and prescribed alternative therapies to Plaintiffs.

43.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure, and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional limits of the Court.

44.     As a direct and proximate result of Defendants' conduct, Plaintiffs incurred obligations and expenses for medical care, testing and treatment. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions, diminishment of earning potential, and other pecuniary losses.

45.     Defendants' conduct was committed with knowing, reckless, conscious, wanton, willful and deliberate disregard for the value of human life and the rights and safety of consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## V. DELAYED DISCOVERY

46.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and significant risks associated with Saxagliptin.

47.     As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and healthcare providers were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

48.     No limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between the use of Saxagliptin and the harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact

9

that this Complaint is filed well within the statutory period after Plaintiffs knew or should have known the facts alleged herein.

49.    Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

50.    Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## I.

## CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

51.    At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

52.    At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

53.    Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

54.    Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

55.    Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

    a.    Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

*COMPLAINT FOR DAMAGES*

b.  Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

c.  Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

d.  Saxagliptin was insufficiently and/or inadequately tested by Defendants.

e.  Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

f.  Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

g.  Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

h.  Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i.  Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j.  Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k.  Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

*COMPLAINT FOR DAMAGES*

56.     Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

57.     A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

58.     Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

59.     Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

60.     Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

61.     Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

62.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

63.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**II.**

## CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

64.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

65.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

66.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

a.      Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

b.      Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c.      Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

*COMPLAINT FOR DAMAGES*

d.   Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.    Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.   Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g.   Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h.   Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

i.   Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

j.   Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k.   Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

l.   Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m.   Failing to educate healthcare providers and the public about the safest use of the products;

n.    Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.    Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.    Failing to warn Plaintiffs of the danger of adverse medical conditions from the use of Saxagliptin; and

q.    Failing to label Saxagliptin to adequately warn Plaintiffs of the serious adverse side effects with the use of Saxagliptin.

67.    Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

68.    Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

69.    Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.    The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

15

b.      The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

70.      Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Plaintiffs.

71.      Defendants negligently and recklessly represented to Plaintiffs, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

72.      Defendants negligently and recklessly failed to disclose to Plaintiffs and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

73.      Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

74.      Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

75.      Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

*COMPLAINT FOR DAMAGES*

76.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the consuming public.

77.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiffs, rely upon them.

78.     Plaintiffs and Plaintiffs' healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

79.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

80.     Had Plaintiffs been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiffs would not have used these products.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### III.

### CAUSE OF ACTION FOR FAILURE TO WARN

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further allege:

81.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

82.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the

17

*COMPLAINT FOR DAMAGES*

stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiffs.

83.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

84.     The Saxagliptin manufactured by Defendants reached Plaintiffs without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiffs.

85.     The Plaintiffs were administered the Saxagliptin for its intended purpose.

86.     Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

87.     Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

88.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

89.     The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

90.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

91.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

92.     Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding

the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

93.    Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

94.    Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

95.    Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

96.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

    a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

    b.    Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

    c.    Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant

*COMPLAINT FOR DAMAGES*

risks of heart failure, congestive heart failure, cardiac failure, and death

related to those events associated with use of Saxagliptin; and

    d.    Defendants continued to aggressively promote and sell Saxagliptin even after

they knew or should have known of the unreasonable risks of developing

heart failure, cardiac failure, and death related to those events from ingestion

of Saxagliptin.

97.    Defendants and each of them had a duty to warn the FDA, the medical

community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to

do so.

98.    Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs'

physicians with adequate clinically relevant information and data and warnings regarding the

adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and

more or equally effective alternative drug products, but failed to do so.

99.    By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically

relevant information and data and warnings regarding the adverse health risks associated with

exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative

drug products, Defendants breached their duty of reasonable care and safety.

100.    Defendants' actions described above were performed willfully, intentionally, and

with reckless disregard of the life and safety of the Plaintiffs and the public.

101.    As a direct and proximate result of the actions and inactions of Defendants as set

forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory,

exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and

such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though

set forth in full in this cause of action and further allege:

102.     At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

103.     Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

104.     Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

105.     Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

106.     The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for its intended use.

107.     The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its intended use and would cause severe injury (or death) to the user. Saxagliptin was unaccompanied by adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

108.     The Saxagliptin used by Plaintiffs was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

109.     As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

COMPLAINT FOR DAMAGES

## V.

### CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

110.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

111.    Defendants expressly represented to Plaintiffs, consumers and the medical community that Saxagliptin was:

    a.    safe;

    b.    efficacious;

    c.    fit for use in persons with Type 2 diabetes mellitus;

    d.    of merchantable quality;

    e.    adequately tested;

    f.    well tolerated in adequate and well-controlled clinical studies; and

    g.    did not increase the risk of experiencing serious, life threatening side effects.

112.    Defendants breached those express warranties as follows:

    a.    Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

    b.    Defendants misrepresented the risks associated with using Saxagliptin;

    c.    Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

    d.    Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

22

e.    Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

113.    Saxagliptin did not conform to Defendants' express representations and warranties.

114.    At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

115.    At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

116.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

117.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

118.    At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

119.    Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

120.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

121.   Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

122.   Plaintiffs were foreseeable users of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

123.   Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

124.   The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

125.   The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

126.   Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

127.   As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

128.   So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

a.   All available compensatory damages for the described losses with respect to each cause of action;

b.   Past and future medical expenses, as well as the cost associated with past and future life care;

c.   Past and future lost wages and loss of earning capacity;

d.   Past and future emotional distress;

e.   Consequential damages;

f.   All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.   All damages wrongful death damages permitted by law, where applicable;

h.   Disgorgement of profits obtained through unjust enrichment;

i.   Restitution;

j.   Punitive damages with respect to each cause of action;

k.   Reasonable attorneys' fees where recoverable;

l.   Costs of this action;

m.   Pre-judgment and all other interest recoverable; and

n.   Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

## DEMAND FOR JURY TRIAL

Each Plaintiff named herein demands his or her own individual trial by jury on all issues so triable.

Dated: December 21, 2016

By: _____
Lauren A. Welling (CA Bar No. 291813)
SANDERS PHILLIPS GROSSMAN, LLP
2860 Michelle Drive, Suite 220
Irvine, CA 90606
Tel: (877) 480-9142
Fax: (213) 330-0346
rmosier@thesandersfirm.com

25

*COMPLAINT FOR DAMAGES*

Exhibit E

1  Robert A. Mosier, Esq. (SBN 164241)
2  Timothy M. Clark, Esq. (SBN 284447)
   Lauren Welling, Esq. (SBN 291813)
3  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive Suite 220
4  Irvine, CA 92606
   Tel: (877) 480-9142
5  Fax: (213) 330-0346
   rmosier@thesandersfirm.com
6
7  *Attorney for Plaintiffs*

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

APR 0 1 2016

Sherri R. Carter, Executive Officer/Clerk
By Shaunya Bolden, Deputy

8          THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                    COUNTY OF LOS ANGELES

10  ROBERT ROSENCRANSE, an individual;   )   CASE NO:        BC 6 1 5 7 1 5
11  MATTIE HOLMES, an individual; WALTER )   JUDGE:
    GARCIA, an individual; BILLY DAVIS, an  )
12  individual; ALPHONSO HAYES, an       )   COMPLAINT FOR DAMAGES FOR:
    individual; MADGE BARNETT, an        )
13  individual; ETHEL GREENE, an individual; )  1) STRICT PRODUCTS LIABILITY
14  RICHARD MERRITT, an individual;      )   2) NEGLIGENCE
    WILLIAM DINGER, SR., an individual;  )   3) FAILURE TO WARN
15  LYNDA LYLES, an individual; JASON    )   4) BREACH OF WARRANTY OF
    MASK, an individual; SHERMAN         )      MERCHANTABILITY
16  JACKSON, an individual; THERESEA     )   5) BREACH OF EXPRESS WARRANTY
17  MEDLEY, an individual; YVONNE        )   6) BREACH OF IMPLIED WARRANTY
    SANDOVAL, an individual; VANESSA     )
18  SLAUGHTER, an individual; CLEOTHA    )
    SILVERS, an individual; SHAWONDA     )
19  VINSON, an individual; MICHAEL       )
20  WINKLE, an individual; PATRICIA WORD )   DEMAND FOR JURY TRIAL
    an individual;                       )
21                                       )   Complaint Filed: _____, ____
            Plaintiffs,                  )
22                                       )
       vs.                               )
23                                       )
                                         )
24                                       )
    BRISTOL-MEYERS SQUIBB COMPANY;       )
25  ASTRAZENECA PHARMACEUTICALS          )
    LP; IPR PHARMACEUTICALS, INC;        )
26  MCKESSON CORPORATION; and DOES 1-    )
27  50 INCLUSIVE                         )
                                         )
28          Defendants.                  )

                              1
                   *COMPLAINT FOR DAMAGES*

Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for damages against the Defendants, and allege the following:

## I.    INTRODUCTION

1.      This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2.      Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.      The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.      Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

## II.   PARTIES, VENUE & JURISDICTION

5.      At all times relevant to this action, Plaintiff Robert Rosencranse was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.      At all times relevant to this action, Plaintiff Mattie Holmes was a citizen and resident of the State of Florida.  Plaintiff ingested Saxagliptin resulting in injuries.

7.      At all times relevant to this action, Plaintiff Walter Garcia was a citizen and resident of the State of Florida.  Plaintiff ingested Saxagliptin resulting in injuries.

8.      At all times relevant to this action, Plaintiff Billy Davis was a citizen and resident of the State of Texas.  Plaintiff ingested Saxagliptin resulting in injuries.

9.      At all times relevant to this action, Plaintiff Alphonso Hayes was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

10.     At all times relevant to this action, Plaintiff Madge Barnett was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

11.     At all times relevant to this action, Plaintiff Ethel Green was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

12.     At all times relevant to this action, Plaintiff Richard Merritt was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

13.     At all times relevant to this action, Plaintiff William Dinger Sr. was a citizen and resident of the State of Ohio.  Plaintiff ingested Saxagliptin resulting in injuries.

14.     At all times relevant to this action, Plaintiff Lynda Lyles was a citizen and resident of the State of Missouri.  Plaintiff ingested Saxagliptin resulting in injuries.

15.     At all times relevant to this action, Plaintiff Jason Mask was a citizen and resident of the State of Florida.  Plaintiff ingested Saxagliptin resulting in injuries.

16.     At all times relevant to this action, Plaintiff Sherman Jackson was a citizen and resident of the State of Tennessee.  Plaintiff ingested Saxagliptin resulting in injuries.

17.     At all times relevant to this action, Plaintiff Theresa Medley was a citizen and resident of the State of Utah.  Plaintiff ingested Saxagliptin resulting in injuries.

18.     At all times relevant to this action, Plaintiff Yvonne Sandoval was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

19.     At all times relevant to this action, Plaintiff Vanessa Slaughter was a citizen and resident of the State of Texas.  Plaintiff ingested Saxagliptin resulting in injuries.

20.     At all times relevant to this action, Plaintiff Cleotha Silvers was a citizen and resident of the State of Tennessee.  Plaintiff ingested Saxagliptin resulting in injuries.

21.     At all times relevant to this action, Plaintiff Shawonda Vinson was a citizen and resident of the State of Virginia.  Plaintiff ingested Saxagliptin resulting in injuries.

22.     At all times relevant to this action, Plaintiff Michael Winkle was a citizen and resident of the State of South Carolina.  Plaintiff ingested Saxagliptin resulting in injuries.

23.     At all times relevant to this action, Plaintiff Patricia Word was a citizen and resident of the State of Tennesse.  Plaintiff ingested Saxagliptin resulting in injuries.

24.     Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

*COMPLAINT FOR DAMAGES*

25.    Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

26.    Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

27.    Defendant IPR Pharmaceuticals, Inc. ("IPR") is a Puerto Rico corporation with its principal place of business at Road 188, Lot 17, San Isidro Industrial Park, Canovanas, Puerto Rico 00729.  At all relevant times, IPR regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

28.    Defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

29.    Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive. Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named Defendants are ascertained.  At all relevant times herein DOES 1-50 inclusive were the individuals, corporations, and/or business entities, which were agents, servants, joint ventures, partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants as alleged herein.

30.    Hereinafter the aforementioned Defendants may collectively be referred to as "Defendants."

31.     At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

32.     At all relevant times, Defendants acted in concert with one another in the State of California to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare providers.  These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiffs.  But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiffs would not have ingested Saxagliptin.

33.     This Court has personal jurisdiction over Defendants.  Defendants are and were at all relevant times residents of and/or authorized to conduct business in the State of California and Defendants conducted such business within the state including the performance of acts that caused or contributed to the harm giving rise to this action.

34.     At all times material hereto, Defendants maintained systematic and continuous contacts in this judicial district, regularly transacted business within this judicial district, employed numerous individuals in this district and regularly availed themselves of the benefits of this judicial district.  Defendants received substantial financial benefit and profits as a result of designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this district and throughout the United States.

35.     The combined acts and/or omissions of each Defendant resulted in indivisible injuries to each Plaintiff.  Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein.  Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

36.     The amount in controversy exceeds the jurisdictional limits of this court.

III.     **FACTUAL ALLEGATIONS**

37.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia.  Type 2 diabetics have an increased risk of cardiovascular  disease, which is the leading cause of morbidity and mortality in the patient population.  Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in users.  With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2 diabetes.

38.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, known as an incretin.  This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

39.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state.  Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure.  Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

40.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic*

*Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

41.     On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease. At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

42.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

43.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

44.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the

---

[1] *Id.*

1  SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and
2  Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order
3  Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who
4  voted against adding the warning stated a warning was insufficient and the drug should instead
5  be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory
6  Committee voting to add a warning (or remove the drugs from the market), Defendants failed
7  and continue to fail to warn.  Once again, Defendants place sales over patient safety.

8      45.    In addition to Defendants refusing and failing to warn of the risks of heart failure,
9  congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any
10  benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are
11  available that do not carry the increased cardiac risks of Saxagliptin.

12      46.    Defendants, with knowledge of the true relationship between use of Saxagliptin
13  and heart failure, congestive heart failure, cardiac failure, and death related to those events,
14  promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2
15  diabetes mellitus.

16      47.    Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's
17  risks through various avenues including, but not limited to, the following:

18      a.  in print marketing, advertising, and promotional materials;

19      b.  on Defendant-owned, controlled, or supported websites and blogs;

20      c.  in materials and advertisements to Plaintiffs and consumers stating the use of
21          Saxagliptin is safe; and

22      d.  in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as
23          safe as) other drugs for the treatment of type 2 diabetes mellitus.

24      48.    At no time did Defendants perform adequate safety testing on Saxagliptin prior to
25  marketing their drugs to the American public and failed to do so until performing the SAVOR
26  trial.

27  ---

28  [2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

49.     Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

## IV.     PLAINTIFFS' USE OF SAXAGLIPTIN

50.     Plaintiffs were prescribed and ingested Saxagliptin at various times.

51.     Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the drug's condition.

52.     While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

53.     As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

54.     At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge Defendants continued to manufacture, market, distribute, sell and profit from sales of Saxagliptin.

55.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the increased risk of serious injury associated with using Saxagliptin including but not limited to heart failure, congestive heart failure, cardiac failure, and death related to those events.

56.     Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions, changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart

1  failure, cardiac failure, and death related to those events, and other serious adverse events had

2  Defendants provided said physicians with an appropriate and adequate warning regarding the

3  risks associated with the use of Saxagliptin.

4      57.    Plaintiffs' prescribing health care providers were unaware of the true degree,

5  incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to

6  those events associated with the use of Saxagliptin, and, if they had been informed, would have

7  used and prescribed alternative therapies to Plaintiffs.

8      58.    As a direct and proximate result of Defendants' conduct, Plaintiffs suffered

9  injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

10  and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional

11  limits of the Court.

12      59.    As a direct and proximate result of Defendants' conduct, Plaintiffs incurred

13  obligations and expenses for medical care, testing and treatment. As a direct and proximate result

14  of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,

15  diminishment of earning potential, and other pecuniary losses.

16      60.    Defendants' conduct was committed with knowing, reckless, conscious, wanton,

17  willful and deliberate disregard for the value of human life and the rights and safety of

18  consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages

19  so as to punish and deter similar conduct in the future.

20  **V. DELAYED DISCOVERY**

21      61.    Defendants, through their affirmative misrepresentations and omissions, actively

22  concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and

23  significant risks associated with Saxagliptin.

24      62.    As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and

25  healthcare providers were unaware, and could not have reasonably known or have learned

26  through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this

27  Complaint, and that those risks were the result of Defendants' acts, omissions, and

28  misrepresentations.

63.     No limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between the use of Saxagliptin and the harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact that this Complaint is filed well within the statutory period after Plaintiffs knew or should have known the facts alleged herein.

64.     Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

65.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

<u>I.</u>

## <u>CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY</u>

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

66.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

67.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

68.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

69.     Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

70.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

a.  Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not

11

limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

b. Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

c. Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

d. Saxagliptin was insufficiently and/or inadequately tested by Defendants.

e. Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

f. Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

g. Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

h. Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i. Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j. Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k.   Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

71.    Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

72.    A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

73.    Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety.  Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

74.    Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

75.    Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

76.    Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

77.    Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

78.    As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

79.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

80.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

81.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

a.     Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

*COMPLAINT FOR DAMAGES*

b.    Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c.    Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.    Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.    Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.    Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g.    Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h.    Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

i.    Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

j.    Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k.    Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

15

*COMPLAINT FOR DAMAGES*

l.    Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m.    Failing to educate healthcare providers and the public about the safest use of the products;

n.    Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.    Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.    Failing to warn Plaintiffs of the danger of adverse medical conditions from the use of Saxagliptin; and

q.    Failing to label Saxagliptin to adequately warn Plaintiffs of the serious adverse side effects with the use of Saxagliptin.

82.    Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

83.    Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

84.    Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

a.    The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to

16

be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

b.   The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.* Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

85.    Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Plaintiffs.

86.    Defendants negligently and recklessly represented to Plaintiffs, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

87.    Defendants negligently and recklessly failed to disclose to Plaintiffs and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

88.    Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

89.    Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

90.     Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

91.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the consuming public.

92.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiffs, rely upon them.

93.     Plaintiffs and Plaintiffs' healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

94.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

95.     Had Plaintiffs been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiffs would not have used these products.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## III.

## CAUSE OF ACTION FOR FAILURE TO WARN

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further allege:

*COMPLAINT FOR DAMAGES*

96.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

97.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiffs.

98.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

99.     The Saxagliptin manufactured by Defendants reached Plaintiffs without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiffs.

100.    The Plaintiffs were administered the Saxagliptin for its intended purpose.

101.    Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

102.    Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

103.    Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

104.    The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

105.    Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

106.    Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to

Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

107.    Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

108.    Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

109.    Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

110.    Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

111.    Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

        a.    Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

b.  Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

c.  Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

d.  Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

112.  Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

113.  Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

114.  By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

115.  Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs and the public.

116.  As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

117.    At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

118.    Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

119.    Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

120.    Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

121.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for its intended use.

122.    The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its intended use and would cause severe injury (or death) to the user. Saxagliptin was unaccompanied by adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

123.    The Saxagliptin used by Plaintiffs was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

124.    As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

### CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

125.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

126.    Defendants expressly represented to Plaintiffs, consumers and the medical community that Saxagliptin was:

      a.    safe;

      b.    efficacious;

      c.    fit for use in persons with Type 2 diabetes mellitus;

      d.    of merchantable quality;

      e.    adequately tested;

      f.    well tolerated in adequate and well-controlled clinical studies; and

      g.    did not increase the risk of experiencing serious, life threatening side effects.

127.    Defendants breached those express warranties as follows:

23

a.    Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

b.    Defendants misrepresented the risks associated with using Saxagliptin;

c.    Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

d.    Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

e.    Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

128.    Saxagliptin did not conform to Defendants' express representations and warranties.

129.    At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

130.    At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

131.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

132.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**VI.**

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

133.    At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

134.    Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

135.    Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

136.    Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

137.    Plaintiffs were foreseeable users of Defendants' product, Saxagliptin.  Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

138.    Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

139.    The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

140.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

141.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

142.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

### GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

143.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

a.    All available compensatory damages for the described losses with respect to each cause of action;

b.    Past and future medical expenses, as well as the cost associated with past and future life care;

c.    Past and future lost wages and loss of earning capacity;

d.    Past and future emotional distress;

e.    Consequential damages;

f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.    All damages wrongful death damages permitted by law, where applicable;

h.    Disgorgement of profits obtained through unjust enrichment;

i.    Restitution;

j.    Punitive damages with respect to each cause of action;

k.    Reasonable attorneys' fees where recoverable;

l.    Costs of this action;

m.    Pre-judgment and all other interest recoverable; and

n.    Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

*COMPLAINT FOR DAMAGES*

1

## DEMAND FOR JURY TRIAL

2    Each Plaintiff named herein demands his or her own individual trial by jury on all issues

3 so triable.

4

5 Dated: April 1, 2016

By: _____

Lauren A. Welling (CA Bar No. 291813)

6 **SANDERS PHILLIPS GROSSMAN, LLP**

2860 Michelle Drive, Suite 220

7 Irvine, CA 90606

Tel: (877) 480-9142

8 Fax: (213) 330-0346

9 rmosier@thesandersfirm.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27

*COMPLAINT FOR DAMAGES*

Exhibit F

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert A. Mosier, Esq. (SBN 164241)
Timothy M. Clark, Esq. (SBN 284447)
Lauren Welling, Esq. (SBN 291813)
**SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive Suite 220
Irvine, CA 92606
Tel: (877) 480-9142
Fax: (213) 330-0346
rmosier@thesandersfirm.com

Michael Brady Lynch (SBN 219214)
**THE MICHAEL BRADY LYNCH FIRM**
127 West Fairbanks Ave., Ste. 528
Winter Park, FL 32789
Tel: (877) 513-9517
Fax: (321) 972-3568
Michael@mblynchfirm.com

*Attorney for Plaintiffs*

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

APR 1 4 2016

Sherri R. Carter, Executive Officer/Clerk
By: Moses Soto, Deputy

### THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES

MARIO JIMENEZ, an individual; WILMA
BARNER, an individual; WAYNE DRIVER,
an individual; WILLIE HARRIS an individual;
MARK JONES, an individual; DON
LYNN, an individual; JIMMY STACY, an
individual; MICHAEL VELORIA, an
individual; AUDRIE WINBOURNE, an
individual; JAY EPPS, an individual;

          Plaintiffs,

    vs.

BRISTOL-MEYERS SQUIBB COMPANY;
ASTRAZENECA PHARMACEUTICALS
LP; IPR PHARMACEUTICALS, INC;
MCKESSON CORPORATION; and DOES 1-
50 INCLUSIVE

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO: **BC 617207**

JUDGE:

COMPLAINT FOR DAMAGES

1) STRICT PRODUCTS LIABILITY
2) NEGLIGENCE
3) FAILURE TO WARN
4) BREACH OF WARRANTY OF
   MERCHANTABILITY
5) BREACH OF EXPRESS WARRANTY
6) BREACH OF IMPLIED WARRANTY

# By Fax

DEMAND FOR JURY TRIAL

Complaint Filed:

1

*COMPLAINT FOR DAMAGES*

Plaintiffs, by and through the undersigned counsel, hereby bring this Complaint for damages against the Defendants, and allege the following:

## I.   INTRODUCTION

1.      This is an action for damages relating to the Defendants' design, manufacture, sale, marketing, advertising, promotion, labeling, packaging, and distribution of their drug Saxagliptin.  Defendants sell their Saxagliptin drug under the brand names Onglyza and Kombiglyze XR.  Saxagliptin, in any of its forms or products, including Onglyza and Kombiglyze XR, shall herein be referred to as "Saxagliptin."

2.      Saxagliptin is prescribed to help lower blood sugar levels in persons with type 2 diabetes mellitus.

3.      The use of Saxagliptin can cause heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

4.      Plaintiffs ingested Saxagliptin, and as a result of their use of the drug suffered injuries.

## II.   PARTIES, VENUE & JURISDICTION

5.      At all times relevant to this action, Plaintiff Mario Jimenez was a citizen and resident of the State of California.  Plaintiff ingested Saxagliptin resulting in injuries.

6.      At all times relevant to this action, Plaintiff Lisa Wilma Barner was a citizen and resident of the State of Kentucky.  Plaintiff ingested Saxagliptin resulting in injuries.

7.      At all times relevant to this action, Plaintiff Wayne Driver was a citizen and resident of the State of Colorado.  Plaintiff ingested Saxagliptin resulting in injuries.

8.      At all times relevant to this action, Plaintiff Willie Harris was a citizen and resident of the State of Georgia.  Plaintiff ingested Saxagliptin resulting in injuries.

9.      At all times relevant to this action, Plaintiff Mark Jones was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

10.     At all times relevant to this action, Plaintiff Don Lynn was a citizen and resident of the State of Texas.  Plaintiff ingested Saxagliptin resulting in injuries.

11.    At all times relevant to this action, Plaintiff Jimmy Stacy was a citizen and resident of the State of Mississippi.  Plaintiff ingested Saxagliptin resulting in injuries.

12.    At all times relevant to this action, Plaintiff Michael Veloria was a citizen and resident of the State of Arkansas.  Plaintiff ingested Saxagliptin resulting in injuries.

13.    At all times relevant to this action, Plaintiff Audrie Winbourne was a citizen and resident of the State of Louisiana.  Plaintiff ingested Saxagliptin resulting in injuries.

14.    At all times relevant to this action, Plaintiff Jay Epps was a citizen and resident of the State of South Carolina.  Plaintiff ingested Saxagliptin resulting in injuries.

15.    Plaintiffs request an individual trial by jury and oppose any joint trial of their claims.

16.    Defendant Bristol-Myers Squibb Company ("BMS") is a Delaware corporation with its principal place of business at 345 Park Ave., New York, NY 10154.  At all relevant times, BMS regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

17.    Defendant AstraZeneca Pharmaceuticals LP ("AZ") is a Delaware limited partnership with its principal place of business at 1800 Concord Pike, Wilmington, DE 19850.  At all relevant times, AZ regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

18.    Defendant IPR Pharmaceuticals, Inc. ("IPR") is a Puerto Rico corporation with its principal place of business at Road 188, Lot 17, San Isidro Industrial Park, Canovanas, Puerto Rico 00729.  At all relevant times, IPR regularly and continuously did business within this judicial district including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

19.    Defendant McKesson Corporation ("McKesson") is a Delaware corporation with its principal place of business at One Post Street, San Francisco, California 94104.  At all relevant times, McKesson regularly and continuously did business within this judicial district

*COMPLAINT FOR DAMAGES*

including manufacturing, labeling, packaging, marketing, advertising, distributing and selling Saxagliptin.

20. Plaintiffs do not know the true names and capacities of DOES 1-50 inclusive. Plaintiffs will seek leave to amend when the true names and identities of said fictitiously named Defendants are ascertained. At all relevant times herein DOES 1-50 inclusive were the individuals, corporations, and/or business entities, which were agents, servants, joint ventures, partners, co-conspirators, participants or otherwise ratified the conduct of the other Defendants as alleged herein.

21. Hereinafter the aforementioned Defendants may collectively be referred to as "Defendants."

22. At all relevant times, each Defendant acted in all aspects as the agent and alter ego of each other.

23. At all relevant times, Defendants acted in concert with one another in the State of California to fraudulently convey false and misleading information concerning the safety and efficacy of Saxagliptin and to conceal the risks of serious adverse events, including heart failure, congestive heart failure, cardiac failure, death from heart failure and other adverse effects associated with Saxagliptin from the public, Plaintiffs, physicians, and other healthcare providers. These concerted efforts resulted in significant harm to those treated with Saxagliptin, including Plaintiffs. But for the actions of Defendants, individually, jointly, and in concert with one another, Plaintiffs would not have ingested Saxagliptin.

24. This Court has personal jurisdiction over Defendants. Defendants are and were at all relevant times residents of and/or authorized to conduct business in the State of California and Defendants conducted such business within the state including the performance of acts that caused or contributed to the harm giving rise to this action.

25. At all times material hereto, Defendants maintained systematic and continuous contacts in this judicial district, regularly transacted business within this judicial district, employed numerous individuals in this district and regularly availed themselves of the benefits of this judicial district. Defendants received substantial financial benefit and profits as a result of

designing, manufacturing, marketing, advertising, selling and distributing Saxagliptin in this district and throughout the United States.

26.     The combined acts and/or omissions of each Defendant resulted in indivisible injuries to each Plaintiff. Each of the above-named Defendants is a joint tortfeasor and/or co-conspirator and is jointly and severally liable to Plaintiffs for the negligent acts and omissions alleged herein. Each of the above-named Defendants directed, authorized or ratified the conduct of each and every other Defendant.

27.     The amount in controversy exceeds the jurisdictional limits of this court.

## III.   FACTUAL ALLEGATIONS

28.     Type 2 diabetes mellitus is a chronic disease, characterized by insulin resistance and deficient insulin secretion leading to high blood sugar levels and/or hyperglycemia. Type 2 diabetics have an increased risk of cardiovascular  disease, which is the leading cause of morbidity and mortality in the patient population. Therefore, it is critical that drugs developed to allegedly help prevent type 2 diabetes do not increase the risk of cardiovascular adverse events in users. With full knowledge of the susceptibility of type 2 diabetics to cardiovascular related adverse events, Defendants developed their drugs Onglyza and Kombiglyze XR to market and sell them to type 2 diabetics to allegedly lower adverse complications associated with type 2 diabetes.

29.     Saxagliptin works by inhibiting the proteolytic activity of DPP4, thereby potentiating the action of Glucagon-like peptide-1 (GLP-1), an antihyperglycemic hormone, known as an incretin. This induces glucose-dependent stimulation of insulin secretion while suppressing glucagon secretion, which may help Saxagliptin users lower their HA1c.

30.     DPP4 inhibitors, including Saxagliptin, inhibit natural enzymes from cleaving, or stopping, the endogenous GLP-1, which enables the stimulation of insulin to continue longer than what naturally occurs after meals in the postprandial state. Endogenous GLP-1's half-life is approximately two minutes without Saxagliptin exposure, but survives for at least three hours during Saxagliptin exposure. Therefore, Saxagliptin manipulates the natural biological incretin effect by enabling the process to continue for an exponentially greater period of time than what

the human body has adapted as a sufficient and safe period of time.  At no time during the development of its Saxagliptin drugs did Defendants perform adequate studies to determine if their drug, and its drastic alterations of the natural incretin hormone cycle, may cause increased risks of cardiovascular related adverse events.  Such studies are essential when developing, and then marketing, diabetic drugs to individuals already at an increased cardiovascular risk.

31.     In December 2008, with knowledge of the increased cardiovascular risk type 2 diabetics suffer from, the FDA issued important guidance regarding this topic to companies developing anti-diabetic drugs, including Defendants.  The FDA's memorandum, entitled Final Guidance for Industry, *Diabetes Mellitus: Evaluating Cardiovascular Risk in New Antidiabetic Therapies to Treat Type 2 Diabetes,* stated applicants of new anti-diabetic medications for the treatment of type 2 diabetes should demonstrate their products are not associated with an unacceptable increase in cardiovascular risk.[1]  Despite this guidance being issued during the development of Defendants' drugs, Defendants failed to perform adequate clinical trials to determine if their drugs created such an increased risk.  Instead of adequately assessing the potential, and now established, significant risk of heart failure, congestive heart failure, cardiac failure, and death related to those events, prior to marketing and selling Saxagliptin nationwide to millions of type 2 diabetics, Defendants ignored patient safety and sold Saxagliptin before studying the risks.  Defendants marketed and sold Saxagliptin for nearly five years before completing an adequately powered and designed study of the risks of heart failure, congestive heart failure, cardiac failure, and death related to those events.

32.     On July 31, 2009 Defendants began marketing Onglyza.  On November 5, 2010, Defendants began marketing Kombiglyze XR.  Defendants marketed both drugs as treatments for type 2 diabetes and agents to help reduce adverse complications associated with the disease.  At no time did Defendants perform adequate studies or adequately warn that Onglyza and Kombiglyze XR increased the risk of cardiovascular related adverse events.

33.     After Defendants began selling and making substantial profits off their drugs Onglyza and Kombiglyze XR, Defendants finally conducted what the FDA guidance

---

[1] *Id.*

*COMPLAINT FOR DAMAGES*

recommended back in December 2008 – a Cardiovascular Outcome Trial ("CVOT") for Saxagliptin.

34.     The CVOT for Saxagliptin entitled "Saxagliptin Assessment of Vascular Outcomes Recorded in Patients with Diabetes Mellitus — Thrombolysis in Myocardial Infarction 53" (SAVOR-TIMI 53 or more simply "SAVOR") found Saxagliptin users had a statistically significant increased risk of being hospitalized due to heart failure.

35.     After receiving and reviewing the disturbing findings from the SAVOR trial, the FDA requested the raw clinical trial data, free from manipulation by Defendants, and performed its own analysis of the SAVOR data.  Following the FDA's detailed analysis and review of the SAVOR safety signal for hospitalization for heart failure, the FDA's Endocrinologic and Metabolic Drugs Advisory Committee convened and voted 14 to 1 for the FDA to order Defendants to add a heart failure warning to its Saxagliptin drugs.  The single member who voted against adding the warning stated a warning was insufficient and the drug should instead be withdrawn from the US market.[2]  Despite the SAVOR findings and despite the FDA Advisory Committee voting to add a warning (or remove the drugs from the market), Defendants failed and continue to fail to warn.  Once again, Defendants place sales over patient safety.

36.     In addition to Defendants refusing and failing to warn of the risks of heart failure, congestive heart failure, cardiac failure and death, Defendants' Saxagliptin drugs lack any benefit sufficient to tolerate the risks posed by its use because other anti-diabetes drugs are available that do not carry the increased cardiac risks of Saxagliptin.

37.     Defendants, with knowledge of the true relationship between use of Saxagliptin and heart failure, congestive heart failure, cardiac failure, and death related to those events, promoted and continue to promote Saxagliptin as a safe and effective treatment for type 2 diabetes mellitus.

38.     Defendants over-promoted Saxagliptin and under-warned about Saxagliptin's risks through various avenues including, but not limited to, the following:

---

[2] Diabetes in Control (April 17, 2015) "FDA Panel Recommends New CV Safety Warnings on Onglyza and Nesina DPP-4s," available from: http://www.diabetesincontrol.com/articles/diabetes-news/17836-fda-panel-recommends-new-cv-safety-warnings-on-onglyza-and-nesina-dpp-4s-

a.   in print marketing, advertising, and promotional materials;

b.   on Defendant-owned, controlled, or supported websites and blogs;

c.   in materials and advertisements to Plaintiffs and consumers stating the use of Saxagliptin is safe; and

d.   in promoting Saxagliptin to doctors, clinics, and users as being safer than (or as safe as) other drugs for the treatment of type 2 diabetes mellitus.

39.   At no time did Defendants perform adequate safety testing on Saxagliptin prior to marketing their drugs to the American public and failed to do so until performing the SAVOR trial.

40.   Despite the findings of the SAVOR trial, Defendants still have not undertaken efforts to change the labels and reference materials for Saxagliptin to include a reference or warning regarding heart failure, congestive heart failure, cardiac failure, and death related to those events.

## IV.   PLAINTIFFS' USE OF SAXAGLIPTIN

41.   Plaintiffs were prescribed and ingested Saxagliptin at various times.

42.   Plaintiffs used Saxagliptin manufactured, packaged, marketed, sold and/or distributed by Defendants. The Saxagliptin reached Plaintiffs without substantial change in the drug's condition.

43.   While using Saxagliptin, and as a direct and proximate result thereof, Plaintiffs developed serious and/or permanent adverse effects including but not limited to heart failure, congestive heart failure, cardiac failure, and death.

44.   As a result of said injuries, Plaintiffs suffered significant bodily and mental injuries, pain and suffering, mental anguish, disfigurement, embarrassment, inconvenience, loss of earnings and earning capacity and have and will incur past and future medical expenses.

45.   At all relevant times, Defendants had knowledge that there was a significant increased risk of adverse events associated with Saxagliptin including heart failure, congestive heart failure, cardiac failure, and death related to those events, and despite this knowledge

1  Defendants continued to manufacture, market, distribute, sell and profit from sales of

2  Saxagliptin.

3       46.     Despite such knowledge, Defendants knowingly, purposely and deliberately failed

4  to adequately warn Plaintiffs, patients, consumers, medical providers and the public of the

5  increased risk of serious injury associated with using Saxagliptin including but not limited to

6  heart failure, congestive heart failure, cardiac failure, and death related to those events.

7       47.     Plaintiffs' prescribing physicians would not have prescribed Saxagliptin to

8  Plaintiffs, would have changed the way in which they treated Plaintiffs' relevant conditions,

9  changed the way they warned Plaintiffs about the signs and symptoms of serious adverse effects

10  of Saxagliptin, and discussed with Plaintiffs the true risks of heart failure, congestive heart

11  failure, cardiac failure, and death related to those events, and other serious adverse events had

12  Defendants provided said physicians with an appropriate and adequate warning regarding the

13  risks associated with the use of Saxagliptin.

14       48.     Plaintiffs' prescribing health care providers were unaware of the true degree,

15  incidence, and risk of heart failure, congestive heart failure, cardiac failure, and death related to

16  those events associated with the use of Saxagliptin, and, if they had been informed, would have

17  used and prescribed alternative therapies to Plaintiffs.

18       49.     As a direct and proximate result of Defendants' conduct, Plaintiffs suffered

19  injuries, including, but not limited to, heart failure, congestive heart failure, cardiac failure,

20  and/or death, which resulted in damages to Plaintiffs in a sum in excess of the jurisdictional

21  limits of the Court.

22       50.     As a direct and proximate result of Defendants' conduct, Plaintiffs incurred

23  obligations and expenses for medical care, testing and treatment. As a direct and proximate result

24  of Defendants' conduct, Plaintiffs suffered loss of income, wages, profits and commissions,

25  diminishment of earning potential, and other pecuniary losses.

26       51.     Defendants' conduct was committed with knowing, reckless, conscious, wanton,

27  willful and deliberate disregard for the value of human life and the rights and safety of

28

consumers, including Plaintiffs, thereby entitling Plaintiffs to punitive and exemplary damages so as to punish and deter similar conduct in the future.

## V. **DELAYED DISCOVERY**

52.     Defendants, through their affirmative misrepresentations and omissions, actively concealed from the Plaintiffs and Plaintiffs' physicians and healthcare providers the true and significant risks associated with Saxagliptin.

53.     As a result of Defendants' actions, Plaintiffs and Plaintiffs' physicians and healthcare providers were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

54.     No limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between the use of Saxagliptin and the harm suffered as a result. As such, Plaintiffs hereby invoke the discovery rule based on the fact that this Complaint is filed well within the statutory period after Plaintiffs knew or should have known the facts alleged herein.

55.     Additionally, the accrual and running of any applicable statute of limitations has been tolled by reason of Defendants' fraudulent concealment.

56.     Additionally, each Defendant is equitably estopped from asserting any limitations defense by virtue of its fraudulent concealment and other misconduct as described in this Complaint.

## I.

## CAUSE OF ACTION FOR STRICT PRODUCTS LIABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

57.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce.

58.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

59.     Saxagliptin was expected to reach, and did reach, users and consumers, including Plaintiffs, without substantial change in their defective and unreasonably dangerous condition.

60.     Saxagliptin was used by Plaintiffs in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

61.     Saxagliptin was defective and unreasonably dangerous when each product entered the stream of commerce in one or more of the following particulars:

    a.  Saxagliptin contained manufacturing defects in that the each product caused and/or increased the risk of experiencing an adverse event, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions.

    b.  Saxagliptin was not safe because the health risks associated with each product outweighed the benefits.

    c.  Saxagliptin was marketed and promoted for use when they carried an unreasonable and unnecessary risk of serious injury.

    d.  Saxagliptin was insufficiently and/or inadequately tested by Defendants.

    e.  Saxagliptin was not safe due, in part, to inadequate and defective instructions and inadequate and defective warnings provided by Defendants.

    f.  Saxagliptin was unreasonably dangerous in that, as designed, the risks of serious injury posed by using the products exceeded any benefits the products were designed to or might in fact bestow.

    g.  Saxagliptin was defective in design in that the products neither bore, nor were packaged with, nor were accompanied by, warnings adequate to alert users, including Plaintiffs, of the increased risks associated with using the products, including, but not limited to, the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions

11

h.  Saxagliptin was not accompanied by adequate warnings and instructions for use that included adequate information to fully apprise users, consumers, and the medical, pharmaceutical and scientific communities of the potential risks and serious side effects associated with using the products.

i.  Saxagliptin was unsafe for normal or reasonably anticipated use. Said products were defective and unreasonably dangerous in design, construction and/or composition.

j.  Saxagliptin was defective and unreasonably dangerous because the products did not conform to an express warranty of the manufacturer about the product.

k.  Saxagliptin was defective and unreasonably dangerous due to inadequate warnings, inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

62.    Saxagliptin as manufactured and supplied by the Defendants was defective due to inadequate warnings and instructions because, after Defendants knew or should have known of the risk of injuries from use, Defendants failed to provide adequate warnings to the medical community and the consumers to whom the drugs were directly marketed and advertised; and, further, Defendants continued to affirmatively promote Saxagliptin as safe and effective.

63.    A reasonable person who had actual knowledge of the increased risks associated with using Saxagliptin would have concluded that Saxagliptin should not have been marketed to or used by Plaintiffs and Plaintiffs' physicians.

64.    Despite the fact Defendants knew or should have known of the defective nature of Saxagliptin, Defendants continued to design, manufacture and sell Saxagliptin so as to maximize sales and profits at the expense of the public health and safety. Defendant thus acted with conscious and deliberate disregard of the foreseeable harm caused by Saxagliptin.

65.    Plaintiffs and the non-defendant health care providers involved could not, through the exercise of reasonable care, have discovered the risk of serious injury associated with and/or caused by Saxagliptin.

66.     Plaintiffs were not aware of the aforementioned defects at any time prior to the injuries caused by Saxagliptin.

67.     Had adequate information regarding the safety of the products been provided to Plaintiffs, Plaintiffs would not have used Saxagliptin.

68.     Defendants acted with conscious and/or deliberate disregard of the foreseeable harm caused by use of their products.

69.     As a direct and proximate consequence of Defendants negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs suffered the injuries and damages alleged herein.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## II.

## CAUSE OF ACTION FOR NEGLIGENCE

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

70.     Defendants negligently manufactured, designed, labeled, packaged, distributed, marketed, advertised, and sold Saxagliptin.

71.     At all relevant and material times, Defendants had a duty to Plaintiffs to exercise reasonable care in the design, manufacture, advertising, marketing, labeling, packaging, distribution, post-market safety monitoring, reporting of adverse events, and sale of Saxagliptin, including a duty to ensure that the products did not cause users such as Plaintiffs to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

72.     Defendants breached their duty of care to Plaintiffs and were negligent in their actions, misrepresentations, and omissions in numerous ways including the following:

13

*COMPLAINT FOR DAMAGES*

a.   Failing to perform adequate testing concerning the safety of Saxagliptin which would have shown Saxagliptin created a high risk of unreasonable, dangerous side effects, including causing and increasing the risk of heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects, which would have permitted adequate and appropriate warnings to have been by given by Defendants to prescribing physicians and the consuming public, including Plaintiffs;

b.   Failing to design Saxagliptin so as to properly minimize effects on receptors that were known to be associated with certain serious adverse effects;

c.   Failing to conduct adequate pre-clinical and clinical testing to determine the safety of Saxagliptin;

d.   Failing to report to the FDA, the medical community, and the general public the Saxagliptin data which indicated risks associated with using the product;

e.   Failing to conduct post-market monitoring and surveillance of Saxagliptin and analysis of adverse event reports;

f.   Designing, manufacturing, marketing, advertising, distributing, and selling Saxagliptin to consumers, including Plaintiffs, without an adequate warning of risks associated with using the products and without proper and adequate instructions to avoid the harm which could foreseeably occur as a result of using the products;

g.   Failing to exercise due care when advertising, promoting, and selling Saxagliptin;

h.   Failing to use due care in the preparation, design and development of Saxagliptin to prevent, avoid, or minimize the risk of injury to individuals when the products were used;

14

i.     Failing to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiffs, consumers, the medical community, and the FDA;

j.     Failing to accompany Saxagliptin with proper warnings regarding all possible risks associated with using the products;

k.     Failing to use due care in the manufacture, inspection, and labeling of Saxagliptin to prevent risk of injuries to individuals who used the products;

l.     Failing to provide adequate and accurate training and information to the sales representatives who sold the products;

m.     Failing to educate healthcare providers and the public about the safest use of the products;

n.     Failing to give healthcare providers adequate information to weigh the risks of serious injury associated with the products;

o.     Failing to test and inspect Saxagliptin in a reasonable manner in order to ascertain whether or not it was safe and proper for the purpose for which it was designed, manufactured, and sold;

p.     Failing to warn Plaintiffs of the danger of adverse medical conditions from the use of Saxagliptin; and

q.     Failing to label Saxagliptin to adequately warn Plaintiffs of the serious adverse side effects with the use of Saxagliptin.

73.     Defendants advertised, marketed, sold and distributed Saxagliptin despite the fact that Defendants knew or should have known of the increased risks associated with using the products, including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions and other adverse effects of which Plaintiffs and Plaintiffs' healthcare providers would not have been aware.

74.     Defendants, individually and collectively, had a duty to warn the FDA, their customers, the medical community and the public about the increased risk of injury but failed to do so.

75.     Defendants are guilty of negligence *per se* in that the Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*, and the Sherman Food, Drug and Cosmetic Law, as well as other applicable laws, statutes, and regulations.

        a.     The Defendants' acts and omissions, including but not limited to Defendants' off-label marketing, constitute an adulteration and/or misbranding as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

        b.     The Defendants' also failed to report adverse events as required by the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, *et seq.*  Persons such as Plaintiffs were the parties intended to be protected by such legislation and whose injuries said regulations were designed to prevent. Defendants' conduct was a proximate cause of Plaintiffs' injuries.

76.     Despite the fact Defendants knew or should have known that Saxagliptin increased the risk of serious injury including but not limited to heart failure, congestive heart failure, cardiac failure, death from heart failure, and other serious health conditions, Defendants continued to manufacture, market, advertise, sell and distribute Saxagliptin to consumers, including Plaintiffs.

77.     Defendants negligently and recklessly represented to Plaintiffs, physicians, and other persons and professionals Defendants knew would justifiably rely on the representations, that Saxagliptin was safe to use and that the utility of the products outweighed any risk in use for their intended purposes.

78.     Defendants negligently and recklessly failed to disclose to Plaintiffs and others important safety and efficacy information about Saxagliptin, thereby suppressing material facts while under a duty to disclose such information.

79.     Defendants' representations about the safety and adverse side effects of Saxagliptin were negligently and recklessly made in that Saxagliptin in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

80.     Defendants knew or should have known that their representations and omissions were false. Defendants made such false, negligent and reckless representations and omissions with the intent or purpose that Plaintiffs and any non-defendant physicians would rely upon such representations, leading to the use of Saxagliptin as described.

81.     Defendants omitted, suppressed and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Saxagliptin, including serious injury. Furthermore, Defendants' purpose was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Saxagliptin.

82.     At the time Defendants made these misrepresentations and/or omissions, they knew or should have known that Saxagliptin was unreasonably dangerous and not what Defendants had represented to Plaintiffs, as well as the medical community, the FDA and the consuming public.

83.     Defendants' misrepresentations and/or omissions were undertaken with an intent that doctors and patients, including Plaintiffs, rely upon them.

84.     Plaintiffs and Plaintiffs' healthcare providers did not know that these representations were false and justifiably relied on and were induced by Defendants' misrepresentations, omissions, and/or active concealment of the dangers of Saxagliptin to employ these products.

85.     As a direct and proximate consequence of Defendants' negligent, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

86.     Had Plaintiffs been aware of the increased risk of side effects associated with Saxagliptin and the relative efficacy of Saxagliptin compared with other readily available products, Plaintiffs would not have used these products.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## III.

## CAUSE OF ACTION FOR FAILURE TO WARN

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action, and further allege:

87.     Saxagliptin was unreasonably dangerous, even when used in a foreseeable manner as designed and intended by Defendants.

88.     At all relevant and material times, the Defendants designed, manufactured, packaged, marketed, advertised, distributed, and sold Saxagliptin, placing the products into the stream of commerce for sale to, and use by, members of the public, including the Saxagliptin used by Plaintiffs.

89.     At all relevant and material times, Saxagliptin was designed, manufactured, packaged, marketed, advertised, distributed, and sold by Defendants in a defective and unreasonably dangerous condition.

90.     The Saxagliptin manufactured by Defendants reached Plaintiffs without substantial change and was ingested as directed. The Saxagliptin was defective and unreasonably dangerous when it entered into the stream of commerce and when used by Plaintiffs.

91.     The Plaintiffs were administered the Saxagliptin for its intended purpose.

92.     Plaintiffs used Saxagliptin in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendants.

93.     Defendants failed to warn and/or adequately warn Plaintiffs, consumers, physicians, and healthcare professionals of the increased health risks associated with using Saxagliptin.

*COMPLAINT FOR DAMAGES*

94.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning was communicated to them.

95.     The Plaintiffs could not have discovered any defect in the Saxagliptin through the exercise of reasonable care.

96.     Defendants, as manufacturers of Saxagliptin, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that warnings and other clinically relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Saxagliptin was incomplete and inadequate.

97.     Plaintiffs did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to Plaintiffs or to Plaintiffs' treating physicians. The warnings given by Defendants were inaccurate, unclear, ambiguous, and/or incomplete.

98.     Defendants had a continuing duty to provide consumers, including Plaintiffs, and Plaintiffs' physicians with warnings and other clinically relevant information and data regarding the risks and dangers associated with Saxagliptin, as it became or could have become available to Defendants.

99.     Defendants marketed, promoted, distributed and sold unreasonably dangerous and defective prescription Saxagliptin to health care providers empowered to prescribe and dispense to consumers, including Plaintiffs, without adequate warnings and other clinically relevant information and data. Through both omissions and affirmative misstatements, Defendants misled the medical community about the risk/benefit balance of Saxagliptin, which resulted in injury to Plaintiffs.

100.     Defendants knew or should have known that Saxagliptin caused unreasonable and dangerous side effects and they continued to promote and market Saxagliptin without stating safer and more or equally effective alternative drug products existed and/or providing adequate clinically relevant information and data.

101.     Defendants knew or should have known that consumers, including Plaintiffs, would foreseeably and needlessly suffer injury or death as a result of Defendants' conduct.

*COMPLAINT FOR DAMAGES*

102.     Defendants failed to provide timely and adequate warnings to physicians, pharmacies, and consumers, including Plaintiffs and to Plaintiffs' intermediary physicians, in at least the following ways:

    a.     Defendants failed to include adequate warnings and/or provide adequate clinically relevant information and data that would alert Plaintiffs' physicians to the dangerous risks of Saxagliptin including, among other things, their tendency to increase the risk of, and/or cause, heart failure, congestive heart failure, cardiac failure, and death related to those events;

    b.     Defendants failed to inform Plaintiffs and Plaintiffs' physicians that Saxigliptin had not been adequately tested to determine the full extent of the safety risks associated with use of the product;

    c.     Defendants failed to provide adequate post-marketing warnings and instructions after Defendants knew or should have known of the significant risks of heart failure, congestive heart failure, cardiac failure, and death related to those events associated with use of Saxagliptin; and

    d.     Defendants continued to aggressively promote and sell Saxagliptin even after they knew or should have known of the unreasonable risks of developing heart failure, cardiac failure, and death related to those events from ingestion of Saxagliptin.

103.     Defendants and each of them had a duty to warn the FDA, the medical community, Plaintiffs, and Plaintiffs' physicians about the increased risks of injury but failed to do so.

104.     Defendants had a duty and obligation to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, but failed to do so.

105.     By failing to provide Plaintiffs and Plaintiffs' physicians with adequate clinically relevant information and data and warnings regarding the adverse health risks associated with

20

exposure to Saxagliptin, and/or that there existed safer and more or equally effective alternative drug products, Defendants breached their duty of reasonable care and safety.

106.     Defendants' actions described above were performed willfully, intentionally, and with reckless disregard of the life and safety of the Plaintiffs and the public.

107.     As a direct and proximate result of the actions and inactions of Defendants as set forth above, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand judgment against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## IV.

## CAUSE OF ACTION FOR BREACH OF WARRANTY OF MERCHANTABILITY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

108.     At all times mentioned in this Complaint, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold Saxagliptin, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and Plaintiffs' physicians and healthcare providers, that Saxagliptin was of merchantable quality and safe for the use for which it was intended.

109.     Defendants knew and intended that Saxagliptin be used by Plaintiffs and other consumers when the products were placed into the stream of commerce.

110.     Defendants knew of the use for which Saxagliptin was intended and impliedly warranted Saxagliptin to be of merchantable quality and safe and fit for their intended use.

111.     Plaintiffs and their healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the express and/or implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use by Plaintiffs and other consumers.

112.     The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, or fit for its intended use.

113.    The product was unsafe for its intended use and was not of merchantable quality, as warranted by Defendants, in that Saxagliptin had very dangerous propensities when put to its intended use and would cause severe injury (or death) to the user. Saxagliptin was unaccompanied by adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution.

114.    The Saxagliptin used by Plaintiffs was neither safe nor fit for use because Saxagliptin products were and are unreasonably dangerous and unfit for the ordinary purposes for which they are used.

115.    As a direct and proximate result of the breach of warranty of merchantability by Defendants, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## V.

## CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

116.    The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandizing, advertising, promoting, supplying and selling of Saxagliptin was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

117.    Defendants expressly represented to Plaintiffs, consumers and the medical community that Saxagliptin was:

       a.    safe;

       b.    efficacious;

       c.    fit for use in persons with Type 2 diabetes mellitus;

       d.    of merchantable quality;

22

*COMPLAINT FOR DAMAGES*

       e.     adequately tested;

       f.     well tolerated in adequate and well-controlled clinical studies; and

       g.     did not increase the risk of experiencing serious, life threatening side effects.

118.    Defendants breached those express warranties as follows:

       a.     Defendants misrepresented the safety of Saxagliptin in its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions;

       b.     Defendants misrepresented the risks associated with using Saxagliptin;

       c.     Defendants withheld and/or concealed and/or downplayed the information and/or evidence that the products were associated with an increased risk of serious injury;

       d.     Defendants misrepresented that Saxagliptin was as safe or safer than other available forms of treatment for Plaintiffs' conditions; and

       e.     Saxagliptin was unaccompanied by adequate warnings of its dangerous propensities that were either known or knowable at the time of distribution.

119.    Saxagliptin did not conform to Defendants' express representations and warranties.

120.    At all relevant times, Saxagliptin did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

121.    At all relevant times, Saxagliptin did not perform in accordance with the Defendants' representations because Saxagliptin is not safe and causes high levels of serious side effects.

122.    In deciding to purchase and use Saxagliptin, Plaintiffs, other consumers, and the medical community relied upon Defendants' express warranties.

123.     As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.

## CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth in full in this cause of action and further allege:

124.     At all relevant and material times, Defendants manufactured, distributed, advertised, and sold Saxagliptin.

125.     Defendants impliedly warranted to Plaintiffs that Saxagliptin was safe for use by Plaintiffs and the consuming population.

126.     Defendants knew and intended that Saxagliptin be used in treatment for persons with Type 2 diabetes mellitus when the products were placed into the stream of commerce.

127.     Plaintiffs and Plaintiffs' healthcare providers used Saxagliptin as intended and directed by the Defendants, and in a foreseeable manner as intended, recommended, promoted, and marketed by Defendants.

128.     Plaintiffs were foreseeable users of Defendants' product, Saxagliptin. Saxagliptin was expected to reach, and did in fact reach, Plaintiffs without substantial change in the condition in which the products were manufactured and sold by Defendants.

129.     Plaintiffs and Plaintiffs' healthcare providers reasonably relied upon the expertise, skill, judgment and knowledge of Defendants, and upon the Defendants' implied warranty that Saxagliptin was safe, of merchantable quality, and fit for use.

130.     The Saxagliptin used by Plaintiffs was not safe, of merchantable quality, nor fit for use.

*COMPLAINT FOR DAMAGES*

131.    The Saxagliptin used by Plaintiffs did not perform in accordance with Defendants' representations because Saxagliptin is not safe and causes high levels of serious, life-threatening side effects.

132.    Defendants breached the implied warranty in that Saxagliptin did not conform to Defendants' representations.

133.    As a direct and proximate consequence of Defendants' negligence, willful, wanton, and intentional acts, omissions, misrepresentations and otherwise culpable acts described herein, Plaintiffs sustained injuries and damages.

WHEREFORE, Plaintiffs demand individual judgments against Defendants and seek compensatory, exemplary and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VII

## GLOBAL PRAYER FOR RELIEF

Plaintiffs incorporate by reference each and every paragraph of this Complaint as though set forth here in full and further pray:

134.    So far as the law and this Court allows, Plaintiffs demand judgment against each Defendant on each count as follows:

a.    All available compensatory damages for the described losses with respect to each cause of action;

b.    Past and future medical expenses, as well as the cost associated with past and future life care;

c.    Past and future lost wages and loss of earning capacity;

d.    Past and future emotional distress;

e.    Consequential damages;

f.    All available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

g.    All damages wrongful death damages permitted by law, where applicable;

*COMPLAINT FOR DAMAGES*

1        h.      Disgorgement of profits obtained through unjust enrichment;

2        i.        Restitution;

3        j.        Punitive damages with respect to each cause of action;

4        k.      Reasonable attorneys' fees where recoverable;

5        l.        Costs of this action;

6        m.     Pre-judgment and all other interest recoverable; and

7        n.      Such other additional and further relief as Plaintiffs may be entitled to in

8                law or in equity.

9                        **DEMAND FOR JURY TRIAL**

10       Each Plaintiff named herein demands his or her own individual trial by jury on all issues

11 so triable.

12

13 Dated: April 14, 2016                By: _____
                                    Lauren A. Welling (CA Bar No. 291813)

14                                     **SANDERS PHILLIPS GROSSMAN, LLP**
                                    2860 Michelle Drive, Suite 220

15                                     Irvine, CA 90606
                                    Tel: (877) 480-9142

16                                     Fax: (213) 330-0346

17                                     rmosier@thesandersfirm.com

18

19

20

21

22

23

24

25

26

27

28

*COMPLAINT FOR DAMAGES*

1

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF ORANGE

2

3
I certify that I am over the age of 18 years and not a party to the within action; that my business address is:

4

5
**SANDERS PHILLIPS GROSSMAN, LLC**
2860 Michelle Drive, Suite 220
Irvine, CA 92606

6

7
On December 23, 2016, I served the foregoing documents described as:

8
### DECLARATION OF TIMOTHY M. CLARK

9

10
On the parties in this action by placing a true copy thereof in a sealed envelope addressed as stated on the parties involved addressed as follows:

11
Chair, Judicial Council of California

12
Attn: Appellate Court Services
(Civil Case Coordination)

13
455 Golden Gate Avenue , 5th Floor
San Francisco, CA  94102

14

15
__    E-MAIL: I caused such documents to be transmitted by e-mail to the following e-mail addresses as set forth above

16

17
__    (BY PERSONAL SERVICE) I caused each document to be delivered by hand to the offices of the addressee.

18

19
__    (BY FACSIMILE) I caused each document to be sent by FAX to the parties listed above

20
_X_    (BY MAIL): by placing document(s) listed above in a sealed envelope with postage thereon fully

21
prepaid, in the United States mail at Los Angeles, California addressed as set forth above.. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under the

22
practice, it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is

23
presumed invalid if the postal cancellation date or postage meter date is more than one day after the date

24
of deposit for mailing in this declaration

25
__    (BY ELECTRONIC SERVICE VIA FILE & SERVE EXPRESS) LexisNexis File & Serve for

26
service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court

27
2060(c). The transmission was reported as complete without error

28
__    (BY OVERNIGHT MAIL): I caused said document(s) to be picked up by an overnight delivery service company for delivery to the addressee(s) on the next business day.

1
DECLARATION OF TIMOTHY M. CLARK

1    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

2

3    Executed on December 23, 2016 at Irvine, California.

4

5    Brooke L. Meyers

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF TIMOTHY M. CLARK

1

## PROOF OF SERVICE
### STATE OF CALIFORNIA, COUNTY OF ORANGE

2

3   I certify that I am over the age of 18 years and not a party to the within action; that my business address is:

4

5   **SANDERS PHILLIPS GROSSMAN, LLC**
    2860 Michelle Drive, Suite 220
    Irvine, CA 92606

6

7   On December 23, I served the foregoing documents described as:

8   **NOTICE OF SUBMISSION OF PETITION FOR COORDINATION**

9       On the parties in this action by placing a true copy thereof in a sealed envelope addressed as
10  stated on the parties involved addressed as follows:

11  | Donald F. Zimmer, Jr., Esq. |
12  | King & Spalding LLP |
    | 101 Second Street, Suite 2300 |
13  | San Francisco, CA 94105 |
    | Telephone: (415) 318-1200 |
14  | Facsimile: (415) 318-1300 |
    | fzimmer@kslaw.com |
15  | Attorneys for Defendants |

16  | Cameron J. Hoyler, Esq. |
    | Brian Priestley, Esq. |
17  | King & Spalding LLP |
    | 633 W. 5th Street, Suite 1700 |
18  | Los Angeles, CA 90071 |
    | Telephone: (213) 443-4355 |
19  | Facsimile: (213) 443-4310 |
    | choyler@kslaw.com |
20  | bpriestley@kslaw.com |
21  | Attorneys for Defendants |

22

23  __    E-MAIL: I caused such documents to be transmitted by e-mail to the following e-mail addresses as set forth above

24
25  __    (BY PERSONAL SERVICE) I caused each document to be delivered by hand to the offices of the addressee.

26  __    (BY FACSIMILE) I caused each document to be sent by FAX to the parties
27  listed above

28  _X_   (BY MAIL): by placing document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth above. I am readily familiar with the firm's practice of collection and processing of correspondence for mailing. Under the practice,

1
**PROOF OF SERVICE**

1  it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in
   the ordinary course of business. I am aware that on motion of the party served, service is presumed
2  invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit
   for mailing in this declaration
3

4     ___   (BY OVERNIGHT MAIL): I caused said document(s) to be picked up by an overnight delivery
5  service company for delivery to the addressee(s) on the next business day.

6          I declare under penalty of perjury under the laws of the State of California that the
7  foregoing is true and correct.

8          Executed on December 23, 2016 at Irvine, California.

9

10                                                    BrookeLynn Meyers
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STATE COURT DOCUMENT O

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF SAN FRANCISCO
### 400 MCALLISTER STREET, SAN FRANCISCO, CA 94102-4514

| | |
|---|---|
| MICHAEL MARTIN et al | **Department 304** |
| PLAINTIFF (S) | |
| VS. | **NO. CGC-16-554610** |
| BRISTOL-MEYERS SQUIBB COMPANY et al | **Order Granting Complex Designation and for Single Assignment** |
| DEFENDANT (S) | |

TO: ALL COUNSEL AND PARTIES IN PROPRIA PERSONA

The Application for Approval of Complex Designation filed Dec-9-2016, in the above-entitled action, is GRANTED.  Complex Designation is APPROVED and it is hereby ordered that this entire action be assigned for all purposes to the Complex Litigation Department, Judge CURTIS E.A. KARNOW, Department 304, of the California Superior Court for the County of San Francisco at 400 McAllister Street, San Francisco, CA 94102.

The CASE MANAGEMENT CONFERENCE previously set for Mar-1-2017 in Dept.610 is canceled and a new case management conference is set for Jan-18-2017 at 11:00am in Department 304.  Counsel is expected to appear in person for this initial case management conference.  A JOINT case management statement must be filed and an endorsed copy thereof delivered to Department 304 no later than four (4) court days prior to the case management conference.

Any pending motions previously set for hearing in the Law and Motion or Discovery Departments should be taken off calendar and new courtesy copies forwarded to Department 304 for possible re-setting at the time of the case management conference. All court dates must be reserved in advance with the Clerk of the Court.  The Clerk of the Court in Department 304 may be contacted at (415) 551-3729.

Counsel for plaintiff shall provide a copy of this order and notice to all counsel of record and/or parties In Propria Persona that are not listed in the attached certificate of service.

All counsel should read and be familiar with the "User's Manual for Dept.304" located online at: http://www.sfsuperiorcourt.org/divisions/civil/litigation

This case is now subject to mandatory e-filing and e-service pursuant to Local Rule 2.10.  For e-filing registration, training information and service list assistance, contact the Court's approved e-filing & e-service provider at (888)529-7587.

DATED:  JAN-11-2017            Curtis Karnow
_____
                              JUDGE

CERTIFICATE OF SERVICE BY MAIL

I, the undersigned, certify that I am an employee of the Superior Court of California, County of San Francisco and not a party to the above-entitled cause and that on JAN-11-2017 I served the attached Order Granting Complex Designation and for Single Assignment by placing a copy thereof in an envelope addressed to all parties to this action as listed below.  I then placed the envelope in the outgoing mail at 400 McAllister Street, San Francisco, CA 94102, on the date indicated above for collection, sealing of the envelope, attachment of required prepaid postage, and mailing on that date, following standard court practice.

Dated :   JAN-11-2017                          By: DANIAL LEMIRE

DONALD FREDERICK ZIMMER (112279)
KING & SPALDING LLP
101 SECOND STREET, STE 2300
SAN FRANCISCO, CA  94105

ROBERT A MOSIER (164241)
SANDERS PHILLIPS GROSSMAN, LLC
2860 MICHELLE DRIVE
SUITE 220
IRVINE, CA  92606

CERTIFICATE OF SERVICE BY MAIL
Form 000015

# STATE COURT DOCUMENT P



**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Jan-19-2017 11:13 am

Case Number: CGC-16-554610

Filing Date: Jan-18-2017 11:13

Filed by:  DANIAL LEMIRE

Image: 05710560

ORDER

MICHAEL MARTIN ET AL VS. BRISTOL-MEYERS SQUIBB COMPANY ET AL

001C05710560

**Instructions:**
Please place this sheet on top of the document to be scanned.

**F I L E D**

San Francisco County Superior Court

JAN 1 8 2017

CLERK OF THE COURT

BY: _____

Deputy Clerk

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

JOHN OKOYE. ET AL.

           Plaintiff,

vs.

BRISTOL –MYERS SQUIBB, ET AL.

           Defendants.

LOUIS HOSEK,

           Plaintiff,

vs.

BRISTOL –MYERS SQUIBB, ET AL.

           Defendants.

MICHAEL MARTIN ET AL.,

           Plaintiff,

vs.

BRISTOL –MYERS SQUIBB, ET AL.

           Defendants.

Case No. CGC – 16-553662

Case No. CGC - 16-554603

Case No. CGC - 16-554610

Case No. CGC - 16-556095

CASE MANAGEMENT ORDER NO.3[1]

---

[1] This so numbered for convenience although this refer to the first case management conference in some of the captioned cases.

- 1 -

GARY GILMORE, ET AL.,

          Plaintiff,

vs.

BRISTOL –MYERS SQUIBB, ET AL.

          Defendants.

     I held a case management conference (CMC) this date. The parties should continue with their informal exchanges and formal discovery on all relevant issues. They are encouraged to agree on what data should be provided on plaintiffs' fact sheet. The parties by Monday January 23, 2017 will forward either (a) a proposed stipulated order regarding the disposition of personal jurisdiction and venue issues,[2] or (b) a short written proposal to confer with me (e.g. by telephone) to discuss remaining disagreements on the matter.

     The next CMC is set for **April 13, 2017 at 10:30 a.m.** The parties' joint CMC statement should report on among other things: (i) the status of other related state and federal cases, including regarding motions for remand, (ii) the status of the petition for coordination, (iii) whether it appears that further state plaintiffs may file complaints and if so the likely date and location of the filings, (iv) when defendants are likely to have the information they need (including that related to McKesson) to evaluate whether there is a basis for removal that does not currently appear, (v) proposed discovery cut off dates and trial dates.

Dated: January 18, 2017

                                 Curtis E.A. Karnow
                                 Judge Of The Superior Court

---

[2] See January 11, 2017 Joint CMC statement at 6: 3 *et seq.*

## CERTIFICATE OF ELECTRONIC SERVICE
### (CCP 1010.6(6) & CRC 2.260(g))

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On    JAN 1 9 2017    , I electronically served THE ATTACHED DOCUMENT via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:    JAN 1 9 2017

T. Michael Yuen, Clerk

By: _____

DANIAL LEMIRE, Deputy Clerk

STATE COURT DOCUMENT Q

1 | ROBERT A. MOSIER (Bar No. 112279)
TIMOTHY M. CLARK (Bar No. 284447)
2 | LAUREN A. WELLING (Bar No. 291813)
SANDERS PHILLIPS GROSSMAN, LLC
3 | 2860 Michelle Drive, Suite 220
Irvine, CA 92606
4 | Telephone:   +1 877 480 9142
Facsimile:    +1 213 330 0346
5 | *rmosier@thesandersfirm.com*

6 | JENNIFER LIAKOS (Bar No. 207487)
*jliakos@napolilaw.com*
7 | NAPOLI SHKOLNIK PLLC
525 South Douglas Street, Suite 260
8 | El Segundo, CA 90245
Telephone:   +1 310 331 8224
9 | Facsimile:    +1 646 843 7603

10 | Attorneys for Plaintiffs

11 | DONALD F. ZIMMER, JR. (BAR NO. 112279)
*fzimmer@kslaw.com*
12 | CAMERON J. HOYLER (Bar No. 273234)
*choyler@kslaw.com*
13 | KING & SPALDING LLP
101 Second Street, Suite 2300
14 | San Francisco, CA  94105
Telephone:   +1 415 318 1200
15 | Facsimile:    +1 415 318 1300

16 | Attorneys for Defendants
BRISTOL-MYERS SQUIBB COMPANY (special
17 | appearance), ASTRAZENECA
PHARMACEUTICALS LP (special appearance),
18 | and MCKESSON CORPORATION

ELECTRONICALLY
**FILED**
*Superior Court of California,*
*County of San Francisco*
**01/23/2017**
**Clerk of the Court**
BY:ERNALYN BURA
**Deputy Clerk**

19

20 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

21 | FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| 22  JOHN OKOYE, et al., | Case No. CGC-16-553662 (*Okoye*) |
| | Case No. CGC-16-554603 (*Hosek*) |
| 23            Plaintiffs, | Case No. CGC-16-554610 (*Martin*) |
| 24        v. | |
| 25  BRISTOL-MYERS SQUIBB COMPANY, et al., | **STIPULATION REGARDING DISMISSAL OF NON-RESIDENT PLAINTIFFS BASED ON FORUM NON CONVENIENS** |
| 26            Defendants. | |
| 27 | |
| 28 | Judge:    Hon. Curtis E.A. Karnow |
| | Dept.:    304 |

JOINT STIPULATION REGARDING MOTIONS TO DISMISS FOR FORUM NON CONVENIENS

LOUIS HOSEK and MARIE HOSEK, et al.,

        Plaintiffs,

    v.

BRISTOL-MYERS SQUIBB COMPANY, et al.,

        Defendants.

MICHAEL MARTIN, et al.,

        Plaintiffs,

    v.

BRISTOL-MYERS SQUIBB COMPANY, et al.,

        Defendants.

## I.   INTRODUCTION

The non-California-resident plaintiffs in these cases (Plaintiffs) and defendants Bristol-Myers Squibb Company, AstraZeneca Pharmaceuticals LP, and McKesson Corporation (Defendants), submit for the Court's approval the following stipulation and concurrently-filed proposed order to effectuate dismissal of the Plaintiffs' claims without prejudice to refiling in their home states within 90 days of entry of the order of dismissal.

## II.   RECITALS AND STIPULATION

WHEREAS, Defendants filed motions to quash based on the lack of personal jurisdiction and motions to dismiss as to non-California-resident Plaintiffs based on forum non conveniens in *Carolyn Williams, et al. v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-550418 (*Williams*) on May 17, 2016, and in *Donald Max Leedy, et al. v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-552157 (*Leedy*) on July 22, 2016;

WHEREAS, on October 4, 2016, Judge Karnow denied Defendants' motions to quash, but granted Defendants' motions to dismiss based on forum non conveniens in *Williams* and *Leedy*, and entered an Order dismissing, without prejudice, all remaining non-resident Plaintiffs

1   and requiring those Plaintiffs to refile their Complaints in their respective home states within 90

2   days of the Order;

3       WHEREAS, Defendants filed a nearly identical motions to dismiss based on forum non

4   conveniens in *John Okoye, et al., v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-

5   553662 (*Okoye*) on September 26, 2016, in *Louis Hosek and Marie Hosek, et al., v. Bristol-*

6   *Myers Squibb Company, et al.*, Case No. CGC-16-554603 (*Hosek*) on October 31, 2016, and in

7   *Michael Martin, et al. v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-554610

8   (*Martin*) on November 1, 2016.; and

9       WHEREAS, Plaintiffs and Defendants (collectively, the Parties) in each of the above-

10   entitled actions wish to avoid further duplicative briefing and oral argument on the issue of

11   whether non-resident Plaintiffs' claims should proceed in California State court in *Okoye, Hosek,*

12   and *Martin.*

13       **NOW, THEREFORE, the Parties stipulate as follows:**

14       The following non-California-resident Plaintiffs in *Okoye, Hosek,* and *Martin* are hereby

15   dismissed, without prejudice, and may refile their Complaints, provided that these Plaintiffs'

16   claims are refiled in their respective home states within 90 days of the date of entry of this

17   stipulation, consistent with Defendants' consent to jurisdiction below.

18       Defendants will not contest personal jurisdiction in such actions, and consent to specific

19   jurisdiction in Plainitffs' home states.  Defendants agree to toll the statute of limitations from the

20   time the present actions were filed in California until the time Plaintiffs refile their actions in

21   their respective home states (so long as they are refiled within 90 days of dismissal).  Thus, if

22   Plaintiffs' filing in California was timely according to the laws of their respective home states,

23   then Plaintiffs' actions refiled within the time limits described above will be timely-filed in

24   Plaintiffs' respective home states as well.  Defendants do not waive any statute of limitations

25   defense that may exist if the filing of the present action in California was untimely pursuant to

26   the laws of Plaintiffs' respective home states.

27

28

*John Okoye, et al., v. Bristol-Myers Squibb Company, et al.,*
Case No. CGC-16-553662

| Last Name | First Name | Home State |
|-----------|-----------|-----------|
| Reid | Patricia | Georgia |
| Beeler | Harvey | Indiana |
| Tucker | Cloyd | Kentucky |
| Esposito | Ronald | New York |
| Lottie | Richard | New York |
| McCall | Randall | Oklahoma |
| Carter | Roy | Texas |
| Davila | Rosa | Texas |
| Vallentine | Steven | Alabama |
| Goforth | Margie | Arkansas |
| Settle | Kenneth | Illinois |
| Settle | Susan | Illinois |
| Pinchoff | Dean | Louisiana |
| Savoie | Susan | Louisiana |

*Louis Hosek and Marie Hosek, et al., v. Bristol-Myers
Squibb Company, et al.,* Case No. CGC-16-554603

| Last Name | First Name | Home State |
|-----------|-----------|-----------|
| Day | Linda | Kentucky |
| McAfee | Darryl | Illinois |
| Thomas | Kathleen E. | New Jersey |
| Williams | Robert | Ohio |
| Green | H.B. | Texas |
| Ishman | Georgia | Missouri |
| Asencio | Edwin | Florida |

3

JOINT STIPULATION REGARDING MOTIONS TO DISMISS FOR FORUM NON CONVENIENS

| | | |
|---|---|---|
| Atkins Sr. | Allen | Florida |
| Talton | Gail | Louisiana |
| Reeves | Larry | Missouri |
| Reeves | Diann M. | Missouri |
| Binns | Earl | Ohio |
| Sechler | April | North Carolina |
| Sechler | Michael | North Carolina |
| Woods | Catherine | Tennessee |
| Daiger | Joseph | Ohio |
| Mitchell | Robert | Georgia |
| Mitchell | Amy | Georgia |
| Cranfield | Deborah | New Jersey |
| Johnson | Maisha | New Jersey |

*Michael Martin, et al. v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-554610

| Last Name | First Name | Home State |
|---|---|---|
| Letell | Ronald | Louisiana |
| Carpenter | David | Ohio |
| McMahon | Elizabeth | Pennsylvania |
| Hunt, Sr. | John W. | Georgia |

**IT IS SO STIPULATED.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1 | DATED:  January 20, 2017

SANDERS PHILLIPS GROSSMAN, LLC

By: _____
Robert A. Mosier
Timothy M. Clark
Lauren Welling
Attorneys for Plaintiffs

8 | DATED:  January 20, 2017

NAPOLI SHKOLNIK PPLC

By: _____
Jennifer Liakos
Attorneys for Plaintiffs

15 | DATED:  January 20, 2017

KING & SPALDING LLP

By: _____
Donald F. Zimmer, Jr.
Cameron J. Hoyler
Vincent Tremonti
Attorneys for Defendants

JOINT STIPULATION REGARDING MOTIONS TO DISMISS FOR FORUM NON CONVENIENS

**PROOF OF SERVICE**

*Okoye, John, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-553662

*Louis Hosek, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554603

*Martin, Michael, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I, the undersigned, certify and declare that I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of San Francisco; my business address is 101 Second Street, Suite 2300, San Francisco, CA 94105.

On January 23, 2017, I served a copy of the within document(s):

**STIPULATION REGARDING DISMISSAL OF NON-RESIDENT PLAINTIFFS BASED ON FORUM NON CONVENIENS**

on all parties in this action, as addressed below, by causing a true copy thereof to be distributed as follows:

| | |
|---|---|
| Robert A. Mosier, Esq.<br>Timothy M. Clark, Esq.<br>Lauren Welling, Esq.<br>**SANDERS PHILLIPS GROSSMAN, LLP**<br>2860 Michelle Drive, Suite 220<br>Irvine, CA 92606<br>Tel: 877-480-9142<br>Fax: 213-330-0346<br>rmosier@thesandersfirm.com | Jennifer Liakos<br>JLiakos@NapoliLaw.com<br>**NAPOLI SHKOLNIK PLLC**<br>525 South Douglas Street, Suite 260<br>El Segundo, CA 90245<br>Tel: 310-331-8224<br>Fax: 646-843-7603 |

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**: LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c). The transmission was reported as complete without error.

☒   **BY U.S. MAIL**: I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 23, 2017, at San Francisco, California.

Sara Collins

1
PROOF OF SERVICE

# STATE COURT DOCUMENT R



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SAN FRANCISCO**

# Document Scanning Lead Sheet

Jan-30-2017  3:29 pm

Case Number: CGC-16-554610

Filing Date: Jan-30-2017 3:28

Filed by:  DANIAL LEMIRE

Image: 05725119

ORDER

MICHAEL MARTIN ET AL VS. BRISTOL-MEYERS SQUIBB COMPANY ET AL

001C05725119

**Instructions:**
Please place this sheet on top of the document to be scanned.

1  ROBERT A. MOSIER (Bar No. 112279)
   TIMOTHY M. CLARK (Bar No. 284447)
2  LAUREN A. WELLING (Bar No. 291813)
   **SANDERS PHILLIPS GROSSMAN, LLC**
3  2860 Michelle Drive, Suite 220
   Irvine, CA 92606
4  Telephone:    +1 877 480 9142
   Facsimile:    +1 213 330 0346
5  *rmosier@thesandersfirm.com*

6  JENNIFER LIAKOS (Bar No. 207487)
    *jliakos@napolilaw.com*
7  **NAPOLI SHKOLNIK PLLC**
   525 South Douglas Street, Suite 260
8  El Segundo, CA 90245
   Telephone:    +1 310 331 8224
9  Facsimile:    +1 646 843 7603

10 Attorneys for Plaintiffs

11 DONALD F. ZIMMER, JR. (BAR NO. 112279)
    *fzimmer@kslaw.com*
12 CAMERON J. HOYLER (Bar No. 273234)
    *choyler@kslaw.com*
13 **KING & SPALDING LLP**
   101 Second Street, Suite 2300
14 San Francisco, CA  94105
   Telephone:    +1 415 318 1200
15 Facsimile:    +1 415 318 1300

16 Attorneys for Defendants
   BRISTOL-MYERS SQUIBB COMPANY (special
17 appearance), ASTRAZENECA
   PHARMACEUTICALS LP (special appearance),
18 and MCKESSON CORPORATION

19              SUPERIOR COURT OF THE STATE OF CALIFORNIA
                    FOR THE COUNTY OF SAN FRANCISCO
20

21

22 JOHN OKOYE, et al.,                   Case No. CGC-16-553662 (*Okoye*)
                                         Case No. CGC-16-554603 (*Hosek*)
23          Plaintiffs,                  Case No. CGC-16-554610 (*Martin*)

24      v.                              ~~[PROPOSED]~~
                                        **ORDER OF DISMISSAL OF NON-**
25 BRISTOL-MYERS SQUIBB COMPANY, et al., **CALIFORNIA-RESIDENT**
                                         **PLAINTIFFS**
26          Defendants.

27

28                                      Judge:    Hon. Curtis E.A. Karnow
                                        Dept.:    304

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

1  LOUIS HOSEK and MARIE HOSEK, et al.,

2            Plaintiffs,

3       v.

4  BRISTOL-MYERS SQUIBB COMPANY, et al.,

5            Defendants.

6

7  MICHAEL MARTIN, et al.,

8            Plaintiffs,

9       v.

10  BRISTOL-MYERS SQUIBB COMPANY, et al.,

11            Defendants.

12

13         The Court has reviewed the stipulation submitted by the non-California-resident plaintiffs

14  in the above-captions cases (Plaintiffs) and defendants AstraZeneca Pharmaceuticals LP, Bristol-

15  Myers Squibb Company, and McKesson Corporation (Defendants) (collectively, the Parties) for

16  the dismissal of Plaintiffs in accordance with the Court's October 4, 2016 order granting

17  Defendants AstraZeneca Pharmaceuticals LP, Bristol-Myers Squibb Company, and McKesson

18  Corporation's motion to dismiss based on forum non conveniens in related cases.

19         Based on the Parties' stipulation, IT IS HEREBY ORDERED THAT the actions of the

20  following non-California-resident Plaintiffs are DISMISSED, and pursuant to Defendants'

21  consent to jurisdiction, the following non-California-resident Plaintiffs may reassert their claims

22  in their states of residence within ninety (90) days of entry of this Order of Dismissal:

23

24

25

| _John Okoye, et al., v. Bristol-Myers Squibb Company, et al.,_ Case No. CGC-16-553662 | | |
|---|---|---|
| **Last Name** | **First Name** | **Home State** |
| Reid | Patricia | Georgia |
| Beeler | Harvey | Indiana |

26

27

28

2

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

| Tucker | Cloyd | Kentucky |
|--------|-------|----------|
| Esposito | Ronald | New York |
| Lottie | Richard | New York |
| McCall | Randall | Oklahoma |
| Carter | Roy | Texas |
| Davila | Rosa | Texas |
| Vallentine | Steven | Alabama |
| Goforth | Margie | Arkansas |
| Settle | Kenneth | Illinois |
| Settle | Susan | Illinois |
| Pinchoff | Dean | Louisiana |
| Savoie | Susan | Louisiana |

| *Louis Hosek and Marie Hosek, et al., v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-554603 | | |
|--------|-------|----------|
| **Last Name** | **First Name** | **Home State** |
| Day | Linda | Kentucky |
| McAfee | Darryl | Illinois |
| Thomas | Kathleen E. | New Jersey |
| Williams | Robert | Ohio |
| Green | H.B. | Texas |
| Ishman | Georgia | Missouri |
| Asencio | Edwin | Florida |
| Atkins Sr. | Allen | Florida |
| Talton | Gail | Louisiana |
| Reeves | Larry | Missouri |
| Reeves | Diann M. | Missouri |
| Binns | Earl | Ohio |

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

| | | |
|---|---|---|
| Sechler | April | North Carolina |
| Sechler | Michael | North Carolina |
| Woods | Catherine | Tennessee |
| Daiger | Joseph | Ohio |
| Mitchell | Robert | Georgia |
| Mitchell | Amy | Georgia |
| Cranfield | Deborah | New Jersey |
| Johnson | Maisha | New Jersey |

*Michael Martin, et al. v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-554610

| Last Name | First Name | Home State |
|---|---|---|
| Letell | Ronald | Louisiana |
| Carpenter | David | Ohio |
| McMahon | Elizabeth | Pennsylvania |
| Hunt, Sr. | John W. | Georgia |

**IT IS SO ORDERED.**

Dated: JANUARY 20 2017

_____

THE HONORABLE CURTIS E.A. KARNOW
Judge of the Superior Court

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

# STATE COURT DOCUMENTS

1  DONALD F. ZIMMER, JR. (Bar No. 112279)
      *fzimmer@kslaw.com*
2  **KING & SPALDING LLP**
   101 Second Street, Suite 2300
3  San Francisco, CA  94105
   Telephone:    +1 415 318 1200
4  Facsimile:    +1 415 318 1300

5  CAMERON J. HOYLER (Bar No. 273234)
      *choyler@kslaw.com*
6  BRIAN PRIESTLEY (Bar No. 301586)
      *bpriestley@kslaw.com*
7  **KING & SPALDING LLP**
   633 West 5th St., Suite 1700
8  Los Angeles, CA 90071
   Telephone:    +1 213 443 4355
9  Facsimile:    +1 213 443 4310

10 Attorneys for Defendants
   BRISTOL-MYERS SQUIBB COMPANY,
11 ASTRAZENECA PHARMACEUTICALS LP, and
   MCKESSON CORPORATION

12

13              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

14                 **FOR THE COUNTY OF SAN FRANCISCO**

15

16 MICHAEL MARTIN, an individual, et al.,        Case No. CGC-16-554610

17              Plaintiffs,                      **NOTICE OF ENTRY OF ORDER OF**
                                                 **DISMISSAL OF CAUSES OF ACTION**
18              v.                               **BY NON-CALIFORNIA-RESIDENT**
                                                 **PLAINTIFFS**
19 BRISTOL-MYERS SQUIBB COMPANY;
   ASTRAZENECA PHARMACEUTICALS          Judge:    Hon. Curtis E.A. Karnow
20 LP; MCKESSON CORPORATION; and        Dept.:    304
   DOES 1-50 INCLUSIVE
21                                       Complaint Filed:   September 30, 2016
              Defendants.                Trial Date:  None
22

23

24

25

26

27

28

**ELECTRONICALLY**
**F I L E D**
*Superior  Court of California,*
*County of San Francisco*
**02/01/2017**
**Clerk of the Court**
**BY:**ROSSALY DELAVEGA
**Deputy Clerk**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on January 30, 2017, the Court entered its Order, pursuant to the stipulation submitted by the Parties, dismissing the non-California-resident plaintiffs in accordance with the Court's October 4, 2016 order granting Defendants Bristol-Myers Squibb Company, AstraZeneca Pharmaceuticals LP, and McKesson Corporation's motion to dismiss based on forum non conveniens in related cases.  A copy of the Order is attached hereto as Exhibit A.


DATED: January 31, 2017          KING & SPALDING LLP


By:
                                    Donald F. Zimmer, Jr.
                                    Cameron J. Hoyler
                                    Brian Priestley

                                 Attorneys for Defendants
                                 BRISTOL-MYERS SQUIBB COMPANY,
                                 ASTRAZENECA PHARMACEUTICALS LP, and
                                 MCKESSON CORPORATION

1

**PROOF OF SERVICE**

*Martin, Michael, et al. v. Bristol-Myers Squibb Company, et al.*
San Francisco Superior Court Case No. CGC 16-554610

I am a citizen of the United States, over 18 years of age and not a party to the within action. I am employed in the County of San Francisco; my business address is 633 W. 5th Street, Suite 1700, Los Angeles, CA 94105.

On the date noted below, I served the within:

**NOTICE OF ENTRY OF ORDER OF DISMISSAL OF CAUSES OF ACTION BY NON-CALIFORNIA-RESIDENT PLAINTIFFS**

on all parties in this action, by causing a true copy thereof to be distributed as follows:

Robert A. Mosier, Esq.
Timothy M. Clark, Esq.
Lauren Welling, Esq.
**SANDERS PHILLIPS GROSSMAN, LLP**
2860 Michelle Drive, Suite 220
Irvine, CA 92606
Tel: 877-480-9142
Fax: 213-330-0346
rmosier@thesandersfirm.com

☒   **BY ELECTRONIC SERVICE VIA FILE & SERVE XPRESS**: LexisNexis File & Serve for service on all counsel of record by electronic service pursuant to the Order Authorizing Electronic Service and pursuant to California Code of Civil Procedure § 1010.6 and California Rules of Court 2060(c). The transmission was reported as complete without error.

☒   **BY U.S. MAIL**: 1 I enclosed the documents in a sealed envelope or package addressed to the person(s) set forth above, and placed the envelope for collection and mailing following our ordinary business practices, which are that on the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on January 31, 2017, at Los Angeles, California.

_____
MELISSA MICHAELS

1
PROOF OF SERVICE

# EXHIBIT A

**F I L E D**

San Francisco County Superior Co

**JAN 3 0 2017**

CLERK OF THE COURT

BY: _____
            Deputy Clerk

60137631
Jan 30 2017
04:10PM

1  ROBERT A. MOSIER (Bar No. 112279)
   TIMOTHY M. CLARK (Bar No. 284447)
2  LAUREN A. WELLING (Bar No. 291813)
   **SANDERS PHILLIPS GROSSMAN, LLC**
3  2860 Michelle Drive, Suite 220
   Irvine, CA 92606
4  Telephone:      +1 877 480 9142
   Facsimile:      +1 213 330 0346
5  *rmosier@thesandersfirm.com*

6  JENNIFER LIAKOS (Bar No. 207487)
     *jliakos@napolilaw.com*
7  **NAPOLI SHKOLNIK PLLC**
   525 South Douglas Street, Suite 260
8  El Segundo, CA 90245
   Telephone:      +1 310 331 8224
9  Facsimile:      +1 646 843 7603

10  Attorneys for Plaintiffs

11  DONALD F. ZIMMER, JR. (BAR NO. 112279)
      *fzimmer@kslaw.com*
12  CAMERON J. HOYLER (Bar No. 273234)
      *choyler@kslaw.com*
13  **KING & SPALDING LLP**
    101 Second Street, Suite 2300
14  San Francisco, CA  94105
    Telephone:      +1 415 318 1200
15  Facsimile:      +1 415 318 1300

16  Attorneys for Defendants
    BRISTOL-MYERS SQUIBB COMPANY (special
17  appearance), ASTRAZENECA
    PHARMACEUTICALS LP (special appearance),
18  and MCKESSON CORPORATION

19          SUPERIOR COURT OF THE STATE OF CALIFORNIA
20              FOR THE COUNTY OF SAN FRANCISCO

21

22  JOHN OKOYE, et al.,                    Case No. CGC-16-553662 (*Okoye*)
                                           Case No. CGC-16-554603 (*Hosek*)
23              Plaintiffs,                Case No. CGC-16-554610 (*Martin*)

24          v.

25  BRISTOL-MYERS SQUIBB COMPANY, et al.,  [~~PROPOSED~~]
                                           **ORDER OF DISMISSAL OF NON-**
26              Defendants.                **CALIFORNIA-RESIDENT**
                                           **PLAINTIFFS**
27

28                                         Judge:    Hon. Curtis E.A. Karnow
                                           Dept.:    304

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

LOUIS HOSEK and MARIE HOSEK, et al.,

      Plaintiffs,

    v.

BRISTOL-MYERS SQUIBB COMPANY, et al.,

      Defendants.

MICHAEL MARTIN, et al.,

      Plaintiffs,

    v.

BRISTOL-MYERS SQUIBB COMPANY, et al.,

      Defendants.

     The Court has reviewed the stipulation submitted by the non-California-resident plaintiffs in the above-captions cases (Plaintiffs) and defendants AstraZeneca Pharmaceuticals LP, Bristol-Myers Squibb Company, and McKesson Corporation (Defendants) (collectively, the Parties) for the dismissal of Plaintiffs in accordance with the Court's October 4, 2016 order granting Defendants AstraZeneca Pharmaceuticals LP, Bristol-Myers Squibb Company, and McKesson Corporation's motion to dismiss based on forum non conveniens in related cases.

     Based on the Parties' stipulation, IT IS HEREBY ORDERED THAT the actions of the following non-California-resident Plaintiffs are DISMISSED, and pursuant to Defendants' consent to jurisdiction, the following non-California-resident Plaintiffs may reassert their claims in their states of residence within ninety (90) days of entry of this Order of Dismissal:

| *John Okoye, et al., v. Bristol-Myers Squibb Company, et al.,* | | |
| :---: | :---: | :---: |
| **Case No. CGC-16-553662** | | |
| **Last Name** | **First Name** | **Home State** |
| Reid | Patricia | Georgia |
| Beeler | Harvey | Indiana |

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

| Tucker | Cloyd | Kentucky |
|---|---|---|
| Esposito | Ronald | New York |
| Lottie | Richard | New York |
| McCall | Randall | Oklahoma |
| Carter | Roy | Texas |
| Davila | Rosa | Texas |
| Vallentine | Steven | Alabama |
| Goforth | Margie | Arkansas |
| Settle | Kenneth | Illinois |
| Settle | Susan | Illinois |
| Pinchoff | Dean | Louisiana |
| Savoie | Susan | Louisiana |

| *Louis Hosek and Marie Hosek, et al., v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-554603 | | |
|---|---|---|
| **Last Name** | **First Name** | **Home State** |
| Day | Linda | Kentucky |
| McAfee | Darryl | Illinois |
| Thomas | Kathleen E. | New Jersey |
| Williams | Robert | Ohio |
| Green | H.B. | Texas |
| Ishman | Georgia | Missouri |
| Asencio | Edwin | Florida |
| Atkins Sr. | Allen | Florida |
| Talton | Gail | Louisiana |
| Reeves | Larry | Missouri |
| Reeves | Diann M. | Missouri |
| Binns | Earl | Ohio |

3

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

| Sechler | April | North Carolina |
| Sechler | Michael | North Carolina |
| Woods | Catherine | Tennessee |
| Daiger | Joseph | Ohio |
| Mitchell | Robert | Georgia |
| Mitchell | Amy | Georgia |
| Cranfield | Deborah | New Jersey |
| Johnson | Maisha | New Jersey |

| *Michael Martin, et al. v. Bristol-Myers Squibb Company, et al.*, Case No. CGC-16-554610 | | |
|---|---|---|
| **Last Name** | **First Name** | **Home State** |
| Letell | Ronald | Louisiana |
| Carpenter | David | Ohio |
| McMahon | Elizabeth | Pennsylvania |
| Hunt, Sr. | John W. | Georgia |

**IT IS SO ORDERED.**

Dated: January 30 2017

THE HONORABLE CURTIS E.A. KARNOW
Judge of the Superior Court

ORDER OF DISMISSAL OF NON-CALIFORNIA-RESIDENT PLAINTIFFS

# STATE COURT DOCUMENT

1  Robert A. Mosier, Esq. (State Bar No. 164241)
2  Timothy M. Clark, Esq. (State Bar No. 284447)
   Lauren A. Welling, Esq. (State Bar No. 291813)
3  **SANDERS PHILLIPS GROSSMAN, LLC**
   2860 Michelle Drive, Suite 220
4  Irvine, CA 92606
   Tel: (877) 480-9142
5  Fax: (213) 330-0346
   TClark@thesandersfirm.com
6
7  Attorneys for Plaintiffs

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*
**02/01/2017**
**Clerk of the Court**
BY:VANESSA WU
**Deputy Clerk**

8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                  **COUNTY OF SAN FRANCISCO**

10

| | |
|---|---|
| 11  **IN RE: ONGLYZA® and KOMBIGLYZE® CASES** | Judicial Council Coordination Proceeding |
| 12 | JCCP No. 4909 |
| 13  *John Okoye, et al., v. Bristol-Myers Squibb Co., et al.*, San Francisco Superior Court, Case No. CGC-16-553662 | San Francisco Superior Court Case No. CGC-16-553662 |
| 15  *Michael Martin, et al., v. Bristol-Myers Squibb Co., et al.*, San Francisco Superior Court, Case No. CGC-16-554610 | San Francisco Superior Court Case No. CGC-16-554610 |
| 18  *Louis Hosek, et al., v. Bristol-Myers Squibb Co., et al.*, San Francisco Superior Court, Case No. CGC-16-554603 | San Francisco Superior Court Case No. CGC-16-554603 |
| 20  *Gary Gilmore, et al. v. Bristol-Myers Squibb Co., et al.*, San Francisco Superior Court, Case No. CGC-16-556095 | San Francisco Superior Court Case No. CGC-16-556095 |
| 22  *Robert Rosencranse, et al. v. Bristol-Myers Squibb Co.*, et al., Los Angeles Superior Court, Case No. BC615715 | Los Angeles Superior Court Case No. BC615715 |
| 25  *Mario Jimenez, et al. v. Bristol-Myers Squibb Co., et al.*, Los Angeles Superior Court, Case No. BC617207 | Los Angeles Superior Court Case No. BC617207 |

26                                                  **NOTICE OF ORDER ASSIGNING
                                                    COORDINATION MOTION JUDGE AND
                                                    SETTING DATE FOR HEARING**

27  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

28

PLEASE TAKE NOTICE THAT on January 12, 2017, the Judicial Council of California entered its Order, attached as Exhibit A, stating the following:

"The Presiding Judge of the Superior Court of California, County of San Francisco, is hereby authorized to assign this matter to a judge of the court pursuant to Code of Civil Procedure section 404 and rule 3.524 of the California Rules of Court to sit as coordination motion judge to determine whether the included actions listed below are complex (rule 3.502), and if so, whether coordination of those actions are appropriate."

"Pursuant to Code of Civil Procedure section 404.5 and rule 3.515, pending the determination of whether coordination is appropriate, the coordination motion judge may stay any action being considered for, or affecting an action being considered for, coordination."

"Pursuant to rule 3.511, a copy of every notice of opposition, application for stay order, stay order, notice of hearing on the petition, and order granting or denying coordination must be transmitted to the Chair of the Judicial Council at the following address:

> Chair, Judicial Council of California
> Attn: Appellate Court Services
> (Civil Case Coordination)
> 455 Golden Gate Avenue, 5th Floor
> San Francisco, CA  94102-3688

"Petitioner is directed to serve a copy of this order on (1) all parties to the included actions, and (2) the clerk of each court for filing in each included action."

DATED: JANUARY 26, 2017            **SANDERS PHILLIPS GROSSMAN, LLC**

BY:  */s/Lauren A. Welling*_____
       TIMOTHY M. CLARK, ESQ.
       LAUREN A. WELLING, ESQ.
       ATTORNEYS FOR PLAINTIFF

PLEASE TAKE NOTICE THAT on January 20, 2017, the Judicial Council of California entered its Order, attached as Exhibit A, stating the following:

JUDGE CURTIS E. A. KARNOW, Judge of the Superior Court, County of San Francisco, is hereby assigned to sit as the Coordination Motion Judge with regard to captioned actions.

The Coordination Motion Judge shall determine whether the included actions are complex and whether coordination of those actions is appropriate. If the coordination motion judge grants the petition for coordination, he must recommend a particular superior court for the site of the cooredinated proceedings and select the reviewing court having appellate jurisdiction if the coordinated actions are within the jurisdiction of more than one reviewing court.

A hearing on the petition for coordination is hereby set for February 23, 2016 at 10:00 a.m. before Judge Karnow in Department 304, Superior Court of California, County of San Francisco, located at 400 McAllister Street in San Francisco, California.

Petitioner is directed to serve a copy of this order on (1) all parties to the included coordinated actions, and (2) the clerk of each court for filing in each included actions.

DATED: JANUARY 31, 2017                    SANDERS PHILLIPS GROSSMAN, LLC

BY: /s/Lauren A. Welling
TIMOTHY M. CLARK, ESQ.
LAUREN A. WELLING, ESQ.
ATTORNEYS FOR PLAINTIFF

Exhibit A



**FILED**
San Francisco County Superior Court

JAN 2 0 2017

CLERK OF THE COURT
BY: _____
Deputy Clerk

SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO
DEPARTMENT 206

COORDINATION PROCEEDING
SPECIAL TITLE [RULE 3.550]

**ONGLYZA PRODUCT CASES**

*Included actions:*

Rosencranse et al. v Bristol-Myers Squibb
(Los Angeles  BC615715)

Jimenez v Bristol-Myers Squibb
(Los Angeles  BC617207)

Okoye v Bristol-Myers Squibb
(San Francisco  CGC-16-553662)

Martin et al. v Bristol-Myers Squibb
(San Francisco  CGC-16-554610)

Hosek at al. v Bristol-Myers Squibb
(San Francisco  CGC-16-554603)

Gilmore at al. v Bristol-Myers Squibb
(San Francisco  CGC-16-556095)

Judicial Council Coordination
Proceeding No.: 4909

**ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING HEARING**

JUDGE CURTIS E. A. KARNOW, Judge of the Superior Court, County of San Francisco, is hereby assigned to sit as the Coordination Motion Judge with regard to the captioned actions.

1

The Coordination Motion Judge shall determine whether the included actions are complex and whether coordination of those actions is appropriate. If the coordination motion judge grants the petition for coordination, he must recommend a particular superior court for the site of the coordinated proceedings and select the reviewing court having appellate jurisdiction if the coordinated actions are within the jurisdiction of more than one reviewing court.

A hearing on the petition for coordination is hereby set **for February 23, 2016 at 10:00 a.m.** before Judge Karnow in Department 304, Superior Court of California, County of San Francisco, located at 400 McAllister Street in San Francisco, California.

Petitioner is directed to serve a copy of this order on (1) all parties to the included coordinated actions, and (2) the clerk of each court for filing in each included action.

DATED: January 20 2017

Teri L. Jackson
Presiding Judge of the Superior Court

## SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

| | |
|---|---|
| COORDINATION PROCEEDING<br>SPECIAL TITLE [RULE 3.550] | |
| | Judicial Council Coordination<br>Proceeding No.: 4909 |
| **ONGLYZA PRODUCT CASES** | |
| *Included actions:* | PROOF OF SERVICE |
| Rosencranse et al. v Bristol-Myers Squibb<br>(Los Angeles  BC615715) | |
| Jimenez v Bristol-Myers Squibb<br>(Los Angeles  BC617207) | |
| Okoye v Bristol-Myers Squibb<br>(San Francisco  CGC-16-553662) | |
| Martin et al. v Bristol-Myers Squibb<br>(San Francisco  CGC-16-554610) | |
| Hosek at al. v Bristol-Myers Squibb<br>(San Francisco  CGC-16-554603) | |
| Gilmore at al. v Bristol-Myers Squibb<br>(San Francisco  CGC-16-556095) | |

## PROOF OF SERVICE BY MAIL

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the City and County of San Francisco, certify that I am not a party to the within action.

1

On January 20, 2017, I served the attached **ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING HEARING** by placing copies thereof in sealed envelopes, addressed as follows:

Robert A. Mosler
Timothy M. Clark
Laura Welling
SANDERS PHILLIPS GROSSMAN, LLC
2860 Michelle Drive, Suite 220
Irvine, CA 92606

Chair, Judicial Council of California
Attn: Appellate Court Services
(Civil Case Coordination)
455 Golden Gate Avenue, 5th Floor
San Francisco, CA 94102-3688

I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated:  January 20, 2017

MICHAEL YUEN, Clerk

By: _____

Danial Lemire, Courtroom Clerk

1

2

## PROOF OF SERVICE
## STATE OF CALIFORNIA, COUNTY OF ORANGE

3

I certify that I am over the age of 18 years and not a party to the within action; that my business address is:

4

5

### SANDERS PHILLIPS GROSSMAN, LLC
2860 Michelle Drive, Suite 220
Irvine, CA 92606

6

7

On January 31, 2017, I served the foregoing documents described as:

8

9

### NOTICE OF ORDER ASSIGNING COORDINATION MOTION JUDGE AND SETTING HEARING

10

11

On the parties in this action by placing a true copy thereof in a sealed envelope addressed as stated on the parties involved addressed as follows:

12

13

14

15

16

Donald F. Zimmer, Jr., Esq.
King & Spalding LLP
101 Second Street, Suite 2300
San Francisco, CA 94105
Telephone: (415) 318-1200
Facsimile: (415) 318-1300
fzimmer@kslaw.com
Attorneys for Defendants

17

18

19

20

21

22

23

Cameron J. Hoyler, Esq.
Brian Priestley, Esq.
King & Spalding LLP
633 W. 5th Street, Suite 1700
Los Angeles, CA 90071
Telephone: (213) 443-4355
Facsimile: (213) 443-4310
choyler@kslaw.com
bpriestley@kslaw.com
Attorneys for Defendants

24

25

26

Attn: Clerk of the Court
San Francisco Superior Court
400 McAllister Street
San Francisco, CA  94102

27

28

E-MAIL: I caused such documents to be transmitted by e-mail to the following e-mail addresses as set forth above

1

1     \_    (BY PERSONAL SERVICE) I caused each document to be delivered by hand to the offices of
the addressee.

2

3     \_    (BY FACSIMILE) I caused each document to be sent by FAX to the parties
listed above

4

\_X\_    (BY MAIL): by placing document(s) listed above in a sealed envelope with postage thereon fully
5 prepaid, in the United States mail at Irvine, California addressed as set forth above. I am readily familiar
with the firm's practice of collection and processing of correspondence for mailing. Under the practice,
6 it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid in
the ordinary course of business. I am aware that on motion of the party served, service is presumed
7 invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit
for mailing in this declaration
8

9

10     \_    (BY OVERNIGHT MAIL): I caused said document(s) to be picked up by an overnight delivery
service company for delivery to the addressee(s) on the next business day.
11

12         I declare under penalty of perjury under the laws of the State of California that the
foregoing is true and correct.
13

14         Executed on January 31, 2017 at Irvine, California.

15

16         BrookeLynn Meyers

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**